25-4606

# IN THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

KENTRELL D. WELCH,
Plaintiff-Appellee,

v.

COREY ROWLEY, et al.,
Defendants-Appellants,

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEVADA,
D.C. No. 3:22-cv-00557-MMD-CLB

## DEFENDANTS-APPELLANTS' EXCERPTS OF RECORD

Respectfully submitted by:
AARON D. FORD
Attorney General
CHRIS DAVIS (Nevada Bar No. 6616)
Senior Deputy Attorney General
Office of the Attorney General, State of Nevada
1 State of Nevada Way, Suite 100
Las Vegas, Nevada 89119
(702) 486-9252 (phone)
cwdavis@ag.nv.gov
*Attorneys for Defendants-Appellants*
*Sean Donahue, Daniel Featherly,*
*Cade Herring, Curtis Rigney,*
*Corey Rowley, Alexander Werner*
*And Daniel Wheeler*

## VOLUME I

| Date | Title | Bates No. | Vol. | Pages |
|---|---|---|---|---|
| 06/23/25 | Order, ECF 34 | ER004-ER016 | I | 13 |
| 03/04/25 | Plaintiff Response to Objection to Report and Recommendation of U.S. Magistrate Judge, ECF 33 | ER017-ER040 | I | 24 |
| 02/25/25 | Withdrawn - Plaintiff's Response to Defendant's Objection to Report and Recommendation of U.S. Magistrate Judge, ECF 30 | ER041-ER042 | I | 2 |
| 02/18/25 | Defendants' Objections to Report and Recommendation of U.S. Magistrate Judge, ECF 29 | ER043-ER056 | I | 14 |
| 02/04/25 | Report and Recommendation of U.S. Magistrate Judge, ECF 28 | ER057-ER063 | I | 7 |
| 11/25/24 | Reply in Support of Motion to Dismiss Second Amended Civil Rights Complaint, ECF 27 | ER064-ER072 | I | 9 |
| 11/19/24 | Plaintiff's Exhibits, ECF 26 | ER073-ER145 | I | 73 |

| 11/18/24 | Plaintiff's Response to Defendants' Motion to Dismiss, ECF 25 | ER146-ER170 | I | 25 |
|---|---|---|---|---|
| 11/04/24 | Motion to Dismiss Second Amended Civil Rights Complaint, ECF 21 | ER171-ER185 | I | 15 |
| 06/05/24 | Screening Order Second Amended Complaint, ECF 9 | ER186-ER200 | I | 15 |
| 11/08/23 | Second Amended Complaint, ECF 7 | ER201-ER212 | I | 12 |
| 10/17/23 | First Amended Complaint, ECF 6 | ER213-ER225 | I | 13 |
| 10/16/23 | Screening Order First Amended Complaint, ECF 5 | ER226-ER237 | I | 12 |
| 07/22/25 | Notice of Appeal, ECF 42 | ER238-ER240 | I | 3 |
| | Current Docket Sheet | ER241-ER248 | I | 8 |

**ER003**                              **ER003**                              **ER003**

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

KENTRELL D. WELCH,

                   Plaintiff,

    v.

CHARLES DANIELS, *et al.*,

                 Defendants.

Case No. 3:22-cv-00557-MMD-CLB

ORDER

## I.    SUMMARY

*Pro se* Plaintiff Kentrell Welch, who is an inmate in the custody of the Nevada Department of Corrections ("NDOC"), brings this civil-rights action under 42 U.S.C. § 1983 to redress constitutional violations he claims he suffered while he was incarcerated at Ely State Prison ("ESP"). (ECF No. 1.) The Court screened Plaintiff's Second Amended Complaint (ECF No. 7 ("SAC")) and found that Plaintiff states a colorable Eighth Amendment claim for deliberate indifference to unsafe prison conditions related to COVID-19 exposure at ESP. (ECF No. 9 ("Screening Order").) Defendants[1] filed a motion to dismiss. (ECF No. 21 ("Motion").) Plaintiff responded to the Motion (ECF Nos. 25, 26) and Defendants replied (ECF No. 27). Before the Court is United States Magistrate Judge Carla L. Baldwin's Report and Recommendation ("R&R"), recommending that the Court deny the Motion. (ECF No. 28.) Defendants timely objected to the R&R (ECF No. 29 ("Objection")), and Welch responded (ECF No. 33 ("Response")). For the reasons explained below, the Court overrules the Objection and adopts the R&R in full.

---

[1]Defendant NDOC employees include Sean Donahue, Daniel Featherly, Cade Herring, Curtis Rigney, Corey Rowley, Alexander Werner, and Daniel Wheeler. (ECF No. 21.) In the Screening Order. the Court allowed claims to proceed against several additional NDOC Defendants who did not move to dismiss. (ECF No. 9.) Those Defendants are not addressed in this order.

## II.    DISCUSSION[2]

This Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). Where a party timely objects to a magistrate judge's R&R, the Court must "make a *de novo* determination of those portions of the R&R to which objection is made." *Id.* Defendants here object to the R&R, which recommends denial of their motion to dismiss under Fed. R. Civ. P. 12(b)(6), on three bases: (1) the R&R improperly relied on the Screening Order as a substitute for analyzing Defendants' specific legal arguments outlined in the Motion; (2) the Screening Order and R&R incorrectly determined that Welch states a plausible Eighth Amendment claim to overcome the first prong of the qualified immunity test; and (3) the R&R conducted the "clearly established law" prong of the qualified immunity analysis at too high a level of generality. (ECF No. 29 at 3-6.) The Court first addresses Defendants' argument as to reliance on the Screening Order and finds the R&R did not improperly rely on the previous screening of the SAC under 28 U.S.C. § 1915A(a). Next, even setting aside that the Screening Order already appropriately addressed some aspects of the analysis, the Court considers that Defendants essentially object to the R&R's recommendation that they are not entitled to qualified immunity in its entirety and finds, on *de novo* review, that qualified immunity does not warrant dismissing Welch's claims.

Dismissal of a complaint for failure to state a claim upon which relief can be granted is provided for in Federal Rule of Civil Procedure 12(b)(6), the same standard the Court applies under 28 U.S.C. § 1915(e)(2) when reviewing the adequacy of a prisoner complaint or an amended complaint. Review under Rule 12(b)(6) is essentially a ruling on a question of law. *See Chappel v. Lab. Corp. of Am.*, 232 F.3d 719, 723 (9th Cir. 2000). Dismissal for failure to state a claim is proper only if the plaintiff clearly cannot prove any set of facts in support of the claim that would entitle them to relief. *See Morley v. Walker*,

---

[2]The Court incorporates by reference Judge Baldwin's description of the background of the case and recitation of pertinent allegations in the SAC, provided in the R&R. (ECF No. 28 at 1-2.)

ER005                    ER005                    ER005

175 F.3d 756, 759 (9th Cir. 1999). In making this determination, the Court takes as true all factual allegations stated in the complaint and construes them in the light most favorable to the plaintiff. *See Warshaw v. Xoma Corp.*, 74 F.3d 955, 957 (9th Cir. 1996). Allegations are "liberally construed" in favor of the *pro se* plaintiff at this stage. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). Generally, a district court is permitted to "look only at the face of the complaint to decide a motion to dismiss." *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002). While the standard under Rule 12(b)(6) does not require detailed factual allegations, a plaintiff must provide more than mere labels, conclusions, or a formulaic recitation of the claim's elements. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

### A.    The R&R's Reliance on Screening Order

Defendants first object to the R&R on the basis that Judge Baldwin should have analyzed specific legal arguments in their Motion "regarding the first prong of qualified immunity and the plausibility of Welch's Eighth Amendment claim," rather than relying on the Court's Screening Order to find Welch plausibly states an Eighth Amendment claim. (ECF No. 29 at 3.) The Court overrules this ground asserted in the Objection and additionally finds the R&R adequately analyzed Defendants' arguments.

### 1.    Approaches to post-screening motions to dismiss

District courts have adopted differing approaches when handling Rule 12(b)(6) motions to dismiss complaints that were already screened under 28 U.S.C. § 1915A(b). *See Baldhosky v. Hubbard*, No. 1:12-cv-01200-LJO-MJS PC, 2017 WL 68098, at *2 (E.D. Cal. Jan. 5, 2017). The Court finds no mandatory authority favoring one approach over another but finds persuasive the recurring reasoning across approaches that courts need not revisit duplicative arguments on previously decided issues.

One approach utilizes the law of the case doctrine, which precludes a court "from reconsidering an issue previously decided by the same court, or a higher court in the identical case." *Ingle v. Circuit City*, 408 F.3d 592, 594 (9th Cir. 2005) (quoting *United States v. Lummi Indian Tribe*, 235 F.3d 443, 452 (9th Cir. 2000)). District courts following

ER006                              ER006                              ER006

this approach find "a screening order which utilized the same legal standard upon which a subsequent motion to dismiss relies necessarily implicates the law of the case doctrine." *Green v. Chakotos*, No. 1:11-cv-01611-LJO-DLB PC, 2014 WL 3563314, at *3 (E.D. Cal. July 18, 2014). To be excepted from the law of the case doctrine, the party seeking dismissal must articulate grounds for their Rule 12(b)(6) motion "in light of a screening order finding the complaint stated a claim." *Id.* (citing *Ingle*, 408 F.3d at 594 (finding that clear error in the earlier decision or an intervening change in the law are among the exceptions to the law of the case doctrine which might merit revisiting a prior determination)).

Under a second similar approach, a post-screening motion for dismissal under 12(b)(6) is treated as a motion for reconsideration. Multiple district courts, including district courts within the Ninth Circuit, have found "a Rule 12(b)(6) motion to dismiss is almost never an appropriate response when the Court has already screened a prisoner complaint pursuant to 28 U.S.C. § 1915A(b)." *Perez v. Ryan*, No. CV 19-05602-PHX-MTL (JFM), 2021 WL 100855, at *2 (D. Ariz. Jan. 12, 2021). *See also, e.g.*, *White v. Nunley*, No. 4:23-CV-P130-JHM, 2024 WL 1904339, at *1 (W.D. Ky. Apr. 30, 2024); *Thompson v. Yates*, No. 1:06-cv-00763-RCC, 2011 WL 1753149, at *1 (E.D. Cal. May 6, 2011). Consequently, these courts find that "after the Court has screened a prisoner's complaint . . . a Rule 12(b)(6) motion to dismiss should be granted only if the defendants can convince the Court that reconsideration is appropriate. Reconsideration is appropriate only if the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *Id.* (quoting *School Dist. No. 1J, Multnomah Cnty. v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993)). *See also Manon v. Hall*, No. 3:14-CV-1510 (VLB) 2015 WL 8081945, at *3 (D. Conn. Dec. 7, 2015) (finding a party should *never* "seek dismissal of claims that the Court has determined to be non-frivolous" if the sole basis for seeking dismissal is that the moving party disagrees with the prior finding).

By contrast, other district courts follow a third approach and find that a 12(b)(6)

4

motion must be heard on its merits because 28 U.S.C. § 1915(e)'s "screening and dismissal procedure is cumulative of, not a substitute for, any subsequent Rule 12(b)(6) motion that the defendant may choose to bring." *Teahan v. Wilhelm*, 481 F.Supp.2d 1115, 1119 (S.D. Cal. 2007). But even then, at least one district court adopting this approach has emphasized to defendants that they are "cautioned, in the future, to move for dismissal wisely" when the Court has already screened the pleading. *Martindale v. Kirkegard*, No. CV-15-00111-H-DLC-JTJ, 2016 WL 4275997, at *1 n.2 (D. Mont. July 15, 2016).

### 2.      The R&R's finding as to Welch's Eighth Amendment claim

While there is no binding Ninth Circuit precedent requiring the Court adopt one of these approaches, the Court agrees with courts who adopt the first and second approaches. They apply the same reasoning—with which the Court agrees—counseling against duplicative consideration of the same issues addressed at the screening stage. The Supreme Court has recognized that "the PLRA mandated early judicial screening to *reduce* the burden of prisoner litigation on the courts." *Jones v. Bock*, 549 U.S. 199, 223 (2007) (emphasis added). As this Court has recognized in other contexts involving screening under 28 U.S.C. § 1915, Defendants' preferred result would *increase*, not reduce, the burden on federal courts. *See Olausen v. Sgt. Murguia*, No. 3:13-cv-00288-MMD-VPC, 2014 WL 6065622 (ECF No. 96) (D. Nev. Nov. 12, 2014). The Court concludes that Judge Baldwin did not erroneously rely on the Screening Order's finding that Welch plausibly states an Eighth Amendment claim and agrees with the R&R that, "because the District Court has already determined that Welch states a colorable Eighth Amendment claim against Defendants, and Defendants provide no additional basis for dismissal at this early stage of litigation," Defendants' Motion to Dismiss should be denied. (ECF No. 28 at 5-6.) In fact, Judge Baldwin essentially followed the law of the case as articulated in the Screening Order.

Defendants' Motion articulates no grounds which would invoke an exception to the law of the case doctrine or require reconsideration of the Screening Order's findings.

5

ER008                                    ER008                                    ER008

Nowhere in the Motion did Defendants support a claim the Court erred in its Screening Order or that a change in law since the Screening Order necessitates reexamining the SAC's plausibility. Moreover, any additional facts or evidence outside the SAC that Defendants say undermine Welch's Eighth Amendment claim's plausibility—like those related to COVID-19 testing and screening protocols for prison employees—fall outside the scope of a Rule 12(b)(6) motion to dismiss, which looks to "the face of the complaint." *Van Buskirk*, 284 F.3d at 980. Thus, the Court rejects Defendants' contention that Judge Baldwin is required to analyze their arguments on the plausibility of Welch's Eighth Amendment claims when the Screening Order already contains that analysis.

> **3.    Application to first prong of the qualified immunity analysis**

When the scope of Defendants' Objection is narrowed from the overall plausibility of Welch's Eighth Amendment claim to whether the R&R adequately considered their arguments on the first prong of the qualified immunity test, Defendants still fail to show Judge Baldwin's analysis was inadequate. Because qualified immunity is "immunity from suit rather than a mere defense to liability," it may be raised early to allow a defendant to avoid trial costs and the "burdens of broad-reaching discovery." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). However, the Ninth Circuit has held that "determining claims of qualified immunity at the motion-to-dismiss stage raises special problems for legal decision making." *Keates v. Koile*, 883 F.3d 1228, 1234 (9th Cir. 2018). Moreover, though qualified immunity can be raised on a Rule 12(b)(6) motion, the Court need not duplicate its review of both prongs of the qualified immunity test when it has already evaluated the first prong during screening. *See C.B. v. City of Sonora*, 769 F.3d 1005, 1022 (9th Cir. 2014) (providing that the first prong of the qualified immunity analysis is "whether an official violated a constitutional right"); *Perez v. Ryan*, No. CV 19-05602-PHX-MTL (JFM), 2021 WL 100855, at *3 (D. Ariz. Jan. 12, 2021) (finding that the "first prong of the qualified immunity analysis is satisfied" for a motion to dismiss if the court's prior screening order found the plaintiff inmate sufficiently stated an Eighth Amendment claim).

Here, Defendants correctly note that screening orders do not explicitly account for

ER009          ER009          ER009

qualified immunity arguments, and the Screening Order did not address whether Welch's claimed harm was clearly established to satisfy the qualified immunity analysis' second prong. However, the Screening Order contains the Court's thorough discussion of the first prong of the qualified immunity analysis, including examination of the prong's objective and subjective requirements. (ECF No. 9 at 6-8.) The Court found Welch plausibly pleads a violation of his constitutional rights. (*Id.*) Judge Baldwin adopted this finding and analysis in the R&R. (ECF No. 28 at 5-6.) In sum, without Defendants articulating some additional basis in the Motion, the Court is not required and declines to reexamine what the Court already scrutinized during screening.

### B.    Qualified Immunity

To determine whether qualified immunity warrants granting dismissal in a case regarding deliberate indifference to unsafe prison conditions, the Court applies the 12(b)(6) plausibility standard to a two-prong test—"(1) whether the official violated a constitutional right and (2) whether the constitutional right was clearly established." *City of Sonora*, 769 F.3d at 1022 (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)). District courts have discretion to address these prongs in any order. *See Pearson*, 555 U.S. at 236. Though the Court evaluated the first prong in the Screening Order, as described above, and the R&R addressed the second prong, the Court conducts *de novo* review of both prongs to address Defendants' objections to the R&R's recommendation on qualified immunity.

### 1.    Constitutional violation

Under the first prong, a plaintiff must meet two requirements to establish that an official violated a constitutional right, one objective and the other subjective. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Welch satisfies both here to plausibly claim Defendants violated his constitutional rights.

### a.    Objective requirement

To meet the objective requirement**,** a plaintiff must plausibly allege that a defendant exposed him involuntarily to a risk which is "contrary to current standards of decency for

7

anyone" to be exposed to. *Hampton v. California*, 83 F.4th 754, 766 (9th Cir. 2023) (citing *Helling v. McKinney*, 509 U.S. 25, 33 (1993)). For purposes of the Motion only, Defendants concede that the risk of involuntary exposure to COVID-19 fulfills this requirement. (ECF No. 29 at 11.) The Court need not further analyze this requirement.

### b.  Subjective requirement

The subjective requirement asks whether defendant prison officials were *deliberately* indifferent to inmate health or safety. *See Farmer*, 511 U.S. at 834. Deliberate indifference "entails something more than mere negligence," but "something less" than purposefully causing harm or acting knowing that harm will result. *Id.* at 835. Defendants contend that Welch fails to demonstrate deliberate indifference on three grounds, each of which fail. First, Defendants dispute that Welch has pleaded they are the actual and proximate cause of his harm. (ECF No. 29 at 11.) Second, they argue Welch does not plausibly claim Defendants knew of and disregarded a risk of exposing Welch to COVID-19. (*Id.* at 11-12.) Third, Defendants contend that even if they violated prison policy on personal protective equipment ("PPE"), this does not constitute a deliberate indifference to Welch's Eighth Amendment rights. (*Id.* at 12.) The Court addresses each of these arguments in order.

First, Defendants argue that Welch does not adequately establish they are the actual and proximate cause of his injury because Welch never plausibly alleged "any Defendant ever exposed Welch to COVID-19."[3] (ECF No. 29 at 11). This argument is unconvincing considering the plain reading of the SAC. Welch alleges Defendants "exhibited reckless disregard" by keeping him in the same unit with "highly symptomatic" inmates and refusing to provide or wear PPE, "leaving him as medically vulnerable as a sitting duck." (ECF No. 7 at 7.) He alleges he and other inmates were not provided cloth masks to reduce the spread of COVID-19 until June 2020, and were not provided N-95 masks until November 2021. (*Id.*) Defendants Featherly, Herring, Rowley, Werner, and

_____

[3]Welch must show that Defendants' deliberate indifference is the actual and proximate cause of his injury. *See Lemire v. California Dept. of Corrections and Rehabilitation*, 726 F.3d 1062, 1074 (9th Cir. 2013).

ER011                              ER011                              ER011

Wheeler "deliberately refused to adorn N-95 masks" and PPE while working on Welch's unit daily, "recklessly exposing" Welch to COVID-19. (*Id.*) Welch alleges he daily suffers "shortness of breath, fatigue, lack of strength" in his legs, hands, and body, while also facing three pre-existing chronic conditions. (*Id.* at 8.) He further alleges that Defendant Werner refused to wear an N-95 mask or PPE while distributing mail and meals in the prison unit, and Defendant Wheeler would tell Welch to "shut the fuck up" if Welch asked Wheeler to wear an N-95 mask or to instruct "his subordinate Werner to put on a mask per facility memo." (*Id.*) He alleges Defendant Rowley multiple times rebuffed Welch's requests that Rowley wear an N-95 mask while escorting Welch to legal visits, telling Welch to refuse visits if he did not want an escort. (*Id.*) Welch further alleges Defendant Herring would tell Welch to "shut the fuck up" and "no, I will not" when Welch asked him to wear an N-95 mask during "feedings." (*Id.*) Meanwhile, Defendants Wheeler and Featherly "refused to reprimand Herring to adorn safety gear." (*Id.*). And Welch alleges that Defendants Rigney and Donahue would not wear N-95 masks or PPE while serving food or transporting or escorting inmates. (*Id.*)

These allegations are sufficient at this stage to support that Defendants' refusal to wear N-95 masks and PPE and/or relocate Welch away from COVID-19-positive inmates was the actual and proximate cause of his exposure to COVID-19. (*Id.* at 7-9.) Defendants seemingly dispute causation on the basis that Defendants followed prison employee COVID-19 testing and screening protocols, also arguing Welch does not explicitly claim that Defendants infected his neighboring inmates with COVID-19. (ECF No. 29 at 11-12.) But the risk of a prisoner's harm can come from multiple sources. *See Farmer*, 511 U.S. at 843. Defendants could plausibly expose Welch to COVID-19 by not wearing PPE and/or knowingly keeping Welch near COVID-19-infected inmates. Whether COVID-19 screening and testing protocols for prison employees eliminated the risk of Defendants exposing Welch to COVID-19 is a factual dispute for later resolution.

Second, Welch plausibly claims Defendants knew of and disregarded the risk of exposing him to COVID-19. To be deliberately indifferent to an inmate's Eighth

9

Amendment rights, an official must know or infer "that a substantial risk of harm exists." *Id.* at 837. "A factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious*." Id.* at 842*. See also, e.g.*, *Frost v. Agnos*, 152 F.3d 1124, 1129-30 (9th Cir. 1998) (finding that an inmate using crutches who never informed prison officials of his difficulty carrying his lunch tray did not face "obvious enough" risk to demonstrate prison officials' deliberate indifference to his future injury).

Defendants argue that they could not know they exposed Welch to COVID-19 because they underwent frequent COVID-19 screening protocols. (ECF No. 29 at 11-12.) But unlike in *Frost*, Welch informed Defendants Herring, Rowley, and Wheeler of his risk of harm—Welch explicitly requested they wear PPE to avoid exposing him to COVID-19. (ECF No. 7 at 8.) And importantly, Welch clearly alleges that Defendants violated existing prison policy regarding PPE. (*Id.*) Welch also alleges he was not provided an N-95 mask until November 2022. (*Id.* at 7.) Thus, Welch plausibly contends that Defendants wore no PPE in violation of prison policy, at a time when Welch had less protective PPE.

Liberally construing the allegations and drawing all reasonable inferences in Welch's favor, Welch's deficient PPE, the prison policy mandating Defendants to wear PPE, Welch's involuntary proximity to COVID-19-positive inmates, Welch's own admonitions to Defendants about masking, and the general societal consensus about COVID-19's dangerousness—which Defendants concede—plausibly alerted Defendants to an obvious risk of exposing Welch to COVID-19 and suggest that Defendants deliberately disregarded this obvious risk. "If masks and protective equipment were available, the choice not to use them would reflect disregard for prisoner safety." *Hampton*, 83 F.4th at 767. Moreover, Welch claims Defendants responded to his requests that they follow and enforce the PPE policy with refusals and unmodified behavior. (ECF No. 7 at 8.)

Third, Welch plausibly claims Defendants disregarded his Eighth Amendment rights—not just prison PPE policy, as Defendants insist. The subjective analysis requires a prison official to be deliberately indifferent to a violation of an inmate's Eighth

10

**ER013**                    **ER013**                    **ER013**

Amendment rights, not just a violation of prison policy. *See Cousins v. Lockyer,* 568 F.3d 1063, 1070 (9th Cir. 2009). It would be insufficient for Welch to base his claim solely on Defendants violating ESP or NDOC policy by failing to adorn PPE. *See id.* Rather, Welch must plausibly allege Defendants were deliberately indifferent to his underlying constitutional right to protection from exposure to serious disease. *See id.* Defendants' argument here intersects with the second prong of the qualified immunity analysis, which evaluates whether the claimed constitutional right is clearly established law. For the reasons outlined below on the second prong, Welch's claims implicate a right clearly established under the Eighth Amendment since 1993 and go beyond a mere violation of prison policy.

In sum, Welch plausibly alleges that Defendants were deliberately indifferent in violation of the Eighth Amendment when they refused to wear PPE and exposed Welch to COVID-19.

### 2.    Clearly-established right

Under the second prong of the qualified immunity analysis, the Court asks whether the constitutional right the prison officials allegedly violated was "clearly established at the time of the violation." *Hines v. Youseff*, 914 F.3d 1218, 1228 (9th Cir. 2019). The burden of proof rests with the plaintiff to show that the right was so clearly established under the Eighth Amendment that the official knew or should have known they were violating the Constitution. *See Carley v. Aranas*, 103 F.4th 653, 660 (9th Cir. 2024). A precedent "case directly on point" is not required to make a right clearly established, but "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).

The failure to provide "protection from infectious disease" is "firmly established in our constitutional law" as an Eighth Amendment claim. *Parsons v. Ryan*, 754 F.3d 657, 664, 676 (9th Cir. 2014). The Eighth Amendment requires prison officials to reasonably protect inmates from *exposure* to serious disease, not just actual infection. *See Helling*, 509 U.S. at 33. In *Helling*, the right was first applied to an inmate involuntarily exposed to

11

ER014                              ER014                              ER014

secondhand smoke. *See* 509 U.S. at 33. Courts have subsequently found that this right applies when, for example, an inmate is exposed to asbestos without sufficient protective gear. *See Wallis v. Baldwin*, 70 F.3d 1074, 1077 (9th Cir. 1995). In addition, a prison official violates the Eighth Amendment if they are deliberately indifferent to a "lack of adequate ventilation and air flow undermin[ing] the health of inmates and the sanitation of" the prison. *Hoptowit v. Spellman*, 753 F.2d 779, 784 (9th Cir. 1985).

Here, Defendants claim the R&R applies an inmate's Eighth Amendment right to protection from exposure to serious disease at too high a level of generality. (ECF No. 29 at 12.) *See also al-Kidd*, 563 U.S. at 742 (finding a clearly established right should not be defined using a high level of generality); *Carley*, 103 F.4th at 660-62. They contend Welch cannot point to clearly established law which would have notified Defendants that breaching prison policy by "refusing to wear PPE" is a constitutional violation. (ECF No. 29 at 12.) But as applied to the context of COVID-19, the case law dating back to 1993 does exactly that. *See Hampton*, 83 F.4th at 770 (finding the COVID-19 outbreak resulting from the transfer of inmates between prisons exposed inmates to serious disease in violation of clearly established law). In *Hampton*, the Ninth Circuit found that cases including *Helling*, *Parsons*, *Wallis*, and *Hoptowit* put "all reasonable prison officials" on notice in 2020 at the outset of the pandemic about their potential liability for exposing inmates to COVID-19. *See id.* Liberally construing Welch's claims, Defendants plausibly knew that refusing to comply with the PPE policy violates the Eighth Amendment because it risks exposing inmates to serious disease, hence the existence of the PPE policy.

Defendants argue the precedential cases apply only to situations where prison officials transferred inmates into risky environments and that there is no clearly established law applying to the situation here, where Defendants "kept [Welch] in his unit after he was already exposed to his COVID-19 positive neighbor." (ECF No. 29 at 13.) This distinction is unconvincing, because at minimum, Defendants acknowledge they kept Welch in an environment where he faced COVID-19 exposure. It is well-established that prisons assume "some responsibility" over inmates' basic human needs, including

12

medical care and reasonable safety, anytime an inmate is in custody. *See DeShaney v. Winnebago County Dept. of Social Services*, 489 U.S. 189, 199-200 (1989). Prison officials do not only assume this responsibility when transferring an inmate between environments. *See id.*

Relatedly, Defendants also suggest that making Welch shelter-in-place near other inmates with COVID-19 was the best option to stop the disease from spreading. (ECF No. 29 at 12.) Maybe so, but that is a factual question improper for resolution on a motion to dismiss. It does not resolve the fact that Welch plausibly alleges Defendants kept him where they knew he was exposed to serious disease—the risks of which were specifically known at the time of the violation—and that Plaintiff has a clearly-established Eighth Amendment right to be free from this kind of exposure.

The violation Welch claims is clearly established law, satisfying the second prong. Defendants are not entitled to a finding of qualified immunity at this time.

## III.   CONCLUSION

The Court notes that the parties made arguments and cited to cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the issues before the Court.

It is therefore ordered that Defendants' Objection (ECF No. 29) to Judge Baldwin's Report and Recommendation (ECF No. 28) is overruled.

It is further ordered that Judge Baldwin's Report and Recommendation (ECF No. 28) is accepted and adopted in full.

It is further ordered that Defendants' Motion to Dismiss (ECF No. 21) is denied.

DATED THIS 23rd Day of June 2025.

_____
MIRANDA M. DU
UNITED STATES DISTRICT JUDGE

ER016                              ER016                              ER016

_dR. Kentrell D. Welch._
(Name)
_1030777_
(ID No.)
Northern Nevada Correctional Center
Post Office Box 7000
Carson City, NV  89702

In Proper Person


# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

_MR. Kentrell D. Welch,_

, Petitioner,

vs.

_Daniels et-al._ ,

Respondents.

Case No.: _3:22-CV-00557-MMD-CLB._

_In Re: ECF no. 29, 28, *32_

COMES NOW, _plaintiff_ , in his proper

person, and submits the instant _Motion of reply/affirmative defense(s) rule 12-13_ in the

above-entitled action.

The instant Motion is based upon all applicable rules of this Court, all papers and pleadings

on file herein, as well as the following Memorandum of Points and Authorities.

Respectfully submitted this ⬛ day of ⬛ , 20 _25_ .

_MR. Kentrell D. Welch._
In Proper Person

_(1)_

ER017                           ER017                           ER017

## (A)          DEFENDENTS:

Each defendant is sued Individually. At All times Material In This Complaint, each defendant acted undercolor of LAW.

William Reinhart, as "ChiefWarden" of (ESP), and In That Capacity, Is charged with the responsibility of administering The entire ESP Institution.

David Drummond, as (AWO), Assoc. Warden of ops at (ESP), and In That Capacity Is responsible For, the general Supervision, training etc; Also Is advisor of Institutional discipline.

TaSheena Sun Juvel Cooke, as (A.W.P) Assoc. Warden of programs. And In that Capacity Is July, responsible for the administering of the entire ESP, Institution, Including All control units.

Charles Daniels, as (NDoc. DIR. oF. ops.) director of operations In That Capacity. "Is charged with, the responsibility of administering: CARE, Custody, daily Ndoc operations ot All Ndoc facilities." Pursuant, to (18 U S C 9 4041, and (28 C.F.R 9 subpt.Q) with, ensuring That all: Contractual, express, Implied or, ndoc employers adhere to all Nev. Const. arts, local, federal and ndoc policies are carried out, for Institutional responsibilities etc.

ER018                      (3)ER018          cont → ER018

Steve. Sisolak, as Governer of Nevada, and 1/2 of Nv. Bd. prison, Commr's pursuant to Nv. Const. art 1.5.5, 6, And In personAL, Capacity. Is charged with the Government duties: Management, and Control of All "State, Federal penal Correctional Fcilities, Throughout Nevada. NRS 209.101; 209.121; 209.051; 209.141.

The Attorney general Aaron Ford, of Nevada, pursuant to, Nev. Const. art (s). 1, 5, 6.5 19; (18 U.S.C § 4001, In personAL, Capacity. Is Charged with responsibility with the Management, Control of "All State, Federal Correctional Institutions In and, Throughout The State of Nevada. NRS 209.141; 209.081; 209.075; 209.051; 209.041; 209.244, AGO 96-24 (9-5-1996).

Dr. I han Azzam Ph.d; M.D), pursuant to The MedicAL, obligntates "MALtadeclaration", In That Capacity. "Is duly, responsible per Government duties to ensure: Contracted Medical, mental health, dental, Is provided ed adequately to All similarity, housed Inmates, Throughout Nevada CORR. facilities per Contract; expressed, Implied State agreements pursuant to NRS 209.077; 41.035; 40.670; Chcif Medical officer of Nevada Institutions.

— Intrationally Left BlanK —

Cont →

ER019                    ( 4 )ER019                    ER019

## MEMORANDUM OF POINTS AND AUTHORITIES

I.) Comes now plaintiff In response to defts objection to, the Courts ruling @ ECF no. 28-29.

1.) "plaintiff by himself as pro se, hereby objects to defts, response to the courts ruling in the report & recommendation. of U.S. Magistrate Judge ECF no-29.

2.) Defts filed motion to dismiss. ECF no 21, plaintiff filed, reply 11-18-2024 @ ECF no. 24-25.)

3.) On 2-4-2025 U.S. Magistrate Judge filed the R&R, denying defts motion to dismiss, as plaintiff's claims; passed screening and defts had "No" viable basis for this, Court to grant a dismissal. ECF no. 28 @ 6:1-2.

4.) "This court ruled that It was clearly established that at the, time of plaintiff's complaint that Involuntary exposure; to Communicable disease, Including lack of adequate, ventilation which caused exposure pursuant to ARS 604-; 621, 856. Id @ 6:27-7:7.)

5.) "plaintiff files this reply and objection(s) to defts Espanse, to this courts R&R, Incorporating herein "all" prior, arguments from his reply to defts motion to dismiss. @ ECF no (s) 24-25

6.) _____ (Disputed Material Facts Contested.)
A. Defts object to Reliance on the screening order as a Substitute for analysis of defts specific legal arguments.

7.) "In decision of a motion to dismiss under F.R.C.p 12(b)(6), Ct's "Must determine whether plaintiff has alleged enough; facts to state a claim to Relief That Is plausible on Its @

(2)

ER020                    ER020                    ER020

face." A claim has facial plausibility when the pleaded, content allows the ct to draw the reasonable Inference, that defts Is "liable" for the misconduct alleged.

7.) In considering a motion to dismiss, the ct must, construe the complaint liberally, accepting all facts, allegations In the complaint as TRue and drawing all, reasonable Inferences In plaintiff's favor.

8) "plaintiff asserts that this court did strip away, all Conclusory allegations, which remains sufficient, well pleaded factual allegations to nudge plaintiff's, claims across the line from Conceivable to plausible.

9.) "A substantial risk(s) of serious Illness or death, as Covid 19 posed, was found In: California cocR, UTaH, and Nevada, arizona states, was found to Constitute, Irreparable harm to plaintiff per 8th amends.

10.) "plaintiff asserts that defts arguments to dismiss, under rule(s): 12(a)(·)(4)i and 12(b)(6) § 1915A Is frivolous, and should be rejected due to the following fact(s):

11) "The Court Construe's pro se complaints liberally, and, May "Only" dismiss a pro se complaint for failure to state a, claim, If it appears beyond doubt that plaintiff can prove, no set of facts In support of his claims which would, entitle him to relief. Resnick v. Hayes, 213F.3d 443, 447, 9th cir (2000).

12.) "plaintiff has duly presented Legal Injuries as defined, for which the federal predicates does provide a Remedy.

screening order(s):

13)⁴ Are duly set to see if the claims alleged by an inmate, satisfies the deliberate indifference standard prong(s):
ⓐ first: If said deprivations alleged are Objectively, serious, and sufficiently serious; and
ⓑ That 'subjectively prison officials acted with, a recklessness, in the face serious risks of harm, i.e; covid19, by True Subjective recklessness which, did require Knowledge, "both" of General risks; also that officials conduct was Inappropriate In light, of such risks, which is this case at hand.

A.)     ( Discussion: )

14

The result to plaintiff of Contracting covid 19 as plaintiff, as the result of unsafe conditions of Confinement does; Constitute Irreparable harm to plaintiff.
"A Substantial risk of Serious Illness or death has, often been found to Constitute irreparable harm per; 8th amends.

15) "On march 27. 2020 Congress enacted Coronavirus aid, Relief economy sec. act; (cares act); authorizing Dept. of, Correction facilities nationwide to lengthen the amount of, Incarcerated persons for home confinement Id. sec. 3624-(c)(2), 9 cares act. pub. L. no. 116. 136 § 12000 (b)(2) 2020-

16.) "The united states attorney general authorized, the existence of extraordinary circumstances that; warranted release(s) under (18 U.S.C § 3582(c)(1)(A) ↓

ER022                    (4)        ER022         Cont.        ER022

See A.G. memo of Gov't argument of significant, Infections at facilities. Id e (460 F.Supp.3d 73; 2020 U.S.Dist.Lexis 5).

17) "The Covid 19 pandemic is among an ongoing, once, In a Century public health crisis to which no reader; will need much Introductions as of may 11-2020. There, has been a whopping 1.3 million confirmed cases and; roughly 80,000 deaths from Covid 19 In the United States, alone. Id e (2020 U.S.Dist.Lexis 10).

18) Finally: one might assume that Ndoc officials, would have modified It's Internal Compassionate Release; guidance to take account of serious risks of severe illness, or deaths faced by It's medically Vulnerable Inmate class, housed within Nevada prisons for Covid 19 outbreaks but, unfortunately, the record, In this Case belies all of these; assumptions, these figures are striking for Multiple reasons, first: figures make It clear, that to date, Ndoc officials, failed to grant even reasonable Compassionate or Declaratory; mandates to release, butting an average that Is/was So, Severally less favorable to Ndoc I/his population(s), Than, the frequency with nationwide statedistricts or Gov't, listings of rulings per 3582 motions. (Id e 2020 U.S.Lexis 79).

19) These facts shows the Wardens, assoc. wardens, and It's prison Bd. of. Commr's did set an Impossible; highbar or adequately refused to Consent, Constituted, Corporal punishment, Infringing on Cruel unusual ·;

(5)                    Court

**ER023**          **ER023**          **ER023**

punishment. In light of nationwide and worldwide, pandemic of Covid19, but Is applying very Inconsiderate, obsolete tactics, that took no account of the risks, of illnesses or deaths to It's Ndoc facilities populations.

20.) "While showing or acting us no new or extraordinary, and compelling circumstances present by Covid19 prison, institutional setting(s) within Nevada pursuant to the first, step acts nationwide Id /28 C.F.R§ 571.63; 28 C.F.R§, 542.15 – 28 C.F.R§ 571.62; (2020 U.S. Dist Lexis 81.).

21.) "Reducing the spread of a deadly virus, In a commm-, unal environments, whether It be: assisted living ; groop homes, detention cntrs or prison(s), remained, "front and Center", the public also maintaines a broader, interest, In reaping the collateral benefits of reduced; risks, such as conserving precious healthcare Resources. Although rare, courts have ordered releases where, the habeas petition raises substantial claims and extra- ordinary circumstances existed. Id CDC Interim guidance, on Management of corona virus disease 2019./2020 U.S. - dist. Lexis 4.) Id ECF no. 24-25, 5, 7.)

22.) "To be clear, I /plaintiff Is/was not suggesting, that per 8th amends. requires a Warden to place I/his; on HouseConfinement or recommended Compassionate, releases of every risk factored by Covid19. "But In, farmer and estelle supra's, the S.ct held that prison; officials may be held liable per the 8th amends, for a,

the denial of humane conditions of Confinement, "Only, if he/she Knows Inmate(s) faced a Substantial risks, of serious harms and callously recklessly disregarded, these risks, as in this case, failing to take reasonable, or adequate measures to abate or mitigate it. Id @ (511 U.S. at 847). "Upholding the U.S. Dist. Ct's, Irreparable harms findings based upon risks of Injuries, deleterious harms, Infections and humiliation. Bansank v. Decker, 449 F. Supp. 3d. 205, 2020 U.S. Dist Lexis 53191, 2020 WL 148503, at * 4 S.D.N.Y 3-6. 2020)

B.) Defts object to the finding of plaintiffs, Plausible 8th amends claims.

23.) Plaintiff would ask this court to compare, arguments @ ECF no(s) 5 and 7 at 1 and ECF nos 24-25. "Also plaintiff submits such legal precursis, arguments, on Covid 19 failures presented in case(s), Collecting cases. Id @ Ahlman v. Barnes, 26 F. 4th 489  9th cir 2021); Barnes v. Ahlman, 142 S.ct. 2755 (2022.); Banks - v. booth 3 F. 4th 445 2021); ECF no 1 at 9 -(citing-Report on who-China Joint mission on Coronavirus disease, 2011 Id @ (459 F. Supp. 3d at 418).

24.)    ( I. LeGAL Argument(s) )

"The warden(s) and Dir Daniels et al; Failures to make, prompter, provider use of the state and nation - wide deincceration authorities to protect      ")

(7)     Cont

ER025          ER025          ER025

plaintiff and the many precious lives lost within, ndoc incarcerated populations and the severally; vulnerable Individuals, likely constitutes deliberate; Indifference. Id @ 2020 U.S. Dist. Lexis 75.)

25) "The Wardens and Ndoc dir's, bd. of prison comis, and officials failures to make meaningful use of; homeconfinements authorities, failures to utilize, sole measures capable to adequately protecting; vulnerable Inmates by the N.V. A-Gs ofc directives, to Implement Immediately with dispatch, In favor; of Measures That, even if They were fully and; painstakingly Implemented, would still leave/) left vulnerable Ndoc Inmates populations soley, subject to grave risks to their health. Id further, 511 U.S. at 847.25.).

26) "Ao Charles daniels stated; to Sarah Hawkins, of the bd. of criminal Justice advocates for NV prisons; "They" will pay til the last penny, when asked, why wider use of decarceration modules wasn't; utilized.

27) ( Statement of the Case: )

"At all times plaintiff was Confined at ESP Majority, of the time during the Covid 19 pandemic, but briefly; at NNCC when covid 14 sweep the U.S. Id.

Ex's.

ER026

(8) ER026

cont.

ER026

28.)

"plaintiff initially sought an (TRO) injunction to, vindicate two somewhat distinct const.1 claims; as to the subclass of medically vulnerable inmates, as "himself" at high risk of serious illness or death, from covid 19." plaintiff's chief complaint is the wardens, failure to make prompt and meaningful use of his/—, her authority to plc i/m's on home confinement or; grant compassionate releases, the only measures; they are/were capable of offering such i/m's adequate, protection from covid 19, also the wardens, Bd. of commr's, and c. daniels ndoc Dir failed to implement adequate; safety measures to contain the spread of the virus, pursuant to ARS): 443, 604, 621, 853 and mitigate; the risks of infectious, including adequate screening, testing, isolation, quarantine, sanitation, hygeine, and personal protective equipment (PPE) gear.

29.) "prisoners; i.e plaintiff have a right, in other, words to humane conditions of confinement. "Having, stripped incarcerated persons of virtually every means; of self-protection and foreclosed his access to outside; aid, the gov't, Ndoc and its officials "are not" free to, let (covid 19), or the state of nature to take its course Id at 833; Lareau v. Manson, 651 F.2d 96, 109 2d-cir 1981.) Id. ECF no. 24-25.

See case no. per Js44. Goodrum v.

ER027          ER027          ER027

30.)
"plaintiff clearly alleged facts that c/o's werner, esquivel et.al, refused to adorn safety ppe gear or; N95 mask, also while contaminating food carts, when their energy drinks while serving food etc. Idc

c.) (Defts object to the RGR's clearly established, qualified Immunity Analysis:)

31.) "Whether plaintiff plausibly alleged defts acted, with (D·I) to his health.
"Whether plaintiff plausibly alleged the conditions, of confinement was sufficiently serious to give rise; to an 8th amends violation.
"whether defts are entitled to (Q·I.) where, the law is settled, that the 8th amends prohibits; the Involuntary, Conscious, Intentional exposure to, Communicable disease or virus as Covid19." The S.Ct, thus found analogous conditions of confinement to; be obvious and clear violations of the 8th Amends. Id (2020 v.s.Dist. Lexis 62", 2020 v.s.Dist. Lexis 75).

32.)       (Summary Argument:)
"plaintiff's Complaint and opposition to defts, motion to dismiss, adequately alleges both steps. Id. ECF no.s 5, 7, 25-26. and Ex's.

33.) In arguing against defts claims that plaintiff, Cannot meet the burden of claims.

**ER028**            ( 10 ) **ER028**        (cout·)        **ER028**

33.)

"plaintiff met the "objective standard", that he was, incarcerated under conditions posing a substantial risk, of serious harm. defts, officials have a duty to protect, plaintiff from exposure to communicable disease, which, is an affirmative obligation, such failures alleged; herein complaint constituted an omission of 8th Amends.

34.) It is unnecessary to require evidence that an infectious disease had actually spread, in esp, an overcrowded, prison facility before issuing a remedy.

"Subjective prong", plaintiff adequately alleges, Defts a group of high lvl officials of Nv. prison Bd. of, commrs and officials were aware of the risks covid 19, posed. "All had been briefed on the dangers, the highly, transmissible nature of the disease and the necessity; of taking precautions, but disregarded such intolerable, risks to his health and continued to do so, as the Nv dept- of health and CDC reports on nevada during covid 19. Id @ Ex's

35.)

"It is well settled that an alleged constl violation does, constitue irreparable harm, an alleged violation of Vulnerable, member as plaintiff triggers a finding of irreparable injury. Plaintiff's confinement was particularity cruel and, unusual and inhumane, itself constitutes irreparable harm, per 8 Amends. ort v. white, 813 F.2d 318, 325-26 - 11 Cir 1989; (2020 U.S. Dist. Lexis 811)

36.)

"In arguing to the Contrary, defts manufacture, Immaterial distinctions In this case/law, ignoring, relevant case(s)//law predicates and have misconstrued, plaintiff's allegations. This ct should preclude/deny, defts motion to dismiss.

37.) Defts also lack any penological justifications, for subjecting and Confining plaintiff In this manner. (2020 U.S. Dist. Lexis 89)

<u>D.)    (Legal standard And Argument:)</u>

38.) This ct reviewed the defts motion to dismiss, denovo, and defts objections has been made and, correctly rejected/ denied by this honorablect.

39.) plaintiff Is held to less stringent standards, than, formal pleadings drafted by lawyers. Hughes v.Rowe, Supra and Haines v. Kerner supra.

40.) plaintiff claims are beyond reasonable doubt, that his claims are factual and led to Irreparable, deleterious persisting harms.

41.) "plaintiff asserts that "All named defts did do/by, act with Culpable state of minds, defts knew and, disregarded the excessive risks to plaintiff's, health and Safety. Id at 837.

42.) "Defts positions is baseless: Defts Contrary Interpretation, is Inconsistent with plaintiff's actual claims, and It requires, the Inference that he complained to defts over 2½ yrs. "It Is also Consistent with his allegations that ;

all named defts and others were present/participated, failed to act or intervene. Id.

43.) "Whether officials possessed such knowledge, is a question of fact, subject to demonstration, interim, usual ways, including inference from: Direct and, circumstantial evidence quoting Farmer v. Brennan 511, U.S. @ 837.

44.) Defts suggest that they might have simply, failed to perceive a significant risks that they, should have known." But whether defts subjectively, appreciated the risks posed by covid 19 and his issues, is a question of fact, That "Must" be resolved, in his favor for the purposes of this motion of, opposition." We may infer the existence of the, subjective state of minds from the facts that the, risks of harm was/is obvious. Id. ECF no. 25-26.

45.) "The Inquiry into causation "Must" be individualized, and focused on the duties and responsibilities of each, individual defts, whose act or omissions are alleged to, have caused plaintiff a deprivation of his Const.l rts. Id. ECF no. 25-26.

Defts argument(s) are meritless. This court has, held that a complaint "Need Not" distinguish between, defts, that had the exact same role in the alleged, wrongdoing(s). United states ex rel Anita silingo v. well-point, Inc, 904 F. 3d 667, 677 (9th cir 2018).

(13)   Cont

46) "Welch/ plaintiff meets the objective prong: Defts conceded this fact, omitting to their, act, failure to act or mitigate risks, discussed, In reports by NV. dept. of. Health and CDC also, Knowingly of cases filed against Ndoc facilities; regarded Covid 19 failures. Id. Ex's.

47) plaintiff did not err by treating defts as a, group/whole, because plaintiff alleged that defts, collectively engaged in the same misconduct.

48) "plaintiff's allegations are specific and do not leave, the the defts guessing as to what facts, which does; support the legal claims being asserted against ea of them. McHenry 84 F.3d at 1177.)

E.) ( Defts claim that no Const.l rt existed.)

49) The deprivation was sufficiently serious. " the circumstances, nature, and duration of, a deprivation "Must" be considered, In determining, whether a Const.l violation has occured.

50). Johnson. 217 F.3d at 731.) "plaintiff asserts That a general Const.l rule already Identified as helling v. McKinney or any other Covid 19; case law Identified Inthe decisional law Must apply, with obvious clarity to this specific Conduct at question, even though The very action In question "has Not" been, previously held unlawful. Id. ECF no.s 24-25, Ex's. Also see documents/claims per Js 44; 3:20-cv-00079, ECF no's, 82, 93, 95, 96, 98.

ER032                    (14) ER032                    Cont') ER032

quoting Elder v. Holloway 510 U.S. 510, 512 (1994), disposition is to be conducted, in light of all relevant, precedents, "Not simply those cited to, or discovered, by defts or dist-ct.

51). "The covid 19 issue and Inhumane conditions or lack, of treatment of plaintiff's claims, is beyond debate that, defts violated his 8th Amends. Reichle v. howard, 566 U.S. 658, 664 (2012).

52.) Q.I should be denied, if it's contours are sufficiently, clear that all reasonable officials, defts as alleged herein, would understand, that what he/she is doing, violated his rts. officials herein had fair notice that, their conduct was unlawful. "denial of defts Q.I, claims is appropriate, despite notable factual distinc-, tions between precedents relied upon and cases, before the court, so long as the prior decisions, gave reasonable warning that conduct violated, Const.1 rts. United States v. Lanier, 520 U.S. 259-271 (1992).

53). "Plaintiff asserts facts, that when transferred, to Esp, he suffered from a vicious blood infection, of heliobacter, i-e; ingesting feces contaminated water, also Two other chronic conditions: Rheumatoid arthri-, titis and graves disease; i-e; compromised immune, system condition, which presents present and; unknown future risks of permanent injuries.

(15)                    cont

which poses significant Medical question of deleterious, harms, by exposure to Covid 19, and his health and well-being as his future brondens. Id. 2020 U.S. Dist. Lexis 89.) 2020 U.S. Dist. Lexis 92), 2020 U.S. Dist Lexis 106, ECF-no.'s 15-8 at *2.)

54.) plaintiff asserts defts have participated in mediation, which "They" refused to Mediate or settle reasonably for these violations herein. defts also Submitted notice of appearance, and accepted service for all named defts.

55.) IF defts thought or assumed No claims could be, proved beyond a reasonable doubt, They should/could, have filed for dismissal 4 yrs ago. Id ECF no.'s 12,18.

56.) "plaintiff also Incorporates Covid 19 documents and, the historical picture of these claims stemming from, 2020, pursuant to /s 44, 3:21-CV-00272-MMD/cso

57.) "plaintiff asserts that defts also omitted their wrongs, of ea. Individual statt members, regarding improper conduct, for safety, Covid 19 refusal's to take precautions, by confirming, ea. grievance "partially granted" and admitting to speak, with Subordinates and officers, Constitutes liability omittal. Id.)

Conclusion

for above Referenced Reasons, Documents, affidavits on Record as a whole, plaintiff ask's this ct to deny/Reject defts dismissal motion.

Dated this ___4___ day of ___March___, 20 25.

_Reutrell D. Welch._
Petitioner In Proper Person

(16)

## CERTIFICATE OF SERVICE

I hereby certify that I served a true and correct copy of the foregoing document upon the Respondent(s), via *Electronic Filing* through the Law Library or by *U.S. Mail* by placing same into the Prison Mail System with postage fully prepaid and addressed to the following:

Dated this __4__ day of __March__ , 20 __25__ .

_____
Petitioner In Proper Person

(17)

ER035              ER035              ER035



**STATE OF NEVADA**
**Department of Corrections**

Acting PIO W.C. "Bill" Quenga:   wquenga@doc.nv.gov

## Press Release

For Immediate Release:
Feb. 10, 2022

### Nevada Department of Corrections lifts mask requirement; visitation to resume Monday

In accordance with Gov. Steve Sisolak's announcement Thursday to lift the statewide mask mandate, the Nevada Department of Corrections will no longer require masks for staff, offenders or visitors, effective immediately. The Department will also resume visitation beginning Monday, Feb. 14, 2022, for all institutions except Ely State Prison, "where there is a current COVID-19" outbreak.

Visitors will not be required to wear masks; however all other mitigation measures including mandatory testing, barriers, social distancing and controlled group sizes are still in effect.

Visits must be scheduled at ndocvisitation.com.

Employees will continue with mandatory COVID-19 testing before shifts.

Corrections officials will continue to monitor infection rates, and will require masks when outbreaks are detected.

*The Nevada Department of Corrections is committed to building a safer community by striving to incorporate progressive best practices in all aspects of corrections. NDOC houses more than 12,000 persons with felony convictions in 18 facilities statewide. For more information visit www.doc.nv.gov.*

**ER036**    1:25 pm  CCS Rowan  ESP -
2-25. 2022   1·B·3    **ER036**                **ER036**

Case: 25-4606, 01/05/2026, DktEntry: 12.1, Page 37 of 248
Case 3:22-cv-00557-MMD-CLB   Document 33   Filed 03/04/25   Page 21 of 24

9/16/24, 11:25 AM                    Report details, confirms Nevada prison system missteps during pandemic • Nevada Current

*5 ( ar both sides*

PART OF STATES NEWSROOM

COVID-19   CRIMINAL JUSTICE REFORM

## Report details, confirms Nevada prison system missteps during pandemic

Analysis prepared for state officials echoes advocates' calls to decrease population during health crisis

BY: **MICHAEL LYLE** - MARCH 11, 2022   5:58 AM



(Nevada Department of Corrections photo)

*d*

The number of eligible people released from Nevada prisons declined during the pandemic and deaths among those incarcerated were high compared to other states, according to a new analysis from the Crime and Justice Institute.

The recent findings sparked reactions from civil rights groups, who say the new report repeats calls they have been making since the start of the pandemic.

"Seeing it in a report in real time that the release rate went down during the height of the pandemic, we are struck with the question of why, when it should be the opposite," said Holly Welborn, the policy director for the ACLU of Nevada.

At the behest of Gov. Steve Sisolak and other state officials, the organization was asked to look at how the pandemic affected the criminal justice system.

CJI found that Nevada ranked 21st in Covid transmission rates but "the prison system had the third-highest rate of deaths among incarcerated populations across 45 states."

Figure 10. Declines in all release categories except death, which more than doubled during COVID-19



The report notes that Nevada focused on restrictive measures, such as suspending visitations, to control the spread of Covid rather than safely releasing certain eligible inmates, a move other states deployed.

The number of people released through institutional discharges, which accounts for almost a third of all releases and includes people whose sentences have expired, dropped 30% in 2020 and then another 9% in 2021.

In an email, Meghin Delaney, a spokeswoman for the governor, declined to answer specific questions on the report's findings and policy recommendations.

"The Governor appreciates the dedication of all those who work in the Nevada Department of Corrections and who have continued to provide care for those in their care," she said. "The Governor made

**ER037**                **ER037**                **ER037**

*Scan both sides*

Staying much longer

While the analysis indicated that fewer people were sentenced to prisons, people incarcerated stayed an average of one month longer.

"Though the reason for the increased lengths of stay is not known, it could be caused by a combination of factors, including fewer monthly parole release hearings during COVID-19 and through 2021, an NDOC population with more serious convictions, and the inability to earn credits through programming or work placements."

Those incarcerated can normally earn "good time" credits for working or taking part in educational and rehabilitation programs that would reduce sentences by at least five days for each month they participate in the program or work.

Lawmakers passed a bill in the 2021 session in an attempt to restore those credits.

During the bill hearing, Return Strong also warned issues with credits were leading to prolonged sentences.

NDOC's handling of suspending visitation has been a point of contention among families and friends of the incarcerated.

The report noted in the absence of visitation, prisons allowed two free phone calls per week.

"However, interviews revealed that there was high demand for the phones, often making them unavailable, and that call times were scheduled during unusual hours, often in the middle of the night," the report writes. "This lack of connection to the outside is significant, as research shows that pro-social behavior achieved through programming or existing relationships is an important element of recidivism reduction."

Welborn said the analysis is consistent with what they've been hearing and been warning about throughout the pandemic.

"That and the lack of visitation and delays in people who are incarcerated to touch base with their counsel are all related to the odd scheduling of phone calls," she said. "It was a huge challenge for attorneys and families to communicate with their loved ones across the board."

Groups have also been calling for an independent entity to provide oversight and accountability.

Nevada's current system to review corrections policies and regulations is the Board of Prison Commissioners, which consists of Sisolak, Attorney General Aaron Ford and Secretary of State Barbara Cegasvke.

However, CJI says in other cities and states there are boards independent of the executive branch. It recommends Nevada create a new oversight body for the justice system that could consist of those impacted by the system, advocates and state leaders.

The report also calls for NDOC to have a greater level of transparency around how it responded to the crisis.

"While Nevada does have many reporting requirements for NDOC, none of them require sharing of information relating to their response to the pandemic," the report states. "The need for information was further exacerbated by the limited access outsiders had to the prisons, particularly family members of individuals in custody."

CJI also suggests creating a weekly or monthly newsletter for those incarcerated to update them on the status of the pandemic.

"It's a little frustrating because at what point is someone going to hold (NDOC) accountable or provide oversight," Hocking said. "A lot of people are interested and paying attention now, which is an improvement. But it doesn't actually change anything."

Aside from providing an insight to prisons and jails response, the report also looked at how Covid affected arrests and sentencings.

The report estimates 23,000 cases were filed in the Eighth Judicial District between July 2018 and June 2021. Only about 5,500 had been disposed of as of August 2021.

Prior to the Covid, 45% of drug dispositions in the Eighth Judicial District Court were sentenced to probation. That increased to 58% during the pandemic.

Another recommendation is for law enforcement to prioritize resources for "people who commit serious crimes, by continuing to reduce custodial arrests, admissions, and filings for lower-level conduct and considering diversion for those with behavioral health needs."

ER038                                    ER038                                    ER038

(3)

### STATE & COUNTY INSIGHTS

Recent Opening and Closing Policy Decisions:

MAY 11, 2023

- Governor Sisolak ends COVID-19 state of emergency in Nevada

**Data Sources:** Cases and deaths data from JHU CSSE. As of August 1, 2020, policy events are drawn from from various state-specific sources. Prior to that, the data source for policy events was the National Governor's Association.

Learn more about why the positivity rates shown on our site may differ from state calculations

**ER039**                          **ER039**                          **ER039**

GOVERNOR OF Nevada
STEVE SISOLAK; and
Prison Bd. OF commr's
Aaron Ford, Charles Daniels. etd.
EXUC. Chamber Capital complex
101 North Carson Street
Carson City, NV, 89701 (3-7th-2022)

MR KENTRELL D. WELCH 1030777
Ely State prison p.o. Box 1989
Ely, Nevada, 89301.
A) cnty of white pine

RE: (DECL NO 10)

2.) "Re-Issue" Covid 19 Mask,
Mandate at ESP- Immediately!

3.) Notice given pursuant to
28 U.S.C § 5th, 14th Amends.

4.) NRS 41.035; NRS 209.371,
NRS 40-670) (1 OF 4)
(DECLARATION/Affidavit OF Notice
N.R.C.p 5(b) § NRS Affirmation/Declaration
Enclosed.

"IN RE: Covid 19 "Mask Removal" NDOC Memorandum. 2022
1)) PLEASE USE professional, medical rationale Judgment;
Please Do not disregard This "EXCessive RISK" § Resume,
The simple Medical precautionary measures of Health Care,
Preventive Safety measures Concerning Covid 19 at ESP.
pursuant to AR(s) 604, 621; 443, NRS 209.131, 209.161,
NRS 209.511; OSHA, NOSHA Federal regulations title 29 U.S.C § title-
1910; NRS 209.371) See United States Attorney Generals Memorandum-
of Government argument of Significant Infection at correctional-
Facilities. (460 F. Supp. 3d 73 (2020 U.S. Dist. Lexis 5)

) Governor sisolak et. al, you All Act under Color of Law, with-
Full Requisite Culpability of Knowledge That 'Removal' of the-
ESP Covid 19 mask, Cloth Mask Mandate; does Knowingly
Create and Unreasonably Subjective, objective Intolerable Risk-
of EXcessive Risk of Harm or Death To My Life § All similarly,
housed Incarcerated Men. Human beings at ESP; while creating
Inhumane Conditions of confinement, "w/o" penological Justifica-
tion, continuing to do so In violation of My 4, 8th, 14 Amends.
SEE (C.D.C) Interim Guidence on Management of Coronavirus-
disEASE at Facilities 2019, In Correctional § Detention Facilitis-
(2020 U.S. Dist. Lexis 4); Also Helling, 509 U.S. at 31; (461 F. Supp-
3d. 261; Turner v Safely 428 U.S at 78)
1) You Deny "Me" § "US" All Equal protections, Immunities § -
Privilege To adequate Humane conditions of confinement as,
United states CitiZENS, In Wanton obduracy, For rts Secured-
To All Citizens In all territories of The United states per 14th
Amends. SEE Gordon v. City of orange cnty 888 F.3d 1118, 1124·25 (9th cir 2018,
Kingsley v. HEndrickson, 135 supreme court 2466 (2015)
*REMEdy Sought: RE- Issue Covid 19 Mask Mandate At ESP FOR All
STAFF, Agents, officers § Contracted Medical personnel 740.03; 740.05-
1, 2, A, B, C, D; (W.H.O - (459 F. Supp. 3d 418.) Gritchan V. Collier,
254 F.3d 807, 812 (ER040.001)

MR Kentrell D. Welch

NAME

1030777

ID no.

northern nevada Correctional center

Post office BOX 7000

Carsoncity, NV, 89702

In proper person

UNITED STATES DISTRICT COURT

DISTRICT OF Nevada.

Kentrell D. Welch.

1030777                              Case No. 3:22-cv-00557-MMD-

petitioner                           (SD

vs.                                  In Re: ECF no. 29.

Daniels et al.   respondents.

Comes now, plaintiff                                              In this

proper person, and submits the Instant Response/objection to defts,

Motion for Reconsideration.       In the above-entitled action.

The Instant motion Is based upon all applicable rules of this court,

all papers and pleadings on file hereby as well as the following,

memorandum of points and authorities.

respectfully submitted this __24__ day of __Feb__ 2025

                              Kentrell D. Welch.

                              In proper person

(1)

**ER041**          **ER041**          **ER041**

plaintiff comes now before this honorable Court,
In request for time Extension, In re: ECF no. 29.
F.R.c.p 6; LR1a 6-B, 6-2.)
plaintiff request an 30 day time extension, In,
good faith due to the following:
Receipt of ECF no 29, was just given on,
2-25-2025, also he was Illicitly denied to go;
pick up his legal documents friday 2-21-2025;
by c/o beever.
plaintiff also asserts the law library supv,
staff Martha semus, never provided any;
RGR report from the ct concerning tens,
cases.
plaintiff also has various facility Issues,
College, job; I.c; Culinary position, victims,
Impact courses, various legal deadlines,
litigation Issues to address, between northern,
Southern u.s.Dist. ct and district court of,
appeals.
plaintiff asserts that defts objection Is 14 pgs,
and time for further research, response is vital.

## Conclusion

plaintiff pray this Court gives the time,
extension of 30 days Sought. THX.

ER042

(2) ER042

ER042

AARON D. FORD
  Attorney General
LEO T. HENDGES (Bar No. 16034)
  Senior Deputy Attorney General
State of Nevada
Office of the Attorney General
1 State of Nevada Way, Suite 100
Las Vegas, Nevada 89119
(702) 486-3795 (phone)
(702) 486-3768 (fax)
Email: lhendges@ag.nv.gov

*Attorneys for Defendants*
*Sean Donahue, Daniel Featherly,*
*Cade Herring, Curtis Rigney,*
*Corey Rowley, Alexander Werner,*
*and Daniel Wheeler*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| KENTRELL D. WELCH,<br><br>                    Plaintiff,<br><br>v.<br><br>CHARLES DANIELS, *et al.,*<br><br>                    Defendants. | Case No. 3:22-cv-00557-MMD-CLB<br><br><br>**DEFENDANTS' OBJECTIONS TO REPORT AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE ECF NO. 28** |

Defendants, Sean Donahue, Daniel Featherly, Cade Herring, Curtis Rigney, Corey Rowley, Alexander Werner, and Daniel Wheeler, by and through counsel, Aaron D. Ford, Nevada Attorney General, and Leo T. Hendges, Senior Deputy Attorney General, of the State of Nevada, Office of the Attorney General, hereby object to the Report and Recommendation of U.S. Magistrate Judge ECF No. 28.

## I.    INTRODUCTION

Defendants object to the Report and Recommendation (R&R) issued on February 4, 2025, ECF No. 28, for two separate and distinct reasons:  First, the mandatory screening requirement of 28 U.S.C. § 1915A(a) does not replace the right of Defendants who are subsequently served, after the lawsuit is docketed, from seeking dismissal under the Fed.

R. Civ. P. (FRCP) 12(b)(6) standard if Defendants can establish Plaintiff's failure to state a claim. Here, the R&R fails to consider and address Defendants' specific legal arguments regarding the plausibility of Plaintiff Kentrell D. Welch's (Welch) claims, accepting the facts in the light most favorable to Welch. Second, the R&R fails to address the clearly established prong of qualified immunity at an appropriately narrow level of analysis. This Court should overrule the R&R, and Defendants' Motion to Dismiss (ECF No. 21) should be granted in its entirety.

## II.      BACKGROUND

This is an offender civil rights lawsuit, with a second amended complaint (SAC) filed October 8, 2023, pursuant to 42 U.S.C. § 1983. ECF No. 7 at 1. Welch is an offender in the custody of the Nevada Department of Corrections (NDOC), who was housed at Ely State Prison (ESP) at the time of these allegations (ECF No. 7), but is currently housed at Northern Nevada Correctional Center (NNCC). ECF No. 11.

On November 4, 2024, Defendants filed their motion to dismiss. ECF No. 21. After a request for a brief extension of time, Welch filed his opposition on November 18, 2024. ECF Nos. 24, 25. Defendants filed their reply in support of their motion to dismiss on November 25, 2024. ECF No. 27.

On February 4, 2025, the United States Magistrate Judge filed the R&R, recommending denial of Defendants' motion to dismiss because the claims passed screening and "Defendants provide no additional basis for dismissal at this early stage of litigation." ECF No. 28 at 6:1-2. The R&R also found, using highly generalized caselaw, that it was clearly established at the time of Welch's allegations that deliberate indifference exists where an offender alleges exposure to a serious disease, including a lack of adequate ventilation causing exposure. *Id.* at 6:27-7:7.

Defendants file their objections to the R&R incorporating herein all prior arguments from Defendants' motion to dismiss and Defendants' reply in support of their motion to dismiss. ECF Nos. 21, 27.

///

## III.    OBJECTIONS

### A.    Defendants Object To Reliance On The Screening Order As A Substitute For Analysis Of Defendants Specific Legal Arguments

The R&R's sole basis to deny Defendants' motion to dismiss, regarding the first prong of qualified immunity and the plausibility of Welch's Eighth Amendment claim, is that the case already survived preliminary screening and as a result there was no reason to analyze the specific legal arguments put forward in Defendants' FRCP 12(b)(6) motion. ECF No. 28 at 6:1-2.

The screening requirement of the Prison Litigation Reform Act (PLRA) is found at 28 U.S.C. § 1915A(a). This provision of the statute dictates that "[t]he court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing" civil complaints filed by a prisoner seeking "redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a).

Once the case is screened, docketed, and Defendants who remain in the case are served, there is a twenty-one (21) day window for the submission of a responsive pleading. FRCP 12(a)(1)(A)(i). "A motion asserting" the defense of "failure to state a claim upon which relief can be granted" can be filed and "must be made before pleading if a responsive pleading is allowed." FRCP 12(b).

There is nothing in the PLRA that prohibits Defendants from filing a motion to dismiss pursuant to FRCP 12(b)(6), after a case is screened and served. *See generally* 28 U.S.C. § 1915A. There is nothing in FRCP 12 that prohibits the filing of a pre-answer motion to dismiss pursuant to Rule 12(b)(6) where a case has been screened pursuant to the PLRA. The R&R fails to cite any caselaw to support the conclusion that screening of the case is a proper substitute for a fulsome analysis of legal arguments put forward by Defendants in their Rule 12(b)(6) motion.

Screening takes place before any Defendant has been served. As a result, Defendants are largely unable to file for reconsideration of an order they believe is faulty. Rather, FRCP 12(b)(6) is the first and most direct legal avenue to allow Defendants their initial

opportunity to seek dismissal of a claim they believe in good faith should not have survived screening. Screening orders also fail to account for qualified immunity arguments, which Defendants have the opportunity to raise for the first time in a pre-answer Rule 12(b)(6) motion to dismiss. This is exactly what happened here, as Defendants filed a pre-answer motion to dismiss pointing out several specific legal arguments they believe entitles them to dismissal of the entire lawsuit based on qualified immunity.

This Court should overrule the R&R and grant dismissal of the lawsuit in full because Welch fails to allege sufficient facts to support a viable Eighth Amendment violation and the law was not clearly established that use of a shelter in place policy to limit the spread of COVID-19 was potentially a violation. Alternatively, this case should be remanded for analysis of the specific legal arguments put forward by Defendants.

**B.     Defendants Object To The Finding That Welch States A Plausible Eighth Amendment Claim**

1.     The screening order failed to address the lack of causation in the allegations put forward by Welch in his SAC. Accepting as true Welch's allegations that Defendants refused to wear personal protective equipment (PPE) in Welch's unit from 2020-2022, there is no factual allegation put forward by Welch that he caught COVID-19 in early February 2022 as a result of Defendants' refusal to wear PPE. This lack of factual nexus, connecting Defendants' alleged actions and Welch's alleged infection, was raised in Defendants' motion to dismiss but not addressed in the screening order or the R&R. *Compare* ECF No. 9 at 8:3-10; ECF No. 21 at 10:10-22; ECF No. 28 at 5:5-6:4.

Further, the screening order and the R&R failed to account for the lack of allegation that any Defendant ever exhibited symptoms of COVID-19 in Welch's unit, after going through screening measures that were put in place before they could enter the facility including body temperature checks and testing for COVID-19 infection, which would establish a plausible claim that any Defendant was ever on notice they were potentially exposing Welch to the disease. *Compare* ECF No. 9 at 8:3-10; ECF No. 21 at 10:23-11:6; ECF No. 28 at 5:5-6:4.

Additionally, the screening order and the R&R failed to account for the lack of any allegation that any Defendant ever took any action to specifically expose Welch to COVID-19, including coughing in his direction, which would establish their disregard for any known risk of exposing Welch to infection. *Compare* ECF No. 9 at 8:3-10; ECF No. 21 at 10:23-11:6; ECF No. 28 at 5:5-6:4.

Finally, the screening order and the R&R failed to account for the lack of any allegation that the offender in the cell next to Welch, who Welch claims is the reason he tested positive for COVID-19, was exposed COVID-19 because of any action taken by these Defendants. *Compare* ECF No. 9 at 8:3-10; ECF No. 21 at 10:27-28; ECF No. 28 at 5:5-6:4.

2.     The screening order and R&R also failed to address Defendants' argument that, even if they did not wear PPE in violation of prison policy, a violation of prison policy alone does not establish a constitutional violation. *Compare* ECF No. 9 at 8:3-10; ECF No. 21 at 11:7-15; ECF No. 28 at 5:5-6:4.

Defendants respectfully disagree and object to these determinations.

**C.     Defendants Object To The R&R's Clearly Established Qualified Immunity Analysis**

The R&R fails to address the clearly established prong of qualified immunity at an appropriately narrow level of generality. This Court failed to identify clearly established caselaw (put forward by Welch) finding an Eighth Amendment violation which is narrowly tailored to the facts of this case, where Welch claims staff refused to wear PPE in his unit from 2020-2022, with no allegation that this activity resulted in Welch catching COVID-19. ECF No. 28 at 6:27-7:8. As outlined in the motion to dismiss, Welch puts forward a *negligence* claim against Defendants because there is no allegation their conduct resulted in his positive COVID-19 diagnosis, and there is no allegation of any fact which would allow for the inference Defendants were potentially on notice they could be spreading the disease. ECF No. 21 at 12:15-21.

Next, the R&R fails to identify clearly established caselaw finding a claim exists based on the alleged violation of prison regulations requiring staff to wear PPE when at

work, because violation of a prison regulation alone does not establish the existence of an Eighth Amendment violation. *Id.* at 12:22-27.

Lastly, this Court failed to identify clearly established caselaw (put forward by Welch) which is narrowly tailored to the facts of this case, where Welch claims staff refused to transfer him to a different unit after the offender in the cell next to him tested positive for COVID-19, resulting in his own positive COVID-19 diagnosis. ECF No. 28 at 6:27-7:8. As outlined in the motion to dismiss, there is no caselaw related to Welch's claim of a violation because of NDOC's shelter in place policy after he became a close contact to his COVID-19 positive neighbor. The caselaw identified in the R&R applies to situations where prison staff actually MOVED an offender into a dangerous position as opposed to keeping him in place to prevent potentially spreading infection further throughout the facility. ECF No. 21 at 13:1-22. There is also reference to caselaw about run-down prison facilities including poor ventilation, which was not alleged by Welch as a reason he claims to have contracted COVID-19.

There is no reference in the R&R to caselaw finding a violation where a facility utilized a shelter in place policy, put forward by the U.S. Centers for Disease Control and Prevention for the entire county to follow at the time, after an offender became a close contact with other offenders in his unit that tested positive for COVID-19.

Defendants respectfully disagree and object to that determination.

## IV.   LEGAL STANDARD AND ARGUMENT

### A.   Legal Standard Regarding Objections

A party objecting to a magistrate judge's findings and recommendations must file and serve specific written objections with supporting points and authorities. 28 U.S.C. §636(b)(1)(C); Local Rule (LR) IB 3-2(a). "The district judge must conduct a de novo review of those portions of the specified findings or recommendations to which objections have been made." 28 U.S.C. §636(b)(1)(C); LR IB 3-2(b); *see also United States v. Remsing*, 874 F.2D 614, 616 (9th Cir. 1989). "The district judge may accept, reject or modify, in whole or in part, the magistrate judge's findings or recommendations." LR IB 3-2(b). "The district

judge may also receive further evidence or remand the matter to the magistrate judge with instructions." *Id.*

### B.   Legal Standard Pertaining To Motions To Dismiss

A complaint does not have to contain "detailed factual allegations," but must contain more than an unadorned "the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted), citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The Supreme Court has explained:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Id.* (internal citations omitted).

In deciding a motion to dismiss, courts "must accept all well-pleaded factual allegations as true." *Siaperas v. Mont. State Comp. Ins. Fund*, 480 F.3d 1001, 1003 (9th Cir. 2007) (internal quotation omitted). However, courts must also "consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

### C.   Defendants Are Entitled To Qualified Immunity

The defense of qualified immunity protects state officials sued in their individual capacities from damages unless the conduct complained of violates a clearly established constitutional or statutory right of which a reasonable person would have known. *Jackson v. City of Bremerton*, 268 F.3d 646, 650 (9th Cir. 2001). Therefore, regardless of whether a constitutional violation occurred, state officers prevail if the right asserted by the plaintiff was not "clearly established" or if the state officers could have reasonably believed their

conduct was lawful. *Romero v. Kitsap County*, 931 F.2d 624, 627 (9th Cir. 1991). The Plaintiff bears the burden of proving that a right allegedly violated was clearly established at the time of the alleged misconduct. *Baker v. Racansky*, 887 F.2d 183, 186 (9th Cir. 1989) (citing *Davis v. Scherer*, 468 U.S. 183, 197 (1984)). When a public official acts in reliance on a statute or regulation, that official is entitled to qualified immunity unless the statute or regulation is "patently violative of fundamental constitutional rights." *Dittman v. California*, 191 F.3d 1020 (9th Cir. 1999) (quoting *Grossman v. City of Portland*, 33 F.3d 1200, 1210 (9th Cir. 1994)).

A reasonable but mistaken belief one's actions are lawful, based on facts or legal authority, entitles a defendant to qualified immunity. *Floyd v. Laws*, 929 F.2d 1390, 1394 (9th Cir. 1991). Qualified immunity shields government officials from suit against constitutionally deficient decisions that reasonably misapprehend the law; it extends to "all but the plainly incompetent or those who knowingly violate the law." *Mueller v. Auker*, 576 F.3d 979, 992 (9th Cir. 2009) (citations omitted). The Supreme Court has "repeatedly . . . stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Dunn v. Castro*, 621 F.3d 1196, 1199 (9th Cir. 2010) (citations omitted.).

In *Schroeder v. McDonald*, the Ninth Circuit Court of Appeals discussed the importance of deciding immunity questions early on in the litigation. 55 F.3d 454, 461 (9th Cir. 1995). The Court stated:

> The defense of qualified immunity protects "government officials . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." The rule of qualified immunity "'provides ample support to all but the plainly incompetent or those who knowingly violate the law.'" "Therefore, *regardless of whether the constitutional violation occurred*, the officer should prevail if the right asserted by the plaintiff was not 'clearly established' or the officer could have reasonably believed that his particular conduct was lawful." Furthermore, "[t]he entitlement is an immunity from suit rather than a mere defense to liability; . . . it is effectively lost if a case is erroneously permitted to go to trial."

*Id.* at 461 (emphasis in original; internal citations omitted).

///

When conducting the qualified immunity analysis, district courts "ask (1) whether the official violated a constitutional right and (2) whether the constitutional right was clearly established." *C.B. v. City of Sonora*, 769 F.3d 1005, 1022 (9th Cir. 2014) (citing *Pearson v. Callahan*, 555 U.S. 223, 232, 236 (2009)). The court may analyze the elements of the test in whatever order is appropriate under the circumstances of the case. *Pearson*, 555 U.S. at 240-42. Whether the right is established is an objective inquiry, and it turns on whether a reasonable official in the defendant's position should have known at the time that his conduct was constitutionally infirm. *Anderson v. Creighton*, 483 U.S. 635, 639-40 (1987); *Lacey v. Maricopa Cnty*, 693 F.3d 896, 915 (9th Cir. 2012).

Stated differently, only where a state official's belief as to the constitutionality of his conduct is "plainly incompetent" is qualified immunity unavailable. *Stanton v. Sims*, 571 U.S. 3 (2013) (per curium). Although the second inquiry is highly deferential, it is not necessary that the precise action has previously been held unlawful for a right to be "clearly established." *Anderson*, 483 U.S. at 640. Therefore, the Court must assess qualified immunity "in light of the specific context of the case." *Tarabochia v. Adkins*, 766 F.3d 1115, 1121 (9th Cir. 2014) (quoting *Robinson v. York,* 566 F.3d 817, 821 (9th Cir. 2009)).

It is not sufficient for the district court to conclude the plaintiff has proven a constitutional injury, or that there are material facts in dispute that, if proven, would establish a constitutional violation. *Carley v. Aranas*, 103 F.4th 653, 660 (9th Cir. 2024). The court must proceed to the second step to decide whether the violation was "clearly established at the time of the violation." *Id.* (citing *Hines v. Youseff*, 914 F.3d 1218, 1228 (9th Cir. 2019) (internal quotation marks and citation omitted)). In other words, "[f]or a right to be clearly established, it must be 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Id.* (quoting *Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 5 (2021) (per curiam)) (quoting *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (per curiam)). The "constitutional question [must have been] beyond debate." *Id.* (quoting *Hamby v. Hammond*, 821 F.3d 1085, 1091 (9th Cir. 2016) (citation omitted); *see Anderson*, 483 U.S. at 640 (holding that "in the light of pre-existing law the

unlawfulness [of the challenged action] must be apparent" (citation omitted)); *Malley v. Briggs*, 475 U.S. 335, 341 (1986) (stating that qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law").

The Supreme Court "has repeatedly told courts—and the Ninth Circuit in particular—not to define clearly established law at a high level of generality." *Id*. at 660-61 (quoting *Kisela v. Hughes*, 584 U.S. 100, 104 (2018) (per curiam)); *see also Hamby*, 821 F.3d at 1090 ("[O]ur circuit has been repeatedly chastised for conducting the clearly established inquiry at too high a level of generality.") (internal quotations omitted).

### 1.    No Constitutional Violation Occurred

Under the Eighth Amendment, prison conditions should not "involve the wanton and unnecessary infliction of pain" or be "grossly disproportionate to the severity of the crime warranting imprisonment." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). "Prison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety." *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000).

To establish a violation of these duties, the inmate must establish that prison officials were "deliberately indifferent" to serious threats to the inmate's safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Under the deliberate indifference standard, a violation of the Eighth Amendment is only found when an objective and subjective component are met. *See id.* at 834.

"[T]o satisfy the objective prong, it is enough for the inmate to demonstrate that he was exposed to a substantial risk of some range of serious harms; the harm he actually suffered need not have been the most likely result among this range of outcomes." *Lemire v. California Dept. of Corrections and Rehabilitation*, 726 F.3d 1062, 1076 (9th Cir. 2013) (citing *Gibson v. Cnty. Of Washoe, Nev.*, 290 F.3d 1175, 1193 (9th Cir. 2002)). It does not matter "whether a prisoner faces an excessive risk … for reasons personal to him or because all prisoners in his situation face such a risk." *Farmer*, 511 U.S. at 843.

///

The inmate must also satisfy the subjective element. This means that the prison official being sued must have known of and disregarded the risk to the inmate's safety. *Id.* at 837. "Mere negligence is not sufficient to establish liability." *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998). Further, a plaintiff "must also demonstrate that the defendants' actions were both an actual and proximate cause of their injuries." *Lemire*, 726 F.3d at 1074 (citing *Conn v. City of Reno*, 591 F.3d 1081, 1098-1101 (9th Cir. 2010) *vacated by City of Reno, Nev. v. Conn*, 563 U.S. 915 (2011), *reinstated in relevant part* 658 F.3d 897 (9th Cir. 2011)).

### a.   Welch Meets Objective Standard

Defendants conceded this point for purposes of the motion to dismiss only.

### b.   Welch's Allegations Fail To Meet Subjective Standard

The R&R fails to analyze Defendants' arguments that Welch failed to establish a plausible claim any Defendant ever exposed Welch to COVID-19, that any Defendant was either aware of a serious risk that they could spread COVID-19 or intentionally disregarded the risk they could be infected and spreading COVID-19. There is likewise no analysis of the argument that a violation of prison policy alone, by failing to wear PPE, does not establish a constitutional violation.

To establish a plausible claim Welch needed to allege some fact that would establish any named Defendant was exhibiting symptoms of COVID-19 in the unit or had some reason to believe they could be positive. *Farmer*, 511 U.S. at 837. Welch fails to allege any fact suggesting any Defendant, even if they refused to wear PPE in his unit from 2020-2022, was the reason the offender in his neighboring cell caught COVID-19 in late January 2022. *Lemire*, 726 F.3d at 1074 (citing *Conn v. City of Reno*, 591 F.3d 1081, 1098-1101 (9th Cir. 2010) *vacated by City of Reno, Nev. v. Conn*, 563 U.S. 915 (2011), *reinstated in relevant part* 658 F.3d 897 (9th Cir. 2011)). Welch fails to allege any fact to suggest any Defendant failed a COVID-19 test or exceeded the body temperature testing put in place before they could enter the facility, which would establish their knowledge of a potential risk.

///

The allegations put forward by Welch fail to establish a plausible claim that any of the named Defendants violated his Eighth Amendment rights. Welch further underscored the need to dismiss the claims against these Defendants in his opposition to the motion to dismiss, where he claimed that medical staff and free staff worked in the facility while they were infected, which could have plausibly been the cause of his neighbor contracting COVID-19. ECF No. 25 at 6:9-12.

### 2.    No Clearly Established Constitutional Right Exists

The R&R fails to address the second prong of the qualified immunity analysis at an appropriately narrow level. The caselaw relied upon in the R&R is highly general, which is explicitly rejected by the Supreme Court. Defendants are entitled to judgment on this second prong of the analysis because Welch failed to meet HIS burden to identify clearly established law.

Welch has not, and cannot, point to any clearly established law that would have placed Defendants on notice that violating prison policy by refusing to wear PPE, without more, establishes a constitutional violation. *Cousins v. Lockyer*, 568 F.3d 1063, 1070 (9th Cir. 2009) (citing *Case v. Kitsap County Sheriff's Dep't,* 249 F.3d 921, 930 (9th Cir. 2001) (quoting *Gardner v. Howard,* 109 F.3d 427, 430 (8th Cir. 1997) ("[T]here is no § 1983 liability for violating prison policy. [Plaintiff] must prove that[the official] violated his constitutional right . . . .")); *see also Gagne v. City of Galveston,* 805 F.2d 558, 560 (5th Cir. 1986) ("[A]llegations about the breach of a . . . regulation are simply irrelevant to the question of an official's eligibility for qualified immunity in a suit over the deprivation of a constitutional right.").

Finally, the line of cases cited in the R&R do not support a finding that Defendants were on clear notice that following a shelter in place policy issued by the nations pre-eminent disease prevention agency, while medical experts were faced with combating a once in a lifetime global pandemic, could result in a violation. The cases cited by this Court relate to the transfer of an offender into a situation where they become exposed to a serious ///

disease by a cellmate who smoked multiple packs of cigarettes a day. Here, Welch was kept in his unit after he was already exposed to his COVID-19 positive neighbor.

This is especially true where Welch makes no allegation that he was housed in an old, dilapidated cell with a lack of ventilation (among other alleged deficiencies in the building) as the basis for his exposure to COVID-19. *Compare* ECF No. 7; ECF No. 9 at 8:3-10; ECF No. 28 at 6:27-7:8; *Hoptowit v. Spellman*, 753 F.2d 779, 783-84 (9th Cir. 1985). Here, Welch claims it was a violation to refuse to move him after he became a close contact to a COVID-19 positive offender.

Defendants are entitled to qualified immunity at both prongs of the analysis and the R&R should be overruled and the case dismissed.

**V.     CONCLUSION**

For the above referenced reasons, Defendants respectfully object to the Report and Recommendation of U.S. Magistrate Judge (ECF No. 28) and ask this Court to grant Defendants' Motion to Dismiss in its entirety.

DATED this 18th day of February, 2025.

AARON D. FORD
Attorney General

By: /s/ Leo T. Hendges
LEO T. HENDGES (Bar No. 16034)
Senior Deputy Attorney General

*Attorneys for Defendants*

ER055

**CERTIFICATE OF SERVICE**

I certify that I am an employee of the State of Nevada, Office of the Attorney General, and that on February 18, 2025, I electronically filed the foregoing **DEFENDANTS' OBJECTIONS TO REPORT AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE ECF NO. 28** via this Court's electronic filing system. Parties who are registered with this Court's electronic filing system will be served electronically.

Kentrell D. Welch, #1030777
Northern Nevada Correctional Center
P. O. Box 7000
Carson City, Nevada 89702
Email: nncclawlibrary@doc.nv.gov
*Plaintiff, Pro Se*

/s/ Carol A. Knight
CAROL A. KNIGHT, an employee of the
Office of the Nevada Attorney General

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\* \* \*

|  |  |
|---|---|
| KENTRELL D. WELCH, | Case No. 3:22-CV-00557-MMD-CLB |
| Plaintiff, | **REPORT AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE[1]** |
| v. | [ECF No. 21] |
| CHARLES DANIELS, *et al.*, | |
| Defendants. | |

This case involves a civil rights action filed by Plaintiff Kentrell Welch ("Welch") against Defendants Sean Donahue, Daniel Featherly, Cade Herring, Curtis Rigney, Corey Rowley, Alexander Werner, and Daniel Webster (collectively referred to as "Defendants"). Currently pending before the Court is Defendants' motion to dismiss. (ECF No. 21.) Welch responded, (ECF No. 25), and Defendants replied. (ECF No. 27.) For the reasons stated below, the Court recommends that Defendants' motion to dismiss, (ECF No. 21), be denied.

**I.      FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Welch is an inmate of the Nevada Department of Corrections ("NDOC"). Welch initiated this action on December 21, 2022, for actions that occurred while he was incarcerated at the Ely State Prison ("ESP"), by filing a complaint pursuant to 42 U.S.C. § 1983. (ECF No. 1.)

Welch's complaint alleges that a "societal consensus" arose in 2020 that "the risk of contracting COVID-19" "was 'intolerably grave' such that involuntarily exposing inmates to the disease violated then-current standards of decency." Welch alleges that despite society's consensus about the risks of contracting COVID-19, Defendant Corrections Officers refused to wear PPE like N95 masks when working around inmates in Welch's

---

[1]      This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4.

housing unit on a daily basis from 2020 to 2022. Welch contracted COVID-19 shortly before COVID-19 safety measures were lifted that had been enacted to cover NDOC facilities like ESP. Welch continues to suffer daily symptoms stemming from his infection like shortness of breath, fatigue, and lack of strength. (ECF No. 7.) After allowing amendment of the initial complaint, the District Court screened Welch's second amended complaint, which is the operative complaint in this case, and allowed him to proceed on an Eighth Amendment claim regarding indifference to COVID-19 conditions against Defendants, dismissed with prejudice a Fourteenth Amendment equal protection claim, and dismissed without prejudice and without leave to amend a First Amendment retaliation claim and Eighth Amendment deliberate indifference to serious medical needs claim. (ECF No. 9.)

Defendants filed the instant motion to dismiss arguing Welch's complaint should be dismissed because Defendants are entitled to qualified immunity. (ECF No. 21.)

## II.    LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a party may file a motion to dismiss on the grounds that a complaint "fail[s] to state a claim upon which relief can be granted." A complaint challenged "by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations" but requires plaintiff to provide actual grounds for relief. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Generally, a motion to dismiss pursuant to Rule 12(b)(6) tests the "legal sufficiency of the claim." *Conservation Force v. Salazar*, 646 F.3d 1240, 1241-42 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)). In assessing the sufficiency of a complaint, all well-pleaded factual allegations must be accepted as true, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and "view[ed] . . . in the light most favorable to the" nonmoving party. *Lemmon v. Snap, Inc.*, 995 F.3d 1085, 1087 (9th Cir. 2021).

The Ninth Circuit has found that two principles apply when deciding whether a complaint states a claim that can survive a 12(b)(6) motion. First, to be entitled to the presumption of truth, the allegations in the complaint "may not simply recite the elements

of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). Second, so that it is not unfair to require the defendant to be subjected to the expenses associated with discovery and continued litigation, the factual allegations of the complaint, which are taken as true, "must *plausibly* suggest an entitlement to relief." *Id.* (emphasis added).

Dismissal is proper only where there is no cognizable legal theory or an "absence of sufficient facts alleged to support a cognizable legal theory." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 965 (9th Cir. 2018) (quoting *Navarro*, 250 F.3d at 732). Additionally, the court takes particular care when reviewing the pleadings of a *pro se* party, because a less stringent standard applies to litigants not represented by counsel. *Garmon v. Cnty. of Los Angeles*, 828 F.3d 837, 846 (9th Cir. 2016).

## III.    DISCUSSION

In his complaint, Welch alleges that he suffers from several chronic medical conditions, including Graves' disease, rheumatoid arthritis, a blood infection, and a helicobacter pylori infection. (ECF No. 7 at 3.) Welch alleges that inmates at ESP were not issued cloth masks to protect against the SARS-CoV-2 virus until June 2020, and they were not provided N95 masks until December 2021. (*Id.* at 7.) Many ESP staff wore N95 masks during the pandemic, but "many did not." (*Id.*)

From 2020 to 2022, Rowley, Esquivel, Featherly, Herring, Warner, and Wheeler refused to wear N95 masks or other personal protective equipment ("PPE") while working around and feeding inmates in Welch's housing unit daily. (*Id.*) From January to November 2021, Warner worked in Welch's housing unit handing out mail and food and refused to wear an N95 mask while doing so. (*Id.* at 8.) During this time, Wheeler told Welch to "shut the fuck up" when he asked Wheeler and Warner to wear masks. (*Id.*) From December 2021 to January 2022, Rowley escorted Welch on numerous occasions to legal meetings without wearing a mask. (*Id.*) When Welch asked Rowley to wear a mask, Rowley said "no," and told Welch to refuse his visits if he did not want an escort.

(*Id.*)

Adams also refused to wear a mask from 2020 to 2021 while working in Welch's housing unit. (*Id.*) Adams called Welch an "illiterate nigger" when Welch asked him to wear a mask. (*Id.*) From 2020 to 2022, Esquivel would "routinely serve food, conduct unit activities" without wearing an N95 mask or other PPE. (*Id.* at 9.) Often Esquivel would spill his energy drink on the food-service cart. (*Id.*) Esquivel often told Welch to "shut the fuck up" about masks and PPE. (*Id.*)

From 2021 to 2020, Herring refused to wear a mask or other PPE when delivering food to Welch's housing unit and told Welch to "shut the fuck up" when asked to do so. (*Id.*) Wheeler and Featherly refused to reprimand Herring for refusing to wear safety gear. (*Id.*) From 2020 to 2022, Rigney, Donahue, and Lox refused to wear masks or other PPE when delivering food to Welch's housing unit or transporting inmates. (*Id.*) When Welch asked the officers to wear masks—or asked their supervisors to enforce COVID-19 safety measures—he was asked, "Do you want to eat?" (*Id.*)

In late January 2022, two inmates in Welch's housing unit contracted COVID-19. (*Id.* at 3.) Welch continued to be housed with those "highly symptomatic" inmates. (*Id.* at 7.) Welch contracted COVID-19 on February 2, 2022, and was moved to quarantine. (*Id.* at 3.) Welch continues to suffer daily shortness of breath, fatigue, and lack of strength. (*Id.* at 8.)

Defendants have now moved to dismiss the complaint, arguing they are entitled to qualified immunity as Welch fails to establish a viable Eighth Amendment claim and no clearly established caselaw exists. (ECF No. 21.) Specifically, Defendants argue Welch fails to allege any facts which would plausibly support his claim that Defendants alleged refusal to wear PPE contributed to his possibly contracting COVID-19 February 2, 2022. Defendants also argue that Welch fails to allege any facts to suggest that Defendants either knew, or drew the inference, that there was a danger to Welch given the COVID protocols in place before they were allowed to enter the facility. Finally, Defendants argue there is no clearly established caselaw that would have placed Defendants on clear notice

that their alleged refusal to wear PPE, when they were being regularly tested for COVID and received daily screenings before entering the facility, could be seen as violating Welch's rights.

### A.    Eighth Amendment – Conditions of Confinement Claim

Federal courts must conduct a preliminary screening in any case in which an incarcerated person seeks redress from a governmental entity or officer or employee of a governmental entity. *See* 28 U.S.C. § 1915A(a). In addition to the screening requirements under § 1915A, pursuant to the Prison Litigation Reform Act ("PLRA"), a federal court must dismiss an incarcerated person's claim if the action "fails to state a claim on which relief may be granted…." 28 U.S.C. § 1915(e)(2). Dismissal of a complaint for failure to state a claim upon which relief can be granted is provided for in Federal Rule of Civil Procedure 12(b)(6), and the Court applies the same standard under § 1915 when reviewing the adequacy of a complaint or an amended complaint.

Here, the District Court screened Welch's complaint pursuant to 28 U.S.C. § 1915A(a) and 28 U.S.C. § 1915(e)(2). (*See* ECF No. 9.) The Court specifically found:

> Welch arguably states a colorable Eighth Amendment claim regarding indifference to the risk of contracting COVID-19. Liberally construed, the allegations state that a "societal consensus" arose in 2020 that "the risk of contracting COVID-19" "was 'intolerably grave' such that involuntarily exposing inmates to the disease violated then-current standards of decency." *See Hampton*, 83 F.4th at 766 (finding allegations about community and governmental response were enough to show that a societal consensus "had emerged by May 2020" about the grave risk of COVID-19 exposure) (quoting *Hines v. Youseff*, 914 F.3d 1218, 1232 (9th Cir. 2019)). Welch alleges that despite society's consensus about the risks of contracting COVID-19, corrections officers Rowley, Esquivel, Featherly, Herring, Warner, Wheeler, Adams, Ridgney, Donahue, and Lox refused to wear PPE like N95 masks when working around inmates in Welch's housing unit on a daily basis from 2020 to 2022. Welch contracted COVID-19 shortly before Sisolak and Daniels lifted the COVID-19 safety measures that had been enacted to cover NDOC facilities like ESP. And he continues to suffer daily symptoms stemming from his infection like shortness of breath, fatigue, and lack of strength.
> …
> The Eighth Amendment claim about indifference to COVID-19 conditions at ESP may therefore proceed against Rowley, Esquivel, Featherly, Herring, Warner, Wheeler, Adams, Ridgney, Donahue, and Lox.

(*Id.* at 7-8.) Because the District Court has already determined that Welch states a

ER061                    ER061                    ER061

colorable Eighth Amendment claim against Defendants, and Defendants provide no additional basis for dismissal at this early stage of litigation, the Court recommends that Defendants' motion to dismiss, (ECF No. 21), to the extent it argues Welch fails to state a claim, should be denied.

### B.    Qualified Immunity

Next, Defendants argue that qualified immunity is appropriate because there is no case that would put Defendants on "clear notice" that their actions in this particular case violated Welch's constitutional rights. (ECF No. 21)

The Eleventh Amendment bars damages claims and other actions for retroactive relief against state officials sued in their official capacities. *Brown v. Oregon Dept. of Corrections*, 751 F.3d 983, 988–89 (9th Cir. 2014) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984)). State officials who are sued individually may also be protected from civil liability for money damages by the qualified immunity doctrine. More than a simple defense to liability, the doctrine is "an entitlement not to stand trial or face other burdens of litigation . . ." such as discovery. *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

When conducting a qualified immunity analysis, the Court asks "(1) whether the official violated a constitutional right and (2) whether the constitutional right was clearly established." *C.B. v. City of Sonora*, 769 F.3d 1005, 1022 (9th Cir. 2014) (citing *Pearson v. Callahan*, 555 U.S. 223, 232, 236 (2009)). A right is clearly established if it would be clear to a reasonable official in the defendant's position that his conduct in the given situation was constitutionally infirm. *Anderson v. Creighton,* 483 U.S. 635, 639–40, (1987); *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 915 (9th Cir. 2012). In the context of a motion to dismiss, factual allegations are taken as true and are construed in the light most favorable to the nonmoving party. *Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001) (citation omitted).

First, Welch alleges the violation of a clearly established right—to be free from exposure to serious disease. *Helling v. McKinney*, 509 U.S. 25 (1993) (holding that

prisoners have an Eighth Amendment right to be free from exposure to serious disease). *See also Hoptowit v. Spellman*, 753 F.2d 779 (9th Cir. 1985) (holding that a "lack of adequate ventilation and air flow undermin[ing] the health of inmates and the sanitation of" a prison violated the Eighth Amendment). Second, a reasonable official would know that inmates have a right to be free from exposure to serious disease, as this right viewed at the proper level of generality, has been established since 1993. *See Helling*, 509 U.S. 25. Accordingly, the Court recommends Defendants' motion to dismiss based on qualified immunity be denied.

## IV.    CONCLUSION

For good cause appearing and for the reasons stated above, the Court recommends that Defendants' motion to dismiss, (ECF No. 21), be denied.

The parties are advised:

1.    Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2.    This Report and Recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

## V.    RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that Defendants' motion to dismiss, (ECF No. 21), be **DENIED**.

DATED: _February 4, 2025_.

_____
**UNITED STATES MAGISTRATE JUDGE**

ER063                          ER063                          ER063

AARON D. FORD
 Attorney General
LEO T. HENDGES (Bar No. 16034)
 Senior Deputy Attorney General
State of Nevada
Office of the Attorney General
1 State of Nevada Way, Suite 100
Las Vegas, Nevada 89119
(702) 486-3795 (phone)
(702) 486-3768 (fax)
Email: lhendges@ag.nv.gov

*Attorneys for Defendants*
*Sean Donahue, Daniel Featherly,*
*Cade Herring, Curtis Rigney,*
*Corey Rowley, Alexander Werner,*
*and Daniel Wheeler*

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| KENTRELL D. WELCH,<br><br>              Plaintiff,<br><br>v.<br><br>CHARLES DANIELS, *et al.*,<br><br>              Defendants. | Case No. 3:22-cv-00557-MMD-CLB<br><br>**REPLY IN SUPPORT OF MOTION TO DISMISS (ECF NO. 21) SECOND AMENDED CIVIL RIGHTS COMPLAINT ECF NO. 7** |

Defendants, Sean Donahue, Daniel Featherly, Cade Herring, Curtis Rigney, Corey Rowley, Alexander Werner, and Daniel Wheeler, by and through counsel, Aaron D. Ford, Nevada Attorney General, and Leo T. Hendges, Senior Deputy Attorney General, of the State of Nevada, Office of the Attorney General, hereby submit this Reply in Support of their Motion to Dismiss (ECF No. 21) Plaintiff Kentrell D. Welch's (Welch) Second Amended Civil Rights Complaint (SAC) (ECF No. 7).

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTON

Welch's SAC should be dismissed because Welch effectively concedes that he failed to plausibly allege facts in his SAC establishing a violation of the Eighth Amendment with respect to his allegations Defendants refused to wear masks during the COVID-19 pandemic, much less establish a violation of clearly established law, beyond debate,

necessary to overcome Defendants' entitlement to qualified immunity. Welch does not point to any factual allegations in his SAC showing any Defendant ever exhibited symptoms of COVID-19 when in Welch's unit, and therefore concedes he cannot establish the knowledge of risk necessary to support an Eighth Amendment violation. Welch also has not, and cannot, point to any authority which would contradict the well-established rule that a failure to abide by prison policy does not establish a constitutional violation. Because Welch does not dispute that his SAC merely alleges Defendant violated prison policy by not wearing masks and other personal protective equipment (PPE), he again concedes his SAC fails to set forth an Eighth Amendment violation. Welch also does not dispute that, under clearly established case law, he must plausibly allege Defendants took some active step which exposed Welch to a serious disease. Welch again concedes that his SAC contains no such allegations. Based on these concessions, Welch also concedes that he cannot establish a violation of clearly established law necessary to overcome Defendants' entitlement to qualified immunity.

Rather than rely on the allegations in his SAC, Welch improperly attempts to supplement his SAC with a seventy-three (73) page exhibit (ECF No. 26), which can only be viewed as an improper attempt to amend his complaint for a third time, without any motion or permission from this Court to do so. Welch, however, cannot avoid dismissal by attempting to establish allegations which are not part of his SAC. To the contrary, his attempts only establish that Welch knows his SAC is fatally defective and must be dismissed. Accordingly, this Court should dismiss Welch's SAC because Defendants are entitled to qualified immunity.

## II.   ANALYSIS

### A.   Welch Improperly Attempts to Rely on Facts Outside of His SAC

Realizing his SAC is fatally defective, Welch's attempt to supplement his SAC with a seventy-three (73) page exhibit, where there has been no attempt to file a third amended complaint, must be rejected. ECF No. 26.  Welch cannot prop up his concededly defective SAC with facts not alleged in his SAC.

"Under Federal Rule of Civil Procedure 15(a)(1)(A), a party may amend its pleading once as a matter of course within 21 days of serving it." *Adkisson v. Dzurenda*, Case No. 3:23-cv-00287-MMD-CLB, 2024 WL 1330002, at *1 (D. Nev. Mar. 27, 2024). "Local Rule 15-1(a) requires that the party requesting leave to amend, attach the proposed amended pleading to any motion seeking leave of the court to file an amended pleading." *Id.* (internal quotation omitted). "The proposed amended pleading must be complete in and of itself without reference to the superseded pleading and must include all copies of all exhibits referred to in the proposed amended pleading.'" *Id.* (internal quotation omitted). Although Plaintiff is *pro se*, he must still follow the Local Rules. *Id.*

Here, Defendants accepted service on September 24, 2024. ECF No. 18. More than twenty-one (21) days passed between September 24, 2024, and Welch filing seventy-three (73) pages of additional records with his opposition to Defendants' motion to dismiss on November 19, 2024. *Compare* ECF No. 18; ECF No. 26. Welch failed to seek leave to further amend his SAC, and he failed to file an amended pleading, both in violation of the Local Rules. These additional documents must be rejected when deciding Defendants' motion to dismiss.

Even if this Court accepts those documents on the merits, Welch's claims still fail and Defendants' motion to dismiss should be granted. Any amendment based on these additional seventy-three (73) pages would therefore be futile and should not be permitted. In the unlikely event this Court sees fit to allow Welch an opportunity to seek leave to amend, yet again, this Court should require Welch to seek an extension of time to move to file a third amended complaint as outlined in *Adkisson*. 2024 WL 1330002, at *1-2 (granting plaintiff 30-day extension to object to the screening order or file a motion for leave to amend, with an attached proposed amended complaint, and explaining to Plaintiff that any amended complaint would be screened under 28 U.S.C. § 1915A which could take several months). Only after Welch properly moves and is granted leave to amend should this Court consider any facts which are not included in Welch's SAC.

///

### B.    Welch Fails to Establish Defendants' Deliberate Indifference

A prison official is not liable under the Eighth Amendment unless the official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). The prison official must also fail to take reasonable measures to abate the substantial risk of serious harm in order to establish a violation of the Eighth Amendment. *Id.* at 847. Mere negligent failure to protect an inmate from harm is not actionable under the Eighth Amendment or 42 U.S.C § 1983. *Id.* at 835.

Welch must satisfy this subjective element, which he has failed to do. This means the prison official being sued must have known of and disregarded the risk to the inmate's safety. *Id.* at 837. "Mere negligence is not sufficient to establish liability." *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998). Further, Welch "must also demonstrate that the defendants' actions were both an actual and proximate cause of their injuries." *Lemire v. California Dept. of Corrections and Rehabilitation*, 726 F.3d 1062, 1074 (9th Cir. 2013) (citing *Conn v. City of Reno*, 591 F.3d 1081, 1098-1101 (9th Cir. 2010) *vacated by City of Reno, Nev. v. Conn*, 563 U.S. 915 (2011), *reinstated in relevant part* 658 F.3d 897 (9th Cir. 2011)).

In the SAC, as outlined in the motion to dismiss, Welch fails to allege any fact that would support a claim these Defendants either exhibited symptoms or knew they were at risk of COVID-19 exposure when they worked in Welch's unit at Ely State Prison (ESP), or they disregarded this risk once it became known. ECF No. 21 at 10:23-11:6. In his opposition to Defendants' motion to dismiss, Welch points to no such facts in his SAC, and therefore concedes his SAC does not plausibly allege an Eighth Amendment violation. Defendants therefore are entitled to qualified immunity at the first prong of the analysis because Welch has failed to establish a plausible violation of the Eighth Amendment.

While Welch's opposition is difficult to follow, it appears Welch claims Defendants must have been the reason the offender in the cell next to him contracted COVID-19 in late

January 2022, because there was no visitation allowed during that time period. ECF No. 25 at 4-6. However, Welch undercuts his own argument because he also claims medical staff and free staff worked in the facility while they were infected. *Id.* at 6:9-12. Further, Welch appears to argue he might not have actually been COVID-19 positive February 2, 2022, in what appears to be an attempt to shift his claim to an argument that transferring him to unit 8 for quarantine was possibly the reason he caught COVID-19. *Id.* at 9, 20.

Welch's claim is not plausible because his opposition raises doubts as to causation where Welch explicitly asserts there were staff other than Defendants who could have been the cause of COVID-19 entering the facility. Welch also raises doubt as to his initial COVID-19 positive test result. While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." *See Martinez v. Sherman*, Case No. 1:21-cv-01319-BAM (PC), 2022 WL 126054, at *1 (E.D. Cal. Jan. 13, 2022) (citing *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009)). Welch's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged. *Id.* (citing *Iqbal*, 556 U.S. at 678 (quotation marks omitted); *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009)). The sheer possibility that a defendant acted unlawfully is not sufficient, and mere consistency with liability falls short of satisfying the plausibility standard. *Id.* (citations omitted).

Welch's opposition makes clear that he claims he caught COVID-19 on or around February 2, 2022, and it was only possible, not plausible, that Defendants may have been at fault. Welch argues it definitely had to be staff, because no offenders were transferred into the facility and there was no visitation. Welch's claim, against these specific Defendants, when Welch concedes that staff members other than Defendants were present, requires impermissible and unwarranted inferences as to causation which Welch will never be able to prove based on the allegations he puts forth in his SAC, the third attempt at filing this lawsuit. This Court cannot reasonably infer these Defendants are liable for the

///

alleged misconduct in this lawsuit, based on Welch's allegations, and therefore Defendants' motion to dismiss should be granted.

**C.    Welch May Not Raise Supervisor Liability Claims Which Are Not Part of His SAC Following Mandatory Screening**

Welch spends considerable time in his opposition arguing he should have been released from custody during the COVID 19 pandemic because he claims to have several chronic medical conditions. ECF No. 25 at 2-8, 12-16. There are no supervisor liability claims proceeding in this lawsuit. Claims regarding administrative decisions to lift COVID 19 safety measures were dismissed at screening. ECF No. 9 at 8:11-18.

**D.    Welch Fails to Establish a Violation of Clearly Established Law Beyond Debate**

Welch bears the burden of proving, beyond debate, that a right allegedly violated was clearly established at the time of the alleged misconduct. *Carley v. Aranas*, 103 F.4th 653, 660 (9th Cir. 2024). Welch fails to put forward any case, showing "'in light of the specific context of the case, not as a broad general proposition" that Defendants alleged refused to wear PPE, including N95 masks, violated the Eighth Amendment. *Id* at 661. Welch, therefore, fails to meet HIS burden to establish the existence of some case that would have placed Defendants on "fair notice" that, even if they did refuse to wear PPE in Welch's unit, that this conduct alone is a constitutional violation. *Id*. at 660-63.

Conversely, Defendants put forward, unchallenged by Welch, existing case law establishing violation of a prison policy alone fails to violate the constitution. *Cousins v. Lockyer*, 568 F.3d 1063, 1070 (9th Cir. 2009) (citing *Case v. Kitsap County Sheriff's Dep't*, 249 F.3d 921, 930 (9th Cir. 2001) (quoting *Gardner v. Howard*, 109 F.3d 427, 430 (8th Cir. 1997) ("[T]here is no § 1983 liability for violating prison policy. [Plaintiff] must prove that[the official] violated his constitutional right")); *see also Gagne v. City of Galveston*, 805 F.2d 558, 560 (5th Cir. 1986) ("[A]llegations about the breach of a...regulation are simply irrelevant to the question of an official's eligibility for qualified immunity in a suit over the deprivation of a constitutional right."). Accepting Welch's

claims against these Defendants as true, that they refused to wear PPE in his unit, Defendants are entitled to qualified immunity because Welch failed to establish, in the specific context of this case, a violation of clearly established law beyond debate.

Because Welch fails to claim some transfer of offenders between institutions as the basis for his exposure to COVID-19, this Court's prior reliance on *Hampton* does not apply to this case. *Hintze v. Sisolak*, Case No. 3:22-cv-00436-MMD-CLB, 2024 WL 4442883, at \*4 (D. Nev. Oct. 8, 2024) (citing *Hampton v. California*, 83 F.4th 754, 758 (9th Cir. 2023)).

### E.   Leave to Amend the SAC Should Be Denied

The SAC is Welch's third attempt to state a claim, and he continues to fail to identify a claim that can proceed beyond the motion to dismiss. Qualified immunity dictates the case be dismissed. "[I]t was not an abuse of discretion to deny [plaintiff] leave to amend because he had already amended the complaint once and further amendment would be futile." *Yagman v. Cornell Companies,* 693 Fed. Appx. 495, 498 (9th Cir. 2017) (citing *Allen v. City of Beverly Hills*, 911 F.2d 367, 373 (9th Cir. 1990) ("The district court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint" (quoting *Ascon Props., Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989)))). This Court should exercise discretion and deny further leave to amend.

### III.   CONCLUSION

This Court should dismiss the case in its entirety. The SAC fails to state a plausible violation of the Eighth Amendment. Looking at all of the documents that are regularly consulted when deciding a Rule 12 motion, Welch concedes he cannot establish a plausible claim for deliberate indifference to unsafe prison conditions against these Defendants.

///

///

///

///

///

The specific circumstances of this case make further amendment futile and leave to amend should not be granted. Accordingly, this Court should grant Defendants' motion to dismiss and dismiss Welch's SAC complaint with prejudice.

DATED this 25th day of November, 2024.

AARON D. FORD
Attorney General

By: /s/ Leo T. Hendges
LEO T. HENDGES (Bar No. 16034)
Senior Deputy Attorney General
*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I certify that I am an employee of the State of Nevada, Office of the Attorney General, and that on November 25, 2024, I electronically filed the foregoing **REPLY IN SUPPORT OF MOTION TO DISMISS (ECF NO. 21) SECOND AMENDED CIVIL RIGHTS COMPLAINT ECF NO. 7** via this Court's electronic filing system.  Parties who are registered with this Court's electronic filing system will be served electronically.

Kentrell D. Welch, #1030777
Northern Nevada Correctional Center
P. O. Box 7000
Carson City, Nevada 89702
Email: nncclawlibrary@doc.nv.gov
*Plaintiff, Pro Se*


/s/ Andrea Beckett
ANDREA BECKETT, an employee of the
Office of the Nevada Attorney General

EXHIBIT(S)   3:22-cv-00557-MMD-CLB.

1) 1-4 pgs Rprt confirms Nv. prison system during pandemic-Failures, Fronts back pgs.

2) 5 pgs Affidavit/ declaration(s) Filed about Covid 19 Filed: 11-10-2020 - 2-11-2021

3) 3×pgs About Starvation Incident. ECF no. 54, 56-1.

4) 1×pg 4-13-2020 3×pgs Doc 3012 + Doc 3097 ×2) attachments.

5) 1×pg 11-23-2021 Ndoc Memorandum Emergency Staffing lvl's.

6) 3×pgs Jan-14-2022 Doc 1564 + 2× Doc 3097 about given Heart meds of D/R 1/m,

7) 5 pg Jan. 22-28-2022 Ex. C Dual declarations by Xiao Bai

8) 1×pg 2-10-2022 Ndoc memo about Covid 19

9) 1×pg 9-14-2022 personal affidavit by plaintiff

10) 1×pg 1-20-2023 personal affidavit contain sickness

11) 4×pgs 4-6-2020 - 6-30-2020 Doc 1564 2× Doc 3097

12) 4×pgs Initial grievance 11-15-2021 Covid 19 # 2006,313-0447; Partially granted uphold

13) 12×pgs 2nd grievance 12-31-2021 Covid 19 partially granted

14) 3×pgs Emergency grievance about Covid 19 2-3rd-2022 Doc 1564 + 2× Doc 3097

15) 3×pgs Emergency grievance about Covid 19 2-16-2022

16) 2×pgs Doc 3012 wht/yellow Governor Sisolak: response by esp officials Remove mandate to his subordinates.

17) 1×pg 3-7-2022 Declaration/affidavit to gov. Sisolak about Covid 19 issue, request to Re-Instate N95, PPE gear mandate

18) 2×pgs similarily housed Inmate Mark. H. about NNCC Covid 19 failures.

19) 5×pgs Nv. dept. of Health, CDC Covid 19 Statistics about Ndoc Failures.

Case 25-4606, 01/05/2026, DktEntry: 12.1, Page 74 of 248
Case 3:22-cv-00557-MMD-CLB    Document 26    Filed 11/19/24    Page 2 of 73

9/16/24, 11:25 AM                    Report details, confirms Nevada prison system missteps during pandemic • Nevada Current

5 Lar bota sides

PART OF STATES NEWSROOM

COVID-19    CRIMINAL JUSTICE & POLICING

## Report details, confirms Nevada prison system missteps during pandemic

Analysis prepared for state officials echoes advocates' calls to decrease population during health crisis

BY: **MICHAEL LYLE** - MARCH 11, 2022  5:58 AM



(Nevada Department of Corrections photo)

The number of eligible people released from Nevada prisons declined during the pandemic and deaths among those incarcerated were high compared to other states, according to a new analysis from the Crime and Justice Institute.

The recent findings sparked reactions from civil rights groups, who say the new report repeats calls they have been making since the start of the pandemic.

"Seeing it in a report in real time that the release rate went down during the height of the pandemic, we are struck with the question of why, when it should be the opposite," said Holly Welborn, the policy director for the ACLU of Nevada.

At the behest of Gov. Steve Sisolak and other state officials, the organization was asked to look at how the pandemic affected the criminal justice system.

CJI found that Nevada ranked 21st in Covid transmission rates but "the prison system had the third-highest rate of deaths among incarcerated populations across 45 states."

Figure 10. Declines in all release categories except death, which more than doubled during COVID-19



Data Source: Nevada Department of Corrections; Analyses conducted by CJI

The report notes that Nevada focused on restrictive measures, such as suspending visitations, to control the spread of Covid rather than safely releasing certain eligible inmates, a move other states deployed.

The number of people released through institutional discharges, which accounts for almost a third of all releases and includes people whose sentences have expired, dropped 30% in 2020 and then another 9% in 2021.

In an email, Meghin Delaney, a spokeswoman for the governor, declined to answer specific questions on the report's findings and policy recommendations.

"The Governor appreciates the dedication of all those who work in the Nevada Department of Corrections and who have continued to provide care for those in their care," she said. "The Governor made

ER074            ER074            ER074

decisions by taking in the nuances and totalities of every situation, consulting with advisors and public health experts. None of the decisions were easy and the Governor focused on protecting lives and livelihoods with his actions."

Delaney said Sisolak along with NDOC officials "will continue to review the recommendations and look at areas where recommendations could be implemented."

Return Strong, a prisoner advocacy group, released its own report last October which included stories collected from inmates and that scrutinized the prisons system's use of lockdowns and how inmates accessed medical care.

The organization also called for an investigation into NDOC's handling of the pandemic around the same time.

Jodi Hocking, the group's founder, said their recommendations overlap with what CJI released along with other reports that have come out over the last two years.

"Nobody wants to listen to us because they think incarcerated people are liars and we're a bunch of dramatic prison wives," she said. "The reality is, what we're saying is factual and everything we've said has lined up with every single report by what they consider a neutral third party. So when is somebody going to do something about it?"

Welborn said she is going to push to have the report heard by the interim legislative judiciary committee, a joint committee composed of members of the Senate and Assembly.

"I don't at this point trust that we can rely on the executive branch or the Board of Prison Commissioners to act on this," she said. "I don't think we are going to make headway anywhere else except through a legislative act that creates something like an oversight board or changes to administrative procedures or something that provides that high level of accountability."

This isn't the first time Nevada has relied on the CJI. In 2018, the organization was asked to examine the significant growth in incarceration rates, which ultimately led to lawmakers adopting and passing criminal justice overhaul legislation in 2019.

### "Confirms everything we have predicted"

Of the 12 recommendations issued by the Crime and Justice Institute, one was that Nevada should "use statewide administrative orders to reduce prisons and jail density when public health crises unduly jeopardize the health and safety of corrections staff and incarcerated individuals."

"We are now two years into this and every recommendation says decarceration is the best practice, yet we can't even have that discussion in Nevada," Hocking said. "The governor won't talk about it. NDOC says it's not their job to decide that."

Since March 2020, civil rights groups along with private attorneys have called on Sisolak to release people serving terms for nonviolent offenses who are six months within their release date as a way to mitigate the spread of Covid.

Groups feared inaction could lead to a high number of deaths.

Even as Return Strong warned of an outbreak at Warm Springs Correctional Center days before a drastic spike in Covid cases, calls for state action went unanswered.

"We have been saying this from the beginning and been accused of having an agenda," Welborn said. "What we're talking about is a public health crisis in institutions where the disease is going to spread and it's going to harm the community at large. This report confirms everything we have predicted."

In addition to the decline of people being released after their sentence ends, the report points to other mechanisms for release, such as medical release, discretionary parole, mandatory parole, geriatric parole and residential confinement as "tools being available to decrease the number of individuals in prison."

One of the provisions of the criminal justice overhaul bill that passed in 2019 allowed the early release of nonviolent inmates older than 65 who served the majority of their sentence.

Ahead of its July 2020 effective date, the Nevada Sentencing Commission voted in April 2020 to recommend, not mandate, that the state consider implementing this provision early, which would have applied to six inmates.

"Geriatric parole was a new option for the Parole Board that went into effect in July 2020, yet the data showed zero hearings related to geriatric parole over the year following its effective date," the report says.

ER075          ER075          ER075  2/4

*Ex*

*Scan both sides*

**Staying much longer**

While the analysis indicated that fewer people were sentenced to prisons, people incarcerated stayed an average of one month longer.

"Though the reason for the increased lengths of stay is not known, it could be caused by a combination of factors, including fewer monthly parole release hearings during COVID-19 and through 2021, an NDOC population with more serious convictions, and the inability to earn credits through programming or work placements."

Those incarcerated can normally earn "good time" credits for working or taking part in educational and rehabilitation programs that would reduce sentences by at least five days for each month they participate in the program or work.

Lawmakers passed a bill in the 2021 session in an attempt to restore those credits.

During the bill hearing, Return Strong also warned issues with credits were leading to prolonged sentences.

NDOC's handling of suspending visitation has been a point of contention among families and friends of the incarcerated.

The report noted in the absence of visitation, prisons allowed two free phone calls per week.

"However, interviews revealed that there was high demand for the phones, often making them unavailable, and that call times were scheduled during unusual hours, often in the middle of the night," the report writes. "This lack of connection to the outside is significant, as research shows that pro-social behavior achieved through programming or existing relationships is an important element of recidivism reduction."

Welborn said the analysis is consistent with what they've been hearing and been warning about throughout the pandemic.

"That and the lack of visitation and delays in people who are incarcerated to touch base with their counsel are all related to the odd scheduling of phone calls," she said. "It was a huge challenge for attorneys and families to communicate with their loved ones across the board."

Groups have also been calling for an independent entity to provide oversight and accountability.

Nevada's current system to review corrections policies and regulations is the Board of Prison Commissioners, which consists of Sisolak, Attorney General Aaron Ford and Secretary of State Barbara Cegasvke.

However, CJI says in other cities and states there are boards independent of the executive branch. It recommends Nevada create a new oversight body for the justice system that could consist of those impacted by the system, advocates and state leaders.

The report also calls for NDOC to have a greater level of transparency around how it responded to the crisis.

"While Nevada does have many reporting requirements for NDOC, none of them require sharing of information relating to their response to the pandemic," the report states. "The need for information was further exacerbated by the limited access outsiders had to the prisons, particularly family members of individuals in custody."

CJI also suggests creating a weekly or monthly newsletter for those incarcerated to update them on the status of the pandemic.

"It's a little frustrating because at what point is someone going to hold (NDOC) accountable or provide oversight," Hocking said. "A lot of people are interested and paying attention now, which is an improvement. But it doesn't actually change anything."

Aside from providing an insight to prisons and jails response, the report also looked at how Covid affected arrests and sentencings.

The report estimates 23,000 cases were filed in the Eighth Judicial District between July 2018 and June 2021. Only about 5,500 had been disposed of as of August 2021.

Prior to the Covid, 45% of drug dispositions in the Eighth Judicial District Court were sentenced to probation. That increased to 58% during the pandemic.

Another recommendation is for law enforcement to prioritize resources for "people who commit serious crimes, by continuing to reduce custodial arrests, admissions, and filings for lower-level conduct and considering diversion for those with behavioral health needs."

**ER076**        **ER076**        **ER076**

*/3)*

9/16/24, 11:25 AM                    Report details, confirms Nevada prison system missteps during pandemic • Nevada Current

REPUBLISH

*Our stories may be republished online or in print under Creative Commons license CC BY-NC-ND
4.0. We ask that you edit only for style or to shorten, provide proper attribution and link to our
website. AP and Getty images may not be republished. Please see our republishing guidelines for use
of any other photos and graphics.*



### MICHAEL LYLE     X

Michael Lyle (MJ to some) is an award-winning journalist with Nevada
Current. In addition to covering state and local policy and politics, Michael
reports extensively on homelessness and housing policy. He graduated
from UNLV with B.A. in Journalism and Media Studies and later earned an
M.S. in Communications at Syracuse University.

Nevada Current is part of States Newsroom, the nation's largest state-
focused nonprofit news organization.

MORE FROM AUTHOR

### RELATED NEWS



**Senators urge better access to
disability payments for Long...**
BY CASEY QUINLAN
August 8, 2024



**Fauci defends his work on COVID-19,
says he has an 'open...**
BY JENNIFER SHUTT
June 3, 2024

POLICY, POLITICS AND COMMENTARY

DEMOCRACY TOOLKIT                                                   ⌄



DEI Policy | Ethics Policy | Privacy Policy

Our stories may be republished online, or in print under Creative Commons license CC BY-NC-ND
4.0. We ask that you edit only for style or to shorten, provide proper attribution and link to our
website. You can't republish, publish...

         

© Nevada Current

STATES NEWSROOM

FAIR. FEARLESS. FREE.

Case: 25-4606, 01/05/2026, DktEntry: 12.1, Page 78 of 248
Case 3:22-cv-00557-MMD-CLB   Document 26   Filed 11/19/24   Page 6 of 73

Case 2:19-cv-01064-GMN-NJK   Document 245   Filed 08/05/22   Page 49 of 75

COPY FOR CELL 05

<u>INMATE DECLARATION OF THE CLASS PURSUANT TO NRS 53.045 AND NRS 208.165</u>

I, XiaoYe Bai as Claimant on behalf of all following class members and current custody of Ely State Prison, Located at 12000 North Bothwick Road, (Mailing) P.O. Box 1989, In city of Ely, County : White Pine, State : Nevada, 89301. Hereby makes the Class Declaration at below:

1. The statements contained in this Declaration, except where otherwise indicated to be upon information and belief, are based on Claimant (each individual class members)'s Personal knowledge and experience and Claimant are over the age of 18 and are otherwise fully competent to testify to the facts contained in this declaration.

2. This Declaration provides information and claims to be used in the Nevada Department Of Corrections Grievance and appeal Purposes or the Civil Rights Suit under 42 U.S.C. § 1983.

3. Claimant are incarcerated at Administrative Segregation Unit I (B Pod) of the Ely State Prison in the State of Nevada Department Of Corrections, during the unconstitutional acts were occurring. Ely State Prison Official (hereinafter "ESPO")

4. On November 23, 2021, ESPO Associate Warden Of Operations Mr. David Drummond Issued the "MEMORANDUM" that Prison Canteen no longer Provides commissary based On Staffing Levels Shortage.

5. Ever since that notice, Claimant suffering relevant deprivation and/or limitation of inmate rights and Privileges.

SER0363
ER078
SER0363
ER078
SER0363
ER078

Case: 25-4606, 01/05/2026, DktEntry: 12.1, Page 79 of 248
Case 3:22-cv-00557-MMD-CLB   Document 26   Filed 11/19/24   Page 7 of 73
Case 2:19-cv-01064-GMN-NJK   Document 245   Filed 08/05/22   Page 50 of 75

6. The ESPO constant using "Staff Shortages" as Golden excuse/reason Denial or Delay Provide to Claimant Food (Packages), Exercise (Yard times), Phone (legal & personal calls) and Showers. Furthermore seeing doctor appionements.

7. Numerous of Kites (Inmate Request) and Informal Grievances has been submitted to ESPO and the Warden of this facility (Mr. William Reubart) report/complaint relating (#6.) issues and concerns. But ESPO failure to response.

8. Here's typical incident example: On January 25ᵀᴴ, 2022, Time around 1500 HRS, Claimant left no choice but have to use Unit "Feeding Time" opportunity to temporarily captured all the food slots as Peace Protest over More than (4) Four days delay each individual class inmates showers.

9. Prison Correctional Officer (Sergeant. Stalk) leading CERT (Correctional Emergency Respond Team) members came to the Unit and order the individual class inmates to closed their food slots or they will get spray. Claimant obeys the order closed the food slot rightaway but still have not received the shower.

10. Next day, On January 26, 2022, Time around 06:15 HRS, some of class member received a "food loaf diet" as Punishment from Unit 1 (B Pod) Floor Correctional Officer (Mr. Collard) without due Process. Officer Collard replied to Claimant (e.g. cell 24)'s question regard to such "Inadequate Food Punishment" by telling Claimant that "the loaf diet order from shift Lieutenant officer Rigney cause y'all captured food slots."

11. Until today this dated, the ESPO continue Denial or Delays individual class members of Access to Telephone, Exercise, Medical Care and Showers which in violation of constitutional First, Eighth and Fourteenth Amendment rights;

SER0364          SER0364          SER0364

ER079          ER079          ER079

Case: 25-4606, 01/05/2026, DktEntry: 12.1, Page 80 of 248
Case 3:22-cv-00557-MMD-CLB   Document 26   Filed 11/19/24   Page 8 of 73

Case 2:19-cv-01064-GMN-NJK   Document 245   Filed 08/05/22   Page 51 of 75

include, but not limited to NRS 209.131, NRS 209.381, NRS 209.382 and NRS 209:419 et. seq..

Each individual class members ( inmates/ claimants) has been personally review this INMATE DECLARATION OF THE CLASS and further provided relevant Name, Identification Number, Cell Number ( Including the signature) As Affirm and/or Declare under penalty of perjury. Pursuant to NRS 53.045, NRS 208.165 and 28 U.S.C. § 1746 that the foregoing is true and correct.

① Bai, Xian Ye    # 1099896    Unit 1B / Cell 24#
( 5 Day Delay Shower, 8 Day Delay Legal Phone Calls.)    /s/

② Ho. EDMUND  # 89285    UNIT 1B/CELL#22
(5 DAYS DELAY SHOWER, YARD, & PHONE    /s/ Ho

③ KUARIAMA HARRY # 1202149    Cell 21.
+5 DAYS DELAY SHOWER, YARD & PHONE    /s/ Harry DuaRuaya

④ MR Kentrell D. WelCH # 1030777 1.3.3  1-26 k. 2022.
unconst.l Conditions of Confinement, Many Issues etc. /s/ Kentrell D.Welch

⑤ Mark, Severns # 1170569  1-26-22
NO Showers, No Yard, NO Legal Calls ...    /s/ MJ S—

⑥ Javier Righetti # 1177958
( Waiting to see doctor. In Pain )    /s/

⑦ BEAU MAESTAS # 93348    Cell 48
WAITING for TREATMENT FOR FOOT OVER A YEAR. /s/ Maestas

⑧ Zachary Harris # 1058112
plus Phychological Deteriorating (no spritul upliftment) /s/ ZHarris

⑨ Jason Aldavide # 1169088
Isolated lockdown psych ADA    /s/
no Specialized unit.

Executed this 28th day of January, 2022.

SER0365    SER0365    SER0365
ER080    ER080    ER080

Case: 25-4606, 01/05/2026, DktEntry: 12.1, Page 81 of 248
Case 3:22-cv-00557-MMD-CLB   Document 26   Filed 11/19/24   Page 9 of 73
Case 2:19-cv-01064-GMN-NJK   Document 245   Filed 08/05/22   Page 52 of 75

ADA Appendix (5)

(1) ) 544 In Re: ECF No(s) 70, 71, 124

(2) (ase No(s) 2:19.cv.01243; 2:19.cv 08493 per

8-4-2022

SER0366          SER0366          SER0366

**ER081**          **ER081**          **ER081**

Case: 25-4606, 01/05/2026, DktEntry: 12.1, Page 82 of 248
Case 3:22-cv-00057-MMD-CLB   Document 26   Filed 11/19/24   Page 10 of 73
Case 3:20-cv-00057-MMD-CLB   Document 93   Filed 01/14/21   Page 1 of 33



"NO COPY"

FILED   SERVED ON
ENTERED   COUNSEL/PARTIES OF RECORD

JAN 14 2021

Kentrell D. Welch
Themselves, on behalf
and, similarly

CLERK US DISTRICT COURT
DISTRICT OF NEVADA
BY: _____ DEPUTY

Plaintiff(s)
· vs ·
Defendant(s)
All State actors, state of Nevada officials;
State of Nevada Employees, by, Through
NDOC; For state of Nevada.
* See Defendant sheets, Summons et al.

UNITED STATES DISTRICT COURT
Northern DISTRICT OF NEVADA

Case No: 3:20-CV-0029-MMD      URGENT Court(s) ATTN: "Sought"

Declaration
MR Kentrell D. Welch
1) 28 U.S.C §1931 Const1 ? of LAW etal.
2) 42 U.S.C § 2000cc - 1 (a)
3) 42 U.S.C § 2000 e - 5 (e); Section 706 (e); Civil Rts Act 1964.)
4) N.R.C.P. 38 (a)(b)
5) " — JS 44
      UnPrecedented facility Covid 19 Failures; Violations etal.

(7 *) Exhibit(s); Appendix(s) (A - D)

1) I Kentrell D. Welch, Hereby Declare
The Farmer court determined that the "subjective recklessness" standard used in criminal law, is the appropriate standard for demonstrating deliberate Indifference See Farmer, 511 U.S at 841-42; 839-40
2) U.S. v. Classic, 313 U.S. 299, 362 (1941); See also West v. Atkins, 487 U.S. 42, 49, 50 -54 (1988)(Physician acted under Color of law when providing medical services to prisoners, because the relationship with the state, was Cooperative, and Conduct "fairly attributable to the state") Nieto v. Kapoor, 268 F.3d 1208, 1216 (10th cir 2001)(medical director acted under color of state law when supervising employees, based on Contractual obligation to provide medical care, supervision, and training of All medical staff State actors Throughout NDOC facilities.) Blankenship v. Manchin, 471 F.3d 523, 517, 533 (4th cir 2006) (can raize his §1983 claim against the state governor In Individual capacity because governor not entitled to qualified Immunity) Matthews v. Crosby, 480 F.3d 1265, 1275 (11th cir 2007) the Prison warden not entitled to qualified Immunity, when deliberately Indifferent to reported prison violations, violence, In violation of clearly established 8th Amends rts) e.g. U.S. v. Felipe, 148 F.3d 101, 109 (2d cir 1998) courts must defer to legislative and executive branch policies designed to address "Urgent problems", Involved In administering modern day prisons, while upholding prisoners due process rts.) An Inmate "must" rely on prison authorities to treat his/her med-needs; If those authorities fail to do so, those needs will not be met. In the "Worst cases, such a failure may actually produce physical" torture; or a "lingering death", the evils most of Immediate Concern to the drafters of the Amendment, as It Is obduracy and wantonness, not Inadvertence, or error In good faith, that characterize the Conduct prohibited by the cruel and unusual punishment clause, this is "True", whether the Indifference Is manifested by prison doctors, In their response to the prisoner(s); needs; or by prison guards Intentionally denying; or delaying access to medical care; or Intentionally Interfering with the treatment once prescribed See estelle v. Gamble, supra, (429 U.S.) at 105-106); e.g. "Whitley v. Albers, 475 U.S. 312, 319, 89 L. Ed. 2d 251, 106 S. Ct. 1078 (1986) Gonzales v. Feiner mann, 663 F.3d 311 (7th cir 2011) Taylor v. Plousis, 101 F. supp. 2d 255 (D. N.J 2000) Failure to provide medical care, devices, prescriptions, et al; said; due to Cost".) See; (Corizon Health Services, Slapped with Heavy Fines; For "Repeated Failures to Fulfil Institutional Contractual obligations, to provide Adequate Medical Care" See; Kake. com; Kansas. com; Kansas City. com; US News.com; KCUR.org; W.bw. Com.) Explicitly; See "Pending Covid 19" Non-Frivolous Legal Claims; "Oregon Institution" Claims, An "UTAH" Jan 5th, 2021 KUTV, KSL reporters Report UTAH Prison Covid 19 Failure(s) et al."

(cont —

ER082          (A See pg 7 For penalty of perjury declaration   ER082 (B)          ER082

FILED ___ RECEIVED
ENTERED ___ SERVED ON
COUNSEL/PARTIES OF RECORD

NOV 10 2020

CLERK US DISTRICT COURT
DISTRICT OF NEVADA
BY: ___ DEPUTY

New Covid Case(s) At CSP-

Case No: 3:20-cv-0074-MMD-CLB

Declaration

F.R.C.P 33(27)(h)
Fed R. of evidence (02; 1005.)

Covid 19 Failures to comply
state, multi-state mandates.

State Actor's, NV Dept. of Corr.
SRC/Esquivel, c/o Ridgney, SRC/o Rowly, SRC/o hartlett;
SRC/o Adams, c/o gardiku, c/o berumen, garrison,
c/o wright;   Defendants State of NV employees,
et.al.

I, Kenitrell D. Welch, plaintiff ____, Hereby Declare.
OSHA/NOSHA Federal Regulations, Part 1910 of title 29; NAC 441A.040.
NDOC AR 604 occupational exposure to Blood borne Pathogens (NRS 209.511
NDOC AR 621 Infectious Diseases, NRS 209.131.
"The (POTUS) president of the united states Donanald TRUMP, Nevada officials (Gorvner sisolar, Caraline Goodman; UTAH Governer Hueberi, UTAH mayor Mendenhall; Nevada mayor's Hillary Slviever, did Issue "Mandatory orders", directives state wide, multi state, mandatory state Facilities to wear Face Coverings, N95, medical respirator preventive measure masks for Covid 19 precautionary measures (NDOC AR 600's preventive care, precautionary measures et.al. Dept of Homeland security; Nevada dept of Health, (M.A.T) Medical advisory Team Center for Disease control, NRS 40.670 violation of Health Issves
"see: pan x, chen D; Xia Y et.al, Asymptomatic cases, In a Family cluster with SARS-Cov2 Infection. The Lancet Infectious Disease 2020)
Vance v. peters, 97 F.3d 987 7th cir (1996)
Federal remedies, Contempt see: randolph v Donaldson 13 U.S. (9 cranch) 76 (1815); McCall v Swain 510 F.2d 167 (D.C. cir 1975); (17 C.J.s contempt 2 (1963)
Keeping the spirit Alive In evidence Law, 149 U-pa. L. Rev 265 (1991)

I Declare under penalty of perjury, NRS 208.165. That the foregoing is True and correct. As I have set forth. written herein
Dated this ___ 5th ___ Day of, ___ Nov ___ 20 ___

**ER083**          **ER083**          **ER083**

MR Kentrell D Welch
ESP P.O. Box 1989
Ely, NV, 89301

#103077

_____ FILED      _____ RECEIVED
_____ ENTERED    _____ SERVED ON
          COUNSEL/PARTIES OF RECORD

          JAN 21 2021

     CLERK US DISTRICT COURT
        DISTRICT OF NEVADA

BY: _____ DEPUTY

UNITED STATES DISTRICT COURT

DISTRICT of Nevada

NAME, MR. Kentrell D. Welch; on behalf
of Themselves; and on behalf of 'All' similarily
housed ESP Inmates et.al.
                    plaintiff(s)

                    vs   Defendent(s)
All state Actors, named Defendents,;
NAME, material to this NON-frivolous
1983 Legal Claim, as Ndoc agents, Staff,
Contracted Medical personnel; as employees,
by, through, the state of Nevada et.al.

CASE NO:

3:20-cv-0079-MMD-CLB.

28 U.S.C § 1331 ? of Law
* Emergency Covid 19 facility Issues

COMES NOW, _plaintiff_____, in proper, and herein above respectfully
moves This Honorable court for a _Motion of Emergency TRO/permanent preliminary Injunction_
_per LR 7-4 (A) - (1)(2)(3); per F.R.C.p 65(A), per 28 U.S.C sections 2283, 2284, see_
_Declaration Attached @ exhibit #1, see ECF No. 93 et.al._

this above is made and based on the following memorandum of points And Authorities

MR Kentrell D Welch
ESP P.O. Box 1989
Ely, NV, 89301

#103077

FILED _____ RECEIVED
ENTERED _____ SERVED ON
COUNSEL/PARTIES OF RECORD

JAN 2 1 2021

CLERK US DISTRICT COURT
DISTRICT OF NEVADA

BY _____ DEPUTY

UNITED STATES DISTRICT COURT

DISTRICT of NevadA

NAME, MR. Kentrell D. Welch; on behalf
of Themselves; and on behalf of 'All' similarily
housed ESP Inmates et al.
                              plaintiff(s)

                  vs  Defendent(s)
All State Actors, named Defendents;
NAME, material to This NON-frivolous
1483 Legal Claim, as Ndoc agents, Staff,
Contracted Medical personnel; as employees,
by, Through, The State of Nevada et al.

CASE NO:

3:20.cv.0074.MMD-CLB.

28 U.S.C § 1331 ? of Law
* Emergency Covid 19° facility Issues

COMES NOW, plaintiff _____, In proper, and herein above respectfully
moves This Honorable court for a Motion of Emergency TRO/permanent preliminary Injunction
per LR 7-4 (a)-(12(2)(3); per F.R.C.p 65(a), per 28 U.S.C ; sections 2283, 2284, *see
Declaration Attached @ exhibit #1, see ECF No. 93 . et. al.

This above is made and based on The following memorandum of points And Authorities

MR. Kentrell D. Welch 1030777
Plaintiff(s)
-vs-
Defendents
State actors Kelly Lyons, Nurse K, Jane doe, c/o
Cornnutt, T.M.i. Haut,
Medical directors Michael W~
officer Ihsan Azzam et al, ESP med dept
Ndoc agents, ~~~~~~~~~
State of Nevada et al.

FILED _____ ENTERED _____   RECEIVED _____ SERVED ON _____
COUNSEL/PARTIES OF RECORD
FEB 11 2021
CLERK US DISTRICT COURT
DISTRICT OF NEVADA
                                              DEPUTY

~STATES DISTRICT COURT
~RICT OF NEVADA

Case No.: 3:20-cv-0079-MMD-CLB
MR. Kentrell D. Welch 1030777

(1) N.R.C.P. 38(a)(b)
(2) RLUIPA 42 U.S.C. §§ 2000cc-1 to 2000cc-5
(3) (CRIPA) 42 U.S.C. §§ 1997 et-seq.

"unprecedented"
Covid 19 Failures
(Par III)

"NO COPY"

I, Kentrell D. Welch _____ HEREby Declare, the following:

(1) "Helling v. McKinney, 509 U.S. at 33.)(Estelle, v. Gamble, 429 U.S. at 105, 106.) Collwell v. Bannister, 763 F.3d 1060, 1063 - (9th cir 2014) Coleman v. Wilson, 912 F.supp 1282, 1319 (E.D. Cal 1995) (Jackson, 90 F.3d at 332.) (2012 U.S. App Lexis 23)

(2) "Walker v. Gomez, 370 F.3d 969, 974 (4th cir 2004) (Conn v. Gabbert, 526 U.S. 286, 290 (1999); and is merely, the device, for Enforcing Substantive provisions of the U.S.C.A, and Federal statutes, Crampton v. Gates, 947 F.2d 1418, 1420 (9th 1991) Gibbs v. cross, 160 F.3d 962, 965 - 3d cir 1998) (Imminent danger found, where officials allegedly, withheld Medical assistance, to I/m, who became ILL, after breathing particulates, from the Vent In cell) Andrews v. cervantes, 493 F.3d 1047, 1056-57 (9th cir 2007) (Imminent danger found where, alleged luck of Medical — screening process, for new inmates, led to Inmates, Infected with Contagious diseases.) U.S. v. Felipe, 188 F.3d 101, 108 (2d cir 1998) (courts MUST defer to legislative, and executive branch policies, designed to address "urgent problem? Involved In administering modern day prisons while "Upholding", prisoners, due proccess rts.) Nieto v. Kapoor, 268 F.3d 1208, 1216 (10th cir 2001) (medical director, acted under color of state law when, supervising employees based on Contractual "ministerial" obligations, to provide med-care, supervision, and training, of Contracted med. staff, state actors, through out, All Ndoc Freilities) Blankenship v. Manchin, 471 F.3d 523, 533 (4th cir 2006) (cognizable § 1983 claim — against. the State governor, In Individual capacity, because governor, Not entitled to qualified Immunity) Matthews v. Crosby, 480 F.3d - 1265, 1275 (11th cir 2007) the prison warden, not entitled to qualified Immunity, when requisitely Indifferent, to Repetitive prison violations, In clear violation, of established substantive predicates, per 8th Amends.) (In the words of Honorable Magistrates Judges Ellen ceisler, Joined Judge Mary H. Leavitt, termed prison Conditions "Kuf Kaesque", it's not so much, about the Insufficient training, Instead Its the "Insufficient" Protocol(s) In Place. See Jason v. Tanner, 938 F.3d 191 (5th cir 2019) (Dantzler v. Wetzel, 218 A.3d 519 (Pa. i mmwlth) 2019); 2019 Pa. Commw Lexis 859.) Daniel v. cook cnty (2016, CA7 Ill) 833 F.3d 728, 101 Fed. rules Evid serv 170.) United states v. Terrell Cnty (2006, MD Ga) 457 F.supp 2d 1359.) City of Boerne v. Flores

I Declare, under penalty, of perjury, per NRS 208.165, 28 U.S.C 1746, That the foregoing, Is true and Correct, as I have written It to be. Dated this ___7th___ day of ___Feb___, 20 21
In proper personam
Kentrell D. Welch   1030777   #

Exhibit (4)

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

mr Kentrell D WELCH 1030177     :   Case No.: 3:20 cv-00579-mmD-CLB

       Plaintiff,      :   DECLARATION/AFFIDAVIT FOR CLASS

       vs.              :   ACTION SUIT   ENTERED

All named, unnumed ESP State-
actors et. al.           :

       Defendant      :

"NO COPY"

RECEIVED / SERVED ON
COUNSEL/PARTIES OF RECORD

OCT - 5 2020

CLERK US DISTRICT COURT
DISTRICT OF NEVADA
BY: _____ DEPUTY

I, _____plaintiff_____, HEREBY DECLARE:

(1) That plaintiff is suffering extreme physical complication(s) of dual chronic Diseases RA complications. Inflamed swollen Joints, hip, back pain, due to bodily stress, extreme mental anguish, duress, anxiety, severe head aches, Insomnia, muscle atrophy From lack of yard, exercise From 23 hrs daily lockdown, hypertension, unknown psychological damage; causation of stress of being assaulted by officers or Inmates, as state ESP supry. custody, officials, Continue to Ignore plaintiff, Is at the mercy of this facility and Any unit or assailants who May choose to ATTACK. the Collective Intentional failure(s) of state ESP actors to Act or Intervene Is Causing plaintiff Wanton Infliction of Mental duress, Physical medical symptoms, unbearable strain psychologically, physically see Thompson v Carter, 284 F.3d 411 (2d Cir 2002)

(2) That state actors SRC/o Esquivel, Collard, Hulsey on unit, has Initiated harassment cell searches ongoing 48 hrs on unit, Conducting several on 9/29/20, (4x) This A.m after breakfast. cells (1-4) see unit 2B video visual, This is Intentional to further Incite Inmates against plaintiff, while officers are saying to Inmates, Thank cell #23, plaintiff(s) Current Cell on 2B, Chance of officers finding Someone's prison Alcohol prison batch, Is what will Incite possible violence against plaintiff state actors are deliberately Angering unit Vmis against Plaintiff with deadly Intent.
※ williams v. Beard (2007, CA3 Pa) 482 F.3d 637

-1-

ER087            ER087            ER087

*7/1/5*
*State Actors*
*Failure to follow*
*Covid mandates*

Exhibit 4

## INMATE REQUEST FORM

| 1.) INMATE NAME | DOC # | 2.) HOUSING UNIT | 3.) DATE *Weds.* |
|---|---|---|---|
| *Kentrell S. Welch* | *1030777* | *2B 23* | *9/9/20* |

**4.) REQUEST FORM TO: (CHECK BOX)**

___CASEWORKER    _✓_MEDICAL    ___MENTAL HEALTH    ___CANTEEN

___EDUCATION    ___VISITING    ___LAW LIBRARY

___LAUNDRY    ___PROPERTY ROOM    ___SHIFT COMMAND

_X_OTHER *operations*

✓ FILED ___ RECEIVED
___ ENTERED ___ SERVED ON
COUNSEL/PARTIES OF RECORD

OCT - 5 2020

CLERK US DISTRICT COURT
DISTRICT OF Nevada
BY___ DEPUTY
NO COPY

**5.) NAME OF INDIVIDUAL TO CONTACT:** *ESP Wardens Office, official/Security unit Warden (ESP Prison facility)*

**6.) REQUEST: (PRINT BELOW)** *Non. Wearing, refusal to use mask while serving food or Feeding Issue. We must all be accountable for our Actions; do you agree? At which collective Ag c/o's geci nea, s, John Doe adamant refusal to properly wear a Mask for refusal to wear a mask at all while serving my/our Food or serving trays, is placing me at this entire unit at an extreme unwanted health, safety risk. Kindly review the Clark county commissioners Board's emergency Covid 19 Directive 006 sec 1; NRS 241.023(1)(b). For the Dual benefit of all our Safety Collectively, Kindly notate to your unit, facility officers to ensure to properly wear the N95 mask coverings while In close proximity serving food et al. All these c/o actors who fail to comply with all statewide face covering mandates in place is, will be liable per 42 U.S.C sec. 1564 f. et seq 1*

**7.) INMATE SIGNATURE** *Kentrell Welch*    **DOC #** *1030777*

**8.) RECEIVING STAFF SIGNATURE** _____ **DATE** _____

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

### 9.) RESPONSE TO INMATE

_____

_____

_____

_____

_____

_____

_____

_____

_____

**10.) RESPONDING STAFF SIGNATURE** _____ **DATE** _____

**ER088**      *(23)* **ER088**      **ER088**

DOC - 3012 (REV. 7/01)

(1) Doc 3012 & 2X Doc 3097 Forms To
    Subsequent Ndoc facility at (NNCC)
    (Covid 19) facility Failures, Concerns
        Apr. 12th, 2020

**ER089**                    **ER089**                    **ER089**

(2-2)

## INMATE REQUEST FORM

| 1.) INMATE NAME | DOC # | 2.) HOUSING UNIT | 3.) DATE  Suns |
|---|---|---|---|
| Kentrell D. Welch | 1030777 | 7B 14 | 4/12 th/ 20 |

4. ) __REQUEST FORM TO__: (CHECK BOX)    ___MENTAL HEALTH    ___CANTEEN

___CASEWORKER    ___MEDICAL    ___LAW LIBRARY    ___DENTAL

___EDUCATION    ___VISITING    ___SHIFT COMMAND

___LAUNDRY    ___PROPERTY ROOM    _X_OTHER operations

5.) NAME OF INDIVIDUAL TO CONTACT: Active Warden of (NNCC) Core services Institutional leek

6.) REQUEST: (PRINT BELOW) NNCC officials, To whom It May Concern.

(1) Ongoing denial/failure of NNCC/Ndoc medical/Administrative Failures to provide me/us Inmates W/ "sought preventive measures" for the serious Health Risk to Contag the Novel Coronavirus by its officers staff et al. "CDC reports In recent studies: A significant portion of Individuals with Coronavirus lack symptoms ("asymptomatic") & That Even those who eventually develop symptoms ("pre-symptomatic") Can transmit the virus to others before showing symptoms. This means that the virus Can spread between people Interacting In close proximity" - for example, speaking, coughing or sneezing - even If those people are Not exhibiting symptoms. CDC recommends wearing cloth face coverings In public settings where other social distancing measures are hard -

7.) INMATE SIGNATURE  Kentrell D. ____    DOC # 1030777

8.) RECEIVING STAFF SIGNATURE  CB ___    DATE 4/17/20

**************************************************************************************************

### 9.) RESPONSE TO INMATE

10.) RESPONDING STAFF SIGNATURE _____    DATE _____

**ER090**          **ER090**          DOC E-3012 (REV. 7/01) **ER090**

(19)

# NEVADA DEPARTMENT OF CORRECTIONS
## GRIEVANT'S STATEMENT CONTINUATION FORM

NAME: Kentrell D. Welch     I.D. NUMBER: 1030777

INSTITUTION: NNCC 4/12/20 sun     UNIT #: 7B/4

GRIEVANCE #: Wardens Office     GRIEVANCE LEVEL: KB

GRIEVANT'S STATEMENT CONTINUATION:   PG. 1 OF 2

(g)
difficult to maintain. It is critical to emphasize That maintaining (6-Feet) Social distancing remains Important to slowing the spread of the virus; (CDC) Is additionally advising the use of simple cloth face Coverings to slow the spread of the virus & help people who may have the virus & do not Know It from transmitting It to others. This recommendation Complements and does-not replace the "President Trump Coronavirus Guidelines" for America, 30 days to Slow The spread ⬛, which remains the Cornerstone of our national effort to slow the spread of the Coronavirus. COVID-19 is caused by a New virus. There is much to learn about its transmission, severity & other features of the disease. Nevada Gov. Steve sisolak announces a state-of Emergency News Conference Thursday 3/12/2020. Cleanfrequently touched surfaces & objects daily (e.g., tables, countertops, light switches, doorknobs & cabinet handles, etial. For list of products with Environmental protection Agency (EPA)-approved emerging viral pathogens claims, maintained by the Amer. chemistry Council cntr for Biocide chemistries (CBC), is available at Novel coronavirus fighting products. Use Handsanitizer That Contains at least (60%) alcohol." "D.H.H.S more than 1,800 positive Cases, 46 Deaths reported In "Nevada". www.fox5vegas.Com/coronavirus virus.gov. the southernNV Health Dist. reminds people the medical Advisory Team (MAT) advising Nevada Governor Issued guidelines for Nevadas.

Original:     Attached to Grievance
Pink:      Inmate's Copy

# NEVADA DEPARTMENT OF CORRECTIONS
## GRIEVANT'S STATEMENT CONTINUATION FORM

NAME: Kentrell D. Welch.      I.D. NUMBER: 1030777

INSTITUTION: NNCC   4/17/20 sun.   UNIT #: 7 B # 14

GRIEVANCE #: Wardens office.      GRIEVANCE LEVEL: K B

GRIEVANT'S STATEMENT CONTINUATION:   PG. 2   OF 2

(10) NNCC administrative order of "optional guidelines" to It's staff, Contracted employees, & officers That They have "the personal choice to Wear face Masks or Not", (A) does Violate all Collective government (CBC)(CDC) President Trump and Nevada governor Sisolak guidelines per Coronavirus!

(11) This denial to provide me/us Inmates with 60% Alcohol based hand sanitizer, N95 or cloth(D.I)Industries Made face Covers; Is Full violation of My 42 U.S.C.s 8th Amendment rts- For deliberate Indifference. (12). This penological Health Risk Is "Excessive" In this Institutional setting as Im/we are In Contact daily In a Myriad of ways with staff, officers et. al.

(a) All preventive measure(s) Items Sought Is Warrented // (13). This Is a Early Notice and Warning That Civil suit will be Filed by my Family / Attorney; IF This dept Ndoc/NNCC medical does Not Remedy This ongoing Denial, based on my Ad-seg Isolation status.

(b) See: Pan X, chen D, Xia Y, et.al. Asymptomatic cases In a family cluster with SARS- (c) coV-2 Infection. The Lancet Infectious diseases 2020) Zou L, Ruan F, Huang M, et.al. SARS- coV-2 viral Load In upper respiratory specimens of Infected patients. The New England Jornal of Medicine, 2020; 382(12): 1177-1179. (1) See: Martinar v. Carey, Supra at 994.

(7) (3) See; (564 F. Supp 788) Farmer v. Brennan 511 U.S. 825 94.

(4) Vance v. peters, 97 F.3d 987 (7th Cir 1996 Remedy Sought; see grievance Filed!!

Original:      Attached to Grievance
Pink:      Inmate's Copy

"*ATTACHMENT*" (A)



**Steve Sisolak**
*Governor*

**Charles Daniels**
*Director*

**William Reubart**
*Acting Warden,*
*Ely State Prison*

**STATE OF NEVADA**
**Department of Corrections**

Northern Administration
5500 Snyder Ave.
Carson City, NV 89701
(775) 977-5500

Southern Administration
3955 W. Russell Rd.
Las Vegas, NV 89118
(725) 216-6000

# MEMORANDUM

Date: November 23, 2021

To: ESP STAFF & ESP Inmates

Subject: Ely State Prison Inmate Store (Canteen)

*EMERGENCY STAFFING LEVELS "*

Effective December 3rd 2021 all Ely State Prison inmates will be able to order packages once per month from Access SecurePak with a limit of $150.00. Inmates will not be required to dispose of unauthorized property prior to receiving their package. Due to emergency staffing levels stamps with a limit of $40.00 dollars biweekly, special orders (appliances), Batteries and Media will be the only Items Ordered from Ely State Prison Commissary (Canteen). The Biweekly Canteen Schedule that began Monday, September 20, 2021 will remain in effect. Media player pick up schedule for Segregation units/wings at ESP for Unit 1B, Unit 2, Infirmary and Unit 5A will also remain in effect. These temporary changes to OP 204 will remain in effect until staffing levels improve.

David Drummond, Associate Warden of Operations
Ely State Prison

cc: AWO
Shift Command
Main Control

Ely State Prison

AUG 1 0 2022

Grievance Coordinator

**ER093**

**ER093**

A.) "Improperly delivered" Death Row I/m's
Vunisi Siaosi # 63376 / A·23
"Blood pressure, Heart Med(s) etc.

B.) "Trainee cu nurse Shram To 1·3·3 —
MR Welch.

C.) ~Doc 1564 This Witheld by Esp Medical,
dept & Administration, unReturned Todate (2-6-2022)

D.) "Signed, Received" by Cntrl SRc/o Featherly
(Jan 16th, 2022) 1·3/4 Unit

**ER094**            **ER094**            **ER094**

## NEVADA DEPARTMENT OF CORRECTIONS
## __EMERGENCY__
### GRIEVANCE FORM

NAME: Kentrell O Welch.                I.D. NUMBER: 1030777

INSTITUTION: ESP (2x Dk 0097)          UNIT: 1.3.3

GRIEVANT'S STATEMENT: Substantial Operational, Administrative failures,
per AR(s) 600, 601, 602, 635; NRS 209.381)() on 14th, 2022 pm)
(1) on friday between (12 - 1 pm) Nurse Sisvam delivered several,
Kop's to me ; c/o Chamberlain present See video (12:30 - 55 pm)
(2) Nurse Sisvam gave me (600mg Ibu's & Heart, B/p medication) of,
"Another 1/m's" DentuRaD 1/M MR Vuniji SIAOSI # 63376;
In Violation of Medication distribution, Control, Security AR 635,
602, 601; NRS 209.131, 209.243, 40.670) (Unit 1-A.23) cont;

## SWORN DECLARATION UNDER PENALTY OF PERJURY

INMATE SIGNATURE: _____  DATE: 1-16-202 TIME: A.11

RECEIVING STAFF SIGNATURE: _____  DATE: _____ TIME: _____

SUPERVISOR COMMENT/ACTION TAKEN ON EMERGENCY GRIEVANCE: _____

SUPERVISOR SIGNATURE: _____ TITLE: _____ DATE: _____ TIME: _____

INMATE AGREES: _____ INMATE DISAGREES: _____

INMATE SIGNATURE: _____ TIME: _____ DATE: _____

FAILURE TO SIGN CONSTITUTES ABANDONMENT OF THE CLAIM.  A FORMAL GRIEVANCE MAY BE
PURSUED IN THE EVENT THE INMATE DISAGREES.

Original:    To inmate when complete, or attached to formal grievance
Canary:      To Grievance Coordinator when complete
Pink:        Inmate's initial receipt

**ER095**                    **ER095**                    DOC-1 **ER095**

# NEVADA DEPARTMENT OF CORRECTIONS
## GRIEVANT'S STATEMENT CONTINUATION FORM

NAME: Kentrell D. Welch    I.D. NUMBER: 1030777

INSTITUTION: ESP    UNIT #: 1-13-3

GRIEVANCE #: _____    GRIEVANCE LEVEL: Doc 1564

GRIEVANT'S STATEMENT CONTINUATION:    PG. 1 OF 2

(3) pursuant to (AR 740.03), with chance of a "triggered stroke", or Heart Complication(s)", Should I have taken MR Vanisi's, B/P, Heart medication, assumedly It was for me; does "Constitute" "personal Injury" of tort matter, which could have killed me or, Caused grave Injury or Bodily harm, per AR 630, 635) 1-16-2022

(4) Nurse Shram, delivering the "Wrong chronic care", serious Harm, to me, that's another chronic care I/m's Is Callous, reckless, dangerous, In Violation of my 8th, 14th Aments, For Requisite, Indifference to my Health, Well being & Safety. NRS 40-670.

(5) "Between (1-2pm) flR c/o Chamberlain was noticed to tell, cntrl sR c/o feathers, of Issue, to notice medical stuff to Come & remove Improper med's, for Death Row I/m Vanisi 1-14-23; which he promptly did at cntrl window after removing my, dinner tray. See (unit Video Jan 14, 2022, 1-2pm) op 457.

(6) Per AR 740.03; 740.08 # 11; AR 635 Constitutes Administrative, operational medical dept Failures of nurse Shram's ministerial, "+

Original:    Attached to Grievance
Pink:    Inmate's Copy

# NEVADA DEPARTMENT OF CORRECTIONS
## GRIEVANT'S STATEMENT CONTINUATION FORM

NAME: Kentrell D Welch.     I.D. NUMBER: 1030777

INSTITUTION: ESP     UNIT #: 1-13-3

GRIEVANCE #: _____     GRIEVANCE LEVEL: DOC 1564

GRIEVANT'S STATEMENT CONTINUATION:   PG. ___2___ OF __2__

medical, government duties to ensure, Kop's of Substantial,
Chronic Care Health meds, are delivered to the proper Inmates;
Constituting deliberate Indifference. per (AR 635, 602; NRS 40.670,
NRS 209.131; per 8th Amends. (Date of Incident Jan 14th 2022pm)
(A) "Remedie(s) Sought" per (AR 740.05, 1, 2, A, B, C, D
F-3-A) ① Immediate notice to medical Staff to pick up the
Improper Kop's; & to be delivered to Correct Inmate Vanisi; to
1A #23; ② Re-Call & Questioning of officers sre/o featherly &
4o Chamberlin, concerning being notified of Issue on Jan 14th,
2022 pm per op 332, 339, op457; ③ Re-Veiw of unit video,
& preservation of Video Stills of times (12:15-12:55 pm) of,
nurse Shram at cell @ med-Cart full of baskets of Kop's meds @
c/o Chamberlin. Also (Video around 1-2 pm) of c/o Chamberlin Collection
of tray, w/notice of Issue; ④ Questioning of sre/o featurly as to why her
Refused All day to answer cntrl button; ⑤ Revisal of ESP policies,
That nurse Shram Never delivers My Kops Again; ⑥ unspecified Monetary funds.

Original:    Attached to Grievance
Pink:        Inmate's Copy

# EXHIBIT C

Inmate Xiao Ye Bai # 1099896

DECLARATION: & DOCUMENTATION.

# EXHIBIT C

ER098                    ER098                    ER098

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

*3:20-CV-00079

KENTRELL WELCH,                    Case No. 3:21-CV-00136

　　　　　Plaintiff(s),

　　　V.

WILLIAM GITTERE, et al.,           DECLARATION OF XIAOYE BAI

　　　　　Defendant(s)

I, XIAOYE BAI hereby attest that the following statements are true and correct to the best of my knowledge.

1. I am over the age of 12 and are otherwise fully competent to testify to the facts contained in this DECLARATION. The statements contained in this Declaration, except where otherwise indicated to be upon information and belief, are based on my personal knowledge and experience.

2. In connection with the filing of this Declaration, I was incarcerated the same Administrative Segregation Unit (1B) with the Plaintiff (Mr. Welch) in this case and was contacted by him. This Declaration provides information and relevant documentation to be used in the Plaintiff's Injunction Motion and/or relating Reply.

3. I am not a named either Plaintiff or Defendant in the current action at this moment. But may consider furtive appearing as Joinder of Plaintiff under Rule 20 Fed. R. Civ. P.

4. I am an Prisoner current in custody of the Nevada Department of Prisons ("NDOC") at Ely State Prison ("ESP"). I've been previously filed Civil Rights complaint

Grievance Coordinator

(Case No. 2:20-CV-02192-RFB-EJY) as well and right before the Court answer my relevant Motion for Preliminary Injunctions (ECF No. 21), I've been further transferred here "ESP" in retaliation on November 19, 2021. Id

5. One of my civil claim is "NDOC" Prison Official Deliberate Indifference to my Serious Medical Need. My injury ankle has been examined and further recommended referral to Dr. Monroe (Foot & Ankle Specialist) for evaluation of possible surgery. Two Prison Treating Physicians has also filed via Email requested medical care. See Attachment (Dr. Bernades on 11/12/2021 and Dr. Hant on 01/13/2022) Id

6. Since I've been retaliatory transferred to the "ESP", the Warden of "ESP" placed me in Unit 1B which is Administrative Segregation without due Process. Furthermore, many of inmates (including me and Mr. Welch) repeated experiences on going constitutional violation (e.g. constant Denial or Delays our Telephone, Exercise, Showers and Medical Care.) resulted in I am suffering irreparable harm in the form of continual physical and mental pain and suffering and an increasing risk that my ankle will never be restored to its full usefulness. Id

7. the Warden of "ESP", after being informed of the violation through a medical report, kite (DOC-3012) and grievance failed to issue and/to remedy the errors, continue grossly negligence in supervising subordinates and allowed the continuance of unconstitutional acts.

I, XIAOYE BAI, Declare under Penalty of Perjury. Pursuant to NRS 53.045, NRS 207.105 and 22 U.S.C. §1746 that the foregoing is true and correct.

Executed this 22ᵀᴴ day of January, 2022

/s/ _____

Ely State Prison
XIAOYE BAI # 1093891
AUG 10 2022

Grievance Coordinator

**ER100**                    **ER100**                    **ER100**

*Covid. 19 issues*



## STATE OF NEVADA
### Department of Corrections

Acting PIO W.C. "Bill" Quenga:  wquenga@doc.nv.gov

## Press Release
For Immediate Release:
Feb. 10, 2022

### Nevada Department of Corrections lifts mask requirement; visitation to resume Monday

In accordance with Gov. Steve Sisolak's announcement Thursday to lift the statewide mask mandate, the Nevada Department of Corrections will no longer require masks for staff, offenders or visitors, effective immediately. The Department will also resume visitation beginning Monday, Feb. 14, 2022, for all institutions except Ely State Prison, where there is a current COVID-19 outbreak.
Visitors will not be required to wear masks; however all other mitigation measures including mandatory testing, barriers, social distancing and controlled group sizes are still in effect.
Visits must be scheduled at ndocvisitation.com.
Employees will continue with mandatory COVID-19 testing before shifts. Corrections officials will continue to monitor infection rates, and will require masks when outbreaks are detected.

*The Nevada Department of Corrections is committed to building a safer community by striving to incorporate progressive best practices in all aspects of corrections. NDOC houses more than 12,000 persons with felony convictions in 18 facilities statewide. For more information visit www.doc.nv.gov.*

**ER101**  1:25 pm  CCS Rowan  ESP
2-25-2022  1-B-3    **ER101**          **ER101**

**AFFIDAVIT OF:** ~~WELCH: Plaintiff~~

**STATE OF NEVADA** ) (1) Unit AiRBorne Contaign g Unit Inmates.

**COUNTY OF WHITE PINE** ) Sickness. unit (2B # 20)

## TO WHOM IT MAY CONCERN:

I, KENTRELL the undersigned, do hereby swear that all statements, facts and events within my foregoing Affidavit are true and correct of my own knowledge, information and belief, and to those, I believe them to be true and correct.

Signed under the penalty of perjury pursuant to NRS 208.165 :

1.) I AM OVER THE AGE OF 18 and otherwise fully Competent, to testify to THE facts hereIn This AFFidavit. Fed.R.EV.#102

2.) THAT, THE STATEMENts hereIn are Correct to THE best of, My Knowledge and From pERsonal ExpEriencc.F.R.EV.608(a)(b)

3.) THAT, THis AFFidavit Contains relevent material facts, to be utilized In Medical Case "MSJ" (2:19. CV. 01064)

4.) THAT, I suffered Extreme Rhumatoid, Hyperthyroid, H-pylor, Complicactions bodily physical pain on (9-10-2022) Sat-night.

5.) THAT New asian Nurse, and AFRican staff Wilkins, ("G") as, she calls self Conducted vitals at Cell between (7-8 pm) -RN-

6.) THAT between (Sept 1st-16th-2022), Various Inmates Caught, possible airborne bacterial Contaigen. Sickness.

7.) THAT Unit portor (2B # 4 Shiloh), was "Visably very Sick" Sweating over Food, Forced to Work for Four days.

8.) THAT ESP officials A.W.o Drummond[1], L.T Roman[2], ccsII Hernandez[3], Ruebart[4] Healtu chnck (9-14-2022) A.M., As I gave him Various symptom Concerns.

EXECUTED AT: Ely State Prison, this 14 Day of Sept. 20 22

BY: Kentrell D WELCH. NDOC# 1030777

~~Kentrell Dwle~~

(SIGNATURE)

ER102                          ER102                          ER102

(1 OF 2)

**AFFIDAVIT OF:** (Quality Affidavit)

STATE OF NEVADA ) (1) Severe Continued "Chronic Understaffing,
COUNTY OF WHITE PINE ) (2) officer(s) "Singelly Conduct Various Multi-
Facility Tasks Alone (Jan 2023)

**TO WHOM IT MAY CONCERN:**

I, Kentrell Welch the undersigned, do hereby swear that all statements, facts and events within my foregoing Affidavit are true and correct of my own knowledge, information and belief, and to those, I believe them to be true and correct.

Signed under the penalty of perjury pursuant to NRS 208.165 :

- "I, MR Kentrell d. Welch, am over the age of (18) and am, otherwise fully Competent to testify to facts herein Fed. R. EV. 102)

- "I, Am Currently housed Indefinitely In ad-seg/shu at "(ESP") Ely state prison unit 2B 20 via 5-19-2020-Jan 2023).

- "That on (Jan-16th-2023)(C/o Mujica), between (1-3 pm), Servs "dinner Alone. "Food 5 Trays, delivery Alone. 2B.

- "That on (Jan-18th-2023)(C/o Mujica 9 SR C/o Ricardo) servs, breakfast with tier Filthy. Trash, Food Spewed From Cell # 45; last night, violation oF AR 507, OP 490.1, 400's).

- "That on (Jan-18th-2023)(SR C/o Wheeler), does "Entire, "Canteen 9 "All" NV. Pkg deliveries "All" alone about (30-40 Bags) between (2-3 pm) C/o Gamber does 1 All Canteen 9 NV pkg's (2 A 8pm)

- "That on (Jan-18th-2023)(SR C/o Noriega) at (5:30 pm) unit Count. "While passing Roller phone to 2B #19 Ackerman, "omits verbally, he has to "Count (4-6) units Alone.

- "That since Dec. 8th-2022, Entire Facility has been locked down.)

EXECUTED AT: Ely State Prison, this 20 Day of Jan 20 23

BY: Kentrell Welch NDOC# 1030777

Kentrell Welch

(SIGNATURE )

Case: 25-4606, 01/05/2026, DktEntry: 12.1, Page 104 of 248
Case 3:22-cv-00557-MMD-CLB   Document 26   Filed 11/19/24   Page 32 of 73
Case 3:20-cv-00709-MMD-CLB   Document 47-2   Filed 08/09/21   Page 114 of 131

Exhibit 001

## NEVADA DEPARTMENT OF CORRECTIONS
## EMERGENCY
### GRIEVANCE FORM

NAME: Kentrel D. Welch   I.D. NUMBER: 1030777

INSTITUTION: NNCC/ Dzurilla dir. of medical (NDOC)   UNIT: 7 B / 4

GRIEVANT'S STATEMENT: Covid 19 is an Institutional emergency circumstance!!(Dzurilla did,
per vider medical directive AR/IP 6.00(s) preventive care, precautionary measures etc...

(1) As a Indigent I/M I would like to be provided with medical(N95 Mask, hand sanitizer)
Chronic diseases: Hyper Thyroid, Rheumatoid arthritis, periodontal Infection Gum Disease.

(2) (CDC states) covid 19 is a(s sort serious viral Infectious, rapidly evolving "Unknown Contagion",
Racing against time or running out of time; either when (HDSP) has already been Infected. This is —
vitally Important to ensure all precautionary measures are applied; Thx for you dep: NDOC
staff, officer, screening measures, but too many Unknowns about this Airborne plague —

### SWORN DECLARATION UNDER PENALTY OF PERJURY

INMATE SIGNATURE: Kentrell D. Welch   DATE: 4/6/20 mon   TIME: 9.4 m

RECEIVING STAFF SIGNATURE: _____   DATE: 4/6/20 TIME: 9:47

---

SUPERVISOR COMMENT/ACTION TAKEN ON EMERGENCY GRIEVANCE: per AR740 this
does not constitute a medical emergency — you can

SUPERVISOR SIGNATURE: M Mitchell   TITLE: RN/CN   DATE: 04/06/20 TIME: @ 1115

kite c specific requests or concerns for further

INMATE AGREES: _____   INMATE DISAGREES: X

INMATE SIGNATURE: Kentrell D. Welch   TIME: 12:51 pm   DATE: 4/6/20

FAILURE TO SIGN CONSTITUTES ABANDONMENT OF THE CLAIM. A FORMAL GRIEVANCE MAY BE
PURSUED IN THE EVENT THE INMATE DISAGREES.

Original:   To inmate when complete, or attached to formal grievance
Canary:   To Grievance Coordinator when complete
Pink:   Inmate's initial receipt

consideration re scheduling to be seen —

**ER104**                    **ER104**                    DOC-1564 (7/02)
**ER104**

Case: 25-4606, 01/05/2026, DktEntry: 12.1, Page 105 of 248
Case 3:22-cv-00557-MMD-CLB   Document 26   Filed 11/19/24   Page 33 of 73
Case 3:20-cv-00079-MMD-CLB   Document 47-2   Filed 08/09/21   Page 115 of 131

# NEVADA DEPARTMENT OF CORRECTIONS
## GRIEVANT'S STATEMENT CONTINUATION FORM

NAME: Kentrell D. Welch     I.D. NUMBER: 1030777

INSTITUTION: NNCC     UNIT #: 7814

GRIEVANCE #: (Dons Ill med-Supv Authority)     GRIEVANCE LEVEL:

GRIEVANT'S STATEMENT CONTINUATION:    PG. 1 OF 1

(3) CDC states domestic animals can become infected and as many people have pets. 4/6/20

(4) CDS states This "Air Borne Contagion" is a Extremely dangerous Respiratory virus. Look you all have Computer Access and Know very well the dark ugly Secrets of this virus and its Implications against Us All. I believe being provided with N95 MASK/Hand Sanitizer is Meritorial valid dual Medical preventive precautionary Measure; providing Us all with another effective measure against this Voracious virus/Plague. The medical Items make rational perological sense "please Use" professional Medical rational Judgment. "Please Do not" Disregard This "Excessive Risk" to Take the Simple medical precautionary — Measures Concerning; My Health and Its Preventive Care/Safety

(a) The record Indicates that the ndoc subsequently Ignores many Inmates plaintiffs Valid meritorious Medical Claims for Relief/special review, for personal bias and opinions. Erring medical Judgment Taken Into their/ya's own Conclusions; Instead of using professional medical rational Judgment on a Case to Case basis As Ndoc medical directive polices Set Forth see: Hartman v. Cal. dept of Corr. 707 F.3d 1114, 1127 (4th Ot 2013) THx For your effort/Attention In this matter.

Original:     Attached to Grievance
Pink:        Inmate's Copy

DOC – 3097 (01/02)

ER105            ER105            ER105

CSP

June 30, 2020

To Whom It May Concern:

Pursuant to AR 245 please complete form DOC 2578 Request for Reversal of Medical Charges. Reversals are not considered unless they are submitted in accordance with AR 245.

"AR 245 – Reversal of Medical Charges

445.01 Reversal of Medical Charges

1. Inmates requesting that assessed medical charges be reversed will be provided a DOC 2578 Request for Reversal of Medical Charges.

2. The instructions for completion are printed on the form.

3. When the completed DOC 2578 Request for Reversal of Medical Charges form is received (along with requisite inmate account statements) by the DONS/designee, it will be reviewed, investigated, and considered for approval".

All requests must be submitted within the time frames specified in the department's Administrative Regulation 258. Incomplete and requests more than 90 days after Date Posted **WILL NOT** be processed.

Thank you

Medical Administration



**ER106**                    **ER106**                    **ER106**

*Open Holland*
9/1/20 TUES

# NEVADA DEPARTMENT OF CORRECTIONS
## GRIEVANT'S STATEMENT CONTINUATION FORM

NAME: Kentrell D. Welch     I.D. NUMBER: 1030777

INSTITUTION: NNCC     UNIT #: 7B 74

GRIEVANCE #: ATTN: (Dons Ill med-Supv Authority)     GRIEVANCE LEVEL:

GRIEVANT'S STATEMENT CONTINUATION:     PG. 1  OF 1

(3) CDC states domestic animals can become Infected and as many people have pets. 4/6/20

(4) CDS states This "Air Borne Contagion" Is a Extremely dangerous Respiratory virus. "Look you all have Computer Access and Know very well the dark ugly Secrets of this virus and Its Implications against Us All. I believe being provided with N95 Mask/Hand Sanitizer Is Meritorial valid dual Medical Preventive precautionary Measure; providing Us all with another effective measure against this Volacious virus/plague. The medical Items make rational penological sense "Please Use" professional Medical rational Judgment, "Please Do Not" Disregard This "Excessive Risk" to Take the Simple Medical precautionary Measures Concerning; My Health and Its Preventive Cure/Safety

(a) The record Indicates that the Ndoc Subsequently Ignores many Inmates plaintiffs Valid meritorious Medical Claims for Relief/special Review, for personal bias and opinions. Erring medical Judgment taken Into thier/your own Conclusions; Instead of using professional medical rational Judgment on a Case to Case basis As Ndoc medical directive policies Set Forth see: Hartman v. Cal. dept of Corr. 707 F.3d 1114, 1127 (9th Cir 2013) THx For your effort/Attention In this Matter.

Original:     Attached to Grievance
Pink:     Inmate's Copy

Covid 19 Facility ISSUE: COO



# State of Nevada
# Department of Corrections

### INMATE GRIEVANCE REPORT

**ISSUE ID#**  20063130447

**ISSUE DATE:**  11/19/2021

| INMATE NAME | | NDOC ID | TRANSACTION TYPE | ASSIGNED TO |
|---|---|---|---|---|
| WELCH, KENTRELL SLIM | | 1030777 | RTRN_INF | MELINACASTRO |

| LEVEL | TRANSACTION DATE | DAYS LEFT | FINDING | USER ID | STATUS |
|---|---|---|---|---|---|
| IF | 02/16/2022 | | Granted | TBALTIERRA | INACTIVE |

### INMATE COMPLAINT

### OFFICIAL RESPONSE

Inmate Welch, Kentrell #1030777:

I am in receipt of your Informal Level Grievance #2006-31-20447 to which you claim the people employed at Ely State Prison are not wearing Personal Protective Equipment to the level of your standards. You continue to state COVID-19 poses a substantial risk of serious harm, health, and safety. Your remedy sought is memorandum all staff, officers, inmates, and contracted staff to comply with COVID-19 mandates.

Nevada Department of Corrections is within compliance of all COVID-19 protocols as directed by the Center for Disease Control and all State mandates. All employees of the Nevada Department of Corrections have been mandated to were N95 masks. There are several precautions put into place to protect you and all other inmates housed at Ely State Prison.

Grievance upheld, remedy partially upheld.

**GRIEVANCE RESPONDER**

KDW 4-15-2022

Report Name: NVRIGR
Reference Name: NOTIS-RPT-OR-0217.4
Run Date:  MAR-15-22 08:20 AM

Page 1 of 2

**ER108**                    **ER108**                    **ER108**

Log Number _2006 2| 30447_

## NEVADA DEPARTMENT OF CORRECTIONS
## INFORMAL GRIEVANCE

NAME: _Kentrell O. Welch_  I.D. NUMBER: _1030777_

INSTITUTION: _ESP_  UNIT: _1.b.5  1B-3_

GRIEVANT'S STATEMENT: ① _Substantial facility Covid 19 protocol dept,_
_Failure(s) per Nov 8th -2021 - Nov 14th -2021 et al._
② _Failures by ESP, It's officers or Contracted staff, officials,_
_to fully enforce Covid 19 ppe gear Compliance, N95 or cloth,_
_masks at all times, directly led to (10 X) or more cont;_

SWORN DECLARATION UNDER PENALTY OF PERJURY

INMATE SIGNATURE: _Kentrell Welch_  DATE: _11-15-21_ TIME: _A.M_

GRIEVANCE COORDINATOR SIGNATURE: _Coone_ DATE: _11/16/21_ TIME: _4:00pm_

GRIEVANCE RESPONSE: _____

_Doc Attached._

CASEWORKER SIGNATURE: _____ DATE: _2/16/22_

__√__ GRIEVANCE UPHELD ____ GRIEVANCE DENIED ____ ISSUE NOT GRIEVABLE PER AR 740  _Partially Upheld_

GRIEVANCE COORDINATOR APPROVAL: _Coone_ DATE: _2/16/22_

__√__ INMATE AGREES _____ INMATE DISAGREES

INMATE SIGNATURE: _Kentrell Welch_ DATE: _4-15-2022_

FAILURE TO SIGN CONSTITUTES ABANDONMENT OF THE CLAIM. A FIRST LEVEL GRIEVANCE MAY
BE PURSUED IN THE EVENT THE INMATE DISAGREES.

| | |
|---|---|
| Original: | To inmate when complete, or attached to formal grievance |
| Canary: | To Grievance Coordinator |
| Pink: | Ely State Prison receipt when formal grievance filed |
| Gold: | Inmate's initial receipt |

NOV 19 2021

Grievance Coordinator

DOC 3091 (12 / 01)

**ER109**            **ER109**            **ER109**

Log Number _____

# NEVADA DEPARTMENT OF CORRECTIONS
## INFORMAL GRIEVANCE

NAME: _____ I.D. NUMBER: _____

INSTITUTION: _____ UNIT: _____

GRIEVANT'S STATEMENT: _____

_____

_____

_____

_____

### SWORN DECLARATION UNDER PENALTY OF PERJURY

INMATE SIGNATURE: _____ DATE:_____ TIME: _____

GRIEVANCE COORDINATOR SIGNATURE: _____ DATE:_____ TIME: _____

GRIEVANCE RESPONSE: _____

_____

_____

_____

_____

CASEWORKER SIGNATURE: _____ DATE: _____

___ GRIEVANCE UPHELD ____ GRIEVANCE DENIED _____ ISSUE NOT GRIEVABLE PER AR 740

GRIEVANCE COORDINATOR APPROVAL: _____ DATE:_____

_____ INMATE AGREES _____ INMATE DISAGREES

INMATE SIGNATURE: _____ DATE: 4-15-2022

FAILURE TO SIGN CONSTITUTES ABANDONMENT OF THE CLAIM. A FIRST LEVEL GRIEVANCE MAY
BE PURSUED IN THE EVENT THE INMATE DISAGREES.

Original:        To inmate when complete, or attached to formal grievance
Canary:          To Grievance Coordinator
Pink:     Ely State Prison receipt when formal grievance filed
Gold:            Inmate's initial receipt

NOV 19 2021

Grievance Coordinator

ER110                          ER110                          DOC 3091 (42-01) ER110

# NEVADA DEPARTMENT OF CORRECTIONS
## GRIEVANT'S STATEMENT CONTINUATION FORM

NAME: Kenfell D. Welch     I.D. NUMBER: 1030777

INSTITUTION: ESP     UNIT #: 7-B-5

GRIEVANCE #: _____     GRIEVANCE LEVEL: 1/F

GRIEVANT'S STATEMENT CONTINUATION:   PG. 1 OF 1

officers; or Inmute(s) testing "positive" for Covid 19 that, caused q Varantine of 11-8-14-2021.

② These Failures entail wdoc protocol(s) as AR/OP(s) 604, 621, 319, 340, 341, 343, 339, *364, 443, 853; Also duly violates OSHA, Nosha 29 C.F.R title 1910; CRIP 42 USCG 1997d.sq.

④ ESP, Jane, John doe(s) et.al, has violated my Eighth, Amends, as Covid 19 poses a Substantial risk of Serious huving which has been duly disregareded, This specific risk to My, Healthy Safety; and I.e, one That has Also been a Serious, Threat to all similarlyhoused I/ms. per 740.03 generally.

⑤ Pursvant to the Wardens covid 19 unit/facility Mandates which, was duly violated p unadhered To, See Video of unit 6 Breakfast, dinner serving times between (Nov 8th-14th-2021) to See; how these "Specific Failures" took Place per OP 457, 263,420 all 'Remedyies Sought: Memorandum directing all staff, officers, Inmates, Contracted staff, to Comply with PPe, Covid 19 Mandates.

Original:   Attached to Grievance
Pink: State Prison Inmate's Copy

NOV 19 2021

Grievance Coordinator

DOC – 3097 (01/02)

ER111       ER111       ER111



# Nevada Department of Corrections
## Improper Grievance Memo

| | |
|---|---|
| TO: | Welch, Kentrell [0001030777] 1B 3 |
| FROM: | Tasheena Cooke, Associate Warden - Ely State Prison |
| DATE: | April 26, 2022 |
| RE: Improper Grievance # | 2006.31.30447 - Granted |

The attached grievance is being returned to you for the following reason(s):

**REJECTED - After correcting the deficiencies(s) listed below; you may re-submit your grievance at the same level unless specified. Failure to re-submit the grievance through the prescribed timeframe shall constitute abandonment.**

☐ Missing documents                                  ☐ More than one issue
☐ No harm/loss, action, or remedy                    ☐ Improper submission
☐ Not a KITE                                         ☐ Not signed or dated
☐ Missing inmate personal property claim form        ☐ Disciplinary appeal process/directly to warden
☐ Alterations                                        ☐ Failure to correct deficiencies
☐ Missing administrative claim form                  ☐ Untimely submission
☐ Continuation forms                                 ☐ Staff misconduct (IG Review Submitted)
☐ Other specify:

**NOT ACCEPTED - If not accepted due to any of the reasons in this box, the grievance may NOT proceed to the next level Per AR 740.03,5 and 740.04,G.**

☐ Non-grievable issues:
    ☐ State and federal court decisions            ☐ Parole Board actions and/or decisions
    ☐ State, federal and local laws and regulations  ☐ Lacks standing
☐ Untimely submission
☐ Inmate elected NOT to sign and date any grievance form
☒ Grievance was granted – ~~Inmate Welch,~~ you signed on 4/15/2022 and checked agreed.
☐ Abuse of Inmate Grievance Procedure
    ☐ A threat of serious bodily injury to a specific individual    ☐ Obscene, profane and derogatory language
    ☐ Specific claims or incidents previously filed by the         ☐ More than one (1) grievance per week,
       same inmate                                                  Monday through Sunday
    ☐ Other specify:

| | | | |
|---|---|---|---|
| Witness Signature | 5/2/22 Date | Inmate Signature | 5-2nd-2022 Date |

cc: Original – Inmate          5-12-2022. 11am.                    DOC-3098 (12/2021)
    Copy - Grievance File          rtnd ccs Castro.

written sticky she read you cunt
ER112 cause its dead as granted     ER112                        ER112

Log Number _____

## NEVADA DEPARTMENT OF CORRECTIONS
## FIRST LEVEL GRIEVANCE

NAME: Kentrell D. Welch.           I.D. NUMBER: 1030777

INSTITUTION: ESP                    UNIT: 1.13.3

I REQUEST THE REVIEW OF THE GRIEVANCE, LOG NUMBER 2006.513.0447 , IN A FORMAL MANNER. THE ORIGINAL COPY OF MY GRIEVANCE AND ALL SUPPORTING DOCUMENTATION IS ATTACHED FOR REVIEW.

SWORN DECLARATION UNDER PENALTY OF PERJURY

INMATE SIGNATURE: Kentrell D. Welch           DATE: 4-17-2022

WHY DISAGREE: (A) Since Apr-May 2020, ESP officials did show., reckless disregard to The serious Risks of Covid 19 vpon, ESP Ndoc population. In violation of AR(s) 604, 621; 442; violating my 8th Amends (461 F.supp.3d 261)
(1) on Feb 2nd, 2022 I did suffer an substantial Injury.,

GRIEVANCE COORDINATOR SIGNATURE: O.Coone           DATE: 4/26/22

FIRST LEVEL RESPONSE: _____

_____ Doc 3008 _____

_____

_____ GRIEVANCE UPHELD _____ GRIEVANCE DENIED _____ ISSUE NOT GRIEVABLE PER AR 740

WARDEN'S SIGNATURE: _____ TITLE: _____ DATE: _____

GRIEVANCE COORDINATOR SIGNATURE: O.Coone           DATE: 4/26/22

_____ INMATE AGREES _____ INMATE DISAGREES

INMATE SIGNATURE: _____ DATE: _____

FAILURE TO SIGN CONSTITUTES ABANDONMENT OF THE CLAIM. A SECOND LEVEL GRIEVANCE MAY BE PURSUED IN THE EVENT THE INMATE DISAGREES.

| Original: | To inmate when complete, or attached to formal grievance |
| Canary: | To Grievance Coordinator |
| Pink: | Inmate's receipt when formal grievance filed |
| Gold: | Inmate's initial receipt |

**ER113**                    **ER113**                    DOC 3093 (12/01) **ER113**

Log Number _____

## NEVADA DEPARTMENT OF CORRECTIONS
## FIRST LEVEL GRIEVANCE

NAME: _Kentrell D. Welch_____ I.D. NUMBER: _1032777_____

INSTITUTION: _ESP_____ UNIT: _1-12-3____

I REQUEST THE REVIEW OF THE GRIEVANCE, LOG NUMBER _2006.513.0407___, IN A FORMAL MANNER. THE ORIGINAL COPY OF MY GRIEVANCE AND ALL SUPPORTING DOCUMENTATION IS ATTACHED FOR REVIEW.

SWORN DECLARATION UNDER PENALTY OF PERJURY

INMATE SIGNATURE: _Kentrell D. Welch_____ DATE: _4-17-2022_

WHY DISAGREE: (A) _Since November 2020, ESP officials did show_
_careless disregard to the serious Risks of Covid 19 upon_
_ESP wide population, in violation of ARS) 604 67 1:4112;_
_violation Ninth Amendments (161 F.supp.3d 261)_
(1) _on February 2022 I did suffer an substantial Injury._

GRIEVANCE COORDINATOR SIGNATURE: _____ DATE: _____

FIRST LEVEL RESPONSE: _____

_____

_____ See ESP _____

_____

_____

_____ GRIEVANCE UPHELD _____ GRIEVANCE DENIED _____ ISSUE NOT GRIEVABLE PER AR 740

WARDEN'S SIGNATURE: _____ TITLE: _____ DATE: _____

GRIEVANCE COORDINATOR SIGNATURE: _____ DATE: _____

_____ INMATE AGREES _____ INMATE DISAGREES

INMATE SIGNATURE: _____ DATE: _____

FAILURE TO SIGN CONSTITUTES ABANDONMENT OF THE CLAIM. A SECOND LEVEL GRIEVANCE MAY BE PURSUED IN THE EVENT THE INMATE DISAGREES.

| Original: | To inmate when complete, or attached to formal grievance |
| Canary: | To Grievance Coordinator |
| Pink: | Inmate's receipt when formal grievance filed |
| Gold: | Inmate's initial receipt |

DOC 3093 (12/01)

**ER114**             **ER114**             **ER114**

# NEVADA DEPARTMENT OF CORRECTIONS —
## GRIEVANT'S STATEMENT CONTINUATION FORM

NAME: Kentrell D Welch    I.D. NUMBER: 1030777

INSTITUTION: ESP    UNIT #: 1·13·3

GRIEVANCE #: 2006.313·0447    GRIEVANCE LEVEL: First lvl

GRIEVANT'S STATEMENT CONTINUATION:    PG. 1 OF 2

pursuant to AR 740·03, #2; pursuant to the various, esp staff, employees, agents Failure to adorn ppe; N95, Cloth Masks; pursuant to statewide Covid 19 protocols; Constitutes) personal Injury of tort, and civil rts claim; arising directly out of acts, omits of ESP agents, officers, In violation of AR 443, 604, 621; O.P 604.1, 604.2; NR 541.- 035; 209·243; 209·246; 40·670; 209·371) *see my Medical, Files, Institutional records AR 639; 560, 570

(2)
"prison officials, violates Incarcerated-detainees 8th amends; as T.S. Cooke, W, Ruebart, D, Drummond, D.o.n·s, Ihan Azzam, Dir's of Medical et.ed; IF he/she exposes Inmates to the; unconst·l Conditions of Confinement; That are likely to, Cause serious Illness & Needless Suffering; Specifically, exposure to I/m's, to the Serious Communicable disease, of Covid 19. Helling, 509 U·S at 33;

Original:    Attached to Grievance
Pink:        Inmate's Copy

DOC – 3097 (01/02)

ER115          ER115          ER115

# NEVADA DEPARTMENT OF CORRECTIONS
## GRIEVANT'S STATEMENT CONTINUATION FORM

NAME: Kenfrell O. Welch.   I.D. NUMBER: 1030777

INSTITUTION: ESP   UNIT #: 1·13·3

GRIEVANCE #: 8006.313.0447   GRIEVANCE LEVEL: First lvl

GRIEVANT'S STATEMENT CONTINUATION:   PG. 2 OF 2

(3) "I've suffered severe bodily pains, Concomitant Migraines, fatigue, weakness, dizzyness; while sustaining critical; further unknown bodily Injuries; pursuant to "my" pre-existing three chronic disease(s); Full Damages unknown; which could have Caused me Death; and loss of my, precious Life pursuant to AR 740.03; 740.08 #11 Well before the NDOC 2022, Memorandum by gov s, sisolak; and prison Bd. of. Commr's, ordered rescinding of PPE, S; N95, Cloth Masks; many ESP, NDOC officers Continually did; place My Life, Health In Jeparody by Failure to adorn These, medical reasonable ppe, N95, Cloth Masks. See Kites Attached Remedie(s) Sought: AR 740.05, 1, 2. (1) Resolve Unsafe or, unsanitary Conditions of Confinement; (2) revise dept guidelines or, Implement Covid 19 Safety rules; to prevent further violations; (3) protect My self, Inmates from prohibited, Illicit acts; (4) unspecified Monetary damages; (5) Address deprivations of statutory civil rts Issues.

Original:   Attached to Grievance
Pink:   Inmate's Copy

DOC – 3097 (01/02)



# State of Nevada
# Department of Corrections

### INMATE GRIEVANCE REPORT

**ISSUE ID#**  20063132069

**ISSUE DATE:**  01/10/2022

| INMATE NAME | NDOC ID | TRANSACTION TYPE | ASSIGNED TO |
|---|---|---|---|
| WELCH, KENTRELL SLIM | 1030777 | RTRN_INF | MELINACASTRO |

| LEVEL | TRANSACTION DATE | DAYS LEFT | FINDING | USER ID | STATUS |
|---|---|---|---|---|---|
| IF | 04/25/2022 | 5 | Partially Granted | TBALTIERRA | INACTIVE |

| INMATE COMPLAINT |
|---|

| OFFICIAL RESPONSE |
|---|

Inmate Welck, Kentrell #1030777,

I am in receipt of your Informal Level Grievance Log #2006-31-32069 to which you claim Officers were not wearing their N95 masks. You claim even after you, along with other inmates, requested for the Officers to put on the masks, they still refused. Your remedy is to have your witnesses verify your claims and admonish all officers to follow facility COVID protocol.

All Nevada Department of Corrections employees have been directed to follow the guidelines for COVID-19 protocols that were set forth on a fluid basis to reflect the pandemics ebbs and flows. Any employee that is seen not wearing proper personal protective equipment are redirect to do so. You have provided what your potential witnesses may have observed. Due to the information provided your grievance is partially granted.

GRIEVANCE RESPONDER

Report Name: NVRIGR
Reference Name: NOTIS-RPT-OR-02174
Run Date:   APR-25-22 09:20 AM

Ely State Prison

Page 1 of 2

JUN 3 0 2022

MAY 1 0 2022

Grievance Coordinator

**ER117**                      **ER117** Grievance Coordinator                **ER117**

Log Number 2002. 31 32069

# NEVADA DEPARTMENT OF CORRECTIONS
# INFORMAL GRIEVANCE

NAME: Kentvell D. Welch    I.D. NUMBER: 1030777

INSTITUTION: ESP    UNIT: 1.B.3

GRIEVANT'S STATEMENT: pursuant to AR(s) 443, 604, 621, 740.03,
339, op 457; NRS 209.243, 209.246; NRS 40.670
(1) 12-31-2021 between (5:30 - 6:45 A.M) See video breakfast serving.
(2) C/o Andrew Serv's Food with N95 with mask on.
(3) C/o Herring serving tray's "refuses to adorn N95 mask";

**SWORN DECLARATION UNDER PENALTY OF PERJURY**

INMATE SIGNATURE: _____ DATE: 12-31-2021 TIME: 8 A.M

GRIEVANCE COORDINATOR SIGNATURE: Cooke DATE: 1/6/22 TIME: 9:00 am

---

GRIEVANCE RESPONSE: _____

_See Attached_

CASEWORKER SIGNATURE: _____ DATE: 4/26/22

Partially Granted

___ GRIEVANCE UPHELD _____ GRIEVANCE DENIED _____ ISSUE NOT GRIEVABLE PER AR 740

GRIEVANCE COORDINATOR APPROVAL: Cooke DATE: 4/25/22

✓ INMATE AGREES _____ INMATE DISAGREES

INMATE SIGNATURE: _____ DATE: 5-2nd-2022

FAILURE TO SIGN CONSTITUTES ABANDONMENT OF THE CLAIM. A FIRST LEVEL GRIEVANCE MAY
BE PURSUED IN THE EVENT THE INMATE DISAGREES.

Original:    To inmate when complete, or attached to formal grievance
Canary:      Grievance Coordinator
Pink:        Inmate's receipt when formal grievance filed
Gold:        Inmate's initial receipt

# NEVADA DEPARTMENT OF CORRECTIONS
## GRIEVANT'S STATEMENT CONTINUATION FORM

NAME: Kentrell D. Welch    I.D. NUMBER: 1030777

INSTITUTION: ESP    UNIT #: 1-B-3

GRIEVANCE #: 2006-313-2069    GRIEVANCE LEVEL: 1/F

GRIEVANT'S STATEMENT CONTINUATION:    PG. 1 OF 2

4) At tray receipt I politely "requested c/o John doe Herring to adorn N95; he stated: It's in my pocket & continued feeding w/o It.

5) Similarly housed I/m's Reed #2; Harris #3 asked John doe to, put on N95 or Cloth mask; who are Material witnesses. 12-31-2021

6) c/o John doe Herring begin remarks of cryers, complainers, mask police (in vio of 339) see "video times" 5:30-6:45 am; & 8:15-8:45 Am.

7) c/o John doe Herring at tray retrival; I asked his name & he said; uh FUCK you is my name, c/o Andrews present; In violation of AR 339; 740.09

8) Cntrl SR c/o Mercado begin a "Verbal abusive trinde" about, why was I calling him, talking about a mask, he wouldn't tell his officer anything, you're crazy, are you alright; In regards to my request to admonish his officer In vio, lution of AR 332, 339, 740.09    cont nxt pg →

9) At 8:30 a.m LPN snow present to conduct blood labs, I asked, c/o Herring to bag up if he wouldn't adorn mask; he stated:;

Original:    Attached to Grievance
Pink:    Inmate's Copy

Ely State Prison

JAN 1 0 2022

Grievance Coordinator

Ely State Prison

JUN 3 0 2022

Grievance Coordinator DOC – 3097 (01/02)

ER119    ER119    ER119

# NEVADA DEPARTMENT OF CORRECTIONS
## GRIEVANT'S STATEMENT CONTINUATION FORM

NAME: Kentrell D. Welch    I.D. NUMBER: 1030777

INSTITUTION: ESP    UNIT #: 1-B-3

GRIEVANCE #: 2006-313-2069    GRIEVANCE LEVEL: 1/F

GRIEVANT'S STATEMENT CONTINUATION: PG. 2 OF 2

The door is there, your mask is on, you'll be OK; clearly in hearing of Lpn Snow & c/o Amal who adorned their N95 mask; see video 8:15 - 8:45 A.M (NRS 208.145)

10.) pursuant to (AR740.03) by actual prejudice & risk of getting Novuen Covid 19 by refusal of officer herring's prohibited acts, omits; constitutes un-dept created personal injury of Administrative & operational failures in violation of my 8, 14th Amends; pursuant to AR(s) 443, 604, 621.   12-31-2021 a.m.

11.) Remedie(s) Sought: "(1) I/m's #2, Reed, #4 Harris questioned, to verify these issues occurred; officers herring, Andrew & Amal, (2) Re-called to witness of c/o herring refusal to adorn N95; (3) Recall-of Lpn Snow; as to c/o herring's acts, statements at blood-draw(8:15-8:45a.m @ c/o Amal who was in hearing & there;
4) Recall of sRc/o Mercado as to his acts, statements (security issue;
5)a "Admonish all officers, to follow facility Covid protocol, whether they, feel like it or not; pursuant to 740.05; op457 guidelines.

Original:    Attached to Grievance
Pink:    Inmate's Copy

Ely State Prison
JAN 1 0 2022
Grievance Coordinator
ER120

Ely State Prison
JUN 3 0 2022
Grievance Coordinator
ER120

DOC – 3097 (01/02)
ER120

Log Number 2006 31 32069

# NEVADA DEPARTMENT OF CORRECTIONS
## INFORMAL GRIEVANCE

NAME: Kentvell D. Welch    I.D. NUMBER: 1030777

INSTITUTION: ESP    UNIT: 1.3.3

GRIEVANT'S STATEMENT: Pursuant to AR(s) 443, 604, 621, 740.03,
.339, op 457; NRS 209.243, 209.246; NRS 116.670
1) 12-31-2021 between (5:30 - 6:45 A.m) served breakfast serving.
2) C to Andrew Serv's Food with N95 wHt musk on.
3) C/o Herring serving tray's refuses to adorn N95 mask.)

**SWORN DECLARATION UNDER PENALTY OF PERJURY**

INMATE SIGNATURE: Kentvell D. Welch    DATE: 12-31-2021 TIME: 8 A.m

GRIEVANCE COORDINATOR SIGNATURE: _____ DATE: _____ TIME: _____

GRIEVANCE RESPONSE: _____

_____

_____

_____

_____

CASEWORKER SIGNATURE: _____    DATE: _____
Partially Granted

____ GRIEVANCE UPHELD ____ GRIEVANCE DENIED ____ ISSUE NOT GRIEVABLE PER AR 740

GRIEVANCE COORDINATOR APPROVAL: _____    DATE: 4/2-/22

✓ INMATE AGREES _____ INMATE DISAGREES

INMATE SIGNATURE: Kentvell Welch    DATE: 5-2nd-2022.

FAILURE TO SIGN CONSTITUTES ABANDONMENT OF THE CLAIM. A FIRST LEVEL GRIEVANCE MAY
BE PURSUED IN THE EVENT THE INMATE DISAGREES.

| Original: | To inmate when complete, or attached to formal grievance |
| Canary: | To Grievance Coordinator |
| Pink: | Inmate's receipt when formal grievance filed |
| Gold: | Inmate's initial receipt |

Ely State Prison

Ely State Prison

JUN 3 0 2022

JAN 1 0 2022

Grievance Coordinator

Grievance Coordinator

ER121    ER121    ER121

DOC 3091 (12 / 01)



# Nevada Department of Corrections
# Improper Grievance Memo

| | |
|---|---|
| TO: | Welch, Kentrell  [0001030777]   1B 3 |
| FROM: | Tasheena Cooke, Associate Warden - Ely State Prison |
| DATE: | May 10, 2022 |
| RE: Improper Grievance # | 20063132069 - 1st Rejection, First level |

The attached grievance is being returned to you for the following reason(s):

---

**REJECTED - After correcting the deficiencies(s) listed below; you may re-submit your grievance at the same level unless specified.** Failure to re-submit the grievance through the prescribed timeframe shall constitute abandonment.

| | | | |
|---|---|---|---|
| ☐ | Missing documents | ☐ | More than one issue |
| ☐ | No harm/loss, action, or remedy | ☒ | Improper submission – resubmit at the first level with all forms attached. |
| ☐ | Not a KITE | ☐ | Not signed or dated |
| ☐ | Missing inmate personal property claim form | ☐ | Disciplinary appeal process/directly to warden |
| ☐ | Alterations | ☐ | Failure to correct deficiencies |
| ☐ | Missing administrative claim form | ☐ | Untimely submission |
| ☐ | Continuation forms | ☐ | Staff misconduct (IG Review Submitted) |
| ☐ | Other specify: | | |

---

**NOT ACCEPTED - If not accepted due to any of the reasons in this box, the grievance may NOT proceed to the next level Per AR 740.03,5 and 740.04,G.**

☐ Non-grievable issues:

  ☐ State and federal court decisions  ☐ Parole Board actions and/or decisions

  ☐ State, federal and local laws and regulations  ☐ Lacks standing

☐ Untimely submission

☐ Inmate elected NOT to sign and date any grievance form

☐ Grievance was granted

☐ Abuse of Inmate Grievance Procedure

  ☐ A threat of serious bodily injury to a specific individual  ☐ Obscene, profane and derogatory language

  ☐ Specific claims or incidents previously filed by the same inmate  ☐ More than one (1) grievance per week, Monday through Sunday

  ☐ Other specify:

---

| Witness Signature | Date | Inmate Signature | Date |
|---|---|---|---|
| | | | 6-24-2022 |

JUN 3 0 2022

Ely State Prison
Grievance Coordinator

cc: Original – Inmate
    Copy - Grievance File

DOC-3098 (12/2021)

**ER122**  **ER122**  **ER122**

Log Number  31.32069

## NEVADA DEPARTMENT OF CORRECTIONS
## FIRST LEVEL GRIEVANCE

NAME: Kentrell D. Welch.    I.D. NUMBER: 1030777

INSTITUTION: Esp    UNIT: 1B3

I REQUEST THE REVIEW OF THE GRIEVANCE, LOG NUMBER 2006-813-2069, IN A FORMAL MANNER. THE ORIGINAL COPY OF MY GRIEVANCE AND ALL SUPPORTING DOCUMENTATION IS ATTACHED FOR REVIEW.

SWORN DECLARATION UNDER PENALTY OF PERJURY

INMATE SIGNATURE: Kentrell D-elle    DATE: 6-24-2022

WHY DISAGREE: 1.) IVE Suffered Substantial bodily Injuries from, Contacting highly Volatile Covid 19 Contaign on 2-2-2022 Constituting personal Injury Per AR 740.03 op 604.1; 604.2
2.) SAME Remedies Sought per 740.05.) op 457 (NRS 171

GRIEVANCE COORDINATOR SIGNATURE: OCoone    DATE: 6/29/22

FIRST LEVEL RESPONSE: See Attached.

_X_ GRIEVANCE UPHELD _____ GRIEVANCE DENIED _____ ISSUE NOT GRIEVABLE PER AR 740

WARDEN'S SIGNATURE: _____    TITLE: WARDEN    DATE: 11/09/22

GRIEVANCE COORDINATOR SIGNATURE: Hernandez CCNII    DATE: 11/9/22

_____ INMATE AGREES __✓__ INMATE DISAGREES

INMATE SIGNATURE: Kentrell D-elle    DATE: 11-17-2022

FAILURE TO SIGN CONSTITUTES ABANDONMENT OF THE CLAIM. A SECOND LEVEL GRIEVANCE MAY BE PURSUED IN THE EVENT THE INMATE DISAGREES.

| Original: | To inmate when complete, or attached to formal grievance |
| Canary: | To Grievance Coordinator |
| Pink: | Inmate's receipt when formal grievance filed |
| Gold: | Inmate's initial receipt |

Ely State Prison

JUN 3 0 2022

Grievance Coordinator

**ER123**    **ER123**    DOC 3095 (12/04)    **ER123**

Log Number _____

## NEVADA DEPARTMENT OF CORRECTIONS
## FIRST LEVEL GRIEVANCE

NAME: Kentrell D Welch    I.D. NUMBER: 1030777

INSTITUTION: ESP    UNIT: 133

I REQUEST THE REVIEW OF THE GRIEVANCE, LOG NUMBER 2006-813-2064, IN A FORMAL MANNER. THE ORIGINAL COPY OF MY GRIEVANCE AND ALL SUPPORTING DOCUMENTATION IS ATTACHED FOR REVIEW.

SWORN DECLARATION UNDER PENALTY OF PERJURY

INMATE SIGNATURE: _____ DATE: 6-24-2022

WHY DISAGREE: 1.) IVE suffered substantial bodily Injury from contracting highly volatile Covid 19 contaign on 2-2-2022 constituting personal Injury per AR740.03 op604.1, 604.2

2.) SAME Remedies sought per 740.05) op437/NR5171.

GRIEVANCE COORDINATOR SIGNATURE: _____ DATE: 6/29/22

FIRST LEVEL RESPONSE: _____

_____ GRIEVANCE UPHELD _____ GRIEVANCE DENIED _____ ISSUE NOT GRIEVABLE PER AR 740

WARDEN'S SIGNATURE: _____ TITLE: _____ DATE: _____

GRIEVANCE COORDINATOR SIGNATURE: _____ DATE: _____

_____ INMATE AGREES _____ INMATE DISAGREES

INMATE SIGNATURE: _____ DATE: 11-17-2022

FAILURE TO SIGN CONSTITUTES ABANDONMENT OF THE CLAIM. A SECOND LEVEL GRIEVANCE MAY BE PURSUED IN THE EVENT THE INMATE DISAGREES.

| Original: | To inmate when complete, or attached to formal grievance |
| Canary: | To Grievance Coordinator |
| Pink: | Inmate's receipt when formal grievance filed |
| Gold: | Inmate's initial receipt |

Ely State Prison

JUN 3 0 2022

Grievance Coordinator

ER124                    ER124                    DOC 3095 (12/01)    ER124

# State of Nevada
# Department of Corrections

## INMATE GRIEVANCE REPORT

**ISSUE ID#**  20063132069

**ISSUE DATE:**  01/10/2022

| INMATE NAME | NDOC ID | TRANSACTION TYPE | ASSIGNED TO |
|---|---|---|---|
| WELCH, KENTRELL SLIM | 1030777 | RTRN_L1 | WREUBART |

| LEVEL | TRANSACTION DATE | DAYS LEFT | FINDING | USER ID | STATUS |
|---|---|---|---|---|---|
| 1 | 11/07/2022 | 4 | Granted | ANGARCIA | INACTIVE |

### INMATE COMPLAINT

### OFFICIAL RESPONSE

Inmate Welck, Kentrell #1030777,

I am in receipt of your Firstl Level Grievance Log #2006-31-32069 to which you claim Officers were not wearing their N95 masks and you sufferd injury due to their negligence.

You have provided no documentation in regards to sustantial bodily injury. Furthermore you were appropriatly answered at the Informal level.

All Nevada Department of Corrections employees were directed to follow the guidelines for COVID-19 protocols that were set forth by the director of medical. As you well know these standards are fluid and a reflection of the pandemics ebbs and flows.  Any employee that were seen not wearing proper personal protective equipment were redirected to do so.  Your grievance was partially granted at the Informal level. COVID is no longer an issue

Remedy noted Grievance upheld you have exhausted the grievance process

GRIEVANCE RESPONDER

Report Name: NVRIGR
Reference Name: NOTIS-RPT-OR-0217.4
Run Date:   NOV-07-22 04:53 PM

Page 1 of 5

**ER125**                    **ER125**                    **ER125**

LOG NUMBER: 2006 3132069

## NEVADA DEPARTMENT OF CORRECTIONS
## SECOND LEVEL GRIEVANCE

NAME: Kentrell D. Welch.          I.D. NUMBER: 1030777

INSTITUTION: ESP          UNIT: 1·B·3·

I REQUEST THE REVIEW OF THE GRIEVANCE, LOG NUMBER 2006· 313·2069 ON THE SECOND LEVEL. THE ORIGINAL COPY OF MY GRIEVANCE AND ALL SUPPORTING DOCUMENTATION IS ATTACHED FOR REVIEW.

SWORN DECLARATION UNDER PENALTY OF PERJURY

INMATE SIGNATURE: Kentull D Welch          DATE: 5-2nd-2022-

WHY DISAGREE: (1) I seek to Exhaust and Complete The Informal, AR740 Procedure pursuant to All protracted Covid 19 Issues; ongoing within ESP; Ndoc facilities. NRS41031;41.0322 (2) See Attorney General's memorandum of Government argument; of Significant Infection, 460 F.Supp.3d 73; 2020 U.S.Dist.Lex/55)

GRIEVANCE COORDINATOR SIGNATURE: J Coone          DATE: 5/6/22

SECOND LEVEL RESPONSE: _____

_____ Dec 3008 _____

_____

_____ GRIEVANCE UPHELD _____ GRIEVANCE DENIED _____ ISSUE NOT GRIEVABLE PER AR 740

SIGNATURE:_____ TITLE:_____ DATE:_____

GRIEVANCE COORDINATOR SIGNATURE: J Coole          DATE: 5/10/22

INMATE SIGNATURE: _____ DATE: _____

## THIS ENDS THE FORMAL GRIEVANCE PROCESS

| | |
|---|---|
| Original: | To inmate when complete, or attached to formal grievance |
| Canary: | To Grievance Coordinator |
| Pink: | Inmate's receipt when formal grievance filed |
| Gold: | Inmate's initial receipt |

Ely State Prison          Ely State Prison

MAY 1 0 2022          JUN 3 0 2022

Grievance Coordinator

ER126 Grievance Coordinator    ER126    Grievance Coordinator    DOC 3054 (12/01)

ER126    ER126    ER126

# NEVADA DEPARTMENT OF CORRECTIONS
## GRIEVANT'S STATEMENT CONTINUATION FORM

NAME: Kantrell D Welch   I.D. NUMBER: 1030777

INSTITUTION: ESP   UNIT #: 1 @ 3

GRIEVANCE #: 2006.313.2069   GRIEVANCE LEVEL: 2nd lvl

GRIEVANT'S STATEMENT CONTINUATION:   PG. 1 OF 1

Same Remedy Sought.

Original:   Attached to Grievance
Pink:   Inmate's Copy.

Ely State Prison

Ely State Prison

JUN 3 0 2022

MAY 1 0 2022

Grievance Coordinator

Grievance Coordinator

**ER127**   **ER127**   DOC – 3097 (01/02)   **ER127**

LOG NUMBER: _____

# NEVADA DEPARTMENT OF CORRECTIONS
## SECOND LEVEL GRIEVANCE

NAME: Kentrell D. Welch                    I.D. NUMBER: 1030777

INSTITUTION: Esp                    UNIT 1·3·3·

I REQUEST THE REVIEW OF THE GRIEVANCE. LOG NUMBER 2006· 313· 2069 ON THE SECOND LEVEL. THE ORIGINAL COPY OF MY GRIEVANCE AND ALL SUPPORTING DOCUMENTATION IS ATTACHED FOR REVIEW.

**SWORN DECLARATION UNDER PENALTY OF PERJURY**

INMATE SIGNATURE: Kentrell D. Welch                    DATE: 5-2nd-2022-

WHY DISAGREE: (1) I seek to Exhaust and Complete The Informal, AR740 procedure pursuant to All protracted Covid 19 Issues; ongoing within ESP; Ndoc facilities. NRS 41031; 41.0322 (2) See Attorney General's memorandum of Government argument; of Significant Infection, 460 F.supp.3d 73; 2020 U.S.Dist.(nv155)

GRIEVANCE COORDINATOR SIGNATURE: _____ DATE: 5/11/22

SECOND LEVEL RESPONSE: _____

_____ Doc 3018 _____

_____

_____

_____

_____ GRIEVANCE UPHELD _____ GRIEVANCE DENIED _____ ISSUE NOT GRIEVABLE PER AR 740

SIGNATURE:_____ TITLE:_____ DATE: _____

GRIEVANCE COORDINATOR SIGNATURE: _____ DATE: 5/10/22

INMATE SIGNATURE: _____ DATE: _____

## THIS ENDS THE FORMAL GRIEVANCE PROCESS

Original:    To inmate when complete, or attached to formal grievance
Canary:      To Grievance Coordinator
Pink:        Inmate's receipt when formal grievance filed
Gold:        Inmate's initial receipt Ely State Prison

MAY 1 0 2022

Grievance Coordinator

# NEVADA DEPARTMENT OF CORRECTIONS
## EMERGENCY
### GRIEVANCE FORM

NAME: Kentrell D. Welch     I.D. NUMBER: 1030777

INSTITUTION: ESP (2x Dc(3097's)) UNIT: 8-A-5

GRIEVANT'S STATEMENT: Pursuant to Emergency Covid 19 Issues per AR(s) 630, AR 443, AR(s) 604, 621 clause(s) "Airborne Contaign." "Presumed "Faulty" AG Card rapid Test's or Improper handling & storage of Test's; Rei Covid19 tests 1-3-3 Feb 2nd, 2022 (11am) (Pursuan Remedies Sought; Request for Immediate Re-Test (w) Rapid Test for definite positive or Negative Results; for definite determination "If" Negative Immediate Removal back to I.B. unit; (Cont Remedies Se) on Feb 2nd, 2022 around (11am) Lpn Tech's now Conducted;

## SWORN DECLARATION UNDER PENALTY OF PERJURY

INMATE SIGNATURE: Kentrell D. Welch     DATE: 2-3rd 2622 TIME: 12pm

RECEIVING STAFF SIGNATURE: _____     DATE: 02/03/2022 TIME: 1:10pm

SUPERVISOR COMMENT/ACTION TAKEN ON EMERGENCY GRIEVANCE: Not an emergency. Kite through normal channels.

SUPERVISOR SIGNATURE: Sgt. _____ TITLE: Sgt. DATE: 2/3/22 TIME: 1:45 pm

INMATE AGREES: _____ INMATE DISAGREES: X

INMATE SIGNATURE: _____ TIME: 8pm DATE: Feb 5th, 2022

FAILURE TO SIGN CONSTITUTES ABANDONMENT OF THE CLAIM.  A FORMAL GRIEVANCE MAY BE PURSUED IN THE EVENT THE INMATE DISAGREES.

Original:     To inmate when complete, or attached to formal grievance
Canary:     To Grievance Coordinator when complete
Pink:     Inmate's initial receipt

c/o Tolbert In Cntrl upon Rtrn Feb 5th, 2022
coffee, lighter c/o Cruz rtnd to cell
dropped on by c/o 5     8pm
8-A-5.

**ER129**     **ER129**     **ER129**

DOC-1564 (7/02)

# NEVADA DEPARTMENT OF CORRECTIONS
## GRIEVANT'S STATEMENT CONTINUATION FORM

NAME: Kantrell O Welch    I.D. NUMBER: 1030777

INSTITUTION: ESP.    UNIT #: 8.A.5

GRIEVANCE #: T.B.D.    GRIEVANCE LEVEL: Doc 1564

GRIEVANT'S STATEMENT CONTINUATION:    PG. ___1___ OF ___2___

A Guard rapid Test's on unit 1B; Also 1A, 2A, B (2-2-2022)
(3) All test's were "haphazardly Thrown", "heaped by hundreds,
In 1 Medical Foot basin see Video 1B(11-12pm)per AR 400's
(4) Covid 19 Corona virus Is "Airborne", deadly Infectious,
highly Contagious, presenting Imminent, present Risk of,
Ireparable harm, bodily Injuries or death pursuant to 8th, 14th,
Amends, NRS 406.70; 209. 209. 243; 209. 246
(5) In Almost (3 yrs) here at esp I've not tested positive ⌀
Suddenly I'm said positive; but either 1.B Similarly,
housed I/m's 1·B.#2; 1·B.#4, nor 1·B.#48, 1·B·24 In,
whom Paper Legal work Is, Was often exchanged with,
Them, yet Neither Came back positive by dealing with,
Me & documents by, To, From us All; Is dubious at best.
(6) pursuant to (AR 740·03) My Said positive Test results,
Constitutes Viable personal Injury, Substantial Irreparable,
bodily Injury of tort degree; with Chance of loss of,

Original:    Attached to Grievance
Pink:    Inmate's Copy

# NEVADA DEPARTMENT OF CORRECTIONS
## GRIEVANT'S STATEMENT CONTINUATION FORM

NAME: _Kentrell O. Welch_   I.D. NUMBER: _1030727_

INSTITUTION: _ESP_   UNIT #: _8.A.5_

GRIEVANCE #: _T.B.D._   GRIEVANCE LEVEL: _Doc 1564_

GRIEVANT'S STATEMENT CONTINUATION:   PG. _2_ OF _2_

My Life, deteriorated Respiratory health, psychological, nuerological damage; Causation of acts, omits ESP 9, operational, Administrative, Governmental functions 3) dept failures Concerning, Covid 19 protocol's within, ESP, Nev·dept·of·corr, facility etc.

(7) "Whether the A-G card's rapid Test's are "Faulty," "Swabs or liquid," Is faulty, or Covid Test 9 materials or storage being Causation; of So Many positive's Result's, Is yet to be determined or Known.

(8) Pursuant to (AR 740·05, 1, 2, A, B, C, D, E, F-3-A; AR 443, 604, 621; NRS 209.243; 209.246; 40.670; "Remedies Sought," are As Follows: (1) Immediate Revision of Ndoc policies, "granting," "ReTesting for definite positive or negative result's, before unit Re-Movals within "dual tests" within Ag card Frames 30min's; (2) → "Immediate "Re·Test" of rapid Test on 8·A·5 for definite positive, or Negative result's; (3) Immediate Subb. of Issue to Ndoc I.G's of C 4 Notis; (4) Immediate Removal From 8 A, "If negative," (5) Unspecified Monetary damages.

Original:   Attached to Grievance
Pink:   Inmate's Copy

# NEVADA DEPARTMENT OF CORRECTIONS
## EMERGENCY
### GRIEVANCE FORM

NAME: _Kentrell O. Welch_  I.D. NUMBER: _1030777_

INSTITUTION: _ESP - IXDOC 3097-_  UNIT: _1-13-13_

GRIEVANT'S STATEMENT: _I.) Pursuant to AR(s) 443, 604, 621; AR 105, 153 "Covid 19 Cause:"_
_1)" Accordingly, In regard's to Esp, All prior-current Volumious Covid 19,_
_outbreak's, Positive Testing sick Inmates', Re-Instatement of the,_
_Mandatory Covid 19 N95 or Cloth Mask, seem's penologically wise, rationaile._
_2) I priorly "Contacted Covid 19", assumedly by officers Failures to adorn;_
_N95 Mask's on unit, serving Food etc. 2-2-2022. See Medical files & dept files;_
_3) "valantine Isolation" From (2-2-2022 - 2-12-2022 ARs 560, 639_
_4)" Similarilily housed I/m Winston Reed # 1-13- #2, Called Medical;_

## SWORN DECLARATION UNDER PENALTY OF PERJURY

INMATE SIGNATURE: _Kentrell D. ____  DATE: _2-16-2022_ TIME: _10 A.m._

RECEIVING STAFF SIGNATURE: _____  DATE: _____ TIME: _____

SUPERVISOR COMMENT/ACTION TAKEN ON EMERGENCY GRIEVANCE: _Not An_
_Emergency File Thru proper Channel_

SUPERVISOR SIGNATURE: _____  TITLE: _Lt_ DATE: _2/16/22_ TIME: _1108_
_L.T Ridgway._

INMATE AGREES: _____  INMATE DISAGREES: _✓_

INMATE SIGNATURE: _Kentrell D ____ TIME: _11:12_ DATE: _2-16-2022_

FAILURE TO SIGN CONSTITUTES ABANDONMENT OF THE CLAIM. A FORMAL GRIEVANCE MAY BE
PURSUED IN THE EVENT THE INMATE DISAGREES.

Original:   To inmate when complete, or attached to formal grievance
Canary:   To Grievance Coordinator when complete
Pink:   Inmate's initial receipt

**ER132**                    **ER132**                    **ER132**
                                                          DOC-1564 (7/02)

## NEVADA DEPARTMENT OF CORRECTIONS
## EMERGENCY
### GRIEVANCE FORM

NAME: Kentrell D. Welch    I.D. NUMBER: 1030777

INSTITUTION: ESP. - 1x Doc 3097 - J.)    UNIT: 1-3-3

GRIEVANT'S STATEMENT: Pursuant to AR(s) 443, 604, 621, AR 105, 153 Covid 19 Cause.
Accordingly, In regards to Esp's "All prior-Current Voluminous Covid 19,
outbreaks, Positive Testing Sick Inmates: Re-Instatement of the
Mandatory Covid 19 N95 or Cloth Mask, Seems penologically wise plotionable.
I priorly "Contacted Covid 19", assumedly by officers failures to adorn;
N95 Masks on Unit, serving food etc. 2-2-2022. See Medical files D-dept. files;
9 vafantine Isolation" from (2-2-2022 - 2-12-2022 ARs 560, 639
Similarity housed Y/m Winston Reed # 1-3-#2, Called Medical;

### SWORN DECLARATION UNDER PENALTY OF PERJURY

INMATE SIGNATURE: Kentrell D. Welch    DATE: 2-16-2022 TIME: 10 A.M

RECEIVING STAFF SIGNATURE: _____ DATE: _____ TIME: _____

SUPERVISOR COMMENT/ACTION TAKEN ON EMERGENCY GRIEVANCE: Not   An
Emergency File Thru Proper Channel

SUPERVISOR SIGNATURE: _____ TITLE: LT DATE: 2/16/_ TIME: 1108
L.T Ridgney.

INMATE AGREES: _____ INMATE DISAGREES: ✓

INMATE SIGNATURE: Kentrell D. Welch TIME: 11:18 DATE: 2-16-2022

FAILURE TO SIGN CONSTITUTES ABANDONMENT OF THE CLAIM.  A FORMAL GRIEVANCE MAY BE
PURSUED IN THE EVENT THE INMATE DISAGREES.

Original:    To inmate when complete, or attached to formal grievance
Canary:    To Grievance Coordinator when complete
Pink:    Inmate's initial receipt

**ER133**            **ER133**            **ER133**
                                          DOC-1564 (7/02)

## NEVADA DEPARTMENT OF CORRECTIONS
## GRIEVANT'S STATEMENT CONTINUATION FORM

NAME: Kentvell D Welch.          I.D. NUMBER: 1030777

INSTITUTION: ESP          UNIT #: 1.3.3

GRIEVANCE #: T.B.D.          GRIEVANCE LEVEL: DOC 1564

GRIEVANT'S STATEMENT CONTINUATION: PG. 1 OF 1

Emer. Mandawn lastnight; I was In Extreme bodily pain, running, very dangerously high Fever, with Throwing up; Found Covid 19, "positive" & Removed From unit, around (10 pm) to Unit 8 A/B per AR 630; AR(s) 443, 604, 621, op 457.

B) Officer's SRC/o Williams, c/o Richards & Grave shift, "mulatto" (CN/RN) Jane doe did, 1.) 2.) 3.) handle testing; Removal protocol see unit logs, medical notes etc.

3) "It's penologically unjustified," to Continue to allow ESP officers, to have Choice of adorning covid 19, or Cloth masks; which does, constitute Wanton obduracy of deliberate Indifference to "my", Health & All Similarity unit/ facility Inmates," In violation of AR 443, 604, 621; NRS 209.131; NRS 209.371; NRS 40.670.

4.) ESP It's officials, agents, officers; do Knowingly & Unreasonably duly, disregard an objectively Intolerable risk of harm to My Health, Life, Wellbeing & Continues to do so, see (2020 U.S. Dist. Lexis 4.)

5.) Remedies Sought: "Re-Instute ESP order's Memorandum," For All C/o's, Staff to adorn N95/cloth Covid 19 Face Masks (740.05, 1, 2, A-b)

Original:     Attached to Grievance
Pink:          Inmate's Copy

## INMATE REQUEST FORM

| 1.) INMATE NAME            DOC # | 2.) HOUSING UNIT | 3.) DATE |
|---|---|---|
| Kentrell D. Welch   1030777 | 1·3·3 | 2-16-2022 |

4. ) __REQUEST FORM TO:__  (CHECK BOX)          ___MENTAL HEALTH          ___CANTEEN

___CASEWORKER          ___MEDICAL          ___LAW LIBRARY          ___DENTAL

___EDUCATION          ___VISITING          ___SHIFT COMMAND

___LAUNDRY          ___PROPERTY ROOM          ✓OTHER operations, core services Issue!

5.) __NAME OF INDIVIDUAL TO CONTACT:__ Assoc. Warden of operations David Drummond

6.) __REQUEST:__  (PRINT BELOW) A)"Re-Issue Covid 19 "N95, Cloth Masks Memorandum please!

I) Humbly Requested sir, Can you Re-Issue facility Mandate for All staff; unit officers, facility nursing /R/N, M/H personnel; adorn N95 or Cloth covers, At All times, pursuant to Covid 19 & ongoing "Covid 19 outbreaks" (AR's 443,604, 621)

II)" I contacted Covid 19, (2-2-2022), & went q'varantine 8·A·5·b 2·2·2022 - 2·12·2022.

III)" Similarily housed y/m Reed 1·3·2 "Emer-Mandowned", last Night, gravelly SICK, Thrawing up, body pain, dangerously high Fever, Removed to unit 8A/13 10 pm

IV) your Cooperation sir; would be Appreciated, Penologically Rationale THx!

7.) INMATE SIGNATURE _Kentrell D Welch_          DOC # __1030777__

8.) RECEIVING STAFF SIGNATURE __Scw Will.__          DATE __2-16-22__

*****************************************************************

### 9.) RESPONSE TO INMATE

THE GOVENOR HAS CANCELLED THE STATE MASK MANDATE IF YOU WOULD LIKE TO BE ISSUED A NEW MASK WE WILL GET YOU ONE

10.) RESPONDING STAFF SIGNATURE _Weiland_          DATE __2-18-22__

5pm c/o Williams.
Feb 19th, 2022

**ER135**                    **ER135**          DOC - 5012 (REV. 7/01)

**ER135**

Covid 19
Issues

## INMATE REQUEST FORM

| 1.) INMATE NAME | DOC # | 2.) HOUSING UNIT | 3.) DATE |
|---|---|---|---|
| Kentrell O. Welch. | 1030777 | 1.3.3 | 2-16-2022 |

4. ) REQUEST FORM TO: (CHECK BOX)          ___MENTAL HEALTH     ___CANTEEN

___CASEWORKER          ___MEDICAL          ___LAW LIBRARY     ___DENTAL

___EDUCATION          ___VISITING          ___SHIFT COMMAND

___LAUNDRY          ___PROPERTY ROOM     ✓OTHER _operations, core services Issue_

5.) NAME OF INDIVIDUAL TO CONTACT: Assoc. Warden of operations David Drummond

6.) REQUEST: (PRINT BELOW) A)" Re-Issue Covid 19 N95, Cloth Masks Memorandum please!
Humbly Requested siR, Can you Re-Issue facility Mandate For All staff;
unit officers, facility nursing /R/N, M/H personnel; adorN N95 or Cloth covers,
At All times, pursuant to Covid 19 & ongoing "Covid 19 outbreaks" (AR's 443, 604, 621)
II)" I Contacted Covid 19, (2-2-2022), & Went q varantine 8-A-5-b 2-2-2022- 2-12-2022.
III)" Similarily housed I/m Reed 1-3-2 Emer-Mandowned, last Night, gravelly SICK,
Throwing up, body pain, dangerously high Fever, Removed to unit 8A/B 10 pm
IV) your Cooperation siR; would be Appreciated, penologically rationale THX!

7.) INMATE SIGNATURE _Kentrell O. Welch_     DOC # 1030777

8.) RECEIVING STAFF SIGNATURE _S c/o Will._     DATE 2-16-22

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

### 9.) RESPONSE TO INMATE

THE GOVENOR HAS CANCELLED THE STATE MASK MANDATE
IF YOU WOULD. LIKE TO BE ISSUED A NEW MASK WE WILL
GET YOU ONE.

10.) RESPONDING STAFF SIGNATURE _S c/o Will_     DATE 2-18-22

5pm c/o williams.          Weiland
Feb 19th, 2022

**ER136**          **ER136**          **ER136**

DOC - 3012 (REV: 7/01)

GOVERNOR oF STEVE SISOLAK; and
prison Bd. oF commr's
Aaron Ford, Charles Daniels. etcl.
Exuc. Chamber. Capital complex
101 North Carson Street
Carson City, NV, 89701    (3-7th 2022)

MR KENTRELL D. WELCH 1030777
Ely State prison p.o. Box 1989
Ely, Nevada, 89301.
A)      Cnty of white pine

(REFERENCE ...... ... ...F No 10)
2.) "Re-Issue" Covid 19 MASK,
MANdate ut ESP. Immediately!
3.) Notice given pursuant to
28 U.S.C § 5th, 14th Amends.
4.) NRS 41.035; NRS 209.371,
NRS 40-670.) (1 oF 4)
(DECLARation/Affidavit of Notice
N.R.C.p 5(b) § NRS Affirmation/Derlation
Enclosed.

"IN RE: Covid 19 "MASK Removal" NDoc Memorandum". 2022

3) PlEASE USE professionAL, medical rationale Judgment,
please Do not disREgard this "ExCessive RISK" § Resume,
The simple Medical preCautionary Measures oF Health Care,
preventive Safety Measures Concerning Covid 19 at ESP.
pursuant to AR(s) 604, 621; 443, NRS 209.131, 209.161,
NRS 209.511; OSHA, NOSHA Federal regulations title 29 U.S.C § title-
1910; NRS 209.371) 'See United States Attorney Generals Memorandum-
of Government argument of significant Infraction at correctional-
Facilities. (460 F.Supp.3d.73 (2020 U.S. Dist. Lexis 5)

) Governor sisolak et.al, you All Act under color of Law, with-
Full Requisite Culpability of Knowledge That 'Removal' of the-
ESP Covid 19 MASK, Cloth MASK Mandate; does Knowingly
Create and unreasonably Sujective, objective Intolerable Risk-
oF ExCessive Risk of Harm or Death To My LiFe § All similarily,
housed Incarcerated Men-Human beings at ESP; while Creating
InHUMANE Conditions oF Confinement, "w/o" penological Justifica-
tion, Continuing to do so In violation oF My 4, 8th, 14 Amends.
'SEE (C.D.C) Interim Guidence on Management of Coronavirus-
disEASE at Facilities 2019, In Correctional § Detention Facilities-
(2020 U.S. Dist. Lexis 4); Also Helling, 509 U.S. at 31; (461 F. Supp-
3d. 261; Turner v Safely 428 U.S at 78)

) You DenY "Me" § "US" All Equal protections, Immunities § —
privilege To adequate Humane conditions of confinement as,
united States CitiZeus, In Wanton obduracy, For rts secured-
To All Citizens In all territories of the United States per 14th
Amends. SEE Gordon v. City of orange Cnty 888 F.3d 1118, 1124.25 (9th cir 2018
Kingsley v. Hendrickson, 135 Supreme Court 2466 (2015)

* REMEdy Sought: RE-Issue Covid 19 MASK Mandate At ESP FOR All
STAFF, Agents, officers § Contracted Medical personnel 740.03; 740.05-
1, 2, A, B, C, D; (W.H.O - (459 F.Supp.3d 418) Gritchen V.
254 F.3d 807, 812 (9th cir 2001)

ER137    ER137    ER137

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

MR Kenfeld. Weka

Plaintiff,

vs.

Ruchard et al.

Defendant

Case No.: 3:22-CV-00557-

DECLARATION/AFFIDAVIT FOR CIVIL CLASS
ACTION SUIT

I, MARK A HUDSTON A 57239 , HEREBY DECLARE:

I AM AN INCARCERATED PERSON IN THE N.D.O.C SYSTEM AND HAVE BEEN THROUGHOUT THE ENTIRE "COVID 19" PANDEMIC. DURRING THAT TIME I WITNESSED N.D.O.C EMPLOYEES FAIL TO IMPLEMENT THE C.D.C. GUIDELINES. THE EMPLOYEES/ADMINISTRATION REFUSED TO FOLLOW SIMPLE INSTRUCTORS LIKE FACE MASHES, LATEX GLOVES, AND/OR THE USE OF HAND SANITISER FOR MONTHS, UNTILL WELL AFTER MOST OF THE INMATES HAD BEEN INFECTED. THIS DISREGARD FOR THE HEALTH AND WELL BEING OF THE INMATE POPULATION OF N.N.C.C. WAS DEMENSTRATED EVERY DAY BY EVERY OFFICER TO VARRYING DIGREES. AS N.D.O.C SUSPENDED THE VISITATION OF FRIENDS AND FAMILY DURRING THIS TIME FROM THE ONLY CONTACT THE INCARCERATED HAD WITH THE "OUTSIDE" WAS THROUGH N.D.O.C. STAFF IT IS RESS-ONABLE TO BELIVE THE CONTAMINION WAS BROUGHT INTO THE N.D.O.C CORRECTION CENTERS BY THE STAFF THAT LEFT AND RETURNED EACH DAY CONSTINTLY BEING EXPOSED TO THE GENERAL POPULATION THEN BRINGING THE COVID BACH INTO THE INSTITUTI TO EXPOSE THE INMATES. TO THE VIROUS. TIME AND TIME AGAIN, THIS ACTION BY N.D.O.C STAFF

-1-

ER138                     ER138                     ER138

is DIRRECTLY RESPONSIBLE FOR THE DEATHS OF N.D.O.C INMATES THAT PASSED AWAY DO TO COVID INFECION AS NDOC STAFF REFUSED TO COMPLY WITH THE C.D.C. GUIDELINES EVEN THOUGH N.D.O.C IMPLEMENTED A HAND SANITISER ASSEMBLY PLANT INSIDE THE N.N.C.C FACILITY IT STILL TOOK A LANTHY TIME TO MAKE IT AVALIABLE TO INMATES AND EVEN THEN NOT IN QUANTITS FOR EACH PERSON TO BE SUPPLYED. DURRING THE PANDEMIC I EVEN WORKED AS A SANTAION PORTER RESPONSIBLE FOR WIPEING DOWN SURFACES WITH BLEACH TO PREVENT THE SPREAD OF THE VIROUS. N.D.O.C SUPLYED US WITH BLEACH UNTILL THEY STOPPED PAVIDING BLEACH AND REPLACED IT WITH STANDRDAN CLEANING SUPPLYS THAT WERE LESS EFFECTIVE IN KILLIN THE VIROUS. N.D.O.C'S ACTIONS THROUGH OUT THE PANDEMIC HAVE DEMINSTRATED A DISSREGARD FOR THE INMATE POPULATON

I DECLARE UNDER PERJURY THAT THE FOREGOING IS TRUE AND CORRECT AS I HAVE WRITTEN IT TO BE.

DATED THIS ___3RD___ DAY OF ___OCTOBER___, 20_24_.

MARK A KILOMIN

IN PROPRIA PERSONA
#57781

N.N.CC PO BOX 7000

CARSON CITY NV. 89702

ER140

ER140

ER140

pls copy both sides 1-5
of ea. sheet.

Ex



ER141

ER141

ER141





- Project Recap
- Data Findings
- Projections
- Policy Findings and Recommendations

ER142

ER142

ER142







_MR Kentrell D. Welch_

(Name)

_10.30.777_

(ID No.)

Northern Nevada Correctional Center
Post Office Box 7000
Carson City, NV 89702

In Proper Person

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

_MR Kentrell D. Welch_,

Petitioner,

vs.

_Charles daniels et al._,

Respondents.

Case No.: _3:22-cv-00557-MMD-CLB_

_motion of Reply, via: ECF no. 21, 7, 9_ )

COMES NOW, _plaintiff_ , in his proper

person, and submits the instant _Affirmative Defenses, Objections F.R.C.P 56_ in the

above-entitled action.

The instant Motion is based upon all applicable rules of this Court, all papers and pleadings

on file herein, as well as the following Memorandum of Points and Authorities.

Respectfully submitted this _17th_ day of _Nov_ , 20_24_.

_Kentrell D. Welch_

In Proper Person

ER146                    ER146                    ER146

(1)

(A)          DEFENDENTS:

• Each defendant is sued Individually. At All, times Material In This Complaint, each defendant, acted undercolor of LAW.

• William Roebart, as "ChiefWarden" of (ESP), and, In That Capacity, Is Charged with the responsibility, of administering the entire Esp Institution.

• David Drummond, as (AWO), Assoc. Warden of. ops, at (ESP), and In that Capacity Is responsible For, the general Supervison, training etc; Also Is advisor, of Institutional discipline.

• Tasheena Sandoval Cooke, as (A.W.P), Assoc. Warden. of. programs. And In that Capacity Is duly, responsible For the administering of the entire Esp, Institution, Including All Control units.

• Charles Daniels, as (Ndoc.DIR.OF.OPS), director, of operations In That Capacity. "Is charged with, the responsibility of administering: CARe, Custody, daily Ndoc operations of All Ndoc Facilities." Pursuant, to (18 U.S C 94041), and (28 C.F. R9 Subpt.Q) with, ensuring That all: Contractual, express, Implied or, Ndoc employers adhere to all Nev. Const. arts, locAL, Federal and Ndoc polices are carried out; for Institutional responsibilities etc.

Steve Sisolak, as "governer of Nevada," and 1/2 of Nv. Bd. prison, Comm'r's pursuant to Nv. Const. art 15 5, 6, And In personal; capacity. Is charged with the Government duties: Management, and Control of All "state, Federal penal Correctional Facilities; Throughout Nevada. NRS 209.10/; 209.12/; 209.651; 209.141.

The Attorney general Aaron Ford, of Nevada, pursuant to, Nev. Const. art(s) 1, 5, 6 § 19; (18 u.s.c § 4001, In personal, capacity. Is charged with responsibility with the Management, Control of "All State, Federal Correctional Institutions In and; Throughout The state of Nevada. NRS 209.141; 209.081; 209.075; 209.051; 209.041; 209.244; AGO 96-24 (9-5-1996).

DR Ihan Azzam Ph.d; M.D, pursuant to The Medical, obligatutes "MAltadeclaration", In That Capacity." Is duly, responsible per Government duties to ensure: Contracted Medical, Mental health, dental, Is provideded adequately to All similarly; housed Inmates, Throughout Nevada CORR. facilities per Contract; expressed, Implied State agreements pursuant to NRS 209.077; 41.035; 40.670; Chief Medical officer of Nevada Institutions.

— Intentionally Left Blank —

Cont →

## MEMORANDUM OF POINTS AND AUTHORITIES

1.) plaintiff comes now, by & through himself as (pro-se) litigant, in reply, to defts motion to dismiss pursuant to F.R.Cvp 12(b)(6).

2.)                (Introduction:)

Defts claims that the complaint should be dismissed in it's entirety, is improper and incorrect as follows:

3.) plaintiff claims are material due to the statistical reports, by the CDC and NV dept. of health/safety, confirming their failures of officials, officers, freestaff employees to take, adequate steps of prevention of the novel coronavirous, in it's facilities. plaintiff points out ("Second!") how defts, caused him physical irreparable, deleterious harms and how, defts violated const.l predicates for: custody, health, supervision, wellbeing. finally: Defts concede that there is caselaw supporting, his claims against defts and why their claims for (Q.i) qualified immunity should be precluded at this time.

                ( Factual allegations of Disputed Material facts )

4.)

plaintiff was at all times isolated from the outside public, with no socializing with the public, except the public, stateactors who manned Ely State prison units/, housing areas.

5.) SR c/o adams, SR c/o cory Rowbey's et al. intentionally exposed, plaintiff to covid 19 by their aggregate failures to adorn's N95, PPE gear while working on unit 4 June 2020. plaintiff became so ill he couldn't get out of bed to put out a food tray leading to starvation over a week. Ide 3:20 cv.00079, ECF no's 52, 54, 56-1; 82, 93, 95, 98; Also 2:19 cv.01243, ECF no's.

(2)

ER149                    ER149                    ER149

6

March - Apr 2020: Covid 19 Epidemic sweep through Ndoc, facilities, as well as nationwide, plaintiff was only given a hand, made "orange cloth mask" (six months) later, after his transfer from NNCC to ESP 3-5-2020. Masks given out july 2020.

7) It's well documented Evidence that ESP officers, officials, willfully chose "Not to comply" with Ndoc ARs/OPs 604, 621, also Nv. dept. of health-safety, World healthorg & CDC guides, for prevention of infectious disease Id. case no. (460 F. supp. 3d. 73; (2020 U.S. Dist. Lexis 5).

8) Between May. 2020 - Feb. 2022 ESP officials refused to, provide virex II hand sanitizer at ESP, but allowed Inmates, c (LLCC and NNCC) to obtain It at No Cost. ESP officials, put Sanitizer on Canteen List and Sell It, denying plaintiff, It, due to his (Indigent Status), Constituting inequal treatment dissimilar to similarly housed Ipni's, while violating temban, on Cruel unusual punishment. Id Canteen List Dec 2020 - feb 2021.

9) Idc Camera footage from Initial quarntine unit 7A/3 at ESP, and operations, will show area's & defts aggregate failures, between March-June 2020, Jan-feb 2021-2022.

10) Idc video Camera footage from ESP Culinary food-prep area, and throughout facility grounds will expose defts gross failures

For failures to comply with NV's Nation wide Mandates. Id.

11) Plaintiff didn't receive No visits between times herein, complaint and the direct aggregate actions of officers, free, staff caused him to Contact Covid 19 virus.

12) . Camera footage from Esp's medical infirmary between, march 2020 - June 2020 - Jan-2021-Feb 2022 will show, med-personnel, freestaff were infected, while continuing to Work at Esp and on units. Id.

13) The (WHO) World health org, Nd. dept. of health and, the (CDC) cntr for disease Control declared an (emergency) for all Doc facilities. How or what authority does ndoc rely by declaring (Covid 19) was Not an emergency and, health and Safety risk to plaintiff?

14) Nurse Kelly lyons on 2.2-2022 came to unit 113#3 and did, administer an A-g rapid test around 7-9a.m. Cert officers (frnd, around 12-1pm telling him to Roll up he was "Positive for Covid19, defts claims that plaintiff never claimed, nor tested positive is belied, by Jecords and bed movesheet Id.

16) ndoc/Esp officials claim that between Aug-3-2022 - Nov-6-2020, directives were adopted and testing done. defts fail to disclose,

**ER151**                    **ER151**                    **ER151**

16.)

"All their officers and freestaff who quit or filed civil suit, contesting Mandatory Covid 19 shots/Vaccines. This also occured, In California, leaving (ghost-staffing) crews and "No", protocols were followed by Remaining officers or freestaff. Id. Ndoc Memorandum.* [1-23-2021]

17.)

Plaintiff has no Idea as to what/why defts reference, about the dismissal of any sup.rv officials, In alt unknown, case, outside or not Inclosive with his case at suit. Pg 3-15, ECF no. 21.

(Un Contested Material facts; )

18.)

Defts fail to contest their open statements, that covid 19 Isn't, an emergency, showing culpable mindstate of medical personnel; melissa mitchell et. al, Callous, reckless disregard for his health, Safety, by their reply to the emer-grievance Doc 1564 Filed:4-6-2020

19.)

Plaintiff submits the ("2nd Informal" Kite) to officials who, detached the top part of official document and from the bottom, Doc 3097 Form, falsly claiming "he" submitted something about, funds, Acct claim. Idc 6-30-2020 Form. Id 4-6-2020 Doc 1564 Doc 3097 Form and top part.

20.)

Plaintiff begin seeking prevention and health measures to be, taken @ NNCC, while the Doc 3012 - Doc 3097 Form attachment

was/has been withheld and Never refund, which is Illegal, obstruction of Justice, and Constitutes a Cat 5 violation per AR 339. part A. Id. 4.12.2020)

Safety Measure(s): Failures

21.)

plaintiff asserts with respect to the broader punitive, class, Ndoc DIR C. daniels, wardens et.al failures to; Institute necessary preventive safety measures to prevent, the Continued spread of Covid 19 and protect Ndoc populations, from such Infectious disease. Aside from decarceration, failures of houseConfinement(s), residential releases or, Compassionate releases to protect medically vulnerable, I/m's at plaintiff and reduce Ndoc populations, but further, failed to: ① adequately screen I/m's for covid if asymptomatic, ② test symtomatic I/m's; ③ Isolate Infected I/m's; ④ quarantine I/m's thought to have been or was positive logged, for exposure; ⑤ failures to Implement adequate social-distancing; ⑥ observe proper sanitation measures; ⑦ provide adequate staffing and Contracted Medical staffing, officers; ⑧ failing to demand freestaff, officers adorn, ppe gear, N95 Masks, ⑨ failure to provide adequate med-, care to I/m's as plaintiff with covid 19 as well other med'l conditions.

22.)

defts, Ndoc Respondents "Conlede" their Knowledge, of ("Subjective prong") of Intolerable risks of harm by their

ER153             ER153             ER153

reply to the initial grievance, adjudicating it "upheld", Id Nov. 15. 2021, 2006-313-6447.

23.)

ESP officials/defts concede their knowledge of his, claims against state actors: Herring, warner and their, individual acts to willingly expose him to covid 19 as, alleged in subsequent 2nd grievance Id 12-31-2021, Rtrnd 5.2.2022, Id C 2006-313-2069. (partially granted).

24)

plaintiff submits facts that medical personnel was so, tired/overworked that she:      gave me an Deathrow, 1/his Heart Meds, housed on entirely B-wing, whether, Intentionally or by gross recklesness, It likely would have killed him. Id Doc 1564, 1-14. 2022. Ex.

25)

plaintiff sought Immediate re-testing by ESP med staff, officials to Concretely determine, IF "he" was In fact sick, or did med staff use a faulty test, which was met with, (disdain, "Not an emergency before sticking on a positively, filled vent with symtomatic 1/m's Id Doc 1564 - Doc 5097 2-3-2022.

26.)

plaintiff asserts that defts negate to acknowledge facts, conceeding "Subjectively" to substantial risks to his health, safety, by lifting mandates for preventive measures, while, omitting a Covid 19 "Outbreak", "Sixdays" after he caught

the Infectious Contagion.(Id C Ndoc Memorandum 2-10-2022).

27.) plaintiff's request to Esp officials to re-Instate, APe gear and N95 mask protocols, which was met with requisite callous recklessness by L.T Ridgvey, A.w.p Cooke, A.w.o. Roebart, Chief warden gittese, claiming no emergency existed. Id c 2-16-2022 Doc 1564 - Doc 3097 attachment.

28.)
Sgt Weiland Intercepted an Informal request addressed to, warden drummond, verifying gov sisolak's callous disregard; for plaintiff's health, Safety. Id Doc 3012 - 2-16-2022.

29.) plaintiff submitted Informal correspondence to gov. sisolak, putting him on notice of his subordinates personal, disregard for my health, Safety, which "No Reply" was Issued. Id c 3-7-2022 (carbon copy of affidavit/declaration.

30.) plaintiff sets forth an affidavit/declaration by an similarly housed Individual, who was housed at (NNCc) while, plaintiff was at esp, attesting to relevant facts of officials, callous recklessness acts to his health. Id Mark, It noted; 10-3rd-2024.

31.) plaintiff Submits the Impact of Covid 19 by Nv; criminal. justice system, @ Nv. dept. of. health, CDC, world health org, statistic rprts. Id Ex.

32.)                (Legal Analysis:)

(8th Amends:)
    the ct's reiterated that the 8th amends prohibits, torture and "lingering death. The Word cruel s'inusual;

ER155                    ER155                    ER155

observed," Implies"... something Inhumane... Something more, than the mere extinguishment of Life. Id e 447, 10. S. ct. 930, 34 L. Ed. 519.

33) The ct's held that the 8 amendments forbids "punishments, of torture...and "All others, in the sameline of unnecessary, cruelty. Wilkerson v. Utah. 99 U.S. at 130.

34.) The cruel/unusual punishment amends prohibits the, wanton exposure to an objectively intolerable risks.

35.)

Evidence "Must" be veiwed most favorable in Light to pro-se litigants. Second; as pro-se litigants evidence 'Must' be, considered as evidence in oppositions, "contentious"; in all, motions", pleadings", where the contentions are specifically, based on personal Knowledge and the facts set forth; would; be admissible in evidence, as attested under penalty of perjury, that contents of motions or pleadings are true & correct.

36.) (verified pleadings are admissable to oppose or) preclude summary judgment. Rente v. Mgm grand hotel Inc, 305 F. 3d 166, 1064 (9th cir 2002); Johnson v. Meltzer, 134, F. 3d 1393, 1379, 1400 (9th cir 1998) Fed. R. of. EV. 102, 201 (b), 608 (a) (b).

37.) (Custome & Policy:)

A custom & policy may be found, either, In an affirmative, proclamation of policy, or In the failure of an official to take, any remedial steps after the violations. Lare2 944 F 2d at 447; also vorie, 795 F-2d at 784/custom/inferred from

(cont

failure to reprimand or discharge. Subsequent acceptance, of dangerous recklessness by policymakers, tends to prove; his/her/defts pre-existing disposition and policy. Grandstaff v. city of borger texas, 767 F.2d at (61)

38) (Rule 12(b)(6))

Under rule 12(b)(6) and g 1915 (b)(1), review of g 1983, complaints dismissals & responce for failures to state a, claim. Leak v. Ga. dept of corr, 26t F.3d 1276, 1279- (11th cir 2001)

39) In decision to dismiss complaints, "courts" "Must" consider the complaint. In it's entirety, as well as other Sarces, courts ordinarily examine when ruling on rule 12(b)(6) motions. "In particular documents Incorporated Into the complaint, by reference and the matters of which a court may, take Jodicial notice. Chambers v. timewarner, Inc, 282 F.3d- 147, 153 (2d. 2062),

40) "We treat the g 1983 complaints allegations as true, Solely for the purposes of reveiwing the sufficient of the; allegations. Dougherty v. city of covina, 654 F.3d 892, 896- n.2 (9th cir 2011)

41) (Qualified Immunity:)

"ESP wardens, assoc. wardens Rickert, gittere, cookey drommond "cannot raise" an defense of (Q.I), as it's not available for the prospectice Injunctive or, administrative relief, not withstanding his-her lack, of personal Involvement, In challenge conduct. "Because

he-she would be responsible for ensuring relief was, particleof. Vance v. Barrett, 345 F.3d 1083, 1091 n.10 9th Cir 2003); Presbyterian church (USA) v. united states, 870 F.2d 518, 529 (9th Cir 1989)

## I. ( LEGAL Argument : )

42) 'Despite the explicit statutory authority under the cares act to, place "any" Individuals on: home Confinement, c. daniels and, prison Bd. of. commr's sisolak et. al, Intentionally denied, refused, to utilize declaration release guides as mandated by: who, CDC and nv. dept. of health. "As the approximate result many Individuals (died) as Ndoc officials attitude of culpable, unreasonable criminal recklessness for his/our lives, In the; face of Substantial risks of harm. Id/ 2020 u.s. Dist. Lexis 35).

Nv. Bd. of prisoner commr's, respondents l. daniels, did not adequately exercise their authority, under sub. sec's, § 3624 as expanded by the cares act and attorney generals, memo. Id C § 3621(b); 3624(c)(2).

43) "A fact when used with refers to, among otherthings, the, actival occurrence of an event or the real existence of a situation; or state of affairs, Id c oxford english dictionary 3d-Ed. 9-2014. Also websters third new Int dictionary( def. using a fact as, among otherthings something that has actual existence; an, occurance, quality, or reaction.

**ER158**                    **ER158**                    **ER158**

44.) "the reality of which is manifest; in experience or may be, Inferred with certainty" and an actual happening in time and, space. the fact of confinement then refers generally to the, existance of the state of confinement, then refers ; generally to the existance of being imprisoned.

Wilson v. Williams, 2020 U.S. Dist Lexis 70624, 2020 WL 1940882, at *5, 26 (N.D. ohio APR. 22, 2020).

45.) "On or about 3-27-2020 Congress enacted corona-virus aid relief act/cares act, authorizing Ndoc DIR c.daniels, Bd. of prison commr's to lengthen the amount of prisoners, home confinement under sections § 3624(c)(2); § cares act, pub.L. no. 116, 136 § 20003(b)(2) 2020.)

46.) "Intending to reduce the spread of the deadly virus In communal environment, whether they be assisted living, group homes, detention cntr's, or prisons, remained front § cntr, The public also maintained a broader Interest, in reaping, the collateral benefits of reduced risks, such as conserving precious healthcare resources Id @ CDC Interim guidence on, management of corona virus disease In correctional § detention, facilities. Id ( 2020 U.S. Dist. Lexis4.)

47.) "plaintiff bring claims under § 1883 for 8th/14th amends based, on defts denial of adequate med-care, as well as knowing and; recklessly exposing him to serious health risks. Defts also, aver that defts implemented and continued to adhere to, an unconstitutional policy of detaining Covid 19 "positive"

ER159                    ER159                    ER159

Individuals, after they are/were elgible for release.

48.) "Covid 19 is/ was especially deadly for plaintiff as, an Ad-seg detained population, because he was disproportiadly more likely to suffer from chronic medical conditions.

At the time of corona 19, no cure or vaccine existed, for the highly infection virus, at time plaintiff suffered from, heliocobactor blood infection, along with pre-existing conditions, R/A, graves disease. Underlying chronic health conditions, or advanced age, Covid 19 posed an even greater risk for an, painful & solitary demise, due to these realities. Id. medical-murder.

49.) "Defts chronic lack of education and response by, respondents undoubtedly is an area of important concern; since patients with Covid 19 may rapidly develop progressive, respiratory failure, the combonation of viral under testing and, Insufficiently trained or responsive med-staff posed great, concern, especially given certain medically vulnerable Individuals, are residing In these units and who if Infected, may develop, severe disease and potentially die from this Infection.

50.) "For already "positive tested Individuals, No Implemented, plan throughout ndoc facilities as csp or functional plan to; afford detainee's any additional screening, supervision, segregated housing or any like measures, defts had not, demonstrated any plan to address the high risks detained, population. Sctg v. mcdonough, 2020 u-5- Dist. Lexis 8399z D-md. 51-2020 ( 2020 u.s. Dist. Lexis 18); 2020 us. Dist Lexis (T)-

51.)

"U.S. attorney general and Nv. attorney general (s),
set I.n plc a reasonable guides for Ndoc officials to finalize,
and Implement a process for residential or home confinement,
protocols g 3624(c) g Cares act.

① assigning substantial weight, In review of I/m's risk for,
Covid 19, based on CDC/Nv. dept. of. health;

② eliminating all requirements that I/m's served some portion,
of time of his sentence structure, before compassionate release to;
be eligible;

③ eliminating requirements that a primary or prior offense,
" Not be violent.;

④ eliminating I/m's be w/o incident (disc. report) within 12mos,
regardless of severity lvls.;

⑤ eliminating or modify requirements of pattern risk ye,
minimum for mental health I/m's with m/H RF5 less than IV-4;

⑥ statutes defining terminally ILL I/m's who Is not less,
than 60 yrs of age. statutes require ct's to consider factors,
set forth in sec. 18 U.J.C g 34 g 6054/(g)(5)(A); 18 U.S.Cg
2332 b (g)(6)(3); Sec. 12003 (b)(2); [18 U.S.Cg 3582 (c)(1)(A) 12.)


(II. LEGAL Argument )

52.)

"plaintiff responds that defts motion to dismiss
under F.R.c.p 12(b)(6), Is "procedurally Improper", because the;
defts have already answered the amended complaint. plaintiff
also contends that dismissal Is Inappropriate becaus

ER161          ER161          ER161

The court already screened the amended complaint under, a standard equivalent to rule 12(b)(6).

53.) Plaintiff also asserts this is a disguised motion, to reconsider the screening order and the motion does not, satisfy the reconsideration standard.

54.) All defts did "not dispute" that en. state actor acted, under the color of law, in ea. defts personal capacity, which, constitutes these claims 'undisputed".

55.) Plaintiff asserts defts ("concede") "that he was in the, midst of an objectively intolerable substantial risk of harm, or deleterious injury. This" precludes officials from pleading, that they were merely (subjectivly), blameless for the, purpose of the 8th amendments. Id. Justice Roberts, Kennedy, Alito,

56.) "Plaintiff asserts that defts subjecting him to a risk of, future harm, not simply actually inflicting pain, did qualify, as cruel & unusual punishment. "It is well established, that an alleged const.l violation by defts, constitutes irre-parable harm, const.l it triggers a finding of irreparable injury.
(Subjective standard:)

57.)
Plaintiff claim that defts subjective standard failures should, be precluded at this time due to facts: plaintiff callous acts, to his health, safety can be shown directly by the evidence, of prison officials personnels bad motives, attitudes.

58.) Plaintiff asserts there are more than one proximate, cause of his injuries, defts acts "need not" be the only cause

, Nor the last cause. A cause of covid 19, may be proximate, although it had another cause, acted at the same time or in, combination to produce the occurence.

59.) "This Subjective approach to recklessness, as defts, know or likely had actual knowledge or culpable mindstate, of covid 19 risks and did disregard the excessive risks to, his health.

60.) plaintiff asserts defts claim that "he" cant overcome, this burden, should be "precluded" at this time, as he has met, both (objective-subjective) components are met.

61.)          (Specific Intent:)

A Condition or risk was obvious is/ circumstantial evidence, that will permit a (Judge or Jury), to conclude that defts; In case at suit, did know about covid 19, even if there is, No direct evidence about what the defts knew.

62) plaintiff asserts that defts attempts to avoid, knowledge about risks of covid 19 and it's dangers to, his health, amounts to deliberate indifference or gross negligence.

63) Defts need not know precise nature of the risks, as long as he/she, defts knows a serious risk existed. doesn't matter if defts knew of a specific "individual, or from a specific source (s), whether risks comesfrom, "single or multiple" sources. More than it matters whether a prisoner faces an excessive risk of, attack for reasons personal to plaintiff or because

all prisoners, In his situation for such risks.

(4.)        ( Specific Intent Not Required: )

Everyone is required to know what the law is and to, act according to the law. Defts did engage In an activity, which violated the law, Federal premises, that defts is, responsible for his/her actions, whether he/she Intended, to violate the law or Not."

(5) The scope of the 8th amendments protection is broader, than the mere Infliction of Physical pain, plaintiff asserts evidence that he suffered extreme fear, mental anguish, duress, mental misery of thoughts of death from Covid19; which constitutes requisite Injury per 8th amendments. Kingsly v. B.o.p, 931 F.2d 26, 32 ( 2d. cir 1991); Scher v. engthe, 943 F.2d 921, 924 (8th cir 1981)

(6) "plaintiff asserts That Covid 19 risks to his health, or safety by defts, this court" most" assess that society did', consider the risks, that he complained of was/is so grave that it, violated Contemporary standards of decency to expose anyone un- willingly to such a risk. Covid19 risks is not one that todays, society chooses to tolerate. Defts did draw Inference that harm, existed by omitting the Objectively prong. 8th Amends.

        ( Clearly Established Law: )

(7.)

"plaintiff asserts That his rts to humane Conditions of Confine

ER164                    ER164                                ER164

ment under Two prong(s): objective, that deprivations and exposure, to Covid 19 was/is sufficiently and objectively serious, Second: defts, duly acted in Culpable mind state, namely was requisitely indifferent, to his health & safety, and free from cruel unusual punishment, which conditions at Esp constituted irreparable harm.

68.) "plaintiff asserts that clearly established law did exist at, the time of Covid 19 pandemic." The facts that defts failed to Re-, test him to be conclusive he had Covid 19 before moving him to; unit 8A where I/m's was systematic, sick, created further, risk to exposure.

69.) "Defts also failed to take early preventive measures of, sanitation and safety. For exposure to communicatable disease, or Infectious Contagin pursuant to AR/op(s): 604, 621; 853, 1d statutes:/ 18 U.S.C § 3624 (e)(2); 3582 (c)(1)(A); 3553 (a); (28 C.F.R § 571.63 ; ( 28 C.F.R § 542.15); I.c; World Healthory 459 F.supp.3d.418; (2020 U.S.Dist. Lexis 10, ECF no /at 9-11; Helling v. McKinney supra.

( Qualified Immunity : )

70.)

"Defts" are not "entitled to Immunity because plaintiffs, Contacting Covid 19 was caused by defts failures to provide/ or, administer proper N95 masks and enforce adorncment of; ppegear, Not the administration of a Countermeasure as required, by AR 604, 621; 42 U.S.C§ 247d ·6d(a)(1), because the testing, that took place did not play a role in bringing about or contributing to his ailments.

Cont.

71.)

"As the state takes a person; i.e plaintiff into it's custody, and holds him there against his will, the Constitution imposes, upon it a corresponding duty to assume some responsibility for; his safety and general wellbeing." The amends protections extend, to conditions of confinement that are sure or very likely to cause, serious illness and needless suffering in the future.

72.) ( The Objective Component: )

"plaintiff asserts plausibly allegations that it is contrary to current standards of decency for his/anyone to be exposed; against his will to the (Covid 19) relevant hazard. In other words, (covid 19), resulting risk must not/was not; one that society, chooses to tolerate.

73.) ( The Subjective Component: )

The defts must have been aware of facts from which, ex. named deft likely, would have drawn the inference that; substantial risks of harm to plaintiff existed by their aggregate, actions. plaintiff need not show that defts acted or failed to; act, despite his/her knowledge of a substantial risk of, serious harm.

74.) "Binding case law need not catalouge every way in which, prison conditions can be constitutionally inadequate for this (crt) to conclude that "All" named defts would understand that their; actions individually violated his const'l rts. Rather these rts is, clearly established when the contours since: (1997-1998) of such, rts are/were sufficiently clear, that "all" reasonable officials, state actors would understand that what he/she did violates

his rt's.

75.) "plaintiff asserts that defts had equitable fair-warnings, that their actions were obviously unconst'l.

76.) Defts Q.I. claims should be "precluded at this time, as their failures to concede to all the facts of approximate, failures at ESP, throughout Ndoc facilities per Covid 19; but, only' discussed Legal Issues raised by the case. Johnson v. Jones, 515 U.S. at 304.)

77.) plaintiff asserts that should this court view Q.I or, deliberate Indifference In light of the (Covid 19 pandemic); specific context pursuant to this case, Q.I. should be, precluded at this stage.

78.) "plaintiff asserts that "Both" an actual and "proximate"; acts by defts Is the cause of his Injuries, unknown lvl, of deleterious Irreparable harms he suffered, As a reasonable, totter of facts Would find that defts violated his rt's per, 8th Amends. And defts did draw such Inference to such harm. D.R Robert cohen Expert witness on prison healthcare (2014 u.s.App.Lexis 27)( 2014 u.s.Applexis 10); Also Elizabeth Ann ross & Franco paredes: Experts In, Infectious communicable disease Covid 19 Idc / 2020 u.s.- Dist. Lexis 4, 6, 16, 17, 18 sub-secs.)

79.) "plaintiff asserts that defts claims that No law, existed or the case doesn't support being exposed to a serious risk, belied by precedent case law: As Hollrey sent a clear message, to prison officials: the 8th amends requires them to reasonably

ER167          ER167          ER167

protect plaintiff; (c) Inmates from exposure to serious, diseases, especially Infectious, Communakcutible ones as Covid19.

80.) "plaintiff asserts that he has established a, preponderence of evidence, proving his claims; is more likely so than Not So, That defts Knew, and disregarded the subjective risk to Substantial harm.

81.) "Notwithstanding the opposition statement makes, claim, plaintiff cant prove he had Covid19.

82.) "plaintiff is aware the wdoc and the State of Nevada, submitted plaintiffs Name to the U.s.gov't to Collect, additional funds for Infected (Inmates), detts claimed, plaintiff had covid19. Id public Information act/review.

83.) "plaintiff would like to bring notice to this court about, the Covid 19 outbreak at NNCC (APR 2024), where; unit Three had to be closed down, while officials, allowed several y'mis who had been treated for Covid19, to PTFa to Culinary food prep- service Line with nothing, but a med nurse type mask.

84.) "plaintiff also asserts that he Manbowned (remerging) medical call, For upon Infoof belief for Covid 19 symptoms. Coughing up blood, blurry vision, headaches, IR/M (amp, p5, pain his limbs, spinal, hand, feet, hard to breathe) Id. Med. File.

cont.

85.)
"plaintiff asserts defts, officials, employees of Ndoc violated, his r's under the: universal declaration of human r's articles; preamble, 2, 5, 7, 25, 29. Id

86.) "plaintiff would like to bring to notice an alt case no. bragut, about Covid 19 & defts failures to take precautionary measures, to provide adequate N95 masks etc, Is 44. Id c: 3:20-cv-00549-Goodrum v. Sisolak et al.

Dated this __19__ day of ____NOV____, 20_21_.

_Kenfrell O. Welin_
Petitioner In Proper Person

# CERTIFICATE OF SERVICE

I hereby certify that I served a true and correct copy of the foregoing document upon the Respondent(s), via *Electronic Filing* through the Law Library or by *U.S. Mail* by placing same into the Prison Mail System with postage fully prepaid and addressed to the following:

Dated this __17__ day of _____Nov_____, 20 _24_.

_____
Petitioner In Proper Person

ER170                                    ER170                                    ER170

AARON D. FORD
 Attorney General
LEO T. HENDGES (Bar No. 16034)
 Senior Deputy Attorney General
State of Nevada
Office of the Attorney General
1 State of Nevada Way, Suite 100
Las Vegas, Nevada 89119
(702) 486-3795 (phone)
(702) 486-3768 (fax)
Email: lhendges@ag.nv.gov

*Attorneys for Defendants*
*Sean Donahue, Daniel Featherly,*
*Cade Herring, Curtis Rigney,*
*Corey Rowley, Alexander Werner,*
*and Daniel Wheeler*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| KENTRELL D. WELCH, | Case No. 3:22-cv-00557-MMD-CLB |
|---|---|
| Plaintiff, | |
| v. | **MOTION TO DISMISS SECOND AMENDED CIVIL RIGHTS COMPLAINT ECF NO. 7** |
| CHARLES DANIELS, *et al.,* | |
| Defendants. | |

Defendants, Sean Donahue, Daniel Featherly, Cade Herring, Curtis Rigney, Corey Rowley, Alexander Werner, and Daniel Wheeler, by and through counsel, Aaron D. Ford, Nevada Attorney General, and Leo T. Hendges, Senior Deputy Attorney General, of the State of Nevada, Office of the Attorney General, pursuant to Fed. R. Civ. P. (FRCP) 12(b)(6), hereby move to dismiss Plaintiff Kentrell D. Welch's (Welch) case in its entirety.

## I.    INTRODUCTION

This case should be dismissed in its entirety. Welch claims staff at Ely State Prison (ESP) were deliberately indifferent to his conditions of confinement by refusing to wear personal protective equipment (PPE) like N95 masks when working around inmates in

///

Welch's housing unit on a daily basis from 2020 to 2022. ECF No. 9 at 8:3-18. Welch allegedly contracted COVID-19 in February 2022. *Id.*

Welch's claims fail for three separate and distinct reasons. First, the factual allegations fail to set forth any evidence that any Defendant ever exhibited symptoms of COVID-19 when in Welch's unit, which fails to establish the knowledge of risk necessary to support a violation. Second, Welch fails to establish the existence of a constitutional violation because failing to abide by prison policy to wear PPE does not in itself constitute a violation. Finally, there is clearly established case law that Defendants must have taken some active step that exposed Welch to a serious disease, which Welch fails to allege, leaving Defendants entitled to qualified immunity at both steps of the analysis.

## II.    FACTUAL ALLEGATIONS[1]

Welch claims between 2020-2022, Rowley, Adams, Esquivel, Featherly, Werner, Herring, and Wheeler were grossly negligent and reckless in their duties by refusing to wear N95 masks and other PPE gear while working in his unit at ESP. ECF No. 7 at 3 ¶ 4, 7 ¶ 14. According to Welch, these Defendants involuntarily exposed him to COVID-19 for years by refusing to wear this protective equipment as required by Nevada Department of Corrections (NDOC) regulations. *Id.* at 4 ¶ 4.

Welch claims Herring would refuse his request that Herring wear PPE in the unit while serving food, between 2020-2021. *Id.* at 9 ¶ 23. In unit 4, between 2020-2021, Adams allegedly called Welch names when asked to wear PPE. *Id.* at 8-9 ¶ 21. Between 2020-2022, in unit 2b, Esquivel supposedly served food and conducted unit activities without PPE and refused Welch's request to wear the equipment. *Id.* at 9 ¶ 22. Welch makes the same claims against Rigney, Lox, and Donahue, that they served food in the unit and escorted offenders around the facility between 2020-2022 without PPE in violation of NDOC memos. *Id.* at 9 ¶ 24.

---

[1]For the purposes of this Motion, Defendants rely solely upon the factual allegations made in the Second Amended Complaint (SAC) (ECF No. 7) and other documents of which this Court may take judicial notice. This reliance upon Welch's allegations is not an admission, and Defendants reserve the right to deny those claims that are inaccurate should any claim survive the Motion to Dismiss.

According to Welch, Werner would pass mail to offenders and serve meals from January to November of 2021 without wearing PPE. *Id.* at 8 ¶ 18. Wheeler allegedly failed to wear PPE or instruct Werner to wear PPE during this same time period. *Id.* at 8 ¶ 19. Welch also claims Rowley transported him to legal visits without wearing PPE between January 2021 and December 2022. *Id.* at 8 ¶ 20.

Wheeler and Featherly allegedly were senior officers who refused to reprimand Herring or order him to wear PPE. *Id.* at 9 ¶ 23a. According to Welch, supervisors would ignore Welch's request that they instruct officers to wear PPE. *Id.* at 9 ¶ 24a.

However, Welch fails to present any factual allegation that this conduct by Defendants ever caused him to test positive for COVID-19. *See generally id.* What Welch actually claims is that he was "involuntarily exposed to sars-cov, a virus at ESP on 2-2-2022 unit 1B3." *Id.* at 3 ¶ 1. Welch goes on to explain that his neighbor in unit 1B2 caught COVID-19 between January 25-31, 2022. *Id.* at 3 ¶ 2. The offender housed in unit 1B1 also allegedly caught COVID-19 around the same time. *Id.*

According to Welch, he was then removed from unit 1B3 to unit 8 where he was quarantined. *Id.* at 3 ¶ 3. Welch claims prison officials[2] exhibited reckless disregard by keeping him on the same unit with highly symptomatic offenders, leaving him "medically vulnerable as a sitting duck." *Id.* at 7 ¶ 12. Welch never actually claims he tested positive for COVID-19. *See generally id.*

Beginning August 3, 2020, NDOC implemented a policy of testing staff for COVID-19 every two weeks at the facility where they work.[3] NDOC also implemented a policy of checking everyone's temperature and conducting risk assessments before allowing staff to enter the facility.[4] Staff who tested positive for COVID-19 were removed from the facility and released from duty to allow them to quarantine.[5]

---

[2] This appears to be a reference to the alleged conduct of dismissed supervisory officials, and not the Defendants who remained party to this lawsuit following mandatory screening. ECF No. 9 at 8:11-18.

[3] Case No. 3:22-cv-00436-MMD-CLB, ECF No. 38-5 at 2.

[4] *Id.*

[5] *Id.* at 2-3.

Starting around November 6, 2020, NDOC had a policy that in addition to the quarantine/isolation period, any staff member with a positive COVID test must remain 72 hours symptom free and all members of their household had to test negative for COVID before the staff member could return to work.[6] Any staff member who exhibited the symptoms of COVID, including "fever or chills, cough, shortness of breath or difficulty breathing, fatigue, muscle aches, headache, new loss of taste or smell, sore throat, congestion or runny nose, nausea or vomiting, diarrhea" could be tested for COVID and sent home to quarantine.[7]

This policy was updated November 18, 2020, continuing the requirement that all staff receive temperature checks and undergo screening before they were allowed to enter the facility.[8] This policy required a COVID positive staff member to quarantine a full 14 days with at least 72 hours symptom free before they could return to work.[9]

As of January 25, 2022, all NDOC staff were being tested weekly for COVID regardless of their vaccination status.[10] Staff were also subject to additional mandatory testing on their first day back from scheduled days off work as well as staff returning from COVID positive quarantine.[11]

## III.   LEGAL STANDARD

A complaint does not have to contain "detailed factual allegations," but must contain more than an unadorned "the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted), citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The Supreme Court has explained:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a

---

[6] *Id.*, ECF No. 38-2 at 6.
[7] *Id.*
[8] *Id.* at 3-4.
[9] *Id.* at 4-5.
[10] *Id.* at 2.
[11] *Id.*

"probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Id.* (internal citations omitted).

In deciding a motion to dismiss, courts "must accept all well-pleaded factual allegations as true." *Siaperas v. Mont. State Comp. Ins. Fund*, 480 F.3d 1001, 1003 (9th Cir. 2007) (internal quotation omitted). However, courts must also "consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." *See Martinez v. Sherman*, Case No. 1:21-cv-01319-BAM (PC), 2022 WL 126054, at *1 (E.D. Cal. Jan. 13, 2022) (citing *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009)). Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged. *Id.* (citing *Iqbal*, 556 U.S. at 678 (quotation marks omitted); *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009)). The sheer possibility that a defendant acted unlawfully is not sufficient, and mere consistency with liability falls short of satisfying the plausibility standard. *Id.* (citations omitted).

## IV.    LEGAL ANALYSIS

### A.    Defendants Are Entitled To Qualified Immunity As Welch Fails To Establish A Viable Eighth Amendment Claim And No Clearly Established Caselaw Exists

The defense of qualified immunity protects state officials sued in their individual capacities from damages unless the conduct complained of violates a clearly established constitutional or statutory right of which a reasonable person would have known. *Jackson v. City of Bremerton*, 268 F.3d 646, 650 (9th Cir. 2001). Therefore, regardless of whether a constitutional violation occurred, state officers prevail if the right asserted by the plaintiff

was not "clearly established" or if the state officers could have reasonably believed their conduct was lawful. *Romero v. Kitsap County*, 931 F.2d 624, 627 (9th Cir. 1991). The Plaintiff bears the burden of proving that a right allegedly violated was clearly established at the time of the alleged misconduct. *Baker v. Racansky*, 887 F.2d 183, 186 (9th Cir. 1989) (citing *Davis v. Scherer*, 468 U.S. 183, 197 (1984)). When a public official acts in reliance on a statute or regulation, that official is entitled to qualified immunity unless the statute or regulation is "patently violative of fundamental constitutional rights." *Dittman v. California*, 191 F.3d 1020 (9th Cir. 1999) (quoting *Grossman v. City of Portland*, 33 F.3d 1200, 1210 (9th Cir. 1994)).

A reasonable but mistaken belief that one's actions are lawful, based on facts or legal authority, entitles a defendant to qualified immunity. *Floyd v. Laws*, 929 F.2d 1390, 1394 (9th Cir. 1991). Qualified immunity shields government officials from suit against constitutionally deficient decisions that reasonably misapprehend the law; it extends to "all but the plainly incompetent or those who knowingly violate the law." *Mueller v. Auker*, 576 F.3d 979, 992 (9th Cir. 2009) (citations omitted). The Supreme Court has "repeatedly . . . stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Dunn v. Castro*, 621 F.3d 1196, 1199 (9th Cir. 2010) (citations omitted.).

In *Schroeder v. McDonald*, the Ninth Circuit Court of Appeals discussed the importance of deciding immunity questions early on in the litigation. The Court stated:

> The defense of qualified immunity protects "government officials . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." The rule of qualified immunity "'provides ample support to all but the plainly incompetent or those who knowingly violate the law.'" "Therefore, *regardless of whether the constitutional violation occurred*, the officer should prevail if the right asserted by the plaintiff was not 'clearly established' or the officer could have reasonably believed that his particular conduct was lawful." Furthermore, "[t]he entitlement is an immunity from suit rather than a mere defense to liability; . . . it is effectively lost if a case is erroneously permitted to go to trial."

*Schroeder v. McDonald*, 55 F.3d 454, 461 (9th Cir. 1995) (emphasis in original; internal citations omitted).

When conducting the qualified immunity analysis, district courts "ask (1) whether the official violated a constitutional right and (2) whether the constitutional right was clearly established." *C.B. v. City of Sonora*, 769 F.3d 1005, 1022 (9th Cir. 2014) (citing *Pearson v. Callahan*, 555 U.S. 223, 232, 236 (2009)). The court may analyze the elements of the test in whatever order is appropriate under the circumstances of the case. *Pearson*, 555 U.S. at 240-42. Whether the right is established is an objective inquiry, and it turns on whether a reasonable official in the defendant's position should have known at the time that his conduct was constitutionally infirm. *Anderson v. Creighton*, 483 U.S. 635, 639-40 (1987); *Lacey v. Maricopa Cnty*, 693 F.3d 896, 915 (9th Cir. 2012).

Stated differently, only where a state official's belief as to the constitutionality of his conduct is "plainly incompetent" is qualified immunity unavailable. *Stanton v. Sims*, 571 U.S. 3 (2013) (per curium). Although the second inquiry is highly deferential, it is not necessary that the precise action has previously been held unlawful for a right to be "clearly established." *Anderson*, 483 U.S. at 640. Therefore, the Court must assess qualified immunity "in light of the specific context of the case." *Tarabochia v. Adkins*, 766 F.3d 1115, 1121 (9th Cir. 2014) (quoting *Robinson v. York,* 566 F.3d 817, 821 (9th Cir. 2009)).

It is not sufficient for the district court to conclude that the plaintiff has proven a constitutional injury, or that there are material facts in dispute that, if proven, would establish a constitutional violation. *Carley v. Aranas*, 103 F.4th 653, 660 (9th Cir. 2024). The court must proceed to the second step to decide whether the violation was "clearly established at the time of the violation." *Id.* (citing *Hines v. Youseff*, 914 F.3d 1218, 1228 (9th Cir. 2019) (internal quotation marks and citation omitted)). In other words, "[f]or a right to be clearly established, it must be 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Id.* (quoting *Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 5 (2021) (per curiam)) (quoting *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (per curiam)). The "constitutional question [must have been] beyond debate." *Id.* (quoting *Hamby v. Hammond*, 821 F.3d 1085, 1091 (9th Cir. 2016) (citation omitted); *see Anderson*, 483 U.S. at 640 (holding that "in the light of pre-existing law the

unlawfulness [of the challenged action] must be apparent" (citation omitted)); *Malley v. Briggs*, 475 U.S. 335, 341 (1986) (stating that qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law").

The Supreme Court "has repeatedly told courts—and the Ninth Circuit in particular—not to define clearly established law at a high level of generality." *Id.* at 660-61 (quoting *Kisela v. Hughes*, 584 U.S. 100, 104 (2018) (per curiam)); *see also Hamby*, 821 F.3d at 1090 ("[O]ur circuit has been repeatedly chastised for conducting the clearly established inquiry at too high a level of generality.") (internal quotations omitted).

### B.     Welch Fails To Establish A Plausible Claim Under The Eighth Amendment And No Constitutional Violation Occurred

Under the Eighth Amendment, prison conditions should not "involve the wanton and unnecessary infliction of pain" or be "grossly disproportionate to the severity of the crime warranting imprisonment." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). "Prison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety." *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000).

To establish a violation of these duties, the inmate must establish that prison officials were "deliberately indifferent" to serious threats to the inmate's safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Under the deliberate indifference standard, a violation of the Eighth Amendment is only found when an objective and subjective component are met. *See id.* at 834.

"[T]o satisfy the objective prong, it is enough for the inmate to demonstrate that he was exposed to a substantial risk of some range of serious harms; the harm he actually suffered need not have been the most likely result among this range of outcomes." *Lemire v. California Dept. of Corrections and Rehabilitation*, 726 F.3d 1062, 1076 (9th Cir. 2013) (citing *Gibson v. Cnty. Of Washoe, Nev.*, 290 F.3d 1175, 1193 (9th Cir. 2002)). It does not matter "whether a prisoner faces an excessive risk . . . for reasons personal to him or because all prisoners in his situation face such a risk." *Farmer*, 511 U.S. at 843.

The inmate must also satisfy the subjective element. This means that the prison official being sued must have known of and disregarded the risk to the inmate's safety. *Id.* at 837. "Mere negligence is not sufficient to establish liability." *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998). Further, a plaintiff "must also demonstrate that the defendants' actions were both an actual and proximate cause of their injuries." *Lemire*, 726 F.3d at 1074 (citing *Conn v. City of Reno*, 591 F.3d 1081, 1098-1101 (9th Cir. 2010) *vacated by City of Reno, Nev. v. Conn*, 563 U.S. 915 (2011), *reinstated in relevant part* 658 F.3d 897 (9th Cir. 2011)).

**1.    For Purposes Of This Motion, Defendants Concede The Existence Of An Objectively Substantial Risk Of Harm**

At the beginning of the COVID-19 global pandemic, exposure to the disease implicated an offender's right to be free from exposure to a contagious disease. *Hintze v. Sisolak*, Case No. 3:22-cv-00436-MMD-CLB, 2024 WL 4442883, at *4 (D. Nev. Oct. 8, 2024) (citing *Hampton v. California*, 83 F.4th 754, 758 (9th Cir. 2023)). However, this case does not necessarily support the same finding of an objectively serious risk in Welch's SAC because *Hintze* claimed to have been exposed to COVID-19 in December 2020 when he first claimed to have contracted the disease. *Hinzte v. Sisolak*, Case No. 3:22-cv-00436-MMD-CLB, 2024 WL 4445242, at *1 (D. Nev. Sept. 5, 2024) (report & recommendation rejected by Hinze, 2024 WL 4442883).

For purposes of this pre-answer motion to dismiss, Defendants concede the objective component of a conditions of confinement claim. However, because Welch does not allege that he was ever exposed to COVID-19 before his neighbor contracted the disease between January 25-31, 2022, Defendants intend to contest this objective standard should any claim survive this motion. The analysis as to the "societal consensus" regarding COVID-19 had substantially altered as of late January 2022, which is the only time Welch claims to have been exposed to the disease, and Welch does not actually claim to have tested positive for COVID. *Hampton*, 83 F.4th at 766. Based on the allegations put forward by Welch, he could have been quarantined solely as a close contact to his neighbor.

### 2.     Welch's Allegations Fail To Meet Subjective Standard

"The subjective component of this Eighth Amendment claim requires a plaintiff to allege that officials 'kn[ew] of and disregard[ed] an excessive risk to inmate health or safety.'" *Id.* at 767 (citing *Farmer*, 511 U.S. at 837). "That is, the officials must have been 'aware of facts from which the inference could be drawn that a substantial risk of serious harm exists' and must have actually 'draw[n] the inference.'" *Id.* "Even so, 'an Eighth Amendment claimant need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm.'" *Id.*

As an initial matter, even accepting Welch's claims that Defendants refused to wear PPE, Welch never claims to have been exposed to COVID-19 as a result of any action taken by Defendants. The only time Welch can be considered as arguably claiming he caught COVID-19 was February 2, 2022, after his neighbor tested positive. ECF No. 7 at 3 ¶¶ 1-2. Welch makes clear that his complaint regarding this infection is that he remained in the unit with other highly symptomatic offenders. *Id.* at 7 ¶ 12. Welch's conditions of confinement claim is that he was kept on the unit, and was only transferred out to quarantine after having been in close contact with his neighbor who tested positive. ECF No. 9 at 5:1-14. This argument fails to establish a constitutional violation by any Defendant because moving Welch to another unit (other than quarantine) after offenders in his unit became symptomatic would have been seen as violating the rights of other inmates in the unit where Welch would have been transferred by exposing them to Welch, who claims he had been in close contact with the disease. *Hampton*, 83 F.4th at 767.

Welch's claim fails to meet the subjective standard because he does not allege any fact to suggest that any Defendant ever exhibited symptoms of COVID in his unit. *See generally* ECF No. 7. He does not even claim Defendants "coughed in the direction of inmates who asked why they were refusing to mask." *Hintze*, 2024 WL 4445242, at *1. Welch does not claim Defendants were responsible for his neighbor catching COVID. ECF No. 7 at 3 ¶ 2. Defendants were being tested for COVID every two weeks from August 3,

2020, through January 25, 2022, when they began testing weekly – and there is no allegation that any of these Defendants were permitted to work after testing positive. Defendants were also subject to temperature checks and screening before entering the facility, and they were required to quarantine for 14 days if they tested positive. Welch fails to allege any fact that would support a finding that any Defendant knew they either presented a risk of COVID exposure to offenders at ESP, nor that they drew the inference.

Welch's claims that Defendants failed to follow NDOC policy by refusing to wear N95 masks or PPE does not, in and of itself, create a constitutional violation. *Cousins v. Lockyer*, 568 F.3d 1063, 1070 (9th Cir. 2009) (citing *Case v. Kitsap County Sheriff's Dep't,* 249 F.3d 921, 930 (9th Cir. 2001) (quoting *Gardner v. Howard,* 109 F.3d 427, 430 (8th Cir. 1997) ("[T]here is no § 1983 liability for violating prison policy. [Plaintiff] must prove that[the official] violated his constitutional right . . . .")); *see also Gagne v. City of Galveston,* 805 F.2d 558, 560 (5th Cir. 1986) ("[A]llegations about the breach of a . . . regulation are simply irrelevant to the question of an official's eligibility for qualified immunity in a suit over the deprivation of a constitutional right.").

Taking this evidence and the factual allegations together, "a reasonable trier of fact" could not "find that Defendants violated" Welch's "Eighth Amendment rights through deliberate indifference to the risk of disease." *Hintze*, 2024 WL 4442883, at *3. Welch fails to establish a plausible claim that any Defendant either knew of a substantial risk of harm, or that they actually drew the inference that harm could befall Welch, and his case should be dismissed. Defendants are entitled to qualified immunity at the first step of the analysis because Welch fails to establish a plausible Eighth Amendment claim.

### C.    Clearly Established Caselaw Does Not Exist

In the unlikely event this Court concludes the SAC states a plausible claim of a violation under the Eighth Amendment, based on Welch's condition of confinement allegations, qualified immunity is still appropriate because there is no case that would put Defendants on "clear notice" that their actions in this particular case violated Welch's constitutional rights.

In other words, "[f]or a right to be clearly established, it must be 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Carley*, 103 F.4th at 660 (quoting *Rivas-Villegas*, 595 U.S. at 5 (per curiam)) (quoting *Mullenix*, 577 U.S. at 11 (per curiam)). The "constitutional question [must have been] beyond debate." *Id.* (quoting *Hamby*, 821 F.3d at 1091 (citation omitted); *see Anderson*, 483 U.S. at 640 (holding that "in the light of pre-existing law the unlawfulness [of the challenged action] must be apparent" (citation omitted)); *Malley*, 475 U.S. at 341 (stating that qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law").

The Supreme Court "has repeatedly told courts—and the Ninth Circuit in particular—not to define clearly established law at a high level of generality." *Id.* at 660-61 (quoting *Kisela*, 584 U.S. at 104 (2018) (per curiam)); *see also Hamby*, 821 F.3d at 1090 ("[O]ur circuit has been repeatedly chastised for conducting the clearly established inquiry at too high a level of generality.") (internal quotations omitted).

There is nothing in this case that would have put Defendants on clear notice that their actions, as alleged, were in violation of the Eighth Amendment. At most, based on the allegations raised on the face of the Complaint, Defendants were negligent in not wearing N95 masks and other PPE in Welch's unit. Negligent conduct does not rise to the level necessary to show that Defendants were in violation of the Constitution. *See Farmer v. Brennan*, 511 U.S. 825, 835 (1994) (holding that a constitutional violation "entails something more than mere negligence").

Welch never claims to have been exposed to COVID-19 as a result of any of the alleged inaction by Defendants. This lack of factual allegation means Welch fails to establish a plausible claim against Defendants for violation of the Eighth Amendment. Clearly established caselaw at the time holds that failure to follow NDOC policy by refusing to wear N95 masks or wear PPE does not, alone, create a constitutional violation. *Cousins*, 568 F.3d at 1070.

///

Further, Welch has not alleged any transfer of offenders occurred as part of his neighbor contracting COVID-19 in January 2022. Reviewing caselaw at the appropriate level of analysis, *Hampton* is inapplicable to this case and there was no clearly established violation based on Welch's allegations. 83 F.4th at 769; *see also Carley*, 103 F.4th at 660-61. In *Hampton*, the California Department of Corrections transferred 122 inmates between facilities early in the pandemic. 83 F.4th at 758-59. The cases relied upon in *Hampton*, when making the clearly established determination, are also inapplicable to this case. *Id.* at 769-70.

In *Helling*, transfer of an offender to a cell with a cellmate who smoked five packs of cigarettes a day created an impermissible risk of exposure to secondhand smoke. *Helling v. McKinney*, 509 U.S. 25, 28 (1993). The record here is clear that Welch has not claimed any transfer which created a risk of his exposure. What Welch alleges is that he was held in the same unit as other offenders who became symptomatic for COVID, namely Welch's claim is that Defendants used "shelter in place" to help contain the spread of the disease. The only claim against Defendants is that they failed to wear PPE.

Reviewing these claims at the appropriately high level of generality, Defendants are unable to locate any caselaw holding that a prison officials' failure to wear PPE during the COVID-19 global pandemic, without more, was clearly established as a violation where the offender has not alleged exposure to COVID as a result. However, as outlined above, caselaw is clear that even if Welch's allegations are accepted as true, failure to follow prison regulations does not create a constitutional violation where one otherwise does not exist. *Cousins*, 568 F.3d at 1070.

**V.     Leave To File A Third Amended Complaint Should Be Denied**

Amendment would be futile, as the factual allegations in the SAC fail to identify a claim that can proceed beyond the motion to dismiss.

"[I]t was not an abuse of discretion to deny Yagman leave to amend because he had already amended the complaint once and further amendment would be futile." *See Yagman v. Cornell Companies, Inc.*, 693 Fed. Appx. 495, 498 (9th Cir. 2017) (citing *Allen v. City of*

*Beverly Hills*, 911 F.2d 367, 373 (9th Cir. 1990) ("The district court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint" (quoting *Ascon Props., Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989)))). Here, Welch has already filed two amendments of his complaint. ECF Nos. 6 & 7. He continues to fail to state a plausible claim and leave to amend further should be denied.

**VI.   CONCLUSION**

This Court should dismiss the SAC in its entirety because Defendants are entitled to qualified immunity. Accepting Welch's factual allegations and applying the law, Welch has failed to identify a viable deliberate indifference to conditions of confinement claim. Welch fails to allege any facts which would plausibly support his claim that Defendants alleged refusal to wear PPE contributed to his possibly contracting COVID-19 February 2, 2022. Welch also fails to allege any facts to suggest that Defendants either knew, or drew the inference, that there was a danger to Welch given the COVID protocols in place before they were allowed to enter the facility.

There is no clearly established caselaw, at the appropriate level of generality, that would have placed Defendants on clear notice that their alleged refusal to wear PPE, when they were being regularly tested for COVID and received daily screenings before entering the facility, could be seen as violating Welch's rights.

Defendants are entitled to qualified immunity at both levels of the analysis because Welch has failed to state a viable constitutional claim and there is no clearly established caselaw. The entire SAC is subject to dismissal.

DATED this 4th day of November, 2024.

AARON D. FORD
Attorney General

By: /s/ Leo T. Hendges
LEO T. HENDGES (Bar No. 16034)
Senior Deputy Attorney General

*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I certify that I am an employee of the State of Nevada, Office of the Attorney General, and that on November 4, 2024, I electronically filed the foregoing **MOTION TO DISMISS SECOND AMENDED CIVIL RIGHTS COMPLAINT ECF NO. 7** via this Court's electronic filing system.  Parties who are registered with this Court's electronic filing system will be served electronically.

Kentrell D. Welch, #1030777
Northern Nevada Correctional Center
P. O. Box 7000
Carson City, Nevada 89702
Email: nncclawlibrary@doc.nv.gov
*Plaintiff, Pro Se*


/s/ Carol A. Knight
CAROL A. KNIGHT, an employee of the
Office of the Nevada Attorney General

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

KENTRELL D. WELCH,

                Plaintiff,

    v.

CHARLES DANIELS, *et al.*,

                Defendants.

Case No. 3:22-cv-00557-MMD-CLB

SCREENING ORDER
SECOND AMENDED COMPLAINT

I.    **SUMMARY**

State prisoner Kentrell Welch brings this civil-rights action under 42 U.S.C. § 1983 to redress constitutional violations that he claims he suffered while he was incarcerated at Ely State Prison ("ESP"). (ECF No. 6.) In screening the First Amended Complaint, the Court dismissed the Eighth Amendment claim regarding indifference to COVID-19 conditions at ESP and the Fourteenth Amendment Equal Protection Clause claims regarding race-and religion-based discrimination with leave to amend. (ECF No. 5.) Welch timely filed his Second Amended Complaint ("SAC"). (ECF No. 7.) Welch also filed notice that he had been transferred to High Desert State Prison ("HDSP"). (ECF No. 8.) According to the Nevada Department of Corrections ("NDOC") inmate database, Welch is no longer at HDSP and has been transferred to Northern Nevada Correctional Center. But Welch has not filed his updated address with the Court as required by LR IA 3-1. The Court grants Welch an extension of time to file his updated address with the Court, and it now screens the SAC under 28 U.S.C. § 1915A.

The Court finds that the SAC states a colorable Eighth Amendment claim regarding indifference to COVID-19 conditions at ESP, so that claim may proceed. The Court dismisses the other claims without leave to amend and again defers ruling on Welch's application to proceed *in forma pauperis*. (ECF No. 3.)

## II.      SCREENING STANDARD

Federal courts must conduct a preliminary screening in any case in which an incarcerated person seeks redress from a governmental entity or officer or employee of a governmental entity. *See* 28 U.S.C. § 1915A(a). In its review, the Court must identify any cognizable claims and dismiss any claims that are frivolous, malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. *See id.* §§ 1915A(b)(1), (2). *Pro se* pleadings, however, must be liberally construed. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) the violation of a right secured by the Constitution or laws of the United States; and (2) that the alleged violation was committed by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

In addition to the screening requirements under § 1915A, the Prison Litigation Reform Act ("PLRA") requires a federal court to dismiss an incarcerated person's claim if "the allegation of poverty is untrue" or if the action "is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2) (cleaned up). Dismissal of a complaint for failure to state a claim upon which relief can be granted is provided for in Federal Rule of Civil Procedure 12(b)(6), and the Court applies the same standard under § 1915 when reviewing the adequacy of a complaint or an amended complaint. When a court dismisses a complaint under § 1915(e), the plaintiff should be given leave to amend the complaint with directions as to curing its deficiencies, unless it is clear from the face of the complaint that the deficiencies could not be cured by amendment. *See Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995), *superseded on other grounds by* 28 U.S.C. § 1915(e).

Review under Rule 12(b)(6) is essentially a ruling on a question of law. *See Chappel v. Lab. Corp. of Am.*, 232 F.3d 719, 723 (9th Cir. 2000). Dismissal for failure to state a claim is proper only if the plaintiff clearly cannot prove any set of facts in support of the claim that would entitle him or her to relief. *See Morley v. Walker*, 175 F.3d 756,

2

ER187                          ER187                          ER187

759 (9th Cir. 1999). In making this determination, the Court takes as true all allegations of material fact stated in the complaint, and the Court construes them in the light most favorable to the plaintiff. *See Warshaw v. Xoma Corp.*, 74 F.3d 955, 957 (9th Cir. 1996). Allegations of a pro se complainant are held to less stringent standards than formal pleadings drafted by lawyers. *See Hughes v. Rowe*, 449 U.S. 5, 9 (1980). While the standard under Rule 12(b)(6) does not require detailed factual allegations, a plaintiff must provide more than mere labels, conclusions, or a formulaic recitation of the claim's elements. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A reviewing court should "begin by identifying pleadings [allegations] that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id. "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

Finally, all or part of a complaint filed by an incarcerated person may be dismissed sua sponte if that person's claims lack an arguable basis either in law or in fact. This includes claims based on legal conclusions that are untenable, like claims against defendants who are immune from suit or claims of infringement of a legal interest that clearly does not exist, as well as claims based on fanciful factual allegations, like fantastic or delusional scenarios. *See Neitzke v. Williams*, 490 U.S. 319, 327-28 (1989), *superseded on other grounds by* 28 U.S.C. § 1915(e); *see also McKeever v. Block*, 932 F.2d 795, 798 (9th Cir. 1991).

## III.    SCREENING OF SAC

### A.    Factual Allegations

The events of the SAC happened while Welch was incarcerated at ESP. (ECF No. 7 at 1.) Welch has several chronic medical conditions, including Graves' disease,

rheumatoid arthritis, a blood infection, and a helicobacter pylori infection. (*Id.* at 3.) Inmates at ESP were not issued cloth masks to protect against the SARS-CoV-2 virus until June 2020, and they were not provided N95 masks until December 2021. (*Id.* at 7.) Many ESP staff wore N95 masks during the pandemic, but "many did not." (*Id.*)

From 2020 to 2022, Rowley, D. Esquivel, Featherly, Herring, Warner, and Wheeler refused to wear N95 masks or other personal protective equipment ("PPE") while working around and feeding inmates in Welch's housing unit daily. (*Id.*) From January to November 2021, A. Warner worked in Welch's housing unit handing out mail and food and refused to wear an N95 mask while doing so. (*Id.* at 8.) During this time, Senior Officer Wheeler told Welch to "shut the fuck up" when he asked Wheeler and Warner to wear masks. (*Id.*) From December 2021 to January 2022, Officer C. Rowley escorted Welch on numerous occasions to legal meetings without wearing a mask. (*Id.*) When Welch asked Rowley to wear a mask, Rowley said "no," and told Welch to refuse his visits if he did not want an escort. (*Id.*)

Officer Adams also refused to wear a mask from 2020 to 2021 while working in Welch's housing unit. (*Id.*) Adams called Welch an "illiterate nigger" when Welch asked him to wear a mask. (*Id.*) From 2020 to 2022, Senior Officer D. Esquivel would "routinely serve food, conduct unit activities" without wearing an N95 mask or other PPE. (*Id.* at 9.) Often Esquivel would spill his energy drink on the food-service cart. (*Id.*) Esquivel often told Welch to "shut the fuck up" about masks and PPE. (*Id.*)

From 2021 to 2020, Officer Herring refused to wear a mask or other PPE when delivering food to Welch's housing unit and told Welch to "shut the fuck up" when asked to do so. (*Id.*) Senior Officers Wheeler and Featherly refused to reprimand Herring for refusing to wear safety gear. (*Id.*) From 2020 to 2022, Lieutenants Ridgney and Donahue and Sergeant Lox refused to wear masks or other PPE when delivering food to Welch's housing unit or transporting inmates. (*Id.*) When Welch asked the officers to wear masks—or asked their supervisors to enforce COVID-19 safety measures—he was asked, "Do you want to eat?" (*Id.*)

4

In late January 2022, two inmates in Welch's housing unit contracted COVID-19. (*Id.* at 3.) Welch continued to be housed with those "highly symptomatic" inmates. (*Id.* at 7.) Welch contracted COVID-19 on February 2, 2022, and was moved to quarantine. (*Id.* at 3.) While in quarantine, Nurse Milke "refused to provide the same vitamins/supplements" to Welch that she provided to a similarly "housed" inmate. (*Id.*) Welch was forced to file a grievance to receive "adequate" care. (*Id.*) Welch continues to suffer daily shortness of breath, fatigue, and lack of strength. (*Id.* at 8.)

Former Nevada Governor Steve Sisolak terminated COVID-19 safety measures that had been established for facilities like ESP on February 10, 2022. (*Id.* at 4.) COVID-19 was still "raging" at ESP at that time. (*Id.*) On February 14, 2022, NDOC Director of Operations Charles Daniels issued a memorandum suspending all COVID-19 safety measures at ESP. (*Id.*) Defendants treated Welch "dissimilar from similar housed individuals" because of his "R/A disability, class, civil litigation grievance availment, [and] ethnicity violating his Fourteenth Amendments." (*Id.* at 10.)

## B.   Analysis of Claims

Based on the allegations stated above, Welch sues Charles Daniels, T.S. Cooke, David Drummond, William Gittere, and Steve Sisolak. (*Id.* at 1-2.) He seeks monetary and declaratory relief. (*Id.* at 11.) The Court liberally construes the Complaint as bringing claims based on several different theories of liability: (1) First Amendment retaliation; (2) Eighth Amendment indifference to unsafe prison conditions; (3) Eighth Amendment indifference to medical needs; and (4) discrimination under the Fourteenth Amendment's Equal Protection Clause. The Court addresses each theory and any issues below.

### 1.   First Amendment—Retaliation

Welch might be attempting to state a retaliation claim under the First Amendment. A retaliation claim has five elements: "(1) an assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v.*

*Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005) (cleaned up). A plaintiff who fails to plead a chilling effect can satisfy the fourth element of this analysis if he alleges that he suffered harm that is more than minimal. *See id.* at 567 n.11. Welch fails to state a colorable retaliation claim because there are no factual allegations that any person acted or failed to act because Welch engaged in protected conduct like filing grievances or complaining to supervisors about their subordinates' misconduct.

Although this is Welch's first attempt to state a retaliation claim, the Court did not grant him leave to amend to add new claims. Rather, the Court granted Welch leave to file a second amended complaint to attempt to replead his Eighth Amendment claim regarding COVID-19 conditions at ESP and his Fourteenth Amendment claim regarding race- and religion-based discrimination. The First Amendment retaliation claim is therefore dismissed without prejudice and without leave to amend.

### 2. Eighth Amendment—Indifference to Unsafe Prison Conditions

The "treatment a prisoner receives in prison and the conditions under which [he or she] is confined are subject to scrutiny under the Eighth Amendment." *Helling v. McKinney*, 509 U.S. 25, 31 (1993). Conditions of confinement may, consistent with the Constitution, be restrictive and harsh. *See Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). But under the Eighth Amendment, "'prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must take reasonable measures to guarantee the safety of the inmates.'" *Hampton v. California*, 83 F.4th 754, 766 (9th Cir. 2023) (quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1994); and *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)). "The Amendment's protections extend to 'conditions of confinement that are sure or very likely to cause serious illness and needless suffering' in the future." *Id.* (cleaned up) (quoting *Helling*, 509 U.S. at 33). For example, "involuntarily exposing an inmate to secondhand tobacco smoke" or "'infectious maladies' [like] hepatitis" "can form the basis of an Eighth Amendment claim." *Id.* (quoting *Helling*, 509 U.S. at 33-35).

"To establish an Eighth Amendment violation, a prisoner must satisfy both the

6

ER191                    ER191                    ER191

objective and subjective components of a two-part test." *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004) (cleaned up). In determining whether the alleged condition satisfies the objective prong of the Eighth Amendment analysis, the court must analyze each condition separately to verify if it violates the Eighth Amendment. *See Wright v. Rushen*, 642 F.2d 1129, 1133 (9th Cir. 1981). "[T]he deprivation alleged must be, objectively, sufficiently serious," and "a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities." *Farmer*, 511 U.S. at 834 (cleaned up). "The circumstances, nature, and duration of a deprivation of these [basic] necessities must be considered in determining whether a constitutional violation has occurred." *Johnson v. Lewis*, 217 F.3d 726, 732 (9th Cir. 2000); *accord Hearns v. Terhune*, 413 F.3d 1036, 1042 (9th Cir. 2005).

To satisfy the subjective prong of the Eighth Amendment analysis, a prisoner must show that a prison official acted with "deliberate indifference to inmate health or safety." *Farmer*, 511 U.S. at 834. To adequately plead deliberate indifference, a prisoner must show that a prison official was subjectively reckless. *See Harrington v. Scribner*, 785 F.3d 1299, 1304 (9th Cir. 2015). This entails showing that the prison "'official kn[ew] of and disregard[ed] an excessive risk to inmate health or safety; the official must be both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [he or she] must also draw the inference.'" *Id.* (quoting *Farmer*, 511 U.S. at 837). "Constructive notice does not suffice to provide the requisite knowledge, but '[w]hether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including from circumstantial evidence.'" *Id.* (quoting *Farmer*, 511 U.S. at 841-42).

Welch arguably states a colorable Eighth Amendment claim regarding indifference to the risk of contracting COVID-19. Liberally construed, the allegations state that a "societal consensus" arose in 2020 that "the risk of contracting COVID-19" "was 'intolerably grave' such that involuntarily exposing inmates to the disease violated then-current standards of decency." *See Hampton*, 83 F.4th at 766 (finding allegations about

7

community and governmental response were enough to show that a societal consensus "had emerged by May 2020" about the grave risk of COVID-19 exposure) (quoting *Hines v. Youseff*, 914 F.3d 1218, 1232 (9th Cir. 2019)). Welch alleges that despite society's consensus about the risks of contracting COVID-19, corrections officers Rowley, Esquivel, Featherly, Herring, Warner, Wheeler, Adams, Ridgney, Donahue, and Lox refused to wear PPE like N95 masks when working around inmates in Welch's housing unit on a daily basis from 2020 to 2022. Welch contracted COVID-19 shortly before Sisolak and Daniels lifted the COVID-19 safety measures that had been enacted to cover NDOC facilities like ESP. And he continues to suffer daily symptoms stemming from his infection like shortness of breath, fatigue, and lack of strength.

But there are no factual allegations that Sisolak's and Daniels's decisions to lift the COVID-19 safety measures in February 2022 were reckless. Nor are there factual allegations supporting Welch's conclusions that Daniels, Cooke, Drummond, Gittere, and Sisolak were aware that corrections officers refused to wear PPE when working in Welch's housing unit or otherwise are connected to this alleged violation. The Eighth Amendment claim about indifference to COVID-19 conditions at ESP may therefore proceed against Rowley, Esquivel, Featherly, Herring, Warner, Wheeler, Adams, Ridgney, Donahue, and Lox.

### 3.    Eighth Amendment—Indifference to Serious Medical Needs

Welch might be attempting to state an Eighth Amendment claim regarding indifference to his serious medical needs. To state a colorable Eighth Amendment medical indifference claim, a plaintiff must satisfy both an objective standard—that the deprivation was serious enough to constitute cruel and unusual punishment—and a subjective standard—deliberate indifference. *See Snow v. McDaniel*, 681 F.3d 978, 985 (9th Cir. 2012), *overruled on other grounds by Peralta v. Dillard*, 744 F.3d 176, 1082-83 (9th Cir. 2014). To establish the objective prong, "the plaintiff must show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." *Jett v. Penner*, 439

8

ER193                      ER193                      ER193

F.3d 1091, 1096 (9th Cir. 2006) (cleaned up). Serious medical needs include those "that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014).

To satisfy the subjective deliberate indifference prong, a plaintiff must show "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." *Jett*, 439 F.3d at 1096. "Indifference may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." *Id*. (cleaned up). A prison official may only be held liable if he or she "knows of and disregards an excessive risk to inmate health and safety." *Toguchi*, 391 F.3d at 1057.

Welch alleges that he was housed near inmates who were symptomatic and had contracted COVID-19. After Welch contracted COVID-19, he was moved to quarantine and Nurse Milke refused to provide him "vitamins and supplements" that she provided a different inmate. Welch did not receive "adequate" medical care until after he filed a grievance. These allegations fall short of plausibly stating that Welch had a serious medical need for vitamins and supplements that a different inmate received. And there are no factual allegations that Nurse Milke knew about and disregarded an excessive risk to Welch's health in denying him vitamins and supplements.

Although this is Welch's first attempt to state an Eighth Amendment medical-indifference claim, the Court did not grant him leave to amend to add new claims. Rather, the Court granted Welch leave to file a second amended complaint to attempt to replead his Eighth Amendment claim regarding the COVID-19 condition at ESP and his Fourteenth Amendment claim regarding race- and religion-based discrimination. The Eighth Amendment medical-indifference claim is therefore dismissed without prejudice and without leave to amend.

/ / /

### 4.     Fourteenth Amendment Equal Protection Clause

Welch might be attempting to state claims under the Fourteenth Amendment's Equal Protection clause about discrimination based on race and disability status. To state a colorable equal protection claim, it is not enough for the plaintiff to plead that he is a member of a protected class and suffered some adverse action; the plaintiff must plead facts to show that the defendant intended to discriminate against him. *See Washington v. Davis*, 426 U.S. 229, 239-40 (1976). Because "the disabled do not constitute a suspect class for equal protection purposes, a governmental policy that purposefully treats the disabled differently from the non-disabled need only be rationally related to legitimate legislative goals to pass constitutional muster." *Lee v. City of Los Angeles*, 250 F.3d 668, 687 (9th Cir. 2001), *overruled on other grounds by Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119, 1125-26 (9th Cir. 2002). But strict scrutiny applies to the use of race by a state actor in making a medical treatment decision. *See Mitchell v. Washington*, 818 F.3d 436, 444 (9th Cir. 2016).

Welch fails to state a colorable equal protection claim. There are no factual allegations that any person acted or failed to act because of Welch's medical conditions. Welch's allegation that Adams called him a slur when he refused to wear PPE is not enough to plausibly state that Adams refused to wear PPE—thereby exposing Welch to the SARS-CoV-2 virus—because Welch is Black. And there are no factual allegations that any person acted or failed to act because Welch is Black.

This is Welch's second attempt to state an equal protection claim and he has failed to do so. The claims under the Fourteenth Amendment's Equal Protection Clause are therefore dismissed with prejudice because additional leave to amend would be futile.

## IV.     CONCLUSION

It is therefore ordered that a decision on the application to proceed *in forma pauperis* (ECF No. 3) is deferred.

It is further ordered that Welch has until July 1, 2024, to file his updated address with the Court.

10

It is further ordered that the Eighth Amendment claim regarding indifference to COVID-19 conditions at ESP may proceed against C. Rowley, D. Esquivel, Featherly, Herring, A. Warner, Wheeler, Adams, Ridgney, Donahue, and Lox.

It is further ordered that the First Amendment retaliation claim and Eighth Amendment claim regarding indifference to serious medical needs are dismissed without prejudice and without leave to amend.

It is further ordered that the claims under the Fourteenth Amendment Equal Protection Clause are dismissed with prejudice because additional leave to amend would be futile.

It is further ordered that Defendants Charles Daniels, Steve Sisolak, Tasheena S. Cooke, David Drummond, and William Gittere are dismissed without prejudice from this action.

It is further ordered that, given the nature of the claim that the Court has permitted to proceed, this action is stayed for 90 days to allow Welch and Defendants an opportunity to settle their dispute before the Court determines whether to grant Welch's *in forma pauperis* application, the $350 filing fee is paid, an answer is filed, or the discovery process begins. During this 90-day stay period and until the Court lifts the stay, no other pleadings or papers may be filed in this case, and the parties may not engage in any discovery, nor are the parties required to respond to any paper filed in violation of the stay unless specifically ordered by the court to do so. The Court will refer this case to the Court's Inmate Early Mediation Program, and the Court will enter a subsequent order about that matter. Regardless, on or before 90 days from the date this order is entered, the Office of the Attorney General must file the report form attached to this order regarding the results of the 90-day stay, even if a stipulation for dismissal is entered before the end of the 90-day stay. If the parties proceed with this action, the Court will then issue an order about service under Federal Rule of Civil Procedure 4 and setting a date for Defendants to file an answer or other response. Following the filing of an answer, the Court will issue a scheduling order setting discovery and dispositive motion deadlines.

ER196                              ER196                              ER196

"Settlement" may or may not include payment of money damages. It also may or may not include an agreement to resolve Welch's issues differently. A compromise agreement is one in which neither party is completely satisfied with the result, but both have given something up and both have obtained something in return.

It is further ordered that if the case does not settle, then the Court will determine whether to grant Welch's *in forma pauperis* application. Welch will be required to pay the full $350 statutory filing fee for a civil action regardless of whether the Court grants his *in forma pauperis* application. This fee cannot be waived, and the fee cannot be refunded once the Court enters an order granting Welch's application to proceed *in forma pauperis*. If Welch is allowed to proceed *in forma pauperis*, the fee will be paid in installments from his prison trust account. *See* 28 U.S.C. § 1915(b). If Welch is not allowed to proceed *in forma pauperis*, the full $350 statutory filing fee for a civil action plus the $52 administrative filing fee, for a total of $402, will be due immediately.

It is further ordered that if any party seeks to have this case excluded from the inmate mediation program, that party must file a "motion to exclude case from mediation" no later than 21 days before the date set for mediation. The responding party will have seven days to file a response. No reply may be filed. Thereafter, the Court will issue an order, set the matter for hearing, or both.

It is further ordered that if Welch needs an interpreter to participate in the mediation program, Welch will file a notice identifying the interpretation language and the need for the interpreter within 30 days from the date of this order.

It is further ordered that the Attorney General's Office must advise the Court within 21 days of the date of the entry of this order whether it will enter a limited notice of appearance on behalf of the Interested Party identified below for the purpose of participation in the Early Mediation Program. No defenses or objections, including lack of service, will be waived because of the filing of the limited notice of appearance.

The Clerk of Court is directed to add the Nevada Department of Corrections to the docket as an Interested Party and electronically provide a copy of this order and copies

12

of all items previously filed in this case by regenerating the Notices of Electronic Filing on the Office of the Attorney General of the State of Nevada by adding the Attorney General of the State of Nevada to the interested party on the docket. This does not indicate acceptance of service.

The Clerk of Court is further directed to add C. Rowley, D. Esquivel, Featherly, Herring, A. Warner, Wheeler, Adams, Ridgney, Donahue, and Lox to the docket as Defendants.

The Clerk of Court is further directed to send Plaintiff Welch courtesy copies of the Second Amended Complaint (ECF No. 7) and this order by electronically delivering the same to Northern Nevada Correctional Center's law library.

DATED THIS 5th day of June 2024.

_____
MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE

13

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

KENTRELL D. WELCH,

                            Plaintiff,

    v.

CHARLES DANIELS, *et al.*,

                          Defendants.

Case No. 3:22-cv-00557-MMD-CLB

REPORT OF ATTORNEY GENERAL RE: RESULTS OF 90-DAY STAY

**NOTE: ONLY THE OFFICE OF THE ATTORNEY GENERAL WILL FILE THIS FORM. THE INMATE PLAINTIFF MAY NOT FILE THIS FORM.**

On _____ [*the date of the issuance of the screening order*], the Court issued its screening order stating that it had conducted its screening pursuant to 28 U.S.C. § 1915A, and that certain specified claims in this case would proceed. The Court ordered the Office of the Attorney General of the State of Nevada to file a report 90 days after the date of the entry of the Court's screening order to indicate the status of the case at the end of the 90-day stay. By filing this form, the Office of the Attorney General hereby complies.

**REPORT FORM**
[Identify which of the following two situations (identified in bold type) describes the case, and follow the instructions corresponding to the proper statement.]

**Situation One: Mediated Case**: **The case was assigned to mediation by a court-appointed mediator during the 90-day stay.** [If this statement is accurate, check **ONE** of the six statements below and fill in any additional information as required, then proceed to the signature block.]

\_\_\_\_ A mediation session with a court-appointed mediator was held on _____ [*enter date*], and as of this date, the parties have reached a settlement (*even if paperwork to memorialize the settlement remains to be completed*). (*If this box is checked, the parties are on notice that they must SEPARATELY file either a contemporaneous stipulation of dismissal or a motion requesting that the Court continue the stay in the case until a specified date upon which they will file a stipulation of dismissal.*)

\_\_\_\_ A mediation session with a court-appointed mediator was held on _____ [*enter date*], and as of this date, the parties have not reached a settlement. The Office of the Attorney General therefore informs the Court of its intent to proceed with this action.

\_\_\_\_ No mediation session with a court-appointed mediator was held during the 90-day stay, but the parties have nevertheless settled the case. (*If this box is*

ER199                ER199                ER199

*checked, the parties are on notice that they must SEPARATELY file a contemporaneous stipulation of dismissal or a motion requesting that the Court continue the stay in this case until a specified date upon which they will file a stipulation of dismissal.)*

_____ No mediation session with a court-appointed mediator was held during the 90-day stay, but one is currently scheduled for _____ [*enter date*].

_____ No mediation session with a court-appointed mediator was held during the 90-day stay, and as of this date, no date certain has been scheduled for such a session.

_____ None of the above five statements describes the status of this case. Contemporaneously with the filing of this report, the Office of the Attorney General of the State of Nevada is filing a separate document detailing the status of this case.

* * * * *

**Situation Two: Informal Settlement Discussions Case**: **The case was NOT assigned to mediation with a court-appointed mediator during the 90-day stay; rather, the parties were encouraged to engage in informal settlement negotiations.** [If this statement is accurate, check **ONE** of the four statements below and fill in any additional information as required, then proceed to the signature block.]

_____ The parties engaged in settlement discussions and as of this date, the parties have reached a settlement (*even if the paperwork to memorialize the settlement remains to be completed*).  (*If this box is checked, the parties are on notice that they must SEPARATELY file either a contemporaneous stipulation of dismissal or a motion requesting that the Court continue the stay in this case until a specified date upon which they will file a stipulation of dismissal.*)

_____ The parties engaged in settlement discussions and as of this date, the parties have not reached a settlement. The Office of the Attorney General therefore informs the Court of its intent to proceed with this action.

_____ The parties have not engaged in settlement discussions and as of this date, the parties have not reached a settlement. The Office of the Attorney General therefore informs the Court of its intent to proceed with this action.

_____ None of the above three statements fully describes the status of this case. Contemporaneously with the filing of this report, the Office of the Attorney General of the State of Nevada is filing a separate document detailing the status of this case.

Submitted this _____ day of _____, _____ by:

Attorney Name: _____        _____
                        Print                              Signature
Address:        _____        Phone:

                _____                _____

                                                     Email:

ER200                          ER200                          ER200

Kentrell D. Welch. 1030777
Name and Inmate Booking Number

Ely state prison
Place of Confinement

P.O. BOX 1984 =
Mailing Address

White pine city, NV, 89301
City, State, Zip Code

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

Kentrell D. Welch.          ,
                     Plaintiff

vs.

(1) Charles daniels et al. ,

(2) _____ ,

(3) _____ ,

(4) _____ ,

(5) _____ ,
                Defendant(s).

Case No. 3:22-cv-00557-MMH-CCB
(To be supplied by Clerk of Court)

## CIVIL RIGHTS COMPLAINT
## BY AN INMATE

☐ Original Complaint
☐ First Amended Complaint
☑ Second Amended Complaint

☑ Jury Trial Demanded

## A.    JURISDICTION

1)    This Court has jurisdiction over this action pursuant to:
    ☑ 28 U.S.C. § 1343(a)(3); 42 U.S.C. § 1983
    ☐ 28 U.S.C. § 1331; *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971)
    ☐ Other: _____

2)    Institution/city where Plaintiff currently resides: Ely state prison

3)    Institution/city where violation(s) occurred: White pine cnty. ESP.

Dated 6th day NOV 2023.

ER201                    ER201                    ER201

## B. DEFENDANTS

1. Name of first Defendant: _Charles daniels._ . The first Defendant is employed as:

   _Cheif DIR-of-Ndoc ops._ at _ESP_ .

             (Position of Title)                      (Institution)

2. Name of second Defendant: _T.f. Locke_ . The second Defendant is employed as:

   _assoc-Warden_ at _ESP_ .

             (Position of Title)                      (Institution)

3. Name of third Defendant: _David Drummond._ . The third Defendant is employed as:

   _assoc. warden of ops._ at _ESP_ .

             (Position of Title)                      (Institution)

4. Name of fourth Defendant: _william gittere_ . The fourth Defendant is employed as:

   _Cheif warden ndo ESP_ at _ESP_ .

             (Position of Title)                      (Institution)

5. Name of fifth Defendant: _Steve Sisolak_ . The fifth Defendant is employed as:

   _ex NV. Gov._ at _ESP_ .

             (Position of Title)                      (Institution)

**If you name more than five Defendants, answer the questions listed above for each additional Defendant on a separate page.**

## C. NATURE OF THE CASE

Briefly state the background of your case.

2

ER202           ER202           ER202

## D.     CAUSE(S) OF ACTION

## CLAIM 1

1. State the constitutional or other federal civil right that was violated: _____

2. **Claim 1.** Identify the issue involved. Check **only one**. State additional issues in separate claims.

   ☐ Basic necessities      ☐ Medical care      ☐ Mail

   ☐ Disciplinary proceedings      ☐ Exercise of religion      ☐ Property

   ☐ Access to the court      ☐ Excessive force by officer      ☐ Retaliation

   ☐ Threat to safety      ☐ Other: _____

3. **Date(s) or date range** of when the violation occurred: _____

4. **Supporting Facts**: State as briefly as possible the FACTS supporting Claim 1. Describe exactly what **each specific defendant (by name)** did to violate your rights. State the facts clearly in your own words without citing legal authority or argument.

1) Plaintiff, being involuntarily exposed to sars-cov 2 virus at, CSP on 1-2-2022 unit 1 B 3. "Plaintiff is a highly vulnerable I/M with, (3x) Chronic conditions: Blood Infection, Helicobactor, graves disease and R/4.

2) Plaintiffs neighbor Winston reed also unit 1 0 #2 contracted the sars-cov-2 between Jan-29·31-2022. "Also an John Doe In cell, unit 1 0 #1 Contracted Sars-cov-2 Jan. 2022.

3) Plaintiff was removed from unit 1 B #3 to unit 8 A quarantine. Nurse Mrs Miller refused to provide the same vitamins/supplements, to plaintiff, while all similar housed I/m's did receive such. Plaintiff, was forced to file Doc 1624 emer-grievis to obtain adequate care.

4) 2020-2022 officers: c. Rowley, s. Adams, D. Esquivel, feathorly, A. Warner, c/o Herring, sr/o Wheeler. Were Individually at all, times grossly negligent in their duties.

3

**ER203**          **ER203**          **ER203**

All officers for y05 Involuntarly exposed him to, sars-cov-2, deliberately refusing to adorn ordered; ppe gear, N95 masks violating AR 443, 604, 621, 853.

5) S. Sisolak, 2-10-2022 a private person was grossly, negligent In personal capacity by Issuing a discontinuance, of state Injunction to Esp for sars-cov-2 safety measures.

a) Sisolak abused his state authority despite threat, covid 19 was raging at Esp. Involuntarly exposing him; to an Intolerable grave risk per 8th Amendt 50.

6) Charles daniels on 2-14-2022 was grossly negligent, as NDoc DiR by issuing a memo suspending sars-cov-2, safety measures for All his subordinates at Esp.

a) daniels Involuntarily exposed plaintiff to, the grave risk of serious harm per conditions of; confinement.

b) daniels exhibited callous reckless to plaintiff's, health by refusing the explicite authority under; cares act to plx elgible Individuals for early parole, Home confinement 50,

c) As a result of daniels unreasonable recklessness, many Incarcerated Individuals died at Esp ";

In the face of a raging pandemic.

7)

The NV. dept. of. corr state guidlines for elg; bk;
cures act united states Attorney general per, -
(28 C.F.R. § 571.63; (28 C.F.R § 541.15):

(a)

No DISC-writ in the last 12 months;

b)

a U.S. citizen, pattern of risk score is min,

c)

Mental health lvl is M/H*7, less than others;

d)

Age P.I.R.D., percentage of time served, med-
care level, issues to victims; gang activity; health-
concerns of residents.

e)

primary charges non-violent.

f)

primary charges not sex offense.

g)

primary charges not terrorism.

h)

No detainers

I)

M/H lvl less than IV.

J)

Served 50% of sentence structure.

11) verifiable plan for reentry that would, reduce his/her recidivism & maximize, public safety, which would lower the chances, of contacting Sars-cov-2. Cares Act pub, L., no. 116-136 § 12003 (b) 2) 2020-2022.

8)
W.j. there, D. Drummond, T.S. Cooke, W. Reehart, Apr. 2020 - Dec 2022 knew the severity of the clear; threat of the Intolerable grave risks of Sars-cov-2.

9)
D. Drummond via 2020-2022 exhibited gross -, negligence in his personal capacity by condoning or, implementing his subordinates to Not wear; ppe-gear, N95 masks, sanitary measures. AR 443, 604, 621.

9)
Drummond Involuntarily exposed plaintiff to, the Intolerable grave risks of Sars-cov-2.

10)
T.S. Cooke via 2020-2022 was grossly negligent in, her personal capacity to ensure safe confinement for, his health.

11)
A.w.p cooke condoned, acquiesced to her subordinates, not wearing ppe gear, N95 masks. Involuntarily, exposing him to Sars-cov-2 by failure to Act.

11) Defts was grossly negligent to ensure safe, conditions of confinement for plaintiffs health By:
a) under staffing, b) Inadequate med-care,
c) No plan for I/m's of high risk of Sars-cov-2,
d) Inadequate social distancing, e) failing to implement, sanitary measures

12)
Defts prison officials exhibited reckless disregard by keeping plaintiff on same unit with, highly systematic I/m's, leaving him as medically, Vulnerable as a sitting duck.

13)
Defts did not issue plain cloth orange masks, until June 2020. "Defts didn't issue adequate; N95 masks until Dec 2021. While many staff and, officers wore N95 masks, while many did not.

14)
2022-2021-2020 Defts: Rowley, esquivel, feathuly, Herring, Warner, Wheeler deliberately, refused to adorn N95 masks, ppe gear while working, feeding on unit daily. recklessly exposing him, to the Sars-cov-2.

15)
w, jittere, D. Drummond, T.s. Loodle via 2022-2021, In gross negligence violated the cruel and unusual, punishment clauses. By being deliberately Indiff, to plaintiffs health to contact Sars-cov-2.

16) ESP officials callous conduct of gross negligence, for plaintiff's Institutional safety for Sars-cov-2. which, was Clearly established since 1993.

17) plaintiff suffers daily: shortness of breath, fatigue, lack of strength in legs, hands, Bodily. While suffering, Three chronic condition comps which pose Imminent, long ranging health risks.

18) A. Warner, Jan-Nov 2021 while Working on unit 7B, 8A, 5A. Warner world pass mail & feed breakfaste, and dinner refusing to adorn N95 mask or ppe.

19) SR officer wheeler, Jan-Nov 2021 working on unit, with A-Warner units 7b, 8A, 5b Would tell plaintiff to shut the fuck up when I'd ask him to adorn, N95 Mask or Instruct his subordinate warner to, put on a mask per facility mdemo.

20) SR officer C. Rowley, Jan-Dec 2022-2021 while, working S&E escorted Me on Many Legal visits, and when asked to adorn a N95 Mask would, Say no. If you dont want to escort return your, visits.

21) SR officer Adams, 2021-2020 unit 4 a. Adams called, plaintiff an Illiterate nigger, when asked to a,

adorn N95 mask or ppe gear, his subordinate, c/o _____ was witness. (2d orig. cg 1746.)

22.)

SR officer D. Esquivel, 2022-2020 unit 2B would, routinely serv food, conduct unit activities w/o N95; or ppe gear. often sitting his energy drink on food, service carts. Esquivel would often say shut the fuck up, weley etc.

23.

officer Herring, 2021-2020, intentionally refused to, adorn N95, ppe gear on units while feeding. Herring, would tell plaintiff shut the fuck up; No i will not.

(a)

SR officer's wheeler, featherly would refuse to, reprimand herring to adorn safety gear

24)

custody suprv's: L.T Ridgley, sgt Cox, L.T Donahue, 2021-2020, 2022 on units. Lt's g sgts on unit serving, food or doing unit transport/escorts would not adorn; N95 or ppe gear, violation of Ndoc memo.

(a)

suprv's would ignore plaintiff when they were, asked to adorn masks or instruct their officers; to do so. Their replies: do you want to eat etc.

24)

These state actors named Ridgley, Cox, Rowley, featherly, Herring, Esquivel, wheeler,

holds an custody policy that plaintiff and or, Inmates are always wrong, their officers, selves, is always right.

26.)

Custody suprvs often condone, perpetuate their, friends, officers prohibited conduct which is the, normal practice at Esp: over (3yrs).

2c)

State actors: Esquivel, Rowley, Wheeler, Adams, Warner, Herring violated plaintiff equal protection, rts by their individual discriminate acts.

(a)

Defts treated him disimilar from similar housed, Individuals. Due to: R/A disability, class, civil litigation, grievence availment, ethicity violates his 14th Amend r.

## E.     PREVIOUS LAWSUITS

1.  Have you filed any other lawsuits while incarcerated?          ☑ Yes          ☐ No

2.  Has this Court or any other court designated you as subject to "three strikes" under 28 U.S.C. § 1915(g)?          ☐ Yes          ☑ No

3.  If you have "three strikes" under 28 U.S.C. § 1915(g), does this complaint demonstrate that you are "under imminent danger of serious physical injury?"          ☐ Yes          ☑ No

## F.     REQUEST FOR RELIEF

I believe I am entitled to the following relief: Declaration 28 U.S.C § 2201. 2202.

1) Compensatory damages In amount $10,000 from each deff severally.

2) Nominal damages of $10,000 Jointly.

3) Punative damages of $25,000

4) Jury Trial on all issues triable by Jury

5) Any additional relief this Court deems equitable

I understand that a false statement or answer to any question in this complaint will subject me to penalties of perjury. **I DECLARE UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE UNITED STATES OF AMERICA THAT THE FOREGOING IS TRUE AND CORRECT.** *See* 28 U.S.C. § 1746 and 18 U.S.C. § 1621.

_____          _____
(name of person who prepared or helped          (signature of plaintiff)
prepare this complaint if not the plaintiff)

_____
(date)

## ADDITIONAL PAGES

You must answer all questions concisely in the proper space on the form. Your complaint may not be more than 30 pages long. It is not necessary to attach exhibits or affidavits to the complaint or any amended complaint. Rather, the complaint or any amended complaint must sufficiently state the facts and claims without reference to exhibits or affidavits. If you need to file a complaint that is more than 30 pages long, you must file a motion seeking permission to exceed the page limit and explain the reasons that support the need to exceed 30 pages in length.

6

# AFFIRMATION PURSUANT TO NRS 239B.030

I, _Kentrell Welch_, NDOC# _1030777_,

CERTIFY THAT I AM THE UNDERSIGNED INDIVIDUAL AND THAT THE

ATTACHED DOCUMENT ENTITLED _2nd Amended Complaint_

_____,

DOES NOT CONTAIN THE SOCIAL SECURITY NUMBER OF ANY

PERSONS, UNDER THE PAINS AND PENALTIES OF PERJURY.

DATED THIS ___6___ DAY OF ___Nov___, 20_23_.

SIGNATURE: _Kentrell D. Welch_

INMATE PRINTED NAME: _Kentrell D. Welch_

INMATE NDOC # _1030777_

INMATE ADDRESS: ELY STATE PRISON
P. O. BOX 1989
ELY, NV   89301

**ER212**　　　　　　　　　　**ER212**　　　　　　　　　　**ER212**

MR. KENTRELL D. WELCH.
Name
Ely State prison

P.O. Box 1989, Ely, NV, 89301.

1030777
Prison Number

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA
***

| | |
|---|---|
| MR. Kentrell D. WELCH. , **Plaintiff** | Case No. 3:22-CV-00557-MMD-CLB. <br> (Supplied by Clerk of Court) |
| vs. | A) First Amended Complaint <br> **CIVIL RIGHTS COMPLAINT** <br> **PURSUANT TO** <br> **42 U.S.C. § 1983** |
| Charles Daniels et. al. , <br> see additional Lists. , <br> _____ , <br> _____ , <br> _____ , <br> **Defendant(s).** | (1) Jury trial Demanded <br> (2) N·R·C·P 38 (4) (b)·, <br> (28 U·5·C5 7th Amends- |

### A. JURISDICTION

1) This complaint alleges that the civil rights of Plaintiff, MR. Kentrell D. WELCH. ,
(print plaintiff's name)

who presently resides at Ely state prison , were violated by

the actions of the below-named individuals that were directed against Plaintiff at

('ESp"), white pine County on the following dates:
(institution/city where violation occurred)

2020 , 2021 , and 2022 .
(Claim 1)         (Claim 2)              (Claim 3)

Dated This 10 day Dec 20 22
* (3rd Oct - 2023 )

Revised 7/8/19

Sec. #2

5) Defendant _Steve Sisolak_ resides at _101 N. Carson St., Carson City, NV,_ 897.01 and is employed as _Governor of Nevada._. This defendant is sued in his/her __✓__ individual ___ official capacity. (Check one or both.) Explain how this defendant was acting under color of law: _Violated his equal protections, Immunities; 4th 5th 8th 9th 14th Amends-_

6) Defendant _Tasheen S. Coolle_ resides at _12000 N. Botuwick Rd, Ely, NV,_ 89301 and is employed as _Assoc. Warden Programs_. This defendant is sued in his/her __✓__ individual ___ official capacity. (Check one or both.) Explain how this defendant was acting under color of law: _Violated his equal protection, Immunities, 4th 5th 8th 9th 14th_

7) Jurisdiction is invoked pursuant to 28 U.S.C. § 1343(a)(3) and 42 U.S.C. § 1983. If you wish to assert jurisdiction under different or additional statutes, list them below.

_____

_____

**B.       NATURE OF THE CASE**

8) Briefly state the background of your case.

(1) Unprecedented Facility "Covid 19" Failures.

(2) Substantive Due process, Equal protection violations.

(4) See Exhits Attached.

_____

_____

_____

3

**Make a copy of this page to provide the below**
**information if you are naming more that five (5) defendants**

2) Defendant William Ruebart resides at 12000 N. Bothwick Rd, Ely, NV, 89301
   (full name of first defendant)       (address of first defendant)

   and is employed as Cheif ESP Warden. This defendant is sued in his/her
   (defendant's position and title, if any)

   ✓ individual ___ official capacity. (Check one or both). Explain how this defendant was acting

   under color of law: deprived his Equl protections, due process rts.
   Failing to ensure. Admin, Injunctive Relief In face of Const.) violations

3) Defendant David Drummond. resides at 12000 N. Bothwick Rd, Ely, NV, 89301
   (full name of first defendant)       (address of first defendant)

   and is employed as Assoc. Warden. of. OPS. This defendant is sued in his/her
   (defendant's position and title, if any)

   ✓ individual ___ official capacity. (Check one or both). Explain how this defendant was acting

   under color of law: deprived his equal protections, Due Process rts.
   Failing to Ensure Admin, Injunctive relief, In face of Const.) violations

4) Defendant Charles Daniels. resides at 5500 Synder Rd, Carson City, NV,
   (full name of first defendant)       (address of first defendant)        89701

   and is employed as Dir. of Ndoc. operations. This defendant is sued in his/her
   (defendant's position and title, if any)

   ✓ individual ___ official capacity. (Check one or both). Explain how this defendant was acting

   under color of law: Failed to perform Government duites to ensure,
   Equal protection, due process, Admin, Injuntive relief provided,

5) Defendant UR Ihun Azzam PhD. MD. resides at 5500 Synder Rd, Carson City, NV, 89701
   (full name of first defendant)       (address of first defendant)

   and is employed as Cheif med.officer of Ndoc. This defendant is sued in his/her
   (defendant's position and title, if any)

   ✓ individual ___ official capacity. (Check one or both). Explain how this defendant was acting

   under color of law: By Requisite deliberate Indifference, Callousness,
   reckless ness per his 5th 8th 9th 14th Amends.

§1983-Form
eff 8/96

2 - (b)

(A)          DEFENDENTs:

Each defendant is Sued Individually. At All, times Material In This Complaint, each defendant, acted undercolor of LAW.

William Roebart, as "ChiefWarden" oF (ESP), and, In That Capacity, Is Charged with the responsibility, of administering The entire Esp Institution.

David Drummond, as (AWo), Assoc. Warden of. ops, at (ESP), and In That Capacity Is responsible For., the general Supervison, training etc; Also Is advisor, of Institutional discipline.

TaSheenA Sandavol cooke, as (A.W.P), Assoc. - Warden. of. programs. And In that Capacity Is duly, responsible For the administering of the entire Esp., Institution, Including All Control units.

Charles Daniels, as (Ndoc. DiR. oF. ops), director, of operations. In That Capacity. "Is charged with, the responsibility of administering: CARE, Custody, daily Ndoc operations of All Ndoc Facilities." Pursuant, to (18 U.S.C.G 4041, and (28 C.F.R9 Subpt.Q) with., ensuring That all: Contractual, express, Implied or, Ndoc employees adhere to all Nev. const. acts, local, Federal and Ndoc polices are carried out; for Institutional responsibilities etc.

ER216                          ER216                  cont → **ER216**

Steve Sisolak, as "governer of Nevada", and 1/2 of Nv. Bd. prison, comm'r's pursuant to Nv. Const. art 1 § 5, 6, And In personAL; Capacity. Is charged with the Government duties: Management, and Control of All "state, FederAL penal Correctional Facilities, Throughout Nevada. NRS 209.101; 209.121; 209.051; 209.141.

The Attorney generAL Aaron Ford, of Nevada, pursuant to; Nev. Const. art(s) 1, 5, 6 § 19; (18 U.S.C § 4001, In personAL, Capacity. Is charged with responsibility with the Management, Control of "All state, Federal Correctional Institutions In and; Throughout The State of Nevada. NRS 209.141; 209.081; 209.075; 209.051; 209.041; 209.244; AGO 96-24 (9-5-1996).

Dr Ihuan Azzam ph.d, M.), pursuant to The MedicAL, obligatates "MALtadeclaration", In That Capacity." Is duly, responsible per Government duties to ensure: Contracted Medical, Mental health, dental, Is provided adequately to All similarily, housed Inmates, Throughout Nevada CoRR. facilities per Contract; expressed, Implied State agreements pursuant to NRS 209.077; 41.035; 40.670; Chief Medical officer of. Nevada Institutions.

— Intentionally Left Blank —

Cont → to

ER217                    (4ER217                    ER217

# CLAIM 𝒪ℕ𝐄

1. State the constitutional or other federal civil right that was violated: _____

   _____

2. **Claim 2**. Identify the issue involved. Check **only one**. State additional issues in separate claims.

   ☐ Basic necessities      ☐ Medical care            ☐ Mail

   ☐ Disciplinary proceedings  ☐ Exercise of religion    ☐ Property

   ☐ Access to the court     ☐ Excessive force by officer  ☐ Retaliation

   ☐ Threat to safety        ☑ Other: _Substantial Covid 19 protocol's, Failures._

3. **Date(s) or date range** of when the violation occurred: _2020 - 2021. 2022-._

4. **Supporting Facts**: State as briefly as possible the FACTS supporting Claim 2. Describe exactly what **each specific defendant (by name)** did to violate your rights. State the facts clearly in your own words without citing legal authority or argument.

   (1) William gittere, between (2020-2022), Failed to make, use of the broader use of U.S.A.G's Mandates: Decarceration and, HomeConfinement, parole releases per Covid 19 Pandemic AR 604, 621

   (2) William Rueburt, between (May 2020 - Dec 2022, Failed to, Make prompter, brouder use to protect his Life during covid 19, Pandemic, per U.S.A.G's Mandates For: Decarceration, Parole, releases, HomeConfinement violating AR 604, 621

   (3) David drummond, between (May 2020 - Dec 2022), failed, to implement brouder us of U.S.A.G's Mandates: Decarceration, home Confinements, parole releases, during covid 19 pandemic; violating AR 604, 621.

   (4) Tasheena Sandaval cooke, between (May 2020 - Dec 2022), Failed to Implement brouder use of U.S. AG's Mandates: For, Decarceration, homeConfinements, parole releases during the, Covid 19 pandemic, violating AR 604, 621.

   (5) Charles daniels, between (March 2020 - Dec 2022, Failed, to implement broad prompt use of U.S.A.G's Mandates: Parole, releases, home Confinements, decarceration protocols       ;)

**ER218**                    **ER218**                    **ER218**

during The Covid 19 pandemic, violating AR 105, 114, 126, 153, 329, 400, 443, 453, 604, 621.

(6) Cheif DR Ihun AZZAm Ph.D, M.D of (Nsdoc); between March 2020-Dec 2022), Failed to Implement, prompt broader use of U.S. A.G's Mundates: decarceration, purole, home confinement releases, during Covid 19 pan.) demic, violating AR's 105, 114, 443, 604, 621, 853.

(7) Steve Sisolak, during (March 2020-Dec 2022), Failed to Initiate prompt broader use of U.S. A.G's; Mundates For: Decarceration, home cofinements, purole releases, Violation of AR 105, 114, 126, 329, 400, 443, 604, 621, 853.

(8) officer(s): ① A. Warner, ② SRC/o Wheeler, and, ③ c/o Herring, did between (2020, 2021), adumently; refused to adorn PPE gear or wear N95 or Clotu Masks; In the middle of Critical Covid 19 Mundates at ESP; Violating AR 153, 339, 443, 359, 360, 604, 621, 853

(9) William gitter, and his assoc's between (May 2020, Dec 2022), Failed to Enforce: N95 or Clotu Mask, Wearing; Failed to enforce PPE gear, gowns, gloves; violating AR 443, 604, 621, 853.

(10) DR Ihun AZZam, between (May 2020-Dec 2022), Failed to Enforce: the providence of Covid 19 "Virex 11/ 256 hand Sanitiser to plaintiff as ESP, Ndoc Vulnerable, Inmates with three Chronic diseases per AR 443, 604, 621

(11) Charles daniels, between (May 2020-Dec 2022, Failed to Ensure: adequate stuffing, officers, or, adequate "Contracted medical staff, or Mental

(6)

health clinical psych nurses at ESP, violating; AR 105, 114, 153, 604, 443, 621, 853.

(12) [1] W. gittere, [2] C. daniels, [3] T. S. COOKe, [4] D. Drummond, between May 2020- Dec 2022), Failed to ensure, safety Covid 19 Measures: [a] adequate screening, of I/m's with covid 19 Symptoms; [b] Testing For Symptoms, tic I/m's.; [c] adequately Isolate Infected patients, I/m's.; [d] adequately g varantine patients, positive For Covid 19.; [e] Failed to adequate social distancing.; [f] Fail to, Implement proper Sanitation, safety Covid 19 protocos.; [g] Failed to ensure adequate officers, medstaff, M/H, psych staff.; [h] Failed to ensure adequate medical, emergency, routine, Chronic med-care For plaintiff.; as Three time Chronic disease vulnerable Inmate vio, lation of AR 153, 604, 621, 443, 621, 853.)

(13) Steve sisoluk, between Jan-Feb 2021), tacifly acquisced to rescinding covid 19 protocol, Mandates For All Ndoc Facilities For: N95, ppe gear, Sanitary, health Saffey Measures, Violation of AR 105; 114, 443, 604, 621, 853, 329.

(14) Charles daniels, between Jan-feb 2021, Also.; tacitly acquisced to Remove Ndoc Facility, Covid 19 mandates For: N95 Masks, ppe gear, Sanitution, Sanitizer's Safety protocols's, In violation, of AR 105, 114, 126, 443, 329, 604, 621, 853.)

(15) Aaron Ford, between Jan-Feb 2021, Also, as ½ of NV prison Bd. of Commr's tacitly did.; quisced to Remove All ESP Facility Covid 19

Mandates: N95, cloth, PPE gear, sanitary, Sanitizer protocols, In violation of AR 105,114, 443, 329, 604, 621, 853.)

(16) plaintiff, was for (5 months), denied an N95, or cloth mask between March-June 2020.) Although, Ndoc has prison Industries, Capable of making Such masks; Dir Daniels, refused masks violation of AR 153, 443, 604

(17) plaintiff was denied virex 11/256 hand sanitizer, at ESP, The entire Covid 19 Pandemic. Although ESP has a way. For systematic" profit, hand sanitizer was said: Sold at N'NCC, but denied even on Canteen at ESP, denied vital essential due; to being: Indigent or termed "Pauper", violates AR 443, 604, 621)

(18) Dep Dir W., gittere, T.S Cooke, D. Drummond, W.,Robert; In Feb 2021.) tacitly authorized or enforced No mask, mandates at ESP. "Condoning, acquiescing to Improper. Ndoc Created Mandate, In the Middle of a raging Covid 19, epidemic, Violating AR 153, 329, 443, 453, 604, 621, 853.

(19) SRC/o adams, SRC/o ESquivel, SRC/o Rowley, Cert, c/o clay, c/o Bodenhymier, SRC/o Featherly, A. warner, SRC/o wheeler, C/o HERRing _____, John, Jane does between; (2020-2021-2022), ademantly refused to adorn N95 masks, PPE gear, gloves, gowns. "said It's hard to breathe and, hot In That stuff violating AR 153, 329, 443, 604, 621

(20) plaintiff, "forced" to "double cell" between (June -, oct 2020.) In the middle of Covid 19 Pandemic and lack, of Staffing at ESP, In violation of AR 443, 604, 621, 853.)

(21) plaintiff (Feb 2. 2022), A.M, tested positive for Covid 19, suffering: Extreme Chest Shortness of breath

**ER221** **ER221** **ER221**

(8)

Severe migraines headaches, Bodily/physical, Concomitant: R/A Comps, Thyroid comps, forehead, shortness of breath, lingering fatigue, weakness, Neck, limbs, feet, hand/digits cramping. Due to, failures of staff's to adorn safety measures. AR 329, 443, 604, 621, 853.

All named defts acted in culpable mindstate, acting under color of law to violate his 8th amends. By "individual breach of duties to perform gov't, functions. By Causation of custom/policy for discriminate acts.

Plaintiff, Suffers as follows: shortness of, breath, lingering fatigue, Bodily weakness, Intentional, Infliction of distress, emotional distress, Nose bleeds, severe anguish, anxiety, R/A comps, feet, digit, hands, back, Neck Cramping, burning in back, legs, warm, bing, Blood bacterial Infections by Helicobacter, Stomach: bloating, severe gas, pain, drastic, weight loss per 8th amends NRS 41.035; 40.670; 209.371. AnphRA Injuries Stats: 18 U.S.C § 831(f)(5); 18 U.S.C § 1365(a)(4); 18 U.S.C § 1515 (a)(5) § 18 U.S.C, § 1864(d)(1) 2012.)

All named defts herein acted under color, of law to deprive him of his 14th Amends,

By Invidious objectives, Contrary to penal goals, depriving him of equal protection, Immunities; as a U.S. Citizen. Causation of his; Civil, litigation, grievance availment, religious; Judean belief's, Class, African ethicity for said, rts enjoyed by all NRS 209.081; 289.075; 209-181, 209.121.

Plaintiff has been and will be Irreparably; Injured by the Conduct of defts, unless this; Court grants the declaration relief he seeks.

PRAYER FOR Relief:
   Wherefore plaintiff respectfully prays, This Court enter Judgment(s):
(a)
granting a deloration that the acts, omissions; described herein; violated his rts under the NV, Const., And united states Consitution of the USA.
(b)
granting him Compensatory damages of $10,000, from ea. deft Severally.)
(c)
granting him punative damages of $10,000 from, ea. deft severally.
(d)
Plaintiff Seek Trial by Jury. Any equitable Judge;

proper, and equitable.

Respectfully submitted, MR Kentrell D. Welch 1030777,
Ely state prison P.O. Box 1989, Ely, NV, 89301.
(06)

(VERification:

I have read the foregoing complaint and herby,
verify that the matters alleged therin are true, except,
as to matters alleged on Information and belief, and,
as to those, plaintiff believes them to be true.
I Kentrell D. Welch, certify under penalty of,
perjury, that the foregoing is true and correct.
NRS 208.165, (28 U.S.C9 1628, 1746).

Executed at: white pine county, Nevada
Date:
(NRS 1985, 1643)

Dated this __21__ day of ____Dec____, 20_22_
X (2nd - Oct - 2023)

By: Kentrell D. Welch.

ER224          ER224          ER224

**D.   REQUEST FOR RELIEF**

I believe I am entitled to the following relief: ① Declaration Per 28 U.J.C.g 2201·2202;

② Compensatory damages: $10,000 ca·deft·severally

③ Punative damages: $50,000 P·L·R·A· Limits·

④ Nomial-Physica Damages: $10,000 ca·deft·Jointly, Severally

⑤ Jury Trial, on All Issues triable by a Jury 28 U.S.Cg 7th Amends·

⑥ All Cost's of Filing Fees, taxation of suit, (42 U.S.Cg 1988)

⑦ Any additional Celief This Cart: deems Just, Proper, Equitable.

I understand that a false statement or answer to any question in this complaint will subject me to penalties of perjury. **I DECLARE UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE UNITED STATES OF AMERICA THAT THE FOREGOING IS TRUE AND CORRECT.** *See* 28 U.S.C. § 1746 and 18 U.S.C. § 1621.

_____          _____
(name of person who prepared or helped                (signature of plaintiff)
prepare this complaint if not the plaintiff)

_____
Dec · 2?·2022
(date)

Oct-3rd-2023

**ER225**                    **ER225**                    **ER225**

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

KENTRELL D. WELCH,

Plaintiff,

v.

CHARLES DANIELS, *et al.*,

Defendants.

Case No. 3:22-cv-00557-MMD-CLB

SCREENING ORDER

FIRST AMENDED COMPLAINT

## I.    SUMMARY

*Pro se* Plaintiff Kentrell Welch brings this civil-rights action under 42 U.S.C. § 1983, claiming that his rights under the Fourth, Fifth, Eighth, and Fourteenth Amendments were violated when prison officials and staff failed to enforce or follow COVID-19 safety measures while he was incarcerated at Ely State Prison ("ESP"). (ECF No. 1-1.) Welch filed two applications to proceed *in forma pauperis* ("IFP") in this action. (ECF Nos. 1, 3.) And he moves for leave to file an amended complaint. (ECF No. 4.)

The Court grants Welch's motion for leave to file an amended complaint and now screens his First Amended Complaint ("FAC") under 28 U.S.C. § 1915A. Having done so, the Court liberally construes the FAC as bringing claims under the Fourteenth Amendment about race- and religion-based discrimination and the Eighth Amendment about indifference to the COVID-19 condition at ESP. The Court finds that Welch fails to state a colorable claim under either theory of liability, but it is not yet clear that he cannot state additional facts to support these claims' missing elements. So the Court grants Welch leave to file a second amended complaint to attempt to replead these claims. Finally, the Court denies Welch's first IFP application as moot, and it defers ruling on Welch's second IFP application.

ER226                                     ER226                                     ER226

## II.   SCREENING STANDARD

Federal courts must conduct a preliminary screening in any case in which an incarcerated person seeks redress from a governmental entity or officer or employee of a governmental entity. *See* 28 U.S.C. § 1915A(a). In its review, the Court must identify any cognizable claims and dismiss any claims that are frivolous, malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. *See id.* §§ 1915A(b)(1), (2). *Pro se* pleadings, however, must be liberally construed. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) the violation of a right secured by the Constitution or laws of the United States; and (2) that the alleged violation was committed by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

Additionally under the Prison Litigation Reform Act ("PLRA"), a federal court must dismiss an incarcerated person's claim if "the allegation of poverty is untrue" or if the action "is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2). Dismissal of a complaint for failure to state a claim upon which relief can be granted is provided for in Federal Rule of Civil Procedure 12(b)(6), and the Court applies the same standard under § 1915 when reviewing the adequacy of a complaint or an amended complaint. When a court dismisses a complaint under § 1915(e), the plaintiff should be given leave to amend the complaint with directions as to curing its deficiencies, unless it is clear from the face of the complaint that the deficiencies could not be cured by amendment. *See Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995).

Review under Rule 12(b)(6) is essentially a ruling on a question of law. *See Chappel v. Lab. Corp. of Am.*, 232 F.3d 719, 723 (9th Cir. 2000). Dismissal for failure to state a claim is proper only if the plaintiff clearly cannot prove any set of facts in support of the claim that would entitle him or her to relief. *See Morley v. Walker*, 175 F.3d 756, 759 (9th Cir. 1999). In making this determination, the Court takes as true all allegations

2

of material fact stated in the complaint, and the Court construes them in the light most favorable to the plaintiff. *See Warshaw v. Xoma Corp.*, 74 F.3d 955, 957 (9th Cir. 1996). Allegations of a *pro se* complainant are held to less stringent standards than formal pleadings drafted by lawyers. *See Hughes v. Rowe*, 449 U.S. 5, 9 (1980). While the standard under Rule 12(b)(6) does not require detailed factual allegations, a plaintiff must provide more than mere labels, conclusions, or a formulaic recitation of a claim's elements. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A reviewing court should "begin by identifying pleadings [allegations] that, because they are no more than mere conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "While legal conclusions can provide the framework of a complaint, they must be supported with factual allegations." *Id.* "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*.

Finally, all or part of a complaint filed by an incarcerated person may be dismissed *sua sponte* if that person's claims lack an arguable basis either in law or in fact. This includes claims based on legal conclusions that are untenable, like claims against defendants who are immune from suit or claims of infringement of a legal interest that clearly does not exist, as well as claims based on fanciful factual allegations, like fantastic or delusional scenarios. *See Neitzke v. Williams*, 490 U.S. 319, 327-28 (1989); *see also McKeever v. Block*, 932 F.2d 795, 798 (9th Cir. 1991).

**III.     SCREENING OF FAC**

Welch sues Steve Sisolak, Tasheena S. Cooke, William Reubart, David Drummond, Charles Daniels, Ihan Azzam, William Gittere, and Aaron Ford for events that allegedly happened while he was incarcerated at ESP. (ECF No. 4-1 at 1-5.) He brings one claim and seeks declaratory and monetary relief. (*Id.* at 6-13.) Welch alleges the following.

### A.     Welch's Factual Allegations

Between 2020 and 2022, Defendants failed to make prompt and broader use of the "U.S. A.G's Mandates" and Administrative Regulations ("AR") 604, 621 permitting home confinement and early parole release to decrease the prison's population during the COVID-19 pandemic. (*Id.* at 6-7.) Between 2020 and 2021, Corrections Officers A. Warner, Wheeler, and Herring refused to wear personal protective equipment ("PPE") like masks, gowns, and gloves. (*Id.* at 7.) Between May 2020 and December 2022, Deputy Director William Gittere failed to enforce ARs about wearing PPE like masks; Dr. Ihan Azzam failed to enforce ARs about providing hand sanitizer; and Director Charles Daniels failed to provide adequate staffing. (*Id.*)

Between May 2020 and December 2022, Gittere, Daniels, and Associate Wardens Tasheena Cooke and David Drummond failed to ensure that safety protocols like screening symptomatic inmates for COVID-19, isolating infected inmates from others, social distancing, and sanitizing hands and surfaces were followed. (*Id.* at 8.) These Defendants also failed to implement an emergency plan about caring for inmates with chronic diseases who are more vulnerable to COVID-19's ill-effects. (*Id.*) Welch has three "chronic disease[s]" and is thus "vulnerable" to COVID-19's ill-effects. (*Id.*)

In January or February 2021, Nevada Governor Steve Sisolak ended all COVID-19 mandates and protocols for Nevada Department of Corrections ("NDOC") facilities. (*Id.*) Following Sisolak's directive, Daniels discontinued all COVID-19 protocols at NDOC facilities. (*Id.*) Aaron Ford, in his capacity as a member of the Board of Prison Commissioners, followed Sisolak's directive and discontinued all COVID-19 protocols at ESP. (*Id.*)

From March to June 2020, Welch was not provided hand sanitizer or a mask to prevent the spread of COVID-19. (*Id.* at 9.) Hand sanitizer was available to purchase at Northern Nevada Correctional Center but not at ESP. (*Id.*) Prison industries could make cloth masks. (*Id.*) In February 2021, Gittere, Cooke, Drummond, and Warden William Reubart authorized or enforced no-mask mandates at ESP "in the middle of a raging

4

COVID[-]19 epidemic[.]" (*Id.*) In 2020, 2021, and 2022, Corrections Officers Adams, Esquivel, Rowley, Clay, Bodenhymier, Featherly, Warner, Wheeler, and Herring "refused" to wear PPE saying, "it's hard to breath[e] and hot in that stuff[.]" (*Id.*) Welch was forced to "double cell" between June and October 2020. (*Id.*)

On February 2, 2022, Welch tested positive for COVID-19. (*Id.*) Welch experienced "extreme chest pain, shortness of breath, severe migraine headaches," complications of "R/A" and thyroid conditions, lingering fatigue, weakness, and cramping of his neck and extremities as a result. (*Id.* at 9-10.) Welch has helicobacter pylori bacterial infection of the blood that causes him bloating, stomach pain, and weight loss. (*Id.* at 10.)

### B.      Welch's Claims

Based on these allegations, Welch contends that Defendants violated his rights under the Fourth, Fifth, Eighth, and Fourteenth Amendments; discriminated against him based on his race and religion; and denied him substantive due process. But the allegations don't support a claim under the Fourth Amendment, which secures persons against unreasonable searches and seizures and issuing warrants without probable cause. U.S. CONST. amend. IV. Nor do the allegations support a claim under the Fifth Amendment, which prohibits the federal government from depriving persons of due process. *See Castillo v. McFadden*, 399 F.3d 993, 1002 n.5 (9th Cir. 2005). Moreover, the Fourteenth Amendment's Equal Protection Clause and the Eighth Amendment's proscription against cruel and unusual punishments apply to the allegations, so those Amendments, "not the more generalized notion of substantive due process, must be the guide for analyzing" Welch's claims. *See Albright v. Oliver*, 510 U.S. 266, 273 (1994). Accordingly, the Court liberally construes the FAC as bringing claims based on three different theories of liability: (1) race- and religion-based discrimination in violation of the Fourteenth Amendment's Equal Protection Clause and (2) indifference to COVID-19 condition at ESP in violation of the Eighth Amendment.

/ / /

/ / /

5

### C.       Analysis of Claims

#### 1.       Fourteenth Amendment Discrimination Claims

"Prisoners are protected under the Equal Protection Clause of the Fourteenth Amendment from invidious discrimination based on race*." Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). The Equal Protection Clause also protects prisoners from intentional discrimination based on their religion. *Freeman v. Arpaio*, 125 F.3d 732, 737 (9th Cir. 1997), *abrogated on other grounds by Shakur v. Schriro*, 514 F.3d 878, 884-85 (9th Cir. 2008). But to establish an equal protection claim, it is not sufficient to show that a plaintiff is a member of a protected class and suffered some adverse action; there must be evidence of discriminatory intent. *See Washington v. Davis*, 426 U.S. 229, 239-40 (1976); *Serrano v. Francis*, 345 F.3d 1071, 1082 (9th Cir. 2003); *Freeman*, 125 F.3d at 737. Thus, to state a colorable equal protection claim, a plaintiff must allege facts sufficient to show that a particular defendant acted or failed to act *because* of the plaintiff's membership in a protected class. *Iqbal*, 556 U.S. at 678-83. The defendant must undertake the course of action or inaction because of, not in spite of, the adverse effects on an identifiable group. *Id.* at 676-77. Conclusory allegations of discriminatory motive are not enough, the plaintiff must support this element with specific, non-conclusory factual allegations. *Id.*; *Jeffers v. Gomez*, 267 F.3d 895, 913-14 (9th Cir. 2001).

Based on the allegations, Welch is Black and practices the Judean religion. Welch contracted COVID-19 and experienced symptoms like shortness of breath, headaches, pains, cramps, and weakness. Welch was exposed to the SARS-CoV-2 virus because prison officials didn't enforce safety measures to protect against the virus's spread and prison staff didn't follow measures that had been enacted. But there are no factual allegations that any Defendant acted or failed to act with respect to COVID-19 because of Welch's race or religion. Although it appears unlikely that Welch could state additional facts to support these claims' missing element, out of an abundance of caution, the Court dismisses these claims with leave to amend. If Welch chooses to file a second amended complaint and attempts to replead these claims, he must state true facts to show that any

Defendant acted or failed to act with respect to the COVID-19 condition at ESP because of either Welch's race or his religion. Bare conclusions that a Defendant acted or failed to act because of Welch's race or religion will not be enough to survive screening.

### 2.    Eighth Amendment Deliberate Indifference Claim

The "treatment a prisoner receives in prison and the conditions under which [he or she] is confined are subject to scrutiny under the Eighth Amendment." *Helling v. McKinney*, 509 U.S. 25, 31 (1993). Conditions of confinement may, consistent with the Constitution, be restrictive and harsh. *See Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). But under the Eighth Amendment, "'prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must take reasonable measures to guarantee the safety of the inmates.'" *Hampton v. Cal.*, --- F.4th ---, 2023 WL 6406760, at *7 (9th Cir. Oct. 3, 2023) (quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). "The Amendment's protections extend to 'conditions of confinement that are sure or very likely to cause serious illness and needless suffering' in the future." *Id.* (cleaned up) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)). For example, "involuntarily exposing an inmate to secondhand tobacco smoke" or "'infectious maladies' [like] hepatitis" "can form the basis of an Eighth Amendment claim." *Id.* (quoting *Helling*, 509 U.S. at 33-35).

"To establish an Eighth Amendment violation, a prisoner must satisfy both the objective and subjective components of a two-part test." *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004) (cleaned up). In determining whether the alleged condition satisfies the objective prong of the Eighth Amendment analysis, the court must analyze each condition separately to verify if it violates the Eighth Amendment. *See Wright v. Rushen*, 642 F.2d 1129, 1133 (9th Cir. 1981). "[T]he deprivation alleged must be, objectively, sufficiently serious," and "a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities." *Farmer*, 511 U.S. at 834 (cleaned up). "The circumstances, nature, and duration of a deprivation of these [basic] necessities must be considered in determining whether a constitutional violation has

occurred." *Johnson v. Lewis*, 217 F.3d 726, 732 (9th Cir. 2000); *accord Hearns v. Terhune*, 413 F.3d 1036, 1042 (9th Cir. 2005).

To satisfy the subjective prong of the Eighth Amendment analysis, a prisoner must show that a prison official acted with "deliberate indifference to inmate health or safety." *Farmer*, 511 U.S. at 834. To adequately plead deliberate indifference, a prisoner must show that a prison official was subjectively reckless. *See Harrington v. Scribner*, 785 F.3d 1299, 1304 (9th Cir. 2015). This entails showing that the prison "'official kn[ew] of and disregard[ed] an excessive risk to inmate health or safety; the official must be both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [he or she] must also draw the inference.'" *Id.* (quoting *Farmer*, 511 U.S. at 837). "Constructive notice does not suffice to provide the requisite knowledge, but '[w]hether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including from circumstantial evidence.'" *Id.* (quoting *Farmer*, 511 U.S. at 841-42).

Moreover, liability exists in § 1983 suits "only upon a showing of personal participation by the defendant," *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989), and "[b]ecause vicarious liability is inapplicable in *Bivens* and § 1983 suits, a plaintiff must plead that each [g]overnment-official defendant, through the official's own individual actions, has violated the constitution," *Iqbal*, 556 U.S. at 676. Supervisors can be held liable under § 1983 for (1) "their own culpable action or inaction in the training, supervision, or control of [their] subordinates;" (2) "their acquiescence in the constitutional deprivation of which a complaint is made; or" (3) "for conduct that showed a reckless or callous indifference to the rights of others." *Hyde v. City of Willcox*, 23 F.4th 863, 874 (9th Cir. 2022) (quoting *Cunningham v. Gates*, 229 F.3d 1271, 1292 (9th Cir. 2000)).

Welch fails to state a colorable claim about indifference to the COVID-19 condition at ESP. Based on the allegations, in 2020 safety protocols were mandated at NDOC facilities to help stop the SARS-CoV-2 virus from spreading and protect the inmates from contracting COVID-19. The mandated protocols included testing symptomatic inmates,

isolating infected inmates, sanitizing hands and surfaces, and wearing PPE like masks. Additionally, broader use of devices like home confinement and early parole releases were permitted to lessen prison and jail populations.

In January or February 2021, Governor Sisolak lifted the COVID-19 safety protocols that had been mandated at NDOC facilities. In January or February 2021, Director Daniels, Commissioner Ford, Deputy Director Gittere, Warden Reubart, and Associate Wardens Cooke and Drummond followed Sisolak's directive and discontinued COVID-19 safety protocols that had been enacted at ESP. From 2020 to 2022, Corrections Officers Warner, Wheeler, Herring, Adams, Esquivel, Rowley, Clay, Bodenhymier, and Featherly refused to wear PPE. From May 2020 to December 2022, Gittere, Daniels, Cooke, and Drummond failed to enforce COVID-19 safety protocols at ESP. Welch contracted COVID-19 in February 2022 and experienced symptoms like shortness of breath, headaches, pains, cramps, and weakness. Welch has three chronic diseases, including helicobacter pylori bacterial infection of the blood.

These allegations arguably state that a "societal consensus" arose in 2020 that "the risk of contracting COVID-19" "was 'intolerably grave' such that involuntarily exposing inmates to the disease violated then-current standards of decency." *Hampton*, 2023 WL 6406760, at *8 (finding allegations about community and governmental response were enough to show that a societal consensus "had emerged by May 2020" about the grave risk of COVID-19 exposure) (quoting *Hines v. Youseff*, 914 F.3d 1218, 1232 (9th Cir. 2019)). So the objective component of the Eighth Amendment analysis is satisfied for screening purposes. But allegations that the Governor and prison officials discontinued safety protocols in 2021 and Welch contracted COVID-19 one year later fail to plausibly state that those Defendants acted despite knowledge of a substantial risk of serious harm. And there are no factual allegations to support Welch's broad conclusions that (1) numerous corrections officers refused to wear PPE like masks over a three-year period and (2) prison officials failed to enforce COVID-19 safety protocols. Detailed factual allegations or evidence are not required to state a colorable claim, but a complaint

ER234                    ER234                    ER234

that "tenders naked assertions devoid of further factual enhancement" cannot survive screening. *Cf. Iqbal*, 556 U.S. 686 (decided in context of dismissal on qualified-immunity ground).

This claim fails because Welch has not stated enough facts to satisfy the subjective prong of the Eighth Amendment analysis. But it does not yet appear that Welch cannot state additional facts to support this claim's missing element. So the Court dismisses the Eighth Amendment claim about indifference to the COVID-19 condition at ESP with leave to amend if Welch can plead true facts to support his conclusory allegations that Defendants acted or failed to act despite knowing that doing so posed a substantial risk of serious harm to inmates like Welch.

## IV.    LEAVE TO AMEND

It appears that Welch might be able to state additional facts to support the elements that are missing from his Fourteenth Amendment claims about race- and religion-based discrimination and Eighth Amendment claim about indifference to the COVID-19 condition at ESP. So the Court grants Welch leave to file a second amended complaint to attempt to replead these claims. If Welch chooses to file an amended complaint, he is advised that an amended complaint replaces the original complaint, so the amended complaint must be complete in itself. *See Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989). This means Welch's amended complaint must contain all claims, defendants, and factual allegations that he wishes to pursue in this lawsuit.

Welch should file the amended complaint on this Court's approved prisoner-civil-rights form, and it must be titled "Second Amended Complaint." Welch must follow the instructions on the form. He need not and should not allege very many facts in the "nature of the case" section of the form. Rather, in each claim, he should allege facts sufficient to show what each defendant did to violate his civil rights.

/ / /

/ / /

10

ER235                                    ER235                                    ER235

## V.   CONCLUSION

It is therefore ordered that Welch's first application to proceed *in forma pauperis* (ECF No. 1) is denied as moot.

It is further ordered that Welch's second application to proceed *in forma pauperis* (ECF No. 3) is deferred.

It is further ordered that Welch's motion for leave to file a first amended complaint (ECF No. 4) is granted.

It is further ordered that the Fourteenth Amendment claims about race- and religion-based discrimination are dismissed without prejudice and with leave to amend.

It is further ordered that the Eighth Amendment claim about indifference to the COVID-19 condition at ESP is dismissed without prejudice and with leave to amend.

It is further ordered that Defendants Charles Daniels, Steve Sisolak, Tasheena S. Cooke, William Reubart, David Drummond, Ihan Azzam, A.G. Aaron Ford, and Warden William Gittere are dismissed without prejudice from this action.

It is further ordered that Welch has until November 15, 2023, to file a second amended complaint.

It is further ordered that if Welch chooses to file an amended complaint, he should use the approved form and he will title it "Second Amended Complaint." Welch is advised that the Court will screen the amended complaint in a separate screening order and the screening process will take several months. If Welch chooses not to file an amended complaint, this action will be dismissed for failure to state a claim for relief.

The Clerk of the Court is directed to file the First Amended Complaint (ECF No. 4-1) and send Plaintiff Kentrell D. Welch the approved form for filing a 42 U.S.C. § 1983 complaint, instructions for the same, and a courtesy copy of his First Amended Complaint (ECF No. 4-1).

/ / /

/ / /

/ / /

11

ER236                          ER236                          ER236

DATED THIS 16th day of October 2023.

_____
MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE

12

AARON D. FORD
 Attorney General
LEO T. HENDGES (Bar No. 16034)
 Senior Deputy Attorney General
State of Nevada
Office of the Attorney General
1 State of Nevada Way, Suite 100
Las Vegas, Nevada 89119
(702) 486-3795 (phone)
(702) 486-3768 (fax)
Email: lhendges@ag.nv.gov

*Attorneys for Defendants*
*Sean Donahue, Daniel Featherly,*
*Cade Herring, Curtis Rigney,*
*Corey Rowley, Alexander Werner,*
*and Daniel Wheeler*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| KENTRELL D. WELCH,<br><br>Plaintiff,<br><br>v.<br><br>CHARLES DANIELS, *et al.,*<br><br>Defendants. | Case No. 3:22-cv-00557-MMD-CLB<br><br>**DEFENDANTS' NOTICE OF APPEAL**<br>**(ECF NO. 34)** |

Defendants, Sean Donahue, Daniel Featherly, Cade Herring, Curtis Rigney, Corey Rowley, Alexander Werner, and Daniel Wheeler, by and through counsel, Aaron D. Ford, Nevada Attorney General, and Leo T. Hendges, Senior Deputy Attorney General, of the State of Nevada, Office of the Attorney General, hereby Appeal this Court's June 23, 2025, Order (ECF No. 34) denying Defendants' Motion to Dismiss.[1] The matter was fully briefed by both parties. This Notice of Appeal is being brought pursuant to FED. R. APP. P. 3 & 4 and 28 U.S.C. § 1291, and *Mitchell v. Forsyth.*[2] Specifically, the Defendants appeal the District Court's denial of qualified immunity in denying the Motion to Dismiss, and any

---

[1] ECF No. 21.
[2] 472 U.S. 511, 526–27 (1985).

other issue that may be raised in this interlocutory appeal, including, but not limited to, the determination regarding post-screening motions to dismiss and the decision that screening is not required for amended complaints.[3]

In the Ninth Circuit, where, as here, the interlocutory claim is immediately appealable, its filing divests the district court of jurisdiction.[4] In the context of interlocutory qualified immunity appeals, the district court is automatically divested of jurisdiction pending appeal, which extends to "all aspects of the case involved in the appeal."[5]

Because this Notice of Appeal is being submitted within thirty (30) days of the Court's Order (ECF No. 34), this appeal has been timely brought.

DATED this 22nd day of July, 2025.

> AARON D. FORD
> Attorney General
>
> By: /s/ Leo T. Hendges
> LEO T. HENDGES (Bar No. 16034)
> Senior Deputy Attorney General
>
> *Attorneys for Defendants*

---

[3] *See generally Knox v. Southwest Airlines*, 124 F.3d 1103, 1107 (9th Cir. 1997) ("[W]e have jurisdiction over an interlocutory appeal from the denial of qualified immunity where the appeal focuses on whether the defendants violated a clearly established law given the undisputed facts . . . .").

[4] *Chuman v. Wright,* 960 F.2d 104 (Ninth Cir. 1992), *citing United States v. Claiborne,* 727 F.2d 842, 850, cert. denied, 469 U.S. 829, 105 S.Ct. 113, 83 L.Ed.2d 56 (1984). To this end, the Sixth, Seventh, and Tenth Circuits have also addressed this issue in the context of interlocutory qualified immunity appeals. *Yates v. City of Cleveland,* 941 F.2d 444 (6th Cir.1991); *Stewart v. Donges,* 915 F.2d 572 (10th Cir.1990); *Apostol v. Gallion,* 870 F.2d 1335 (7th Cir.1989).

[5] *Chuman* at 105. Under *Coinbase, Inc. v. Bielski,* 599 U.S. 736, 744 (2023), *Griggs v. Provident Consumer Disc. Co.,* 459 U.S. 56, 58 (1982), *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982), *Behrens v. Pelletier,* 516 U.S. 299, 308 (1996), and *Mitchell,* the district court is divested of jurisdiction over all "aspects of the case involved in the appeal" (*Griggs,* 459 U.S. at 58), and gives Defendants the "right, not merely to avoid standing trial, but also to avoid the burdens of such pretrial matters as discovery" (*Behrens,* 516 U.S. at 308), and the district court is therefore required to stay its proceedings (*Coinbase,* 599 U.S. at 744). This expansive rule was recognized by the Ninth Circuit in *Moore v. Brewster,* 96 F.3d 1240 (9th Cir. 1996), which held that by "filing the notice of appeal, [a party] divested the district court of its jurisdiction ***over the matter***." *Id.* at 1246 (emphasis added; superseded by statute on other grounds).

**CERTIFICATE OF SERVICE**

I certify that I am an employee of the State of Nevada, Office of the Attorney General, and that on July 22, 2025, I electronically filed the foregoing **DEFENDANTS' NOTICE OF APPEAL (ECF NO. 34)** via this Court's electronic filing system. Parties who are registered with this Court's electronic filing system will be served electronically.

Kentrell D. Welch, #1030777
Northern Nevada Correctional Center
P. O. Box 7000
Carson City, Nevada 89702
Email: nncclawlibrary@doc.nv.gov
*Plaintiff, Pro Se*

/s/ Carol A. Knight
CAROL A. KNIGHT, an employee of the
Office of the Nevada Attorney General

CLOSED,APPEAL,IFP

# United States District Court
## District of Nevada (Reno)
## CIVIL DOCKET FOR CASE #: 3:22-cv-00557-MMD-CLB

Welch v. Daniels et al
Assigned to: Judge Miranda M. Du
Referred to: Magistrate Judge Carla Baldwin
Case in other court: 9th Circuit, 25-04606
Cause: 42:1983 Prisoner Civil Rights

Date Filed: 12/21/2022
Date Terminated: 08/11/2025
Jury Demand: Both
Nature of Suit: 550 Prisoner: Civil Rights
Jurisdiction: Federal Question

**Plaintiff**

**Kentrell D Welch**
1030777
Northern Nevada Correctional Center
PO Box 7000
Carson City, NV 89702

represented by **Law Library - Northern NV CC**
c/o Librarian
Email: nncclawlibrary@doc.nv.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Law Library - Ely State Prison**
Email: ESP_LawLibrary@doc.nv.gov
*TERMINATED: 02/27/2024*

**Law Library - High Desert State Prison**
Email: HDSP_LawLibrary@doc.nv.gov
*TERMINATED: 06/11/2024*

V.

**Defendant**

**Charles Daniels**
*Dismissed per ECF No. 5; re-added per #7*
*SAC*
*TERMINATED: 06/05/2023*

**Defendant**

**Steve Sisolak**
*Dismissed per ECF No. 5; re-added per #7*
*SAC*
*TERMINATED: 06/05/2023*

**Defendant**

**Tasheena S. Cooke**
*Dismissed per ECF No. 5; re-added per #7*
*SAC*
*TERMINATED: 06/05/2023*

**Defendant**

**William Ruebart**
*Dismissed per ECF No. 5*
*TERMINATED: 10/16/2023*

**ER241**          **ER241**                              **ER241**

**Defendant**

**David Drummond**
*Dismissed per ECF No. 5; re-added per #7
SAC
TERMINATED: 06/05/2023*

**Defendant**

**Ihan Azzam**
*Dismissed per ECF No. 5
TERMINATED: 10/16/2023*

**Defendant**

**A.G. Aaron Ford**
*Dismissed per ECF No. 5
TERMINATED: 10/16/2023*

**Defendant**

**Warden William Gittere**
*Dismissed per ECF No. 5; re-added per #7
SAC
TERMINATED: 06/05/2023*

**Defendant**

| | | |
|---|---|---|
| **C. Rowley**<br>*added #9 Order* | represented by | **Aaron D. Ford-AG**<br>Nevada Attorney General<br>100 North Carson Street<br>Carson City, NV 89701<br>775-684-1100<br>Fax: 775-684-1108<br>Email: usdcfilings@ag.nv.gov<br>*TERMINATED: 09/08/2024*<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED*<br><br>**Leo Thomas Hendges**<br>Nevada Attorney General's Office<br>Attorney General Office<br>1 State of Nevada Way<br>Suite 100<br>Las Vegas, NV 89119<br>702-486-3795<br>Email: lhendges@ag.nv.gov<br>*ATTORNEY TO BE NOTICED* |

**Defendant**

**D. Esquivel**
*added #9 Order*

**Defendant**

| | | |
|---|---|---|
| **Featherly**<br>*added #9 Order* | represented by | **Leo Thomas Hendges**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |

**ER242**          **ER242**          **ER242**

**Defendant**

**A. Warner**                          represented by **Leo Thomas Hendges**
*added #9 Order*                         (See above for address)
                                         *ATTORNEY TO BE NOTICED*

**Defendant**

**Wheeler**                            represented by **Leo Thomas Hendges**
*added #9 Order*                         (See above for address)
                                         *ATTORNEY TO BE NOTICED*

**Defendant**

**Ridgney**                            represented by **Leo Thomas Hendges**
*added #9 Order*                         (See above for address)
                                         *ATTORNEY TO BE NOTICED*

**Defendant**

**Donahue**                            represented by **Leo Thomas Hendges**
*added #9 Order*                         (See above for address)
                                         *ATTORNEY TO BE NOTICED*

**Defendant**

**Lox**
*added #9 Order*

**Defendant**

**Herring**                            represented by **Leo Thomas Hendges**
*[9] add to docket*                      (See above for address)
                                         *ATTORNEY TO BE NOTICED*

**Defendant**

**Warden Adams**
*[9] add to docket*

**Interested Party**

**Nevada Department of Corrections**    represented by **Leo Thomas Hendges**
                                         (See above for address)
                                         *LEAD ATTORNEY*
                                         *ATTORNEY TO BE NOTICED*

                                         **Aaron D. Ford-AG**
                                         (See above for address)
                                         *TERMINATED: 06/28/2024*

                                         **Andrew Christian Nelson**
                                         State of Nevada Office of the Attorney
                                         General
                                         Public Safety--NDOC Division
                                         100 N. Carson St.
                                         Carson City, NV 89701
                                         775-684-1227
                                         Email: andrew.nelson@ag.idaho.gov

**ER243**                    **ER243**                    **ER243**

*TERMINATED: 09/24/2024*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 12/21/2022 | | Case randomly assigned to Chief Judge Miranda M. Du and Magistrate Judge Carla Baldwin. (DRM) (Entered: 12/21/2022) |
| 12/21/2022 | 1 | MOTION/APPLICATION for Leave to Proceed in forma pauperis by Plaintiff Kentrell D Welch. (Attachments: # 1 Complaint, # 2 Proposed Summons, # 3 Cover Letter)(DRM) (Entered: 12/21/2022) |
| 12/21/2022 | 2 | ADVISORY LETTER to litigant. (DRM) (Entered: 12/21/2022) |
| 10/06/2023 | 3 | MOTION/APPLICATION for Leave to Proceed in forma pauperis, by Plaintiff Kentrell D Welch. (GA) (Entered: 10/06/2023) |
| 10/06/2023 | 4 | MOTION *FOR LEAVE TO FILE AN AMENDED PLEADINGS/COMPLAINT,* by Plaintiff Kentrell D Welch. Responses due by 10/20/2023. (Attachments: # 1 Proposed Amended Complaint)(GA) (pleading) (Entered: 10/06/2023) |
| 10/16/2023 | 5 | SCREENING ORDER - IFP Application (ECF No. 1 ) is **denied** as moot. Welch's second IFP Application (ECF No. 3 ) is **deferred**.<br>Welch's motion for leave to file a first amended complaint (ECF No. 4 ) is **granted**. Claims are **dismissed** without prejudice and with leave to amend. Defendants Charles Daniels, Steve Sisolak, Tasheena S. Cooke, William Reubart, David Drummond, Ihan Azzam, A.G. Aaron Ford, and Warden William Gittere are **dismissed** without prejudice from this action. Welch has until **November 15, 2023**, to file a second amended complaint.<br>The Clerk of the Court is directed to file the First Amended Complaint (ECF No. 4 -1) and send Plaintiff Kentrell D. Welch the approved form for filing a 42 U.S.C. § 1983 complaint, instructions for the same, and a courtesy copy of his First Amended Complaint (ECF No. 4 -1). **(ATTACHED HERETO FOR DISTRIBUTION TO P VIA ESP LAW LIBRARY)**.<br>Signed by Chief Judge Miranda M. Du on 10/16/2023. (Attachments: # 1 Inmate 1983 Complaint form & Instructions, # 2 FAC)(Copies have been distributed pursuant to the NEF - DLS) (Entered: 10/17/2023) |
| 10/17/2023 | 6 | FIRST AMENDED COMPLAINT with Jury Demand, by Kentrell D Welch. (Filed and **dismissed** with leave to amend per ECF No. 5 order). (DLS) (Entered: 10/17/2023) |
| 11/08/2023 | 7 | SECOND AMENDED COMPLAINT with Jury Demand against Tasheena S. Cooke, Charles Daniels, David Drummond, William Gittere, Steve Sisolak by Kentrell D Welch. Removes parties. (DRM) (Entered: 11/08/2023) |
| 02/27/2024 | 8 | NOTICE of Change of Address by Plaintiff Kentrell D Welch. Previous address: ESP; New address: HDSP. (DLS) (Entered: 02/27/2024) |
| 06/05/2024 | 9 | SCREENING ORDER SECOND AMENDED COMPLAINT A decision on ECF No. 3 IFP application is deferred. Welch has until July 1, 2024, to file his updated address with the Court. Claims may proceed, or are dismissed, as detailed herein. Defendants Charles Daniels, Steve Sisolak, Tasheena S. Cooke, David Drummond, and William Gittere are dismissed without prejudice from this action. This action is **stayed** 90 days to allow parties to settle. 90-day report due by 9/3/2024. If case does not settle, Plaintiff will be required to pay the full filing fee. AG shall advise re appearance within 21 days (6/26/2024) re participation in the Early Mediation Program. Clerk is directed to add the Nevada Department of Corrections to the docket as an Interested Party and e-serve a copy of this order, and copies of all items previously filed in this case by regenerating NEFs to the AG. |

**ER244**          **ER244**          **ER244**

| | | |
|---|---|---|
| | | (NEFs ## 1-8 regenerated to AG on 6/5/2024.) Clerk is further directed to add C. Rowley, D. Esquivel, Featherly, Herring, A. Warner, Wheeler, Adams, Ridgney, Donahue, and Lox to the docket as Defendants. Clerk is further directed to send Plaintiff Welch courtesy copies of the Second Amended Complaint (ECF No. [7)] (Attached hereto) and this order by electronically delivering the same to Northern Nevada Correctional Centers law library. (Ad hoc Email to NNCC Law Library. ) Signed by Chief Judge Miranda M. Du on 6/5/2024. (**For Distribution by law library. NNCC Law Library: Please distribute to Kentrell D Welch #103077**) (Attachments: # 1 Copy of Complaint for Plaintiff)(Copies have been distributed pursuant to the NEF - DRM) (Entered: 06/05/2024) |
| 06/07/2024 | 10 | Mail Returned as Undeliverable (Offender is not at HDSP) re ECF No. 9 Screening Order, addressed to Kentrell D Welch. (GA) (Entered: 06/07/2024) |
| 06/11/2024 | 11 | NOTICE of Change of Address by Plaintiff Kentrell D Welch. Address updated to **Northern NV CC** . Old address: High Desert State Prison. (GA) (Entered: 06/11/2024) |
| 06/24/2024 | 12 | LIMITED NOTICE of Appearance by attorney Andrew Christian Nelson on behalf of Interested Party Nevada Department of Corrections. (Nelson, Andrew) (Entered: 06/24/2024) |
| 06/28/2024 | 13 | ORDER Setting Inmate Early Mediation Conference for Tuesday, 8/20/2024, at 1:00 p.m. by video conference before Mediator Sandra Ketner. The parties' mediation statements must be received by the court no later than 4:00 p.m., on Tuesday, 8/6/2024. DO NOT FILE THE MEDIATION STATEMENTS; DO NOT SERVE A COPY ON OPPOSING COUNSEL. See the attached order for specifications. Signed by Magistrate Judge Carla Baldwin on 6/28/2024. (**For Distribution by law library.**)(Copies have been distributed pursuant to the NEF - MB) (Entered: 06/28/2024) |
| 08/20/2024 | 14 | MINUTES OF PROCEEDINGS - Early Mediation Conference held on 8/20/2024 before Mediator Sandra Ketner. Crtrm Administrator: *M. Brown*; Pla Counsel: *Kentrell Welch*; Def Counsel: *Andrew Nelson with State Tort Claims Manager Nancy Katafias and Associate Warden Daniel Collier*; Court Reporter: *Zoom*; Time of Hearing: *1:00 PM*; Recording start and end times: *2:11 PM - 2:12 PM*; 1st mediation session. A settlement was NOT reached. **(no image attached)** (Copies have been distributed pursuant to the NEF - MB) (Entered: 08/21/2024) |
| 09/03/2024 | 15 | STATUS REPORT *90 Day Stay Report* by Interested Party Nevada Department of Corrections. (Nelson, Andrew) (Entered: 09/03/2024) |
| 09/04/2024 | 16 | ORDER - The IFP application (ECF No. 3 is **granted**. NDOC shall pay clerk from Inmate account until the full $350 filing fee has been paid. Clerk is directed to send a copy of this order to the Finance, and NDOC Chief Inmate Services. (Email (NEF) to Finance; and Emailed pdf to NDOC formapauperis@doc.nv.gov on 9/4/2024). Clerk shall SERVE this order and copy of the SAC (ECF No. 7 ) on AG by adding AG to docket. (E-service 9/4/2024; 7 Complaint via NEF regeneration.) Service must be perfected within ninety (90) days from the date of this order (12/3/2024.) Within twenty-one (21) days of the date of entry of this order (9/25/2024) AG shall file notice re acceptance of service, and file under seal addresses for Ds for which service not accepted. If service accepted, the answer due within sixty (60) days from the date of this order (11/3/2024). This case is no longer stayed. Signed by Magistrate Judge Carla Baldwin on 9/4/2024. (**For Distribution by law library.**)(Copies have been distributed pursuant to the NEF - DRM) (Entered: 09/04/2024) |
| 09/24/2024 | 17 | NOTICE of Change of Deputy Attorney General on behalf of Interested Party Nevada Department of Corrections. Deputy Attorney General Andrew Christian Nelson terminated. (Hendges, Leo) (Entered: 09/24/2024) |
| 09/24/2024 | 18 | ACCEPTANCE OF SERVICE by Featherly, Donahue, Wheeler, C. Rowley, Herring, Ridgney, A. Warner on 9/24/2024 executed by Featherly, Donahue, Wheeler, C. Rowley, |

**ER245**  **ER245**  **ER245**

| | | Herring, Ridgney, A. Warner re 16 Order on Motion/Application to Proceed in forma pauperis,,,,,,,,,,,. Featherly accepted service on 9/24/2024, answer due 11/23/2024; Donahue accepted service on 9/24/2024, answer due 11/23/2024; Wheeler accepted service on 9/24/2024, answer due 11/23/2024; C. Rowley accepted service on 9/24/2024, answer due 11/23/2024; Herring accepted service on 9/24/2024, answer due 11/23/2024; Ridgney accepted service on 9/24/2024, answer due 11/23/2024; A. Warner accepted service on 9/24/2024, answer due 11/23/2024. (Hendges, Leo) (Entered: 09/24/2024) |
|---|---|---|
| 09/24/2024 | 20 | NOTICE *of Filing Under Seal Submission of Last Known Address* by Donahue, Featherly, Herring, Ridgney, C. Rowley, A. Warner, Wheeler re 18 Acceptance of Service,, 16 Order on Motion/Application to Proceed in forma pauperis,,,,,,,,,,,. (Hendges, Leo) (Entered: 09/24/2024) |
| 11/04/2024 | 21 | MOTION to Dismiss 7 Amended Complaint by Defendants Donahue, Featherly, Herring, Ridgney, C. Rowley, A. Warner, Wheeler. Responses due by 11/18/2024. (Hendges, Leo) (Entered: 11/04/2024) |
| 11/05/2024 | 22 | MINUTE ORDER IN CHAMBERS of the Honorable Judge Miranda M. Du on 11/5/2024. Regarding the Requirements of *Klingele v. Eikenberry* and *Rand v. Rowland* as to 21 Motion to Dismiss. Opposition due 14 days from the date of this Minute Order, and reply due seven 7 days after the filing of the opposition. (**For Distribution by law library.**) (Copies have been distributed pursuant to the NEF - DLS) (Entered: 11/05/2024) |
| 11/08/2024 | 23 | MOTION to Extend Time by Plaintiff Kentrell D Welch. Responses due by 11/22/2024. (GA) (amend) (Entered: 11/08/2024) |
| 11/12/2024 | 24 | ORDER re: ECF No. 23 Motion to Extend Time. Good cause appearing, Plaintiff's motion to extend time to respond to Defendants' motion to dismiss is **GRANTED**. Plaintiff shall file his response by no later than **Thursday, December 12, 2024**. IT IS SO ORDERED. Signed by Magistrate Judge Carla Baldwin on 11/12/2024. **(no image attached)** (**For Distribution by law library.**) (Copies have been distributed pursuant to the NEF - HL) (Entered: 11/12/2024) |
| 11/18/2024 | 25 | RESPONSE to 21 Motion to Dismiss re 7 , 9 by Plaintiff Kentrell D Welch. Replies due by 11/25/2024. (GA) (Entered: 11/18/2024) |
| 11/19/2024 | 26 | EXHIBITS by Plaintiff Kentrell D Welch. (DLS) (Entered: 11/19/2024) |
| 11/25/2024 | 27 | REPLY to Response to 21 Motion to Dismiss by Defendants C. Rowley, Featherly, A. Warner, Wheeler, Ridgney, Donahue, Herring. (Hendges, Leo) (Entered: 11/25/2024) |
| 02/04/2025 | 28 | REPORT AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE - IT IS THEREFORE RECOMMENDED that Defendants' motion to dismiss, (ECF No. 21 ), be DENIED. Objections to R&R due by 2/18/2025. Signed by Magistrate Judge Carla Baldwin on 2/4/2025. (**For Distribution by law library.**)(Copies have been distributed pursuant to the NEF - DLS) (Entered: 02/04/2025) |
| 02/18/2025 | 29 | OBJECTION to 28 Report and Recommendation by Defendants C. Rowley, Featherly, A. Warner, Wheeler, Ridgney, Donahue, Herring. Response to Objections to R&R due by 3/4/2025. (Hendges, Leo) (Entered: 02/18/2025) |
| 02/25/2025 | 30 | **WITHDRAWN per ECF No. 32 Order :** RESPONSE to 29 Objection to Report and Recommendation by Plaintiff Kentrell D Welch. (GA) Modified on 3/3/2025 to denote withdrawn (KW). (Entered: 02/25/2025) |
| 02/28/2025 | 31 | MOTION to Extend Time (re ECF Nos. 29 Objection to Report and Recommendation, 30 Response) by Plaintiff Kentrell D Welch. Responses due by 3/14/2025. (HKL) (rr) (Entered: 02/28/2025) |

**ER246**                    **ER246**                    **ER246**

| 03/03/2025 | 32 | MINUTE ORDER IN CHAMBERS of the Honorable Judge Miranda M. Du on 3/3/2025.<br><br>Good cause appearing, the Court grants Plaintiff's motion for a 30 day extension of time to respond to Defendants' objection (ECF No. 31 ). Plaintiff will have until April 1, 2025 to file his response. The Court further grants Plaintiff's request to withdraw the document erroneously filed as his response to Defendants' objection (ECF No. 30).<br><br>**(no image attached)** (**For Distribution by law library.**)(Copies have been distributed pursuant to the NEF - KW) (Entered: 03/03/2025) |
| --- | --- | --- |
| 03/04/2025 | 33 | RESPONSE to Objection to 28 Report and Recommendation by Plaintiff Kentrell D Welch. (GA) (Entered: 03/05/2025) |
| 06/23/2025 | 34 | ORDERED that Defendants' Objection (ECF No. 29 ) to Judge Baldwin's Report and Recommendation (ECF No. 28 ) is overruled.<br>It is further ordered that Judge Baldwin's Report and Recommendation (ECF No. 28 ) is accepted and adopted in full.<br>It is further ordered that Defendants' Motion to Dismiss (ECF No. 21 ) is denied.<br>Signed by Judge Miranda M. Du on 6/23/2025.<br>(**For Distribution by law library.**) (Copies have been distributed pursuant to the NEF - DRM) (Entered: 06/24/2025) |
| 07/22/2025 | 35 | NOTICE OF APPEAL as to 34 Order on Motion to Dismiss,,, Order on Report and Recommendation,,,,, by Defendants C. Rowley, Featherly, A. Warner, Wheeler, Ridgney, Donahue, Herring. Filing fee $ 605, receipt number ANVDC-8120026. E-mail notice (NEF) sent to the US Court of Appeals, Ninth Circuit.<br><br>Designation of Transcripts and Transcript Order forms and instructions for appeal can be found on the Court's website at www.nvd.uscourts.gov.<br><br>(Hendges, Leo) (Entered: 07/22/2025) |
| 07/24/2025 | 36 | USCA TIME SCHEDULE ORDER and Docketing Notice as to 35 Notice of Appeal. **USCA Case Number 25-4606** assigned. (**For Distribution by law library.**) (Copies have been distributed pursuant to the NEF - GA) (Entered: 07/28/2025) |
| 08/11/2025 | 37 | MINUTE ORDER IN CHAMBERS of the Honorable Judge Miranda M. Du on 8/11/2025. By Deputy Clerk: Karen Walker.<br><br>Defendants appeal the Court's order denying their motion to dismiss based on qualified immunity (ECF No. 34 ). (ECF No. 35 .) The Court has not certified that Defendants' "claim of qualified immunity is frivolous." See *Chuman v. Wright*, 960 F.2d 104, 105 (9th Cir. 1992). "In the absence of such certification, the district court is automatically divested of jurisdiction to proceed with trial pending appeal." Id. Accordingly, this case is stayed pending resolution of Defendants' appeal. The Court directs the Clerk's Office to administratively close this case pending disposition of Defendants' appeal.<br><br>**(no image attached)** (**For Distribution by law library.**) (Copies have been distributed pursuant to the NEF - KW) (Entered: 08/11/2025) |

| **PACER Service Center** |
| --- |
| **Transaction Receipt** |
| 10/21/2025 13:30:35 |

**ER247**      **ER247**      **ER247**

| PACER Login: | Nathanclaus1337 | Client Code: | |
|---|---|---|---|
| Description: | Docket Report | Search Criteria: | 3:22-cv-00557-MMD-CLB |
| Billable Pages: | 7 | Cost: | 0.70 |

**ER248**          **ER248**                    **ER248**