**No. 25-4606**

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

---

**KENTRELL WELCH,**
*Plaintiff-Appellee*,

v.

**COREY ROWLEY, et al,**
*Defendants-Appellants*.

On Appeal from the United States District Court
for the District of Nevada
No. 3:22-cv-00557
Hon. Miranda M. Du

---

**APPELLEE'S ANSWERING BRIEF**

---

| **RIGHTS BEHIND BARS** | **KAPLAN & GRADY LLC** |
|:---:|:---:|
| SAMUEL WEISS | DAVID A. SCHMUTZER |
| 1800 M Street NW Front 1 #33821 | 2071 N. Southport Ave., Ste. 205 |
| Washington, D.C. 20033 | Chicago, IL 60614 |
| (202) 455-4399 | (312) 254-8629 |

*Counsel for Plaintiff-Appellee*
**Kentrell Welch**

*This brief was prepared with the substantial assistance of UCLA School of Law Prisoners' Rights Clinic students Dyllan Balassi, Ethan Naziri, Ambika Nuggihalli, and Sophia Valeski.

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................. iii

INTRODUCTION ............................................................................................... 1

JURISDICTIONAL STATEMENT ...................................................................... 3

ISSUES PRESENTED ......................................................................................... 5

STATEMENT OF THE CASE .............................................................................. 6

SUMMARY OF THE ARGUMENT ................................................................... 14

STANDARD OF REVIEW ................................................................................. 19

ARGUMENT ...................................................................................................... 20

    I.    The District Court Correctly Denied Qualified Immunity Because Defendants Violated Mr. Welch's Clearly Established Right to Be Free From the Risk of Exposure to Infectious Disease ...................... 20

        A.    Defendants Violated Mr. Welch's Eighth Amendment Rights by Exposing Him to COVID-19, a Serious Disease, Against His Will ......................................................................................... 20

                1.    Exposure to COVID-19 Presents an Objectively Serious Risk of Harm Under the Eighth Amendment ................. 21

                2.    Defendants Knew that Exposure to COVID-19 Presents a Serious Risk of Harm, Ignored the Risk, and Ignored Welch's Pleas for Officers to Mitigate the Risk, Constituting Deliberate Indifference .............................. 24

                3.    Mr. Welch Sufficiently Alleges Causation ..................... 34

        B.    The Right to Be Free from Risk of Exposure to a Serious Disease Is Clearly Established ................................................. 37

II.    This Court Lacks Jurisdiction to Review the District Court's Application of Law of the Case, and, in Any Event, Defendants Received a Thorough Review of Their Motion to Dismiss ................44

      A.    This Court Lacks Jurisdiction to Review the District Court's Application of Law of the Case on an Interlocutory Appeal of Qualified Immunity ....................................................................44

      B.    If This Court Exercises Jurisdiction, It Should Reject Defendants' Arguments Because the District Court Thoroughly Considered Defendants' Arguments Below .............................48

CONCLUSION ...................................................................................................51

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

ADDENDUM

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Berg v. Kincheloe*,
794 F.2d 457 (9th Cir. 1986)……………………………………….……34

*Blake v. Zmuda*,
No. 21-3236, 2022 WL 1184402 (10th Cir. Apr. 21, 2022)………..35, 36

*Brown v. Bargery*,
207 F.3d 863 (6th Cir. 2000)……………….………………………46

*Buchheit v. Green*,
705 F.3d 1157 (10th Cir. 2012)……………………………...…..54

*Byrd v. Munoz*,
No. 24-1618, 2025 WL 943408 (7th Cir. Mar. 28, 2025)……..………..35

*Carley v. Aranas*,
103 F.4th 653 (9th Cir. 2024)…………………………………...…….45

*Castro v. County of Los Angeles*,
833 F.3d 1060 (9th Cir. 2016)……………...………………..…….…40

*Centofani v. Neven*,
No. 13-cv-01080 2020 WL 2114360, at *3 (D. Nev. May 4, 2020)...........6

*Chatman v. Otani*,
No. 21-cv-00268, 2021 WL 2941990 (D. Haw. July 13, 2021)…..……..31

*Chaudry v. Aragón*,
68 F.4th 1161 (9th Cir. 2023)..................................................................22

*D.C. v. Wesby*,
    583 U.S. 48, 63 (2018)……………………………………...……………40, 45

*DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*,
    489 U.S. 189 (1989)…………………….…….….…...………………........23

*Digital Equip. Corp. v. Desktop Direct, Inc.*,
    511 US 863 (1994)…………………….….……...…………………48, 51

*Erickson v. Pardus*,
    551 U.S. 89 (2007)…………………………...…………………….……38

*Farmer v. Brennan*,
    511 U.S. 825 (1994)………………...........…...…….…………........16, 26, 34

*Fields v. Baker*,
    No. 16-cv-00298, 2020 WL 1914814 (D. Nev. Apr. 20, 2020).....................6

*Forbes v. Edgar*,
    112 F.3d 262 (7th Cir. 1997)…………………………….…………………47

*Garewal v. Sliz*,
    611 Fed. App'x. 926, 2015 WL 3372154 (10th Cir. 2015)……...…..53, 54

*George v. Morris*,
    736 F.3d 829 (9th Cir. 2013)................................................................3, 16

*Goka v. Bobbitt*,
    862 F.2d 646 (7th Cir. 1988)……………………………...………….30

*Goode v. Canedo*,
    No. 21-cv-02054, 2022 WL 16753312 (S.D. Cal. Nov. 7, 2022)……........28

*Gordon v. Burt*,
    No. 23-1775, 2024 WL 1842873 at *2 (6th Cir. 2024)……………..…..46

*Hampton v. California*,
    83 F.4th 754 (9th Cir. 2023)…………………………………..passim

iv

*Hearns v. Terhune*,
   413 F.3d 1036 (9th Cir. 2005).......................................................22, 23, 24

*Hebbe v. Pliler*,
   627 F.3d 338 (9th Cir. 2010) ...................................................................21

*Helling v. McKinney*,
   509 U.S. 25 (1993)…………………………………………………passim

*Hernandez v. County of Monterey*,
   110 F. Supp. 3d 929 (N.D. Cal. Apr. 14, 2015)……………...…....……..29

*Hill v. Rhude*,
   556 F.Supp.3d 1144 (D. Nev. Aug. 25, 2021)……………...…………..36

*Hoover v. Ronwin*,
   466 U.S. 558 (1984)..………..…………………………....………........23

*Hoptowit v. Spellman*,
   753 F.2d 779 (9th Cir. 1985)……..…….......…………..……………...41, 42

*Hudson v. Palmer*,
   468 U.S. 517 (1984)………………….…………..……………..24, 25

*Hyde v. City of Willcox*,
   23 F.4th 863 (9th Cir. 2022)………………………….........…..3, 20, 21

*Jackson v. Russell,*
   No. 22-cv-01289, 2025 WL 69933 (D. Nev. Jan. 8, 2025).........................6

*Jolly v. Coughlin*,
   76 F.3d 468 (2d Cir. 1996)………………………….…..…..46

*Jones v. Sherman*,
   No. 21-cv-01093, 2022 WL 783452 (E.D. Cal. Mar. 11, 2022)…....…..37

*Keates v Kaile*,
883 F.3d 1228 (9th Cir. 2018)…………...……..…..……………………..20

*Kennedy v. City of Ridgefield*,
439 F.3d 1055 (9th Cir. 2006)….…………………….…..…………….…………40

*LaMarca v. Turner*,
955 F.2d 1526 (11th Cir. 1993)…………………………….…......…..30

*Leer v. Murphy*,
844 F.2d 628 (9th Cir. 1988)........................................................39

*Mata v. Saiz*,
427 F.3d 745 (10th Cir. 2005)…………………………………………..28

*Meredith v. Oregon*,
321 F.3d 807 (9th Cir. 2003)...………….…..…..……………........3, 19, 48, 49

*Milgard Tempering, Inc. v. Selas Corp. of America*,
902 F.2d 703 (9th Cir. 1990)………….…..…..………….…..…………….......50

*Mullen v. Smith*,
738 F.2d 317 (8th Cir. 1984)………………….…..………..…….……………33

*Nazario v. Thibeault*,
No. 22-1657, 2023 WL 7147386 (2d Cir. 2023)………...……….….……..46

*Pacific Shores Properties, LLC v. City of Newport Beach*,
730 F.3d 1142 (9th Cir. 2013)…....………….……………………..22

*Parsons v. Ryan*,
754 F.3d 657 (9th Cir. 2014)……………………………...………….44

*Polanco v. Diaz*,
76 F.4th 918 (9th Cir. 2023)………………….......….….……...…33, 34

*Puente Arizona v. Arpaio*,
821 F.3d 1098 (9th Cir. 2016)………...……………...………......49, 50

vi

*Rodriguez v. Lockheed Martin Corp.*,
 627 F.3d 1259 (9th Cir. 2010)...................................................................19

*South Bay United Pentecostal Church v. Newsom*,
 590 U.S. 965 (2020)…………………………..…………………………33

*Tafoya v. Salazar*,
 516 F.3d 912 (10th Cir. 2008)……………………………….……..…..29

*Teahan v. Wilhelm*,
 481 F. Supp. 2d 1115 (S.D. Cal. 2007)…………...………………….…..53

*Torres v. Milusnic*,
 472 F. Supp. 3d 713 (C.D. Cal. July 14, 2020)…………………………34

*Trueblood v. Cappola*,
 No. 19-cv-05816, 2020 WL 9347906 (W.D. Wash. Oct. 1, 2020)………..31

*United States v. Sineneng-Smith*,
 590 U.S. 371 (2020)…………………………………..……………..…52

*Vensor v. Schell*,
 657 Fed. App'x. 697 (9th Cir. Aug. 11, 2016)……………….......………32

*Wallis v. Baldwin*,
 70 F.3d 1074 (9th Cir. 1995)…………..…………….......……........18, 41, 43

*Wilhelm v. Rotman*,
 680 F.3d 1113 (9th Cir. 2012)…………...…..…..…………........17, 38

*Will v. Hallock*,
 546 US 345 (2006)……………………….........…..……………….......48

*Williams v. Wood*,
 223 Fed. App'x 670 (9th Cir. 2007)……………......…..………...24, 25

**Statutes**

28 U.S.C. § 636…………………………………………………………...13

28 U.S.C. § 1291…………………………………………………………..3

28 U.S.C. § 1331……....................………………………….……………..3

28 U.S.C. § 1915...……………………………………………..…………11

42 U.S.C. § 1983…………………………………….……….............11, 22

**Rules**

Fed. R. Civ. P. 8………………………………………………………...38

Fed. R. Civ. P. 12………………………………………………………….21

**Other Authorities**

Ctrs. for Disease Control & Prevention,
*Additional Information for Community Congregate Living Settings (e.g., Group Homes, Assisted Living)*, (May 11, 2023),
https://archive.cdc.gov/www_cdc_gov/coronavirus/2019-ncov/community/community-congregate-living-settings.html................6, 31

Fed. Bureau of Prisons,
*Federal Bureau of Prisons COVID-19 Action Plan* (Mar. 13, 2020), https://www.bop.gov/resources/news/20200313_covid-19.jsp..........5

Massimiliano Esposito et al.,
*The Risk of COVID-19 Infection in Prisons and Prevention Strategies: A Systematic Review and a New Strategic Protocol of Prevention*, 10 Healthcare 270 (2022)...................................................................................6

Neal Marquez, et al.,
*COVID-19 Incidence and Mortality in Federal and State Prisons Compared with the US Population, April 5, 2020, to April 3, 2021* (Oct. 6, 2021),

https://jamanetwork.com/journals/jama/fullarticle/2784944........................25

Nev. Off. of the Governor,
*COVID-19 Declaration of Emergency*
*Directive* (2020), https://gov.nv.gov/layouts/full_page.aspx?id=301999 (last
visited Apr. 22, 2026)..................................................................6, 31

Occupational Safety and Health Management,
OSHA 3990-03 2020, Guidance on Preparing Workplaces for COVID-19
(2020).......................................................................................6

**INTRODUCTION**

As COVID-19 ran rampant across this nation and its prisons, Plaintiff Kentrell Welch sat incarcerated at the Ely State Prison, "vulnerable as a sitting duck." (ER-207). As prisoners around him died of COVID-19, Mr. Welch made the simple request for prison officials to mask. Instead of listening, the Defendant correctional officers refused to mask, verbally abused Mr. Welch, threatened to withhold meals from Mr. Welch, and called him "an illiterate nigger." (ER-208-09 ¶ 21). When Mr. Welch started to feel fatigue, shortness of breath, and weakness, Mr. Welch knew Defendants had infected him with COVID-19.

Now, on interlocutory appeal from the denial of qualified immunity, Defendants contend that Mr. Welch has failed to plausibly allege a clearly established constitutional violation. But as the district court correctly ruled, that argument is foreclosed under longstanding Supreme Court precedent in *Helling v. McKinney*, holding that incarcerated individuals have a clearly established Eighth Amendment right to be free from risk of exposure to a serious disease. 509 U.S. 25 (1993). And as the district court also recognized, more recently, in *Hampton v. California*, this Court reaffirmed that constitutional principle in the particularized context of COVID-19. 83 F.4th 754 (9th Cir. 2023).

To avoid this inescapable conclusion, Defendants present a slew of unpersuasive arguments. Defendants argue that Mr. Welch was required to plead

that Defendants were personally aware they had COVID-19, even though their refusal to mask reflects Defendants' disregard for Mr. Welch's safety under *Hampton*. Defendants also argue Mr. Welch was required to plead facts that he *contracted* COVID-19, even though the district court reasonably inferred that he did, and in any event, a constitutional violation occurs at *exposure* to a serious disease. Defendants then argue that the clearly established right only applies to "transfer" of prisoners, even though no such requirement exists.

As a last-ditch effort to escape affirmance, Defendants argue the district court failed to fully review their motion to dismiss and misapplied the law-of-the-case doctrine. Yet there is no jurisdictional basis for this Court to address that argument, and even if the Court exercises jurisdiction, the argument is meritless because the district court's analysis was thorough.

In short, the district court correctly concluded that Mr. Welch has plausibly alleged a clearly established Eighth Amendment conditions-of-confinement claim, and that Defendants are not entitled to qualified immunity. This Court should affirm.

2

## JURISDICTIONAL STATEMENT

The district court had jurisdiction under 28 U.S.C. § 1331.

Under 28 U.S.C. § 1291, this Court may review interlocutory appeals based on the denial of qualified immunity. *Hyde v. City of Willcox*, 23 F.4th 863, 869 (9th Cir. 2022). Thus, this Court has jurisdiction over Defendants' appeal so far as it relates to the district court's denial of Defendants' motion raising qualified immunity.

But in this interlocutory posture, the court's jurisdiction does not extend to reviewing the district court's factual findings—notably, that Mr. Welch contracted COVID-19—because its jurisdiction is limited to whether defendants are "entitled to qualified immunity as a matter of law, assuming all factual disputes are resolved, and all reasonable inferences are drawn, in plaintiff's favor." *George v. Morris*, 736 F.3d 829, 836 (9th Cir. 2013) (quoting *Karl v. City of Mountlake Terrace,* 678 F.3d 1062, 1068 (9th Cir. 2012)).

This Court's jurisdiction also does not extend to Defendants' arguments regarding the district court's application of law of the case. (OB 27-33). That issue has no independent basis for jurisdiction on interlocutory appeal, nor does it qualify for pendent jurisdiction. *See Meredith v. Oregon*, 321 F.3d 807, 812-814 (9th Cir. 2003) (finding that pendent jurisdiction may only be exercised over an issue when it

is "inextricably intertwined" or "necessary to ensure meaningful review" of the issue

properly before the court on interlocutory appeal).

## ISSUES PRESENTED

1.    Whether Defendants are entitled to qualified immunity at the pleading stage, where Mr. Welch plausibly alleges that Defendants refused to wear masks despite the raging pandemic, responded to his requests to do so with verbal abuse, and housed him with highly symptomatic individuals, resulting in his exposure to and infection with COVID-19, and where the right to be free from exposure to serious disease has been clearly established since at least *Helling v. McKinney*, 509 U.S. 25 (1993) and reaffirmed in the context of COVID-19 by this Court in *Hampton v. California*, 83 F.4th 754 (9th Cir. 2023).

2.    Whether the Court has jurisdiction on interlocutory appeal to review the district court's application of the law of the case in ruling on Defendants' motion to dismiss when that ruling is not essential to the Court's decision on qualified immunity, and whether, if the Court does have jurisdiction, Defendants were deprived of their basic procedural rights to challenge Mr. Welch's complaint, where the district court thoroughly conducted a de novo review of the magistrate judge's qualified immunity analysis.

## STATEMENT OF THE CASE

### I.     FACTUAL BACKGROUND

#### A.     COVID-19 Is a Highly Contagious Disease That Posed a Serious Threat

In 2022, as COVID-19 ran rampant, Plaintiff Kentrell Welch was incarcerated at the Ely State Prison (ESP). (ER-203-204).  In response to COVID-19, the United States—and the state of Nevada—had issued a state of emergency.[1] But despite the heightened risk of contracting COVID-19 in prisons,[2] minimizing the spread of COVID-19 in these settings was possible.[3] Transmission could be mitigated with basic measures, like ventilation, testing, quarantine, and expanded use of masks.[4] These mitigation measures were widely publicized, broadly implemented across public and private institutions, and incorporated into correctional policies.[5] The

---

[1] Nev. Off. of the Governor, *COVID-19 Declaration of Emergency Directive* (2020), https://gov.nv.gov/layouts/full_page.aspx?id=301999 (last visited Apr. 22, 2026).

[2] *See* Massimiliano Esposito et al., *The Risk of COVID-19 Infection in Prisons and Prevention Strategies: A Systematic Review and a New Strategic Protocol of Prevention*, 10 Healthcare 270, 8 (2022).

[3] Ctrs. for Disease Control & Prevention*, Additional Information for Community Congregate Living Settings (e.g., Group Homes, Assisted Living)* (May 11, 2023), https://archive.cdc.gov/www_cdc_gov/coronavirus/2019-ncov/community/community-congregate-living-settings.html (last visited Apr. 22, 2026).

[4] Ctrs. for Disease Control & Prevention, *supra* note 3; Nev. Off. of the Governor, *supra* note 1.

[5] Occupational Safety and Health Administration, OSHA 3990-03 2020, *Guidance on Preparing Workplaces for COVID-19* (2020),

6

Nevada Department of Corrections ("NDOC") instituted policies "screening all individual[s] for COVID-19," "ensuring proper cleaning and sanitization of the institutions," and allowing incarcerated people to wear masks.[6] (ER-203-04 ¶ 4; ER-206 ¶ 9; *see also* ER-108 (NDOC policy affirming that "all employees of the Nevada Department of Corrections have been mandated to [wear] N95 masks.")). Because prison officials disregarded these policies, many incarcerated individuals at ESP died in the face of the "raging pandemic." (ER-204-05).

### B. Defendants Display Knowing Disregard to the Risk of Exposing Mr. Welch to COVID-19 By Refusing to Mask and Responding Abusively to Mr. Welch's Repeated Requests for Defendants to Do So

Mr. Welch suffers from two autoimmune diseases, including rheumatoid arthritis, which make him vulnerable to contracting COVID-19 and susceptible to suffering from severe complications as a result. (ER-203). Despite Mr. Welch's elevated risk to COVID-19 posed by his autoimmune diseases, the NDOC prison

---

https://www.osha.gov/sites/default/files/publications/OSHA3990.pdf (last visited Apr. 22, 2026); Fed. Bureau of Prisons, *Federal Bureau of Prisons COVID-19 Action Plan* (Mar. 13, 2020), https://www.bop.gov/resources/news/20200313_covid-19.jsp (last visited Apr. 22, 2026).

[6] *Centofani v. Neven*, No. 13-cv-01080 2020 WL 2114360, at *3 (D. Nev. May 4, 2020); *Fields v. Baker*, No. 16-cv-00298, 2020 WL 1914814, at *4 (D. Nev. Apr. 20, 2020); *Jackson v. Russell,* No. 22-cv-01289, 2025 WL 69933, at *2 (D. Nev. Jan. 8, 2025).

staff took no special measures to protect him. (ER-203-204 ¶ 4, ER-206-207 ¶¶ 9-14, ER-209-210 ¶ 24). To the contrary, Defendants Sean Donahue, Daniel Featherly, Cade Herring, Curtis Rigney, Corey Rowley, Alexander Werner, and Daniel Wheeler refused to wear masks while conducting basic activities at the prison, including serving meals, delivering mail, and escorting incarcerated individuals to legal visits. (ER-203-204 ¶ 4, ER-207 ¶ 14, ER-208-209 ¶¶ 18-24).

Mr. Welch repeatedly requested that Defendants wear masks while working at the prison. (ER-208-209 ¶¶ 19-24). In addition to verbal requests, Mr. Welch submitted numerous grievances asking that Defendants be reminded of the prison's masking policy. (ER-088, ER-109-11, ER-113-15). In response to Mr. Welch's grievances, the NDOC confirmed that "all employees of the Nevada Department of Corrections have been mandated to [wear] N95 masks." (ER-108). Yet, supervising officers, Defendants Wheeler and Featherly, refused to enforce the mask mandate. (ER-209 ¶ 23).

Making matters worse, in response to Mr. Welch's repeated requests to follow or enforce the mask mandate, Defendants engaged in a flurry of vile, abusive behavior. (ER-203-204 ¶ 4, ER-207 ¶ 14, ER-208-209 ¶¶ 19-24). In particular:

8

- Defendants Herring, Esquival, and Wheeler told Mr. Welch on separate occasions to "[s]hut the fuck up" when he asked them to wear a mask. (ER-208 ¶ 19, ER-209 ¶¶ 22-23).

- Defendant Herring complained about incarcerated individuals like Mr. Welch who were concerned for their health and safety, characterizing them as "cryers, complainers [and the] mask police." (ER-119).

- Defendants Rigney and Donahue threatened to withhold food from Mr. Welch when he requested that they wear masks, asking him whether he "want[ed] to eat?" (ER-209 ¶ 24).

- Defendant Rowley told Mr. Welch to "refuse his [legal] visits" if Mr. Welch did not "want [an] escort" from someone not wearing a mask (ER-208 ¶ 20).

- In front of a subordinate officer, Defendant Adams called Mr. Welch an "illiterate nigger" after Mr. Welch asked him to wear a mask. (ER-208-209 ¶ 21).

### C.    Defendants Expose Mr. Welch to COVID-19

Defendants' refusal to wear masks to protect Mr. Welch from exposure to COVID-19 came to a head in 2022. (ER-203, ER-207). Two individuals housed in Mr. Welch's unit contracted COVID-19. (ER-203 ¶ 2). Despite the risk of spreading

COVID-19 to others in Mr. Welch's housing unit, Defendants continued not to mask around Mr. Welch, where these "highly symptomatic" incarcerated individuals were housed. (ER-203-04 ¶ 4, ER-207 ¶ 14, ER-208 ¶ 20, ER-209 ¶¶ 22-24). Defendants' deliberate refusal to mask around these individuals led to the predictable outcome: As Mr. Welch was left "vulnerable as a sitting duck" around highly symptomatic individuals, he became infected with COVID-19 and began to suffer symptoms, including shortness of breath, fatigue, and weakness in his legs, hands, and across his body. (ER-203 ¶ 1, ER-207 ¶ 12, ER-208 ¶ 17).

## II. THE PROCEEDINGS BELOW

### A. The District Court Screens Mr. Welch's Complaint, Ruling that He Stated a Plausible Eighth Amendment Claim, and the Magistrate Judge Recommends that Defendants' Motion to Dismiss Raising Qualified Immunity Be Denied

Mr. Welch initiated this action pro se, raising an Eighth Amendment conditions-of-confinement claim under 42 U.S.C. § 1983.[7] Former Chief District Judge Miranda M. Du carefully screened Mr. Welch's Second Amended Complaint—the operative complaint on appeal—under 28 U.S.C. § 1915A, finding that Mr. Welch contracted COVID-19 in January 2022 and concluded that Mr. Welch's Eighth Amendment conditions claim should proceed. (ER-186, ER-193).

---

[7] Mr. Welch raised other claims that were dismissed at the screening stage. (ER-195-96).

10

After screening, Defendants moved to dismiss, raising the defense of qualified immunity. (ER-171, ER-175). United States Magistrate Judge Carla Baldwin recommended that Defendants' motion be denied for three reasons: first, the district court's screening order already determined that Mr. Welch stated a plausible Eighth Amendment conditions claim. (ER-061-063). Second, Defendants provided no additional basis for dismissing the Eighth Amendment claim at this "early stage of litigation." (ER-062). Third, the right of incarcerated individuals to be free from exposure to a serious disease has been clearly established since at least the Supreme Court's 1993 decision in *Helling v. McKinney*, 509 U.S. 25, 32-35 (1993). (ER-062-063). The magistrate judge reiterated the district court's factual finding that Mr. Welch had contracted COVID-19. (ER-58).

### B. The District Court Overrules Defendants' Objections and Denies Defendants' Motion to Dismiss

Defendants raised three objections to the magistrate judge's Report and Recommendation. (ER-043-44). First, Defendants objected to the magistrate judge's reliance on the district court's screening order. (ER-045). Second, they objected to the magistrate judge's conclusion that Mr. Welch had alleged a plausible Eighth Amendment claim. (ER-046). Third, they objected to the magistrate judge's conclusion that Mr. Welch stated a clearly established Eighth Amendment violation. (ER-047).

11

### 1. The District Court Rules That the Magistrate Judge Appropriately Relied on the Screening Order

The district court overruled Defendants' objections to the magistrate judge's reliance on the screening order adopting the report-and-recommendation in full. (ER-004, ER-006). The district court held that the magistrate judge appropriately applied law of the case given that it had addressed the same arguments at issue. Therefore, without an additional basis articulated by Defendants, the magistrate judge was not required to reexamine what the court had already scrutinized during screening. (ER-006-009).

### 2. The District Court Rules That Mr. Welch Plausibly Alleges a Constitutional Violation

Next, consistent with its obligation under 28 U.S.C. § 636(b)(1)(C), the district court conducted a de novo review of Defendants' motion to dismiss. (ER-010). Specifically, the district court thoroughly evaluated both prongs to determine whether qualified immunity warranted dismissal. (*Id.*).

The district court concluded that Mr. Welch satisfied the first prong of the qualified immunity analysis—that Mr. Welch's complaint plausibly alleged an Eighth Amendment violation. (*Id.*) The district court first observed that Defendants conceded that the risk of involuntary exposure to COVID-19 amounted to an objectively serious condition of confinement. (ER-011).

12

The district court next ruled that Mr. Welch plausibly alleged the subjective requirement of his Eighth Amendment claim. (ER-014). The district court concluded that Mr. Welch had plausibly alleged deliberate indifference based on his allegations that Defendants kept Mr. Welch in the same unit as "highly symptomatic" incarcerated individuals, refused to wear a mask, and harassed Mr. Welch when asked to wear a mask, even though Mr. Welch suffers from chronic health conditions. (ER-011-12). The district court concluded that the risk of exposing Mr. Welch to COVID-19 was obvious to Defendants because Mr. Welch had explicitly requested that Defendants wear masks to avoid exposing him to COVID-19. (ER-013). The district court also relied on Mr. Welch's allegation that Defendants violated prison policy regarding masks and that Defendants failed to provide Mr. Welch a mask until November 2022. (*Id.*).

### 3. The District Court Held That Mr. Welch Alleged a Clearly Established Eighth Amendment Violation

The district court held that Mr. Welch also satisfied the second prong of the qualified-immunity test, because the right to be free from exposure to serious disease is a clearly established right. (ER-014-015). In reaching that conclusion, the district court rejected Defendants' argument that this right only applies to incarcerated individuals transferred into risky environments. (ER-015-016). Relying on five binding cases—*Helling, Hampton*, *Hoptowit, Wallis,* and *Parsons*—the district

13

court concluded that "at the outset of the pandemic," all reasonable prison officials were on notice that exposing incarcerated individuals to COVID-19 violated clearly established law, and if masks were available, "the choice not to use them would reflect disregard for prisoner safety." (ER-013, ER-015).

## SUMMARY OF THE ARGUMENT

### I.    Defendants Are Not Entitled to Qualified Immunity

As the district court correctly ruled, Mr. Welch plausibly alleged that Defendants knowingly exposed him to a highly contagious and deadly disease by housing him in close quarters with COVID-19-positive prisoners while verbally abusing him, threatening him, and refusing to follow basic mitigation measures, including masking, despite repeated requests and an existing institutional mandate. (ER-063). These allegations sufficiently allege Defendants' deliberate indifference to a substantial risk of serious harm in violation of the Eighth Amendment.

Accepting these facts as true—as the Court must—Defendants' attempt to recast this risk as speculative is foreclosed. All but conceding the objective risks posed by COVID-19, Defendants argue that Mr. Welch faced only a "mere possibility" of harm. (OB at 13). But first, the district court correctly inferred that Mr. Welch actually contracted COVID-19. (ER-58, ER-190, ER-193-94). And this Court's limited jurisdiction on interlocutory review prevents it from drawing an

14

alternative inference. *See George v. Morris*, 736 F.3d 829, 836 (9th Cir. 2013) (explaining that court's jurisdiction on interlocutory review is limited to whether defendants violated clearly established law).

Yet even if Mr. Welch was merely exposed, his allegations still state a claim. Indeed, Mr. Welch alleges concrete, prolonged exposure to a known, highly contagious virus in a confined setting where basic safeguards were ignored. (ER-203-204 ¶¶ 1, 3-4). Those allegations place this case well outside the realm of speculation thus satisfying the objective prong of Mr. Welch's Eighth Amendment conditions-of-confinement claim. (*Id.*).

Defendants' subjective-awareness argument likewise fails. Defendants contend that they could not have acted with deliberate indifference because Mr. Welch does not allege that Defendants were symptomatic and thus that their actions caused his exposure. (ER-180-181). But that misstates the law and fails to take Mr. Welch's allegations as true. The Eighth Amendment does not require officials to know they are the source of harm or to believe harm is certain; it requires only that they know of and disregard a substantial risk. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Further, Mr. Welch alleges that Defendants were aware of the widespread and well-documented risks of COVID-19, the presence of infected prisoners in his unit, institutional masking requirements, and his repeated pleas for

15

protection—yet refused to wear masks or enforce basic mitigation measures, choosing to mock and threaten him instead. (ER-203-204 ¶ 4, ER-207 ¶ 14, ER-208-209 ¶¶ 18-24). That is sufficient to plausibly allege that Defendants knew of a substantial risk and disregarded it, satisfying the subjective prong of the qualified immunity analysis.

Defendants' causation argument fares no better. They contend that Mr. Welch cannot establish causation because he did not definitively allege infection. (ER-180-181). But the Eighth Amendment protects against *exposure* to conditions posing a substantial risk of serious future harm; a plaintiff need not wait until injury fully manifests. *See Helling v. McKinney*, 509 U.S. 25, 33 (1993). In any event, Mr. Welch alleges direct exposure and subsequent COVID-like symptoms, permitting a reasonable inference of harm—particularly at the pleading stage, where pro se filings are construed liberally—satisfying the causation requirement of the qualified immunity analysis. *See Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012).

Finally, Defendants' misconduct violated clearly established law. For over three decades, binding case law has held that prison officials may not expose prisoners to conditions "sure or very likely to cause serious illness," including infectious disease. *Helling*, 509 U.S. at 33; *see also Wallis v. Baldwin*, 70 F.3d 1074, 1077 (9th Cir. 1995). More recently, *Hampton v. California* reaffirmed that this

16

constitutional principle applies squarely in the particularized context of COVID-19. 83 F.4th 754, 769-770 (9th Cir. 2023). As the case law has been clearly established for decades, no reasonable officer could believe that refusing to take basic precautions and confining a prisoner with infected individuals during a pandemic was constitutionally permissible.

As Mr. Welch plausibly alleged a substantial risk of serious harm, Defendants' deliberate indifference, causation, and a violation of clearly established law, the district court correctly denied qualified immunity. This Court should affirm.

## II. This Court Lacks Jurisdiction to Review the District Court's Application of Law of the Case, and in Any Event, the District Court Conducted a De Novo Review of Defendants' Arguments

Defendants also challenge the district court's application of law of the case. But this Court lacks jurisdiction to review the district court's application of law of the case on interlocutory review. As the Supreme Court has made clear, appellate jurisdiction generally extends only to final judgments, with a narrow exception for collateral orders such as qualified immunity. *See Rodriguez v. Lockheed Martin Corp.*, 627 F.3d 1259, 1264 (9th Cir. 2010).

Here, Defendants identify no independent jurisdictional basis for reviewing the law-of-the-case determination, nor can they. That issue obviously does not constitute a final judgment nor does it satisfy the stringent requirements of the collateral order doctrine. And Defendants provide no basis for pendent jurisdiction,

17

which applies only when the additional issue is either "inextricably intertwined" with the question properly before the Court or "necessary to ensure meaningful review." *Meredith v. Oregon*, 321 F.3d 807, 813 (9th Cir. 2003). Whether the district court correctly applied that discretionary doctrine has no bearing on whether Defendants are entitled to qualified immunity. The two inquiries involve distinct legal standards and do not rise or fall together.

Even if this Court were to reach the issue, Defendants' argument fails on the merits. The record demonstrates that the district court did not rely on law of the case as a substitute for adjudication; rather, it conducted a thorough review of Defendants' motion to dismiss, addressing each objection to the magistrate judge's recommendation. (ER-010-016). The court expressly evaluated both prongs of the qualified immunity analysis de novo, carefully considering Defendants' arguments on the objective risk, subjective awareness, and clearly established law before rejecting them. The record therefore belies Defendants' assertion that they were deprived of a meaningful opportunity to challenge the complaint. The district court's process comports fully with the adversarial system and provides no basis for reversal.

Accordingly, Defendants' attempt to inject a non-appealable procedural issue into this interlocutory appeal should be rejected. The only question properly before

18

this Court is qualified immunity—and for the reasons discussed above, the district court correctly denied it. This Court should affirm the district court's order.

## STANDARD OF REVIEW

This Court reviews a denial of a motion to dismiss based on qualified immunity de novo. *See Hyde v. City of Willcox*, 23 F.4th 863, 869 (9th Cir. 2022). But qualified immunity is rarely granted at the motion to dismiss stage. *See Keates v Koile*, 883 F.3d 1228, 1234 (9th Cir. 2018) ("Determining claims of qualified immunity at the motion-to-dismiss stage raises special problems for legal decision making.").

When resolving a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court accepts as true all well-pleaded allegations of material fact and construes the facts "in the light most favorable to the non-moving party." *Hyde*, 23 F.4th at 869. A motion to dismiss must be denied if the complaint includes "enough facts to state a claim to relief that is plausible on its face." *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint presents plausible claims when its pleaded facts allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The court construes pro se "pleadings liberally" and affords them "the

19

benefit of any doubt." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (quoting

*Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985) (en banc)).

## ARGUMENT

I.     **THE DISTRICT COURT CORRECTLY DENIED QUALIFIED IMMUNITY BECAUSE DEFENDANTS VIOLATED MR. WELCH'S CLEARLY ESTABLISHED RIGHT TO BE FREE FROM THE RISK OF EXPOSURE TO INFECTIOUS DISEASE**

At the dismissal stage, qualified immunity must be denied if the allegations in

the complaint make out (1) a constitutional violation that was (2) "clearly established

at the time of the alleged misconduct." *Hampton v. California*, 83 F.4th 754, 765

(9th Cir. 2023).

A.     **Defendants Violated Mr. Welch's Eighth Amendment Rights by Exposing Him to COVID-19, a Serious Disease, Against His Will**

An Eighth Amendment conditions-of-confinement claim under Section 1983

has both an objective and subjective component. *See id*. at 766. A plaintiff states a

conditions claim when he plausibly alleges that prison officials were deliberately

indifferent to a substantial risk of serious harm and that the prison officials' actions

or failures to act were the actual and proximate cause of the claimed deprivation.

*Chaudry v. Aragón*, 68 F.4th 1161, 1172 (9th Cir. 2023). "Causation is an intensely

factual question that should typically be resolved by a jury." *Pacific Shores

Properties, LLC v. City of Newport Beach*, 730 F.3d 1142, 1168 (9th Cir. 2013).

20

### 1. Exposure to COVID-19 Presents an Objectively Serious Risk of Harm Under the Eighth Amendment

To establish the objective component of a conditions-of-confinement claim, a plaintiff must plausibly allege that the "deprivation was 'sufficiently serious' to form the basis for an Eighth Amendment violation." *Hearns v. Terhune*, 413 F.3d 1036, 1042 (9th Cir. 2005) (quoting *Wilson v. Seiter,* 501 U.S. 294, 298 (1991)). To be sufficiently serious, it must be "'contrary to current standards of decency for anyone to be . . . exposed against his will' to the relevant hazard." *Hampton*, 83 F.4th at 766 (quoting *Helling*, 509 U.S. at 35). "The circumstances, nature, and duration of a deprivation of . . . necessities must be considered in determining whether a constitutional violation has occurred." *Hearns*, 413 F.3d at 1042 (quoting *Johnson v. Lewis,* 217 F.3d 726, 731 (9th Cir. 2000)).

In the district court, Defendants expressly conceded that exposure to COVID-19 presents an objectively serious risk of harm under the Eighth Amendment. (ER-053). For the first time on appeal, Defendants shift their focus and argue that to establish the objective prong, Mr. Welch must allege a "'strong likelihood rather than a mere possibility" of harm. (OB at 13). The Court should find that argument forfeited. *See DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, n.2 (1989) (refusing to consider argument raised for the first time before the Court); *see also Hoover v. Ronwin*, 466 U.S. 558, 560 n.25 (1984) (declining to consider

21

argument raised for the first time on appeal). Yet even if the Court reaches this argument, Defendants' argument fails.

This Court has held that the Eighth Amendment's protections extend to conditions of confinement "sure or very likely to cause serious illness and needless suffering in the future" and that risk of involuntary exposure to COVID-19 in a prison setting satisfies the objective component. *Hampton*, 83 F.4th at 765 (quoting *Helling*, 509 U.S. at 33). The court distinguished prior cases where exposure risks were deemed socially tolerable, explaining that by May 2020 a "societal consensus" had emerged that the risk of COVID-19 was "intolerably grave." *Hampton*, 83 F.4th at 766-67. Government-imposed shelter-in-place orders, mask mandates, and emergency declarations all made clear that society did not choose to tolerate involuntary exposure to the virus. The relevant inquiry is, instead, whether the alleged deprivation was "sufficiently serious" in light of "the circumstances, nature, and duration" of the exposure. *Hearns v. Terhune*, 413 F.3d at 1042 (quoting *Johnson*, 217 F.3d at 731). And as this Court has recognized, it is "contrary to current standards of decency" to force a prisoner to endure exposure to a serious health hazard against his will. *Hampton*, 83 F.4th at 766.

Defendants rely on *Hudson v. Palmer*, 468 U.S. 517 (1984) and *Williams v. Wood*, 223 Fed. App'x 670 (9th Cir. 2007) to argue that Mr. Welch faced only a

22

"mere possibility" of injury. (OB at 13). But Defendants' cited cases do not control here.

In *Williams*, an unpublished case, the court rejected the plaintiff's "conclusory allegations" about his "speculative and generalized fears of harm" untethered to any concrete exposure or identifiable hazard. 223 F. App'x at 671. By contrast, here, Mr. Welch alleges that he was actually housed in close quarters with prisoners who had tested positive for COVID-19, that social distancing and other basic mitigation measures were not implemented or enforced, and that this exposure was prolonged and unavoidable due to Defendants' refusal to follow prison policy. (ER-206-210). He further alleges that he began experiencing symptoms consistent with COVID-19 following that exposure. (ER-208 ¶ 17). These allegations are tethered to a concrete, identifiable hazard—not a generalized fear—and describe direct exposure to a known, highly contagious virus within a confined custodial setting. *See Hampton*, 83 F.4th at 765-68 (holding allegations of exposure to COVID-19 within a confined prison setting state a concrete, substantial risk of serious harm).

*Hudson* is even farther afield. That case does not address prisoners' risk of harm and involved the destruction of a prisoner's personal property—not the Eighth Amendment standard governing exposure to a known environmental or communicable health risk. *See Hudson*, 468 U.S. 517 at 526. By contrast, Mr.

23

Welch's claim arises from his confinement in a housing unit with symptomatic prisoners during a rapidly spreading pandemic, where exposure to COVID-19 was not hypothetical but an identifiable and well-documented health danger.

Accordingly, Mr. Welch's forced confinement in a housing unit with symptomatic prisoners during an active pandemic while Defendants disregarded mitigation measures plainly satisfies the objective prong of the Eighth Amendment deliberate-indifference inquiry.

### 2. Defendants Knew that Exposure to COVID-19 Presents a Serious Risk of Harm, Ignored the Risk, and Ignored Welch's Pleas for Officers to Mitigate the Risk, Constituting Deliberate Indifference

To satisfy the subjective component of an Eighth Amendment conditions-of-confinement claim, which requires a showing of deliberate indifference, a plaintiff must plausibly allege that the defendants "knew of and disregarded an excessive risk to the plaintiff's health or safety." *Hampton*, 83 F.4th at 767 (alterations omitted) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). Ignoring conditions of confinement that are "sure or very likely to cause serious illness" amounts to deliberate indifference. *Helling*, 509 U.S. at 33. Knowledge of a substantial risk can be inferred "from the very fact that the risk was obvious." *Farmer*, 511 U.S. at 842.

Defendants had ample subjective knowledge of the risk COVID-19 posed to Mr. Welch. As Mr. Welch alleges, COVID-19 was "raging at ESP" when

24

Defendants refused to wear masks and housed Mr. Welch with highly contagious individuals. (ER-204 ¶ 5). Many incarcerated individuals died at ESP as a result of the pandemic. (*Id.* ¶ 6). Further, COVID-19 is an airborne disease, susceptible to increased rates of transmission in a densely packed setting like a prison, where individuals have a limited ability to socially distance and limited access to healthcare. In fact, prisons were recognized as a uniquely dangerous setting during the pandemic, with higher infection and death rates in prisons than the national average. *See, e.g.*, *Hampton*, 83 F.4th at 759 (noting that prison officials "were aware of the risks that COVID-19 posed in a prison setting"); *United States v. Entz*, No. 16-cr-0327, 2020 WL 3542862, at *2 (W.D. Wash. June 30, 2020) (observing that prisons were "a breeding ground for COVID-19").

It is eminently reasonable to infer that Defendants would have recognized the risk that comes with failing to wear masks or separating individuals like Mr. Welch from COVID-positive prisoners in a crowded, congregate setting where those most at risk have a limited ability to isolate and protect themselves.

What is more, COVID-19 was also present in Mr. Welch's housing unit, where at least two prisoners were highly symptomatic and COVID-positive. (ER-203 ¶ 2, ER-207 ¶ 12). It is reasonable to infer that Defendants, prison officials who worked in his housing unit daily, would be aware of these COVID-19 cases. Thus,

Defendants knew COVID-19 was spreading in the prison, including in Mr. Welch's unit, but refused to wear masks and kept Mr. Welch housed with two highly symptomatic individuals. *See Hampton*, 83 F.4th at 767 ("[I]f masks and protective equipment were available, the choice not to use them would reflect disregard for prisoner safety."); *Goode v. Canedo*, No. 21-cv-02054, 2022 WL 16753312, at *1-2, 7 (S.D. Cal. Nov. 7, 2022) (finding deliberate indifference where the defendant housed an incarcerated individual especially vulnerable to COVID-19 with COVID-positive prisoners, in part because prisoners at the facility had already died of COVID-19 and "no one is ignorant of how deadly the Covid-19 virus is for people such as [p]laintiff").

Yet there are even more reasons to conclude that Defendants were deliberately indifferent to the risk of COVID-19. As Mr. Welch alleges, Defendants repeatedly ignored NDOC's masking mandate. *See Mata v. Saiz*, 427 F.3d 745, 757 (10th Cir. 2005) ("While published requirements for health care do not create constitutional rights, such protocols certainly provide circumstantial evidence that a prison health care gatekeeper knew of a substantial risk of serious harm."). In addition, responses to Mr. Welch's grievances note that all NDOC employees were "mandated to [wear] N95 masks" and directed to follow COVID-19 protocols. (ER-108, ER-117).

26

Defendants do not contend that they were unaware of this policy—nor could they have been: Mr. Welch himself repeatedly reminded Defendants of its requirements. (ER-208-209 ¶¶ 19-24). The policy's existence put Defendants on notice of the consequences of failing to wear masks. Defendants were aware of the facility's policy and chose to ignore it. Any prison official would know that ignoring a policy intended to combat the spread of an infectious disease would increase the risk of exposing others to that disease. Thus, Defendants *must* have been aware of the substantial risk of serious harm to Mr. Welch. *See Tafoya v. Salazar*, 516 F.3d 912, 919 (10th Cir. 2008) ("The knowing failure to enforce policies necessary to the safety of inmates may rise to the level of deliberate indifference."); *Hernandez v. County of Monterey*, 110 F. Supp. 3d 929, 943 (N.D. Cal. Apr. 14, 2015) ("[K]nown noncompliance with generally accepted guidelines for inmate health strongly indicates deliberate indifference to a substantial risk of serious harm.").

Making matters worse, the supervising officers—Defendants Wheeler, Werner, Featherly, Rigney, and Donahue—not only refused to follow the masking policy but refused to instruct their subordinates to do so. *See LaMarca v. Turner*, 955 F.2d 1526, 1538 (11th Cir. 1993) (finding deliberate indifference where a prison official "failed to ensure that his direct subordinates followed the policies he established"). These Defendants personally witnessed their subordinates' failure to

27

wear masks—and make abusive and degrading remarks to Mr. Welch while doing so—on numerous occasions. (ER-209 ¶¶ 23-24). Mr. Welch repeatedly requested that these Defendants instruct their subordinates to follow the masking policy. (*Id.*). Thus, Defendants were aware not only of their own failures to wear masks but of a pervasive culture where the masking policy was deliberately ignored. *See Goka v. Bobbitt*, 862 F.2d 646, 652 (7th Cir. 1988) (finding that knowledge of a "systematic lapse in enforcement" of a policy intended to ensure safety was evidence of deliberate indifference).

To be sure, the risks posed by COVID-19 and by the failure to take adequate precautions were not limited to the prison but wide-spread and well-known in Nevada and throughout the nation around the time of Mr. Welch's allegations. *Hampton*, 83 F.4th at 766 ("[A] 'societal consensus' had emerged by May 2020 that the risk of contracting COVID-19 was 'intolerably grave.'" (quoting *Hines v. Youseff*, 914 F.3d 1218, 1232 (9th Cir. 2019)). By early 2020, the United States and the state of Nevada had declared a state of emergency,[8] and public health experts advised that masking and social distancing would decrease the risk of transmission.[9] Faced with this widespread public knowledge, Defendants "cannot reasonably claim

---

[8] Nev. Off. of the Governor, *supra* note 1.
[9] Ctrs. for Disease Control & Prevention, *supra* note 3.

28

ignorance of the seriousness of COVID-19 at this stage of the pandemic, nor the consequences that could result from a failure to take necessary steps to prevent transmission." *Chatman v. Otani*, No. 21-cv-00268, 2021 WL 2941990, at \*18 (D. Haw. July 13, 2021). Nevertheless, Defendants refused to wear masks and housed Mr. Welch with two highly symptomatic individuals, blatantly disregarding the obvious risk to his health. *See id.* at \*17-18 (evidence of "inconsistent" masking "with minimal enforcement, if at all" and "mixing multiple inmates with unknown COVID statuses" in the midst of the pandemic supported finding of deliberate indifference); *Trueblood v. Cappola*, No. 19-cv-05816, 2020 WL 9347906, at \*8 (W.D. Wash. Oct. 1, 2020) (finding deliberate indifference where it was "obvious" that the plaintiff was "at risk of being infected by a pathogen" due to being forced to wear sewage-contaminated shoes despite open wounds on his feet).

If the risk was not obvious enough on its own, Mr. Welch's explicit and repeated requests that Defendants wear masks certainly made it so. (ER-208-209 ¶¶ 19-24). As Defendants served meals, delivered mail, and escorted Mr. Welch and other prisoners to legal visits without wearing masks, Mr. Welch asked them numerous times to put on masks. (*Id.*). Contrary to Defendants' contention, these requests put each individual Defendant on specific notice of the risk of exposure due to the failure to wear masks. *See Hampton*, 83 F.4th at 768-69 (finding that evidence

29

that the defendants "brushed away repeated warnings that they were proceeding in an unsafe manner" regarding COVID-19 "reinforce[d] Plaintiff's allegations" of deliberate indifference). Rather than honor the requests Mr. Welch made for his own safety, Defendants Rigney and Donahue threatened to withhold meals from Mr. Welch in response to one such request, asking him if he "wanted to eat," and Defendant Rowley told Mr. Welch to "refuse his [legal] visits" if Mr. Welch did not "want [an] escort" from someone not wearing a mask. (ER-208-209 ¶20, 24). Defendants Herring, Esquival, and Wheeler told Mr. Welch on separate occasions to "[s]hut the fuck up." (ER-208 ¶ 19, ER-209 ¶¶ 22-23). And Defendant Adams, in front of a subordinate, hurled a vile racial epithet at Mr. Welch. (ER-208-09 ¶ 21). *See Vensor v. Schell*, 657 Fed. App'x. 695, 697 (9th Cir. Aug. 11, 2016) (finding a triable dispute of fact as to deliberate indifference where the defendants "laughed off [the plaintiff's] complaints" about the heat and "ignored his requests" for water); *Mullen v. Smith*, 738 F.2d 317, 317 (8th Cir. 1984) (reversing dismissal of an Eighth Amendment claim where the defendants responded to plaintiff's complaints of severe pain "with ridicule and derision" and "subjected [him] to verbal abuse"). Defendants continued to refuse to wear N95 masks or to discipline their subordinates, reflecting their deliberate indifference to Mr. Welch's risk of serious illness. (ER-208-209 ¶¶ 19-24). *See Polanco v. Diaz*, 76 F.4th 918, 929 (9th Cir.

30

2023) (holding that the defendants' conduct constituted a "textbook case of deliberate indifference" where the defendants ignored warnings about the inadequacy of their response to COVID-19).

Defendants argue that because they did not test positive for COVID-19 or suffer from COVID-19 symptoms, they could not have acted with deliberate indifference in failing to wear masks. (OB at 16). But whether Defendants tested positive is unknown at this early stage of the litigation—that is Defendants' say-so, not an allegation in Plaintiff's Complaint. And moreover, Defendants need not have been personally aware that they had contracted COVID-19 to appreciate the heightened risk at which they placed Mr. Welch by refusing to wear masks and housing him with highly symptomatic individuals during a global pandemic. *See Berg v. Kincheloe*, 794 F.2d 457, 459 (9th Cir. 1986) (deliberate indifference requires "more than a mere suspicion" but not "belie[f] to a moral certainty" (quoting *State Bank of St. Charles v. Camic*, 712 F. 2d 1140, 1146 (7th Cir. 1983))); *see also Farmer*, 511 U.S. at 835 (deliberate indifference does not require "knowledge that harm will result"). By late 2020, there was plainly a "societal consensus" that asymptomatic individuals could still transmit COVID-19. *Hampton*, 83 F.4th at 766; *see also South Bay United Pentecostal Church v. Newsom*, 590 U.S. 965, 966 (2020) (Roberts, C.J., concurring) ("Because people may be infected but asymptomatic,

31

they may unwittingly infect others."); *Torres v. Milusnic*, 472 F. Supp. 3d 713, 720 (C.D. Cal. July 14, 2020) (noting risk of possible transmission of COVID-19 by asymptomatic individuals in July 2020).

Defendants' argument rests on the incredible premise that, as COVID-19 swept through the prison, a high-risk setting, resulting in multiple deaths, they were not aware of the risk of failing to adhere to widely recommended mitigation strategies, including wearing masks and isolating those with symptoms. This argument fails to take Mr. Welch's allegations as true and draw all reasonable inferences in his favor, as is required at this stage of the litigation. *See Polanco*, 76 F.4th at 929 (explaining that, at the dismissal stage, the court takes the plaintiff's allegations as true and draws reasonable inferences in his favor).

To support their argument, Defendants rely on two unpublished out-of-circuit cases, *Byrd v. Munoz*, No. 24-1618, 2025 WL 943408 (7th Cir. Mar. 28, 2025), and *Blake v. Zmuda*, No. 21-3236, 2022 WL 1184402 (10th Cir. Apr. 21, 2022), to argue that Mr. Welch fails to allege sufficient facts to demonstrate Defendants' subjective awareness. (OB at 24-26). In *Byrd*, the court held that the "defendants' unresponsiveness to Byrd's complaints" about improper mask-wearing by staff was not enough to establish deliberate indifference, particularly because, unlike here, "most of the defendants did not interact with Byrd in the weeks or even months

32

before his infection." 2025 WL 943408, at *2. And in *Blake*, although the defendants ignored the plaintiff's grievances about violations of the masking policy and placed him in an unsanitized cell, the plaintiff did not establish that the defendants were aware that the cell was unsanitized or that there was a substantial risk of COVID-19. 2022 WL 11844402, at *2.

By contrast, Mr. Welch has presented allegations that support the reasonable inference that each defendant was aware of and disregarded Mr. Welch's risk of exposure to COVID-19. Unlike in *Byrd* and *Blake*, Mr. Welch alleges that each defendant was aware of: (1) the nature of COVID-19 as a grave public health risk; (2) NDOC's policy requiring prison employees to wear N95 masks; (3) the spread of COVID-19 inside the prison; and (4) Mr. Welch's repeated requests that Defendants wear masks and instruct their subordinates to do so. (ER-108, ER-203 ¶ 2, ER-204 ¶¶ 4-6, ER-208-209 ¶¶ 19-24). Further, unlike in *Byrd*, Mr. Welch points to specific interactions with each individual defendant. (*Id.*). Defendants thus cannot credibly argue that they were not aware of the substantial risk that their conduct posed to Mr. Welch's health.

Indeed, this Court—and district courts in this Circuit—have concluded that plaintiffs plausibly alleged deliberate indifference to exposure to infectious disease in similar cases, even without allegations that defendant officers knew that they

33

personally were infected or symptomatic. *See Hampton*, 83 F.4th at 767 (reasoning that prison officials' failure to use masks reflected "knowing disregard for the health and safety" of incarcerated individuals); *Hill v. Rhude*, 556 F. Supp. 3d 1144, 1155 (D. Nev. Aug. 25, 2021) (holding that the plaintiff had plausibly alleged deliberate indifference where the plaintiff "notified [the defendant] that his staff were not wearing masks, [the defendant] acknowledged that he was aware and committed to enforcing the NDOC mask directive, but most staff continued to not wear masks"); *Jones v. Sherman*, No. 21-cv-01093, 2022 WL 783452, at *10-11 (E.D. Cal. Mar. 11, 2022) (finding that the plaintiff sufficiently alleged deliberate indifference by the defendant prison officials, based in part on the allegation that the defendants failed to enforce a masking policy). Mr. Welch's allegations are thus more than sufficient to establish the subjective prong of his conditions-of-confinement claim.

### 3. Mr. Welch Sufficiently Alleges Causation

Defendants argue that Mr. Welch cannot establish causation for his conditions-of-confinement claim because—on Defendants' telling—Mr. Welch did not ultimately contract COVID-19. That argument fails because (1) Mr. Welch squarely alleges that *these* Defendants caused his infection and, in any event, (2) *risk* of infection is sufficient to state an Eighth Amendment conditions claim.

34

The Supreme Court has long made clear that the Eighth Amendment protects prisoners not only from present injury, but also from exposure to conditions that create a substantial risk of "future harm." *Helling v. McKinney*, 509 U.S. 25, 33 (1993). A prisoner need not wait until he actually becomes ill before the Constitution is implicated. *Id*. (observing that the Eighth Amendment's protection "against future harm" to prisoners "is not a novel proposition"). Thus, whether Mr. Welch ultimately contracted COVID-19 is not dispositive.

But in any event, this Court should read Mr. Welch's complaint to allege—as the district court found—that he did in fact contract COVID-19. The Supreme Court's decision in *Erickson v. Pardus*, 551 U.S. 89 (2007) is instructive. There, the Court reversed dismissal of a prisoner's Eighth Amendment claim where the plaintiff alleged that termination of medical treatment was "endangering [his] life," even though he did not provide detailed medical proof of harm. *Id.* at 91. In evaluating the pro se complaint, the Court reminded that such complaints must be liberally construed and reemphasized that Federal Rule of Civil Procedure 8 requires only a "short and plain statement," and that courts must accept the allegations as true and draw reasonable inferences in the plaintiff's favor. *Id.* at 93; *see also Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (holding that pro se complaints must

35

be liberally construed and cannot be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts entitling him to relief).

Guided by *Erickson*, even setting aside the district court's express finding that Mr. Welch contracted COVID-19, Mr. Welch is entitled to the reasonable inference that he contracted COVID-19. Mr. Welch alleges that he was confined in close quarters with individuals who had tested positive for a highly contagious and easily transmissible virus, in an environment where social distancing was impossible and mitigation measures were inadequate or ignored. (ER-207 ¶ 12). He further alleges that he began experiencing symptoms consistent with COVID-19 following that exposure. (ER-208 ¶ 17). Taken together, these allegations plainly connect Defendants' conduct to Mr. Welch's resulting harm. Given the well-known nature of COVID-19 transmission—particularly in congregate settings like prisons—it is entirely reasonable to infer that prolonged exposure to infected individuals, coupled with the onset of COVID-like symptoms, resulted in infection.[10]

---

[10] Defendants also argue that Mr. Welch has not adequately alleged causation because his allegations do not show that any specific Defendant caused his constitutional injury. (OB at 20). But to make that argument, Defendants raise Mr. Welch's burden at the pleadings stage by citing a slew of summary judgment cases. (*Id.* at 20-21). For instance, they mischaracterize *Leer v. Murphy*, 844 F.2d 628, 634 (9th Cir. 1988), asserting that it stands for the proposition that a prisoner "cannot state a claim" without the required causal connection between a prison officials conduct and the Eighth Amendment violation. (OB at 20). But that case arose at summary judgment, not the motion to dismiss stage. *See Leer*, 844 F.2d at 634. It is

36

In sum, Defendants were aware of the risks posed by COVID-19 and nevertheless kept Mr. Welch confined in a housing unit with symptomatic prisoners, and his repeated pleas for mitigation and protection were met with ridicule and abuse. Exposure to a highly contagious airborne virus in a congregate prison setting is precisely the type of serious health risk the Eighth Amendment forbids prison officials from disregarding. *Helling*, 509 U.S. at 33.

**B.     The Right to Be Free from Risk of Exposure to a Serious Disease Is Clearly Established**

"A right is clearly established when 'the contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates the right.'" *Castro v. County of Los Angeles*, 833 F.3d 1060, 1067 (9th Cir. 2016) (alteration in original) (quoting *Serrano v. Francis*, 345 F.3d 1071, 1077 (9th Cir. 2003)). That is, the rule must be clearly established—either by binding precedent or a strong consensus of persuasive authority. *D.C. v. Wesby*, 583 U.S. 48, 63 (2018).

Defendants argue that no precedent clearly establishes Mr. Welch's alleged constitutional violation because—unlike in other cases—they did not *move* Mr. Welch but instead kept him in a housing unit with symptomatic prisoners. But that argument attempts to recast the right at issue at too granular a level of specificity.

---

therefore inapposite. And in any event, Plaintiff's allegations are highly targeted at the specific Defendants' misconduct. *See supra* at 8-10, 30.

37

*See Kennedy v. City of Ridgefield*, 439 F.3d 1055, 1065 (9th Cir. 2006) ("[W]e need not find a prior case with identical, or even 'materially similar' facts." (quoting *Flores v. Morgan Hill Unified Sch. Dist.*, 324 F.3d 1130, 1136–37 (9th Cir. 2003))).

Moreover, this argument ignores what binding precedent had made clear—for at least three decades—that prison officials may not knowingly *expose* incarcerated individuals to "conditions of confinement that [are] sure or very likely to cause serious illness and needless suffering." *Helling*, 509 U.S. at 33; s*ee also Wallis v. Baldwin*, 70 F.3d 1074, 1077 (9th Cir. 1995); *Hoptowit v. Spellman*, 753 F.2d 779, 784 (9th Cir. 1985). The consistent throughline in the case law does not turn on whether prison officials physically relocate a prisoner, but rather on whether they subject him to conditions that are "sure or very likely to cause serious illness." *Helling*, 509 U.S. at 33. The relevant question, therefore, is not whether Mr. Welch was moved, but whether Defendants knowingly confined him in conditions that exposed him to a risk of serious disease. By refusing to mask and keeping Mr. Welch in a unit housing symptomatic prisoners, despite the well-known dangers of COVID-19, prison officials did just that. *See Hampton*, 83 F.4th at 769. That constitutional violation "has been clearly established" for decades. *Id.*

Indeed, the right to be free from unsafe and unsanitary conditions of confinement was firmly established in *Hoptowit v. Spellman*. 753 F.2d 779, 783–84

(9th Cir. 1985). There, the Ninth Circuit held that a range of prison conditions— including inadequate ventilation, vermin infestation, unsanitary plumbing, and the lack of cleaning supplies—violated the Eighth Amendment because they posed serious threats to prisoners' health and safety. *Id*. The Court emphasized that prisoners have a constitutional right to conditions that do not expose them to unreasonable risks of illness or injury, and that deficiencies in basic sanitation and air quality "seriously threaten[] their health" and fall below constitutional minima. *Id*. Like the conditions in *Hoptowit*, the allegations here involve exposure to a dangerous and unhealthy environment within a custodial setting—precisely the type of substantial risk of serious harm long recognized as sufficient to satisfy the objective component of the Eighth Amendment. *See Hampton*, 83 F.4th at 770.

Reinforcing *Hoptowit*'s recognition of unconstitutional environmental conditions, *Helling* made clear that the Eighth Amendment also reaches risks to future health. 509 U.S. at 35 (holding that the plaintiff stated a "cause of action under the Eighth Amendment by alleging that petitioners . . . exposed him to levels of [environmental tobacco smoke] that pose an unreasonable risk of serious damage to his future health"). The Court affirmed the principle that *exposure* alone to a condition posing an unreasonable risk of serious damage to future health is sufficient to establish constitutional injury. *Id.* at 33-34. The Court rejected the argument that

39

a prisoner must wait until he becomes ill before the Constitution is implicated, explaining that prison officials may not ignore conditions "that [are] sure or very likely to cause serious illness and needless suffering the next week or month or year." *Id.* The Court further held that prisoners are "entitled to relief under the Eighth Amendment when they proved threats to personal safety from . . . the mingling of inmates with serious contagious diseases with other prison inmates." *Id.*

This Court confirmed the right to be free from exposure to serious environmental health hazards in *Wallis v. Baldwin*, 70 F.3d 1074, 1077 (9th Cir. 1995). In that case, the court emphasized that asbestos exposure—combined with knowledge of the risk of exposure—constituted a constitutionally significant threat to prisoner health and safety. *Id.* As in *Wallis*, Defendants knowingly exposed Mr. Welch to a serious environmental health hazard within the prison environment, creating the type of substantial risk of harm long recognized as sufficient to violate the Eighth Amendment. *See Hampton*, 83 F.4th at 770 (9th Cir. 2023) (observing that *Helling* "had sent a clear message to prison officials," this Court held that "[t]he Eighth Amendment requires them to reasonably protect inmates to exposure from serious diseases.").

This line of case law culminates in the Ninth Circuit's recent decision in *Hampton*. 83 F.4th at 770–71. There, this Court reaffirmed, in the particularized

40

context of COVID-19, that "all reasonable prison officials would have been on notice in 2020 that they could be held liable for exposing inmates to a serious disease, including a serious communicable disease." *Id.* at 770. That is, *Hampton* makes plain that by the time of Mr. Welch's constitutional deprivation, that right had long been clearly established. *See id.* ("Our circuit's precedent reinforces the conclusion that this right was clearly established in the spring of 2020."); *id.* at 769-70 (tracing the development of the case law over decades).

Mr. Welch's allegations fall squarely within the principle articulated in *Hoptowit*, *Helling*, *Wallis*, and *Hampton*. Mr. Welch alleges exposure in a congregate prison environment to a highly contagious airborne virus capable of causing severe illness, hospitalization, and death. As the district court correctly recognized, the relevant constitutional question is whether the plaintiffs were *exposed* to a substantial risk of harm to which prison officials were deliberately indifferent. *See Hampton*, 83 F.4th at 770; *Parsons v. Ryan*, 754 F.3d 657, 664, 676 (9th Cir. 2014) (recognizing that prison officials' failure to provide adequate protection from "future harm," including infectious disease, "is firmly established in our constitutional law"). Mr. Welch's allegations easily clear that bar.

Indeed, as *Hampton* explains, "[a]lthough COVID-19 may have been unprecedented," the pertinent "legal theory . . . is not." 83 F.4th at 770 (quoting

*Polanco v. Diaz*, 76 F.4th 918, 931 (9th Cir. 2023)). Accordingly, the unconstitutionality of exposing Mr. Welch to COVID-19 in a congregate prison environment was, at the time of Mr. Welch's allegations, "beyond debate." *Carley v. Aranas*, 103 F.4th 653, 660 (9th Cir. 2024) (quoting *Hamby v. Hammond*, 821 F.3d 1085, 1091 (9th Cir. 2016) (citation omitted)). Based on binding case law from the Supreme Court and this Circuit, Defendants are thus not entitled to qualified immunity. The Court's qualified immunity analysis need not proceed further.

But if the Court's analysis does, other circuits have also held that incarcerated plaintiffs have a clearly established right to be free from the risk of exposure to serious communicable disease. *See Wesby*, 583 U.S. at 63 (explaining that a right can be clearly established by a "consensus of cases of persuasive authority" from other circuits demonstrate a federal right).

In addition to this Court's ruling in *Hampton*, 83 F.4th at 770, at least three other Circuits—the Second, Sixth, and Seventh—have held that it violates clearly established law to expose prisoners to communicable disease, including in the specific context of COVID-19. *See Jolly v. Coughlin*, 76 F.3d 468, 477 (2d Cir. 1996) ("Correctional officials have an affirmative obligation to protect inmates from infectious disease."); *Nazario v. Thibeault*, No. 22-1657, 2023 WL 7147386, at *2 (2d Cir. Oct. 31, 2023) (denying qualified immunity where a defendant prison

42

official knowingly allowed a plaintiff to be housed with incarcerated people that were COVID-19 positive); *Gordon v. Burt*, No. 23-1775, 2024 WL 1842873, at *2 (6th Cir. Apr. 24, 2024) (holding that prison officials have a duty to protect incarcerated people from involuntary exposure to dangerous prison conditions where a plaintiff was purposefully housed in the same unit as others displaying symptoms of COVID-19); *Brown v. Bargery*, 207 F.3d 863, 867-68 (6th Cir. 2000) ("The Supreme Court concluded that the inmate had sufficiently alleged an Eighth Amendment claim because the Eighth Amendment prohibits prison officials from exhibiting deliberate indifference toward future health problems that an inmate may develop as a result of current prison conditions."); *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997) (holding that an incarcerated plaintiff is "entitled to reasonable measures to meet a substantial risk of serious harm" of contracting tuberculosis, a communicable disease).

In sum, binding case law, as well as the law of other circuits, makes clear that this constitutional violation has long been clearly established. This Court should affirm the denial of qualified immunity.

**II.     THIS COURT LACKS JURISDICTION TO REVIEW THE DISTRICT COURT'S APPLICATION OF LAW OF THE CASE, AND, IN ANY EVENT, DEFENDANTS RECEIVED A THOROUGH REVIEW OF THEIR MOTION TO DISMISS**

Defendants argue that the district court erred in applying the law of the case doctrine, and in the process, deprived Defendants of their basic procedural right to challenge Mr. Welch's complaint. (OB at 27-33). Defendants' argument should be rejected for two reasons. First, this Court lacks jurisdiction to review the district court's application of law of the case. Second, even if this Court exercises jurisdiction, Defendants' procedural rights were not deprived because the district court thoroughly addressed each of their objections.

**A.     This Court Lacks Jurisdiction to Review the District Court's Application of Law of the Case on an Interlocutory Appeal of Qualified Immunity**

To start, Defendants provide no jurisdictional basis for this Court to review the district court's application of law of the case. Generally, a party is only entitled to an appeal after a final judgment has been entered by the district court. *Digital Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 868 (1994). Qualified immunity is a part of a "small class" of issues under the collateral order doctrine that may be appealed without the conclusion of litigation. *Will v. Hallock*, 546 U.S. 345, 349 (2006) (quoting *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 546 (1949)). But the same does not apply to Defendants' argument about the district

44

court's application of law of the case. The district court's application of law of the case was not a final judgment, nor does it fall under the stringent requirements of the collateral order doctrine for interlocutory appeal. *Id.* at 350-351 (ruling that the collateral order doctrine is narrow and its membership "selective."). Given that, to review this issue on interlocutory appeal, there must be pendent jurisdiction under the issue of qualified immunity. *Meredith v. Oregon*, 321 F.3d 807, 812-814 (9th Cir. 2003) (finding that pendent jurisdiction may be exercised under the issue of qualified immunity on interlocutory appeal). There is no basis to exercise pendent jurisdiction here.

This Court has pendent jurisdiction over issues "raised in conjunction with other issues properly before the court." *Meredith*, 321 F.3d at 812 (quoting *Cunningham v. Gates*, 229 F.3d 1271, 1284 (9th Cir. 2000)). But the exercise of pendent jurisdiction on interlocutory appeal is restrained. *Id*.; *see also Puente Arizona v. Arpaio*, 821 F.3d 1098, 1109 (9th Cir. 2016) (confirming that this Court is "hesitant" to exercise pendent jurisdiction). This Court only exercises pendent jurisdiction on interlocutory appeal if the issue is "inextricably intertwined" or "necessary to ensure meaningful review" of the order properly before the Court. *Meredith*, 321 F.3d at 813.

45

An appellate issue is inextricably intertwined with the proper issue on appeal if (1) the pendent issue *must* be decided in order to review the claims properly raised on interlocutory appeal or (2) the resolution of the issue properly raised on interlocutory appeal necessarily resolves the pendent issue. *Id*. at 814. Issues are not inextricably intertwined when courts are forced to apply different legal standards. *Id*. An appellate issue is necessary to ensure meaningful review only when the pendent issue invokes "the very power the district court used to issue the rulings." *Puente Arizona*, 821 F.3d at 1109.

The district court's application of the law of the case is not inextricably intertwined with qualified immunity. Whether law of the case was correctly applied need not be decided in order to review qualified immunity. Unlike qualified immunity, to apply law of the case, the district court does not consider any facts presented by the parties. *See Milgard Tempering, Inc. v. Selas Corp. of Am.*, 902 F.2d 703, 715 (9th Cir. 1990). The law-of-the-case doctrine simply applies when an issue has already been decided in the case by the same court (or a higher court) in the same litigation. *Id*. Nor does the resolution of the issue of qualified immunity resolve whether the district court properly applied law of the case. *Puente Arizona*, 821 F.3d at 1109-1111 (refusing to exercise pendent jurisdiction over an issue where reversal on interlocutory appeal would leave the issue unresolved). Therefore, here,

46

the district court's decision to apply law of the case is not inextricably intertwined with qualified immunity.

The district court's application of the law of the case is also not necessary to ensure meaningful review of the claim of qualified immunity. Law of the case is a discretionary doctrine "designed to aid in the efficient operation of court affairs." *Milgard Tempering*, 902 F.2d at 715. A discretionary practice is not one that invokes "the very power of the district court." *Puente Arizona*, 821 F.3d at 1109 (explaining that issues of jurisdiction implicate "the very power of the district court" because, without jurisdiction, the Court cannot address any issue on appeal). Therefore, review of the district court's application of the law of the case is not necessary to ensure meaningful review of the claim of qualified immunity.

Lastly, the district court's application of law of the case is easily reviewable by this Court after final judgment. *Digital Equipment Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 865, 882 (1994) (holding in part that an order denying effect to a settlement agreement did not qualify for interlocutory appeal under the collateral doctrine because the right in question was "effectively reviewable" on final judgment). Because the court lacks jurisdiction, it should decline to review the district court's decision to apply law of the case.

**B.** **If This Court Exercises Jurisdiction, It Should Reject Defendants' Arguments Because the District Court Thoroughly Considered Defendants' Arguments Below**

Even if the Court reaches this issue, Defendants' argument has no merit. They argue that the district court in applying law of the case, overlooked certain arguments and failed to fully consider their motion to dismiss. (OB at 32-33). Defendants never say what arguments the district court purportedly overlooked. And even a cursory review of the district court's ruling shows that their arguments were carefully considered—and rejected.

The district court conducted a de novo review, thoroughly analyzing each prong of the qualified immunity analysis. (ER-010-016; *see also* ER-010 ("Though the Court evaluated the first prong in the screening order, and the R&R addressed the second prong, the Court conducts *de novo* review of both prongs to address Defendants' objections to the R&R's recommendation on qualified immunity."))

Defendants cite *United States v. Sineneng-Smith*, 590 U.S. 371, 375 (2020) to argue that the district court did not perform its role as the "neutral arbiter" for issues presented by the parties. (OB at 35). But the district court squarely addressed Defendants' objections. (ER-010-016).

The district court's analysis begins with Mr. Welch's alleged constitutional violation, acknowledging Defendants' concession of the objective requirement for the purpose of their motion to dismiss. (ER-010-011). The district court then moves

48

to the subjective requirement, addressing and overruling each of the Defendants' three objections in depth. (ER-011-014).

The district court then conducts the clearly established analysis. (ER-014). Again, the district court directly addresses and overrules Defendants' objections, citing the law it (correctly) believed clearly established Defendants' constitutional violations. (ER-015-016).

Defendants cite a variety of cases to argue that the district court's application of law of the case deprived Defendants of their basic procedural right to challenge Mr. Welch's complaint. (OB at 27-33); (ER-010-016). Defendants cite a district court case to argue that a "majority" of district courts in this Circuit have held that a screening order must be performed in addition to, not as a substitute for, a motion to dismiss. *Teahan v. Wilhelm*, 481 F. Supp. 2d 1115, 1119 (S.D. Cal. 2007); (OB at 30). But the district court did not "substitute" Defendants' motion to dismiss with the screening order. *Teahan*, 481 F. Supp. 2d at 1119; (ER-010-016). Rather, the district court *additionally* performed a full de novo review of qualified immunity, addressing Defendants' objections, just as the district court performed in *Teahan*. 481 F. Supp. 2d at 1120; (ER-010-016).

Defendants also cite *Garewal v. Sliz*, an unpublished out-of-circuit case, for the proposition that motions to dismiss should not be denied merely because a

49

complaint survives at the screening stage. 611 Fed. App'x. 926, 931, 2015 WL 3372154 (10th Cir. 2015); (OB at 30-31). But *Garewal* merely holds that a "district court should make the call as to if and when it is appropriate" to dismiss a complaint before adversarial presentation by defendants. 611 Fed. App'x. 926 (quoting *Buchheit v. Green*, 705 F.3d 1157, 1161 (10th Cir. 2012)). *Garewal* is inapplicable to Mr. Welch's case, as the district court did not deny Defendants' motion to dismiss *because* of the screening order. (ER-010-016). Instead, the district court denied Defendants' motion to dismiss *after* overruling Defendants' objection to the magistrate judge's order. (ER-010-016).[11]

At bottom, the district court did not deprive Defendants of their "basic procedural rights" or "eviscerate our adversarial system of party presentation." (OB at 29, 33). To the contrary, the district court provided Defendants a thorough review that carefully addressed each of their objections in turn.

---

[11] Defendants argue that the District Court should have granted reconsideration and fully considered Defendants' motion to dismiss. (OB at 32 n.2). But of course, the district court completely considered Defendants' motion to dismiss by analyzing both qualified immunity prongs de novo and addressing all of Defendants' objections to the magistrate judge's Report & Recommendation throughout. *See* ER-010-016.

50

## CONCLUSION

For these reasons, the Court should affirm the district court's denial of qualified immunity.

Date: April 24, 2026

Respectfully Submitted,

*/s/ David A. Schmutzer*
David A. Schmutzer
Kaplan & Grady LLC
2071 N. Southport Ave., Ste. 205
Chicago, IL 60614

*One of the Attorneys for Plaintiff-Appellee*
*Kentrell Welch*

## STATEMENT REGARDING ORAL ARGUMENT

This appeal involves complex questions of Eighth Amendment law and of qualified immunity. Because oral argument would materially advance this Court's resolution of these issues and because a law student would likely deliver argument, Appellee requests that it be granted.

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** | No. 25-4606

I am the attorney or self-represented party.

**This brief contains** | 11,229 | **words, including** | 0 | words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

(●) complies with the word limit of Cir. R. 32-1.

( ) is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

( ) is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

( ) is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

( ) complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

[ ] it is a joint brief submitted by separately represented parties.

[ ] a party or parties are filing a single brief in response to multiple briefs.

[ ] a party or parties are filing a single brief in response to a longer joint brief.

( ) complies with the length limit designated by court order dated [ ].

( ) is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | s/David A. Schmutzer | **Date** | 4/27/2026

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 8** | *Rev. 12/01/22*

## CERTIFICATE OF SERVICE

I certify that on April 24, 2026, I electronically filed the foregoing brief with the Clerk of Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system. Participants in the case who are registered CM/ECF users will thereby receive service.

/s/ David A. Schmutzer
David A. Schmutzer

*One of the Attorneys for Plaintiff-Appellee Kentrell Welch*